THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAN WANG and HANG GAO, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>ATHIRA PHARMA, INC.; and LEEN KAWAS,<br><br>    Defendants. | CASE NO.: 2:21-cv-00861-TSZ (Consolidated with 21-cv-00862-TSZ and 21-cv-00864-TSZ)<br><br>**DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: June 10, 2022<br><br>ORAL ARGUMENT REQUESTED |
| HARSHDEEP JAWANDHA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ATHIRA PHARMA, INC.; DR. LEEN KAWAS; GLENNA MILESON; TADATAKA YAMADA; JAMES A. JOHNSON; JOSEPH EDELMAN; JOHN M. FLUKE, JR.; GOLDMAN SACHS & CO. LLC; JEFFERIES LLC; STIFEL, NICOLAUS & COMPANY, INCORPORATED; and JMP SECURITIES LLC,<br><br>    Defendants. | |

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

TIMOTHY SLYNE and TAI SLYNE,
Individually and on Behalf of All Others
Similarly Situated,

        Plaintiffs,

      v.

ATHIRA PHARMA, INC.; LEEN KAWAS,
Ph.D.; GLENNA MILESON, TADATAKA
YAMADA, M.D.; JOHN M FLUKE JR.;
JAMES A. JOHNSON; JOSEPH EDELMAN;
GOLDMAN SACHS & CO. LLC;
JEFFERIES LLC; STIFEL, NICOLAUS &
COMPANY, INCORPORATED; and JMP
SECURITIES LLC,

        Defendants.

DEFENDANTS' MOTION TO DISMISS CAC
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

STATEMENT OF ALLEGED FACTS ................................................................ 3

ARGUMENT ....................................................................................................... 5

I.     THE COMPLAINT FAILS TO STATE A SECURITIES ACT CLAIM ......................... 5

     A.     Plaintiffs Fail to State a Section 11 Claim ................................... 5

          1.     The Complaint Does Not Allege a False Statement in the IPO and SPO Materials ........................................ 6

          2.     The Complaint Does Not Allege an Actionable Omission in the IPO and SPO Materials ................................... 8

               a.     Defendants Had No Duty to Disclose Altered Images in the 2011-2014 Research Papers Because They Had No Duty to Disclose Uncharged and Unadjudicated Misconduct ................................. 9

               b.     Defendants Had No Duty to Disclose Altered Images in the 2011-2014 Research Papers Because Their Statements Did Not Trigger a Duty to Disclose Additional Information ............................... 10

                    i.     No Duty Triggered by Statements about Dr. Kawas's Educational Background or Board Qualifications ................................. 11

                    ii.     No Duty Triggered by Statements About the WSU License Agreement ......................... 11

               c.     Athira Had No Duty to Disclose Altered Images in the 2011-2014 Research Papers Under Items 303 or 503 of SEC Regulation S-K .............................. 12

          3.     The Complaint Challenges Two Statements that Were Inactionable Puffery ................................................ 14

     B.     Plaintiffs Fail to State a Section 12(a)(2) Claim ......................... 14

     C.     Plaintiffs Fail to Allege a Section 15 Claim ............................... 16

DEFENDANTS' MOTION TO DISMISS CAC     - i -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

II.     THE COMPLAINT FAILS TO STATE AN EXCHANGE ACT CLAIM ...................... 16

        A.     Plaintiffs Fail to Allege a Section 10(b)/Rule 10b-5(b) Claim ............................ 16

               1.     The Complaint Does Not Allege Any False Statement ............................ 17

               2.     The Complaint Does Not Allege Any Actionable Omission ................... 18

                      a.     The Athira Defendants Had No Duty to Disclose Altered
                             Images in the 2011-2014 Research Papers Because They
                             Had No Duty to Disclose Uncharged and Unadjudicated
                             Misconduct ................................................................................. 18

                      b.     The Athira Defendants Had No Duty to Disclose Altered
                             Images in the 2011-2014 Research Papers Because Their
                             Statements Did Not Trigger a Duty to Disclose
                             Additional Information ............................................................... 18

                             i.     No Duty Triggered by Statements About Factors
                                    Considered in Assessing Board Qualifications ................. 19

                             ii.    No Duty Triggered by Statement about the Potential
                                    of ATH-1017 ....................................................................... 19

               3.     The Complaint Challenges Four Statements that Were Inactionable
                      Puffery ................................................................................................... 20

               4.     The Complaint Fails to Allege a Strong Inference of Scienter ............... 20

                      a.     No Scienter as to Dr. Kawas or Athira .......................................... 21

                      b.     No Scienter as to Ms. Mileson, Mr. Edelman, Mr. Fluke,
                             or Mr. Johnson ............................................................................. 23

        B.     Plaintiffs Fail to Allege a Scheme Liability Claim under Section 10(b)/Rule
               10b-5(a) or Rule 10b-5(c) ................................................................................. 23

        C.     Plaintiffs Fail to Allege a Section 20(a) Claim .................................................... 24

CONCLUSION ........................................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Abbate v. Wells Fargo Bank, N.A.*,
  2011 WL 9698215 (C.D. Cal. Nov. 17, 2011)...................................................................24

*Anderson v. Abbott Labs.*,
  140 F. Supp. 2d 894 (N.D. Ill. 2011),
  *aff'd*, 269 F.3d 806 (7th Cir. 2001)...................................................................................11

*Applestein v. Medivation, Inc.*,
  561 F. App'x 598 (9th Cir. 2014) ......................................................................................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................12

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988).............................................................................................................2

*Brennan v. Zafgen, Inc.*,
  853 F.3d 606 (1st Cir. 2017)..............................................................................................21

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ..............................................................................................8

*Callan v. Motricity Inc.*,
  2013 WL 195194 (W.D. Wash. Jan. 17, 2013),
  *aff'd*, 649 F. App'x 526 (9th Cir. 2016).............................................................................5

*Chiarella v. United States*,
  445 U.S. 222 (1980).............................................................................................................8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .................................................................................7, 18, 20

*City of Phila. v. Fleming Cos.*,
  264 F.3d 1245 (10th Cir. 2001) .........................................................................................21

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014).................................................................................2, 9, 17

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
  963 F. Supp. 2d 1092 (E.D. Wash. 2013),
  *aff'd*, 691 F. App'x 393 (9th Cir. 2017) .............................................................................5

*Constr. Laborers Pension Tr. v. CBS Corp.*,
  433 F. Supp. 3d 515 (S.D.N.Y. 2020).........................................................................19, 20

*Cozzarelli v. Inspire Pharm. Inc.*,
  549 F.3d 618 (4th Cir. 2008) ........................................................................................21, 22

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

*Ferris v. Wynn Resorts Ltd.*,
   462 F. Supp. 3d 1101 (D. Nev. 2020) ..............................................9, 11

*Fries v. N. Oil & Gas, Inc.*,
   285 F. Supp. 3d 706 (S.D.N.Y. 2018) ...................................................11

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) ..................................................................20

*Gustafson v. Alloyd*,
   513 U.S. 561 (1995) .................................................................................15

*Hertzberg v. Dignity Partners*,
   191 F.3d 1076 (9th Cir. 1999) ................................................................15

*In re Apple Comput., Inc.*,
   127 F. App'x 296 (9th Cir. 2005) ...........................................................23

*In re Citigroup, Inc. Sec. Litig.*,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004) ....................................................12

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
   2012 WL 10731957 (C.D. Cal. June 29, 2012) ......................................12

*In re Facebook, Inc. Secs. Litig.*,
   405 F. Supp. 3d 809 (N.D. Cal. 2019) ......................................................9

*In re Hansen Nat. Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..................................................23

*In re Jones Soda Co. Sec. Litig.*,
   2009 WL 330163 (W.D. Wash. Feb. 9, 2009) ........................................21

*In re Metawave Commc'ns Corp. Sec. Litig.*,
   629 F. Supp. 2d 1207 (W.D. Wash. 2009) ..............................................21

*In re Metawave Commc'ns Corp. Sec. Litig.*,
   298 F. Supp. 2d 1056 (W.D. Wash. 2003) ..............................................22

*In re NVE Corp. Sec. Litig.*,
   551 F. Supp. 2d 871 (D. Minn. 2007),
   *aff'd*, 527 F.3d 749 (8th Cir. 2008) .......................................................12

*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
   2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ...........................................14

*In re Peregrine Sys., Inc. Sec. Litig.*,
   2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) .........................................21

*In re Restoration Robotics, Inc. Sec. Litig.*,
   417 F. Supp. 3d 1242 (N.D. Cal. 2019) ..................................................13

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ..........................................6, 8, 9, 10, 12, 22

*In re Teva Sec. Litig.*,
   512 F. Supp. 3d 321 (D. Conn. 2021)................................................................24

*In re Time Warner Inc. Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993)...............................................................................8

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
   669 F. App'x 878 (9th Cir. 2016) ...................................................................16

*In re VeriFone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993) ...........................................................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   258 F. Supp. 3d 1037 (N.D. Cal. 2017) ......................................................9, 10

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. 2010) ...........................................................15

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
   398 F. Supp. 3d 549 (N.D. Cal. 2019),
   *aff'd*, 998 F.3d 397 (9th Cir. 2021)..............................................................14

*Johnson v. Costco Wholesale Corp.*,
   2019 WL 6327580 (W.D. Wash. Nov. 26, 2019) ..............................................16

*Joseph v. Wiles*,
   223 F.3d 1155 (10th Cir. 2000),
   *abrogated on other grounds by*
   *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017) ...............15

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)...........................................................................22

*Kauffman v. Nat. Health Trends Corp.*,
   2019 WL 7165921 (C.D. Cal. Dec. 20, 2019),
   *appeal dismissed sub nom*, *Yang v. Nat. Health Trends Corp.*,
   2020 WL 4813844 (9th Cir. 2020) ..............................................................9, 10

*Lipton v. PathoGenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) .......................................................................22

*Lopez v. CTPartners Exec. Search, Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016)...........................................................13, 14

*Lowthorp v. Mesa Air Grp. Inc.*,
   2021 WL 3089118 (D. Ariz. July 22, 2021) ....................................................15

*Maeve Inv. Co. Ltd. P'ship v. Teekay Corp.*,
   2017 WL 5158059 (W.D. Wash. Nov. 7, 2017)................................................22

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)........................................................................................8

DEFENDANTS' MOTION TO DISMISS CAC          - v -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*Menaldi v. Och-Ziff Cap. Mgmt. Grp.*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016)................................................................24

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ..................................................................22

*Monachelli v. Hortonworks, Inc.*,
    225 F. Supp. 3d 1045 (N.D. Cal. 2016) ......................................................12

*N.Y.C. Empls. Ret. Sys. v. Berry*,
    616 F. Supp. 2d 987 (N.D. Cal. 2009) ....................................................23, 24

*Okla. Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
    444 F. Supp. 3d 550 (S.D.N.Y. 2020) ......................................................13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015).............................................................6, 7, 8, 20

*Ore. Pub. Empls. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ..................................................................14

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002) ..............................................................13

*Pino v. Cardone Cap., LLC*,
    2021 WL 3502493 (C.D. Cal. April 27, 2021) ..........................................15

*Pinter v. Dahl*,
    486 U.S. 622 (1988).............................................................................15

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021) ..................................................................22

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v.*
    *Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) ................................................5, 9, 19, 20

*Rubke v. Capitol Bancorp Ltd*,
    551 F.3d 1156 (9th Cir. 2009) ....................................................................6

*Shain v. Duff & Phelps Credit Rating Co.*,
    915 F. Supp. 575 (S.D.N.Y. 1996) ..........................................................15

*Spiegel v. Tenfold Corp.*,
    192 F. Supp. 2d 1261 (D. Utah 2002)......................................................16

*Steckman v. Hart Brewing*,
    143 F.3d (9th Cir. 1998) ..........................................................................13

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
    552 U.S. 148 (2008)................................................................................24

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp. Inc.*,
    690 F. Supp. 2d 959 (D. Ariz. 2010) ......................................................16

DEFENDANTS' MOTION TO DISMISS CAC                    - vi -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................20, 22

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (en banc)..........................................12

*Ulbricht v. Ternium S.A.*,
    2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020) ...............................14, 17

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019)....................................................9

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .............................................................20

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ......................................15

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .............................................................20

**STATUTES**

35 U.S.C. § 102........................................................................................12

35 U.S.C. § 103........................................................................................12

Private Securities Litigation Reform Act of 1995,
    Pub. L. 104-67, 109 Stat. 737
    (codified as amended at 15 U.S.C § 78u–4). .................................1, 23

Securities Act, Section 11,
    15 U.S.C. § 77k ...................................................1, 5, 6, 8, 12,
    15, 16, 17, 18, 20

Securities Act, Section 12(a)(2),
    15 U.S. Code § 77l................................................................5, 14, 15, 16

Securities Act, Section 15,
    15 U.S.C. § 77o...................................................................5, 16, 24

Securities Exchange Act, Section 10(b),
    15 U.S.C. § 78j(b) ...........................................1, 2, 5, 6, 8
    16, 18, 20, 23

Securities Exchange Act, Section 20,
    15 U.S.C. § 78t(a) ...................................................................5, 16, 24

DEFENDANTS' MOTION TO DISMISS CAC
2:21-cv-00861-TSZ

- vii -

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

## REGULATIONS

17 C.F.R. § 229.303(a)(3)(ii) ..................................................................................................12

SEC Rule 10b-5 ..............................................................................................5, 16, 23, 24

SEC Rule 10b-5(a) ........................................................................................16, 23, 24

SEC Rule 10b-5(b) ..................................................................................................16

SEC Rule 10b-5(c) ............................................................................................16, 23

SEC Rule 424(b)(4) ..................................................................................................3, 4

## RULES

FED. R. CIV. P. 8(a) ..................................................................................................1, 6

FED. R. CIV. P. 9(b) ..................................................................................................1, 6

FED. R. CIV. P. 12(b)(6) ............................................................................................1, 21

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

Defendants Athira Pharma, Inc. ("Athira" or "Company"), Dr. Leen Kawas, Glenna Mileson, John M. Fluke, Jr., James A. Johnson, and Joseph Edelman ("Individual Defendants"; with Athira, "Athira Defendants"), and Goldman Sachs & Co., LLC, Jefferies LLC, Stifel, Nicolaus & Company, Inc., and JMP Securities LLC ("Underwriter Defendants"; with Athira Defendants, "Defendants"), respectfully submit this motion to dismiss Plaintiffs' Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Complaint" or "¶"), ECF No. 74, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737, for failure to state a claim under the federal securities laws ("Motion").

## INTRODUCTION

Athira is a late-stage biopharmaceutical company focused on developing small molecules to restore neuronal health and stop neurodegeneration. Its lead drug candidate, ATH-1017, is a novel small molecule for the treatment of Alzheimer's Disease, currently in Phase 2 clinical development. Athira went public in September 2020 through an initial public offering ("IPO"), and followed in January 2021 with a secondary public offering ("SPO"). On June 17, 2021, Athira announced that its CEO, Dr. Kawas, had been placed on "temporary leave pending a review of actions stemming from doctoral research [she] conducted while at Washington State University" ("WSU"), and that the Athira Board of Directors ("Board") had formed a special committee to conduct an investigation. Four months later, on October 21, 2021, Athira disclosed that the special committee had found that Dr. Kawas altered images in her 2011 doctoral dissertation and in at least four research papers that she co-authored while a graduate student at WSU and published from 2011 to 2014. Athira also announced Dr. Kawas's resignation. About a week after the special committee investigation was announced and almost four months before Athira disclosed the results of that investigation, Defendants were sued for violations of the federal securities law.

Plaintiffs' Complaint asserts claims for violations of Section 11 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77k, and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b). Plaintiffs do not even attempt to allege an actual false

statement in Athira's IPO and SPO Materials or any other SEC filing. Instead, Plaintiffs rely *entirely* on an omissions theory. Plaintiffs essentially allege that (a) investors relied on Dr. Kawas's research papers, generally, and the images therein, specifically, and (b) Defendants therefore were required to disclose that some of the images in the research papers were altered, even though the papers were not mentioned by the Company in the challenged statements and related to a molecule that Athira was no longer pursuing as a potential therapeutic at the time of the IPO or SPO or thereafter. This ignores well-established law that "[s]ilence, absent a duty to disclose, is not misleading," *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988), and "[d]isclosure is not a rite of confession," *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (internal quotations omitted). None of the challenged statements were inaccurate and Plaintiffs' theories rely on multiple, unwarranted inferential leaps that the statements implied anything about the quality of Dr. Kawas's research papers. None of the statements "opened the door" to a discussion of Dr. Kawas's research papers or their images.

Plaintiffs also ignore the dozens of pages in the IPO and SPO Materials that *explicitly* discuss the bases for Athira's hypothesis that ATH-1017 might enhance HGF/MET signaling and have the potential to treat Alzheimer's Disease—Phase 1a/1b trials, EEG and ERP measures like gamma power and latent potency, animal studies, and third-party studies—in favor of a theory that Athira (and investors) somehow relied on Dr. Kawas's research papers to support this hypothesis, even though that is nowhere stated in the IPO or SPO Materials. ¶33.

Plaintiffs' Section 10(b) claim also fails to allege that Dr. Kawas or anyone else knew—or was deliberately reckless in not knowing—that Athira would be negatively impacted in 2021 by research papers published six-to-ten years before Athira's IPO about a molecule from which the Company had since "moved on." ¶93. Nor are there any allegations that Ms. Mileson, Mr. Edelman, Mr. Fluke, or Mr. Johnson were aware of these altered images or any need to disclose them before the end of the class period. The Court should reject Plaintiffs' efforts to turn Dr. Kawas's mistakes as a graduate student many years before the IPO into federal securities law violations years later. The Complaint should be dismissed.

## STATEMENT OF ALLEGED FACTS[1]

**Athira and ATH-1017**.  Athira is a late clinical-stage biopharmaceutical company with its principal executive offices in Bothell, Washington. ¶14. Athira is focused on developing small molecules to restore neuronal health and stop neurodegeneration. ¶1. Athira's lead product candidate is ATH-1017, a prodrug of Dihexa, which is a drug that potentially improves cognition in patients with Alzheimer's and other diseases. ¶¶1, 29 & n.9. A "prodrug" is a "biologically inactive compound that is used in lieu of the active compound to improve how the active compound is absorbed, distributed, or transmitted throughout the body." ¶29 & n.9. Athira's scientific hypothesis is that ATH-1017 might "enhance[] HGF/MET signaling" and have "the potential to protect existing neurons from damage, reduce inflammation, promote regeneration, and positively modulate brain activity[,]" thereby "improv[ing] neuronal health and translat[ing] into clinical benefits." Ex. 2 (FP) at 4.[2]

**Athira's 2020 IPO Registration Statement and Prospectus**. Athira completed an IPO in September 2020. ¶89. In connection with its IPO, Athira filed a Registration Statement on Form S-1 and issued a Final Prospectus pursuant to Rule 424(b)(4), ¶¶7, 174, which Plaintiffs refer to collectively as the "IPO Materials," ¶7. The IPO Materials did not refer to any of the research papers alleged in the Complaint to have contained altered images, let alone include any of those images, nor did they mention Dihexa.  Instead of relying on Dr. Kawas's papers, the IPO Materials pointed to "a strong suite of data" from Athira's Phase 1a/1b trials of ATH-1017,[3] FP at 2-4, 11-

---

[1] The Statement of Alleged Facts is composed of Complaint allegations and documents incorporated by reference. Defendants assume these "facts" to be true solely for the purposes of this Motion. References to "Ex." are to the Declaration of John C. Roberts Jr. ISO Defendants' Motion to Dismiss Consolidated Amended Complaint ("Roberts Declaration"). As explained in Defendants' Request for Judicial Notice and Notice of Incorporation by Reference, this Court may consider these documents in connection with the instant Motion.

[2] All references to "FP" are to the Final Prospectus on Form 424B4 filed on September 18, 2020, which is attached as Exhibit 2 to the Roberts Declaration and forms Part I of the final effective registration statement for the IPO.

[3] The IPO Materials specifically pointed to positive qEEG and ERP results. EEG, or electroencephalogram, measures the brain's electrical activity using small electrodes placed on the scalp. FP at 120. Quantitative electroencephalogram, or qEEG, assesses "high frequency gamma power brain waves." FP at 119. Event-related potential, or ERP, refers to changes in electrical activity of the brain in response to external stimuli. FP at 119–22. Gamma power activity is reflective of learning, memory and executive functions, FP at 4, and P300 latency is a functional measure of working memory processing speed and executive function that highly correlates with cognition. FP at 4, 7. The IPO Materials stated that Athira's Phase 1a/1b found that administration of ATH-1017 increased high frequency gamma power activity and substantially improved P300 latency, with a statistically significant change compared to a placebo group. FP at 4, 7. Plaintiffs do not allege that these statements were false or misleading.

12, 91-92, 109-10, 126-32; ¶¶117–30, seven "third-party studies" documenting the regenerative impact of HGF/MET promotion in animal studies, FP at 115-16, and "multiple preclinical studies, including *in vitro* assays and several animal models of memory deficits," FP at 133.

**Athira's 2021 SPO Registration Statement and Prospectus**. Athira conducted an SPO in January 2021. ¶90. In support of the SPO, Athira filed a Registration Statement on Form S-1 and issued a Final Prospectus pursuant to Rule 424(b)(4), which Plaintiffs refer to collectively as the "SPO Materials," ¶7, 90 & n.29.  The SPO Materials provided the same reasons for the Company's optimism that ATH-1017 might improve neuronal health as in the IPO Materials. As with the IPO Materials, the SPO Materials did not mention any of the research papers alleged in the Complaint to have contained altered images, let alone include any allegedly altered images.

**Launch of Special Committee Investigation**. On June 17, 2021, Athira announced in a press release that Dr. Kawas had been placed on "temporary leave pending a review of actions stemming from doctoral research [she] conducted while at [WSU]," and that the Athira Board had formed an independent special committee to undertake that review. ¶91; Ex. 3 (June 17, 2021 PR) at 1. That same day, an article was published in *STAT News* that discussed certain criticisms of Dr. Kawas's work made on *PubPeer*, a post-publication scientific discussion website, ¶¶92–94. It noted that "[i]n eight different images in four different papers, the same Western blot bands seemingly appear repeatedly," and "[i]n two instances, the same image seems to be used to show the results of two different experiments," ¶94. The article acknowledged that "the papers [were] up to a decade old, dating back to when Kawas was a doctoral student," and that "[Athira] has since moved on to a different molecule than the one Kawas was working on" at the time, ¶93.

**Results of Special Committee Investigation and Dr. Kawas's Resignation**. On October 21, 2021, Athira announced the results of the special committee investigation:

> The special committee's primary finding was that Dr. Kawas altered images in her 2011 doctoral dissertation and in at least four research papers that she co-authored while a graduate student at WSU, published from 2011 to 2014.

> The Company's lead development candidate, ATH-1017 is a novel small molecule in late-stage clinical development and not the subject of Dr. Kawas's doctoral research. Athira was issued a patent in the U.S. covering ATH-1017 in June 2021,

and the special committee found that neither this patent nor the underlying patent application cites any of the papers the special committee found contained images altered by Dr. Kawas. ¶97.

Athira reiterated that its Phase 1a/1b trial had been "conducted by an independent contract research organization," and that an "independent auditing firm[] recently confirmed the GCP compliance and data management quality" of the trial. Ex. 4 (Oct. 21, 2021 PR) at 1. The Company also announced Dr. Kawas's resignation. ¶¶5, 98. In a letter to Athira employees, Dr. Kawas stated:

> I regret that mistakes I made as a graduate student many years ago caused any distraction to Athira today. At the time, I was navigating an unfamiliar environment and did not fully comprehend the significance of my decision to enhance the images I used in my research. ¶98.

## **ARGUMENT**

The Complaint challenges eleven (11) statements made from September 2020 to May 2021, each of which Plaintiffs allege were misleading due to material omissions.[4] Statements 1, 2, 3, and 5, made in the IPO and SPO Materials, are alleged to have violated Section 11 and 12(a)(2) of the Securities Act. ¶¶174–82. All eleven of the challenged statements are alleged to have violated Section 10(b) of the Exchange Act and SEC Rule 10b-5. ¶¶109–35. Claims of control person liability are also asserted under Section 15 of the Securities Act and Section 20 of the Exchange Act. ¶¶157–62, 212–14. The Complaint should be dismissed for failure to state a claim.

## I.   THE COMPLAINT FAILS TO STATE A SECURITIES ACT CLAIM

### A.   Plaintiffs Fail to State a Section 11 Claim

To state a claim under Section 11, Plaintiffs must plead facts sufficient to show that the Registration Statement either contained a false statement of material fact or omitted material facts necessary to make a challenged statement not misleading. *See* 15 U.S.C. § 77k(a); *Callan v. Motricity Inc.*, 2013 WL 195194, at *5–6 (W.D. Wash. Jan. 17, 2013), *aff'd*, 649 F. App'x 526

---

[4] Attached as Exhibit 1 to the Roberts Declaration is a Chart of Allegedly False & Misleading Statements. Its organization follows the section headings in the Complaint alleging "False and Misleading Statements" during the class period. ¶¶109–35, 174–90. While the Complaint sometimes places pre- and post-class period statements in bold and italics, *e.g.*, ¶¶86–88, Plaintiffs are not allowed "to import an out-of-Class-Period statement into the Class Period." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017); *see also City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1127 n.15 (E.D. Wash. 2013) (same), *aff'd*, 691 F. App'x 393 (9th Cir. 2017).

(9th Cir. 2016). With respect to omissions, "Section 11 does not require the disclosure of all information a potential investor might take into account when making his decision[.]" *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1163 (9th Cir. 2009). "Section 11's omissions clause . . . is not a general disclosure requirement; it affords a cause of action only when an issuer's failure to include a material fact has rendered a published statement misleading." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). Here, the Complaint fails to state a claim under Section 11 because it does not allege that any of the statements in the IPO or SPO Materials were false or misleading, ¶¶174–82, whether under Rule 8(a) or the "particularity" requirements of Rule 9(b), which apply here because Plaintiffs' claim "sounds in fraud,"[5] *Rubke*, 551 F.3d at 1161.

### 1.    The Complaint Does Not Allege a False Statement in the IPO and SPO Materials

The IPO and SPO Materials contained no false statements, as Plaintiffs concede through their repeated allegation that Defendants "failed to disclose" information in the IPO and SPO Materials. ¶¶177, 179, 182, 190. To plead an omission claim, however, Plaintiffs must allege how the omissions rendered some *actual statement made* false or misleading, *see infra* Section I.A.2. Both Plaintiffs' concession and the statements themselves show they were not false but were, instead, literally true.

Statement 1 is the simple acknowledgement that Dr. Kawas "ha[d] been essential in creating [Athira's] innovative translational development strategy." ¶175. Plaintiffs do not allege

---

[5] The Complaint sounds in fraud because it includes all Athira Defendants in both the Section 11 claim, ¶¶22 n.7, 191–202, and the Section 10(b) claim, ¶¶147–56; it alleges they all had scienter and participated in the fraud, ¶¶27–162; the Section 11 claim incorporates 81 paragraphs at the core of the Section 10(b) case, ¶165 (citing ¶¶27–108); and the Section 11 claim refers to Defendants' conduct as "fraudulent," ¶¶172, 182, and the research in question as "falsified," ¶¶165, 179, 189. *See In re Rigel Pharms., Inc. Sec. Litig*., 697 F.3d 869, 885 (9th Cir. 2012) ("gravamen of the complaint is fraud"); *Rubke*, 551 F.3d at 1161 (claims "employ[] the exact same factual allegations"); *Motricity*, 2013 WL 195194, at *5 ("wholesale adoption" of facts underlying fraud claim). Particularly significant for the sounds-in-fraud analysis, the Section 11 claim "relies on the same alleged misrepresentations . . . that are central to Plaintiff's section 10(b) fraud claim." *Rigel*, 697 F.3d at 886; *compare* ¶¶110–115, 118 *with* ¶¶175–179, 182. Attempts to artificially separate claims or use boilerplate disclaimers, ¶¶163, 167, 191, 203, 212, do not shield Section 11 claims from Rule 9(b). *See Rigel*, 697 F.3d at 885 (disclaimer "unconvincing"); *Motricity*, 2013 WL 195194, at *5–6 (same).

that Dr. Kawas was *not* essential in creating Athira's translational development strategy or that it was not innovative—indeed, Plaintiffs do not even allege what that strategy was. ¶¶1–222.

Statement 2 describes Dr. Kawas's degrees, her "scientific and professional training," her "instrumental role" in building Athira, and her "extensive understanding" of its "business, operations, and strategy." ¶176. The alteration of some images in a handful of research papers co-authored by Dr. Kawas from 2011 to 2014 did not render any of these statements false. She received the degrees identified, as the Complaint itself acknowledges. ¶¶34–35. Dr. Kawas's education and many years in executive positions at Athira provided her with scientific and professional training. *Id.* As to her "instrumental role" in building Athira and her "extensive understanding of [its] business[] operations," ¶111, the Complaint alleges that Dr. Kawas "led" Athira, ¶28, held "senior positions at Athira," ¶23, and served as CEO for seven years, *i.e.*, since 2013, ¶28. The Complaint alleges that Dr. Kawas was "directly involved in day-to-day operations . . . at the highest levels," ¶23, that she saw Athira through its Phase 1a/1b trial and IPO, ¶¶15, 28, and that Athira "continued to grow" under her leadership, ¶28. In Statement 2, Athira also states that "[it] believe[d] [that] Dr. Kawas's scientific and professional training, her instrumental role in building Athira. . . and her extensive understanding of [the Company's] business, operations and strategy qualify her to serve on [its] board of directors." ¶176. This statement is clearly an opinion. *See Omnicare*, 575 U.S. at 179–81 ("We believe" indicated opinion). Plaintiffs do not allege that the opinion was subjectively false, as the Complaint does not allege that anyone at Athira did not actually believe that Athira's longtime CEO was qualified to serve on the Board.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017). Nor does the Complaint allege that any fact supplied in support was untrue. *Id.*

Statement 3 concerns Athira's license agreement with WSU, in which Athira stated that it entered into the agreement in December 2011 and that under its terms WSU granted Athira an exclusive license to certain WSU patents. ¶178. The Complaint does not allege that there was no license agreement to certain WSU patents, or that its terms were other than as described in the Registration Statement. ¶¶1–122.

Statement 5 from the SPO Materials merely repeats Statements 1, 2, and 3 in the IPO Materials. ¶¶120, 181. These statements are not false for the reasons stated above.

### 2. The Complaint Does Not Allege an Actionable Omission in the IPO and SPO Materials

Unable to point to an actual false statement in the IPO or SPO Materials, Plaintiffs rely *exclusively* on a theory of omission, *i.e.*, that the challenged statements were misleading because they "failed to disclose" that there were altered images in some of the research papers co-authored by Dr. Kawas and published from 2011-2014. ¶¶177, 179, 182, 190. But Plaintiffs do not and cannot allege the requisite duty to disclose.

One of the pillars of federal securities laws is that a duty to disclose "does not arise from the mere possession of nonpublic market information." *Chiarella v. United States*, 445 U.S. 222, 235 (1980). There is no "affirmative duty to disclose any and all material information," *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011), and no "freestanding completeness requirement," *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002), whether under Section 10(b) or Section 11, *see Omnicare*, 575 U.S. at 194 (Section 11 has no "general disclosure requirement"); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868–69 (9th Cir. 1993) (duty to disclose analysis relevant to Section 11 falsity). A company is "not required to disclose a fact merely because a reasonable investor would very much like to know [it]"; an omission is actionable "only when the corporation is subject to a duty to disclose the omitted facts." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993); *see also Rigel*, 697 F.3d at 880 n.8 (same); *Brody*, 280 F.3d at 1006 (same). Under Section 11, Plaintiffs can plead that duty by alleging a failure to state a material fact "required to be stated therein," as with Plaintiffs' challenge under Item 303 of SEC Regulation S-K. 15 U.S.C. § 77k(a). Otherwise, Plaintiffs must plead the duty by alleging that the failure to disclose the omitted fact in the Registration Statement renders the "statements therein" false or misleading. *Id*. If an omission does not render a statement misleading, a company need not supplement the statement "even if investors would consider the omitted information

DEFENDANTS' MOTION TO DISMISS CAC
2:21-cv-00861-TSZ

- 8 -

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

significant." *Rigel*, 697 F.3d at 880 n.8. The Complaint fails to allege an actionable omission because it fails to allege a duty to disclose.

> ### a.   Defendants Had No Duty to Disclose Altered Images in the 2011-2014 Research Papers Because They Had No Duty to Disclose Uncharged and Unadjudicated Misconduct

Plaintiffs' omissions theory is based on the false premise that Defendants had a duty to disclose that some research papers co-authored by Dr. Kawas from 2011 to 2014 contained altered images, but Plaintiffs are mistaken. Disclosure is not a "rite of confession," and Defendants were not obligated to disclose "uncharged, unadjudicated" conduct by Dr. Kawas, even if they had been aware of it. *UBS*, 752 F.3d at 184. Indeed, "courts have routinely held that the existence, and even knowledge, of illegal activities at a company is not a sufficient basis to state a securities claim without allegations that there was a realistic risk that those activities would cause losses to the company." *Kauffman v. Nat'l Health Trends Corp.*, 2019 WL 7165921, *5 (C.D. Cal. Dec. 20, 2019), *appeal dismissed sub nom*, *Yang v. Nat. Health Trends Corp.*, 2020 WL 4813844 (9th Cir. 2020); *see also Hewlett-Packard*, 845 F.3d at 1278 (no duty to disclose "misuse of CEO authority and misbehavior"); *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1123, 1126 (D. Nev. 2020) (no duty to disclose "alleged misconduct"); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 806 (N.D. Cal. 2019) ("not required to 'confess' to the uncharged allegation"); *In re Facebook, Inc. Secs. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) ("not required to engage in 'self-flagellation' by disclosing unproven allegations").

Courts follow this line of authority even where, unlike here, large-scale illegal activity has occurred, and there was actual knowledge of that illegal activity. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037  (N.D. Cal. 2017), is instructive. In that case, "senior executives at VW AG knew the [c]ompany was lying to regulators" about the company's use of an emissions testing defeat device, but the court held that "the federal securities laws [did] not require a company to accuse itself of wrongdoing." *Id*. at 1043 (citation omitted). If there could be no actionable omission in these cases, then *a fortiori* there can be none here.

While the Complaint alleges that there were some comments on *PubPeer* in 2014, 2016 and 2021 about potentially altered images in the papers, it does not allege that any of these papers were under investigation or review, withdrawn, retracted or depublished by the authors or these scientific journals before the purported class period ended on June 17, 2021. ¶¶1–222. The Complaint does not allege any government or academic investigation or charges during the class period. *Id*. The Complaint also does not plead facts indicating that any of the Defendants other than Dr. Kawas were aware of the altered images, or even accusations of alterations, during the class period. *Id*. Nor are there allegations that Defendants, including Dr. Kawas, believed that the presence of some altered images in papers published six-to-ten years before Athira's IPO, and concerning a different molecule, ¶93, posed any threat to the Company's intellectual property or risk of any loss to the Company. *See Kauffman*, 2019 WL 7165921, at *5 (no allegation of "realistic risk that those activities would cause losses to the company"); *Volkswagen*, 258 F. Supp. 3d at 1043 (same).

### b. Defendants Had No Duty to Disclose Altered Images in the 2011-2014 Research Papers Because Their Statements Did Not Trigger a Duty to Disclose Additional Information

Given that Defendants had no general duty to disclose deficiencies in Dr. Kawas's 2011-2014 research papers, the question becomes whether Defendants said something in the IPO Materials or SPO Materials to trigger a duty to disclose that did not otherwise exist. They did not. The IPO and SPO Materials did not include any Western blot images, altered or otherwise, and did not reference any of Dr. Kawas's research papers, let alone those alleged in the Complaint to have contained altered images. Even if the IPO and SPO Materials had touched upon Dr. Kawas's research papers (they did not), simply mentioning a topic does not trigger a duty to disclose everything about that topic. *See Rigel*, 697 F.3d at 880 n.8 (rejecting argument that "once a company chooses to disclose any safety information, it must disclose all material information regarding safety;" "as long as the omissions do not make the actual statements misleading, a company is not required to disclose every safety-related result from a clinical trial, even if the company discloses some safety-related results and even if investors would consider the omitted

information significant"); *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 903 (N.D. Ill. 2001) ("Merely mentioning a topic does not require the company to disclose every tangentially related fact that might interest investors."), *aff'd*, 269 F.3d 806 (7th Cir. 2001).

### i. No Duty Triggered by Statements about Dr. Kawas's Educational Background or Board Qualifications

Defendants did not trigger a duty to disclose the altered images in the 2011-2014 research papers by reciting Dr. Kawas's leadership in "creating [Athira's] innovative translational development strategy" (Statement 1, ¶175), educational background and scientific and professional training (Statement 2, ¶176), "extensive understanding" of Athira's "business, operations and strategy," *id.*, and role "in building Athira," *id.*, as support for their opinion that she was qualified for Board membership. No reasonable investor would infer from such generic statements any guarantee that Dr. Kawas had made no mistakes in the past. *See Wynn Resorts*, 462 F. Supp. 3d at 1123 ("no reasonable investor would infer from the challenged compliance statements that [the executive had] not engaged in . . . misconduct"). For example, in *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706 (S.D.N.Y. 2018), the plaintiff challenged statements concerning the CEO's qualifications and expertise, claiming they failed to disclose the CEO's misconduct, but the court found that the "omitted facts [did] not show that [the company] did not rely on [the CEO's] knowledge and expertise in the industry, that [he] did not have the pedigree [it] represented, or that [his] experience and expertise did not give [it] certain early advantages." *Id.* at 718–19. Here, the IPO and SPO Materials did not mention Dr. Kawas's research, specifically or generally. The mere mention of her scientific training, ¶176, did not trigger a duty to disclose the presence of altered images in some of her research papers published six-to-ten years before the IPO. *See* Section I.A.2.a-b *supra*.

### ii. No Duty Triggered by Statements About the WSU License Agreement

Plaintiffs allege that Athira "touted [] its licensing agreement with WSU," "creating a false impression of . . . the value of [Athira]'s intellectual property" and a duty to disclose the altered

images. ¶3. But the Complaint does not show where the IPO and SPO Materials ever "touted" the licensing agreement. ¶¶1–222. Statement 3 is an accurate statement about the WSU licensing agreement and makes no qualitative statements about the validity or value of the underlying WSU patents.[6] *See* Section I.A.1 *supra*. Plaintiffs' mistaken theory of omission is that Athira's mention of the broad terms of the licensing agreement required a detailed disclosure of every potential deficiency in WSU's patents or patent applications. This is not the law. *See Rigel*, 697 F.3d at 880 n.8; *see also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 10731957, at *4 (C.D. Cal. June 29, 2012) (accurate description of contractual obligations in public disclosures not fraudulent where they were "meant as a description of the [contract]"); *Monachelli v. Hortonworks, Inc.*, 225 F. Supp. 3d 1045, 1055 (N.D. Cal. 2016) (disclosures of "accurate historical data" not actionable by omission) (citation omitted).

### c. Athira Had No Duty to Disclose Altered Images in the 2011-2014 Research Papers Under Items 303 or 503 of SEC Regulation S-K

Plaintiffs allege that Defendants violated Section 11 by failing to disclose information required by Item 303 of SEC Regulation S-K, ¶¶183–90, 17 C.F.R. § 229.303(b)(3)(ii), specifically, the supposed "impact of years of falsifying and publishing research," ¶189. To state a claim under Item 303, Plaintiffs must allege, among other things, "knowledge of an adverse trend" or uncertainty, and a "reasonabl[e] like[lihood]" that the trend or uncertainty would have a

---

[6] The Complaint makes wildly speculative and wholly conclusory claims about the validity of Athira's IP portfolio, suggesting its patents are "unenforceable" ¶¶6, 106–07, 115, and its portfolio "worthless," ¶¶106–07, 115, because the patent that Athira received for ATH-1017 (the '514 patent) includes a single reference to one of the 2011-2014 research papers, ¶¶54–59 & n.19, *in a list of prior art*, ¶105. But the allegations concerning patent enforceability are legal conclusions that need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and they are certainly insufficient without the requisite factual support. Even if one were to play along with Plaintiffs on this point, the Complaint does not plausibly allege inequitable conduct, which would require it to show that the reference to the paper was so material to the '514 patent that the patent would not have been granted "but for" the reference. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290–93 (Fed. Cir. 2011) (en banc). This is impossible, as the Complaint concedes that it was only listed as "prior art." ¶¶82, 105. When the USPTO examines a reference as prior art, it is to determine whether the claimed compounds are novel and non-obvious over the compounds disclosed in the reference, *not* to establish the claimed compounds' efficacy or activity. 35 U.S.C. §§ 102, 103. Plaintiffs' vague references to the invalidation of other patents, ¶¶79–80, fail for similar reasons: the Complaint does not allege but-for materiality, nor does it allege what current product candidates (if any) rely on these other patents. Finally, even if one assumed *arguendo* a threat to Athira's IP portfolio, the Complaint lacks sufficient allegations "that Defendants were aware of the alleged invalidity of their patents or did not sincerely believe in their validity," *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 883 (D. Minn. 2007), *aff'd*, 527 F.3d 749 (8th Cir. 2008), or that anyone has taken any steps to invalidate Athira's patents. Athira was "not required to make disclosures predicting [] litigation." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004).

"material impact" on future financial or operational results. *Steckman v. Hart Brewing*, 143 F.3d 1293, 1296–98 (9th Cir. 1998). The Complaint does not plead an Item 303 violation.

*First*, the existence of some altered images in some research papers co-authored by Dr. Kawas while she was a graduate student and published from 2011 to 2014 was not a "trend" or "uncertainty" for Athira in 2020 or 2021. *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263–64 (N.D. Cal. 2019) (isolated and temporally removed events do not create a "trend"). Likewise, the omission of that information did not implicate Item 303's primary concern, to ensure that there are no developments that could "render the registrant's reported results less indicative of the registrant's future prospects." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1191 (11th Cir. 2002). The principal objectives of the disclosures required by Item 303 relate to "financial statements," "financial disclosure," and "financial information." ¶184. Information about altered images in research papers concerning a different molecule did not relate to any financial issues and is "outside the scope of what Item 303 requires be disclosed." *Lopez v. CTPartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 33–34 (S.D.N.Y. 2016). Regardless, Athira disclosed that it had not generated any revenue and could not predict when it would, FP at 20, thus it cannot be said that the omitted information made the "latest reported results" look overly optimistic. *Oxford*, 297 F.3d at 1192.

*Second*, the Complaint does not allege that any of the Defendants other than Dr. Kawas were aware of the altered images or that it was "known" to any of the Defendants, including Dr. Kawas, at the time of the IPO or SPO that altered images in old research papers would be "reasonably likely" to have a material impact on Athira's prospects. *See* Section II.A.5 *infra*; *Steckman*, 143 F.3d at 1297–98; *Okla. Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 444 F. Supp. 3d 550, 564 (S.D.N.Y. 2020) ("The possibility that [executives] would be exposed . . . and then forced to leave . . . or assume diminished roles, and that these changes would reduce revenue by disrupting operations and damaging the Company's brand, rests on a tenuous chain of causality and falls short of a known risk, disclosure of which Item 303 would mandate.").

Plaintiffs' allegation that Defendants violated "Item 503(c)," ¶190, fares no better. The operative rule here is not Item 503, but Item 105, which requires, "under the caption 'Risk Factors,' a discussion of the material factors that make an investment . . . speculative or risky." 17 C.F.R. § 229.105(a). The Final Prospectus included dozens of pages of risks factors that the Complaint simply ignores, FP at 20-78, and those disclosures were sufficient to satisfy Item 105.  Indeed, the general rule that one does not have a duty to disclose uncharged and unadjudicated conduct "would be entirely meaningless if every reporting company were required to disclose [it] in the risk-factors sections of its filings." *Ulbricht v. Ternium S.A.*, 2020 WL 5517313, at *10 (E.D.N.Y. Sept. 14, 2020) (citation omitted).

### 3.    The Complaint Challenges Two Statements that Were Inactionable Puffery

Plaintiffs' challenges to Statements 1 and 2 fail for the additional reason that they are too vague to be actionable. Statement 1 refers to Dr. Kawas as "essential" in creating a "strategy." ¶175. Statement 2 refers to her "scientific and professional training," "extensive understanding" of the business and "instrumental role in building" it. ¶176. These vaguely complimentary statements are "too general to give rise to any particular impression about [] business practices and their legality, and therefore are not actionable as a matter of law." *In re Paypal Holdings, Inc. S'holder Deriv. Litig.,* 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018); *see also Ore. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606–07 (9th Cir. 2014) (rejecting challenges to vague statements of corporate optimism); *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 398 F. Supp. 3d 549, 557–58 (N.D. Cal. 2019) (dismissing challenges to "generic" statements), *aff'd*, 998 F.3d 397 (9th Cir. 2021). The relevant inquiry "must consider whether the statement made was sufficiently specific that a reasonable investor could rely on it as a 'guarantee of some concrete fact or outcome,'" *CTPartners*, 173 F. Supp. 3d at 29, and Statements 1 and 2 were not.

### B.    Plaintiffs Fail to State a Section 12(a)(2) Claim

To state a Section 12(a)(2) claim, a plaintiff must allege that Defendants were "statutory

DEFENDANTS' MOTION TO DISMISS CAC            - 14 -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

seller[s]" and "the prospectus or oral communication contained a material misstatement or omission." *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, *18, 22 (N.D. Cal. Jan. 17, 2017) (citation omitted); *see also Gustafson v. Alloyd*, 513 U.S. 561, 578 (1995) (citing 15 U.S.C. § 77l(a)(2)); *Pinter v. Dahl*, 486 U.S. 622, 641–42 (1988). Plaintiffs fail to state such a claim.

*First*, the Complaint fails to allege a false statement or actionable omission in the IPO and SPO Materials, *see* Section I.A.1 & 2 *supra*, and this is fatal to the Section 12(a)(2) claim.

*Second*, "[u]nlike Section 11, which permits an action by a plaintiff who has purchased a security that is merely 'traceable to' the challenged misstatement or omission, Section 12(a)(2) requires a plaintiff to plead and prove that it purchased a security directly" in the offering. *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 966 (N.D. Cal. 2010); *see also Joseph v. Wiles*, 223 F.3d 1155, 1160–61 (10th Cir. 2000) (same); *Lowthorp v. Mesa Air Group Inc.*, 2021 WL 3089118, *13 (D. Ariz. July 22, 2021) (same). Neither of the Lead Plaintiffs purchased in the IPO or the SPO. ¶¶12–13; ECF No. 41–1 at 3–6; ECF No. 43–2 at 3. Thus, the Section 12(a)(2) claim should be dismissed for failing to plead Plaintiffs' standing.

*Third*, the Complaint fails to allege that the Individual Defendants were statutory sellers. ¶206. A statutory seller under Section 12(a)(2) is one who (1) directly passes title to the securities; or (2) directly solicits a sale from another for their own financial gain. *See Pinter,* 486 U.S. at 641–42, 644 n.21, 647, 650 (predecessor to Section 12(a)(2) required "buyer-seller relationship not unlike traditional contractual privity"); *Hertzberg v. Dignity Partners*, 191 F.3d 1076, 1081 (9th Cir. 1999) ("plaintiff must have purchased the security directly from the issuer of the prospectus"). Here, the Complaint does not allege that any of the Individual Defendants directly passed title to Plaintiffs; thus, they "cannot be held liable under the first prong of *Pinter*." *Pino v. Cardone Cap., LLC*, 2021 WL 3502493, at *16 (C.D. Cal. Apr. 27, 2021). Indeed, the Complaint does not allege that they sold a single share of Athira stock in the IPO or SPO. ¶¶1–222. The Complaint also fails to allege that the Individuals Defendants were solicitors under the second prong of *Pinter*, as they are not alleged to have directly solicited Plaintiffs' purchase. *See Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 576–77 (S.D.N.Y. 1996). The Complaint alleges no class-period

DEFENDANTS' MOTION TO DISMISS CAC
2:21-cv-00861-TSZ

- 15 -

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

solicitation, and conclusory allegations that the Individual Defendants participated in "the preparation of the false and misleading prospectuses" and "market[ed] the common stock," ¶206, are insufficient to show "direct and active participation in the solicitation of the immediate sale." *Spiegel v. Tenfold Corp.*, 192 F. Supp. 2d 1261, 1269 (D. Utah 2002) (rejecting conclusory statement that Defendants "solicited . . . the purchase").

### C.   Plaintiffs Fail to Allege a Section 15 Claim

Plaintiffs have not alleged a Section 15 control person claim against any of the Individual Defendants. ¶¶23–26, 212–14. *First*, Plaintiffs have not alleged the required "underlying Section 11 [or Section 12(a)(2)] violation." *In re Ubiquiti Networks, Inc. Sec. Litig.*, 669 F. App'x 878, 880 (9th Cir. 2016). *Second*, Plaintiffs do not allege that Ms. Mileson, Mr. Edelman, Mr. Fluke, or Mr. Johnson exercised control over Dr. Kawas or the contents of research papers authored and published years before they joined Athira. ¶¶150–52; *see Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp. Inc.*, 690 F. Supp. 2d 959, 979 (D. Ariz. 2010) ("officers and directors cannot be found liable as control persons . . . for alleged violations that took place before they assumed their positions") (citation omitted).

## II.   THE COMPLAINT FAILS TO STATE AN EXCHANGE ACT CLAIM

Just as the Complaint fails to allege a violation of the Securities Act, it fails to allege a violation under the more stringent pleading requirements of the Exchange Act. The Complaint fails to state a claim under SEC Rule 10b-5(b) for false and misleading statements, SEC Rule 10b-5(a) and SEC Rule 10b-5(c) for scheme liability, or Section 20(a) for control person liability.[7]

### A.   Plaintiffs Fail to Allege a Section 10(b)/Rule 10b-5(b) Claim

To state a claim under Section 10(b)/SEC Rule 10b-5(b), Plaintiffs must plead with particularity, among six elements, "a material misstatement or omission by the defendant" and "scienter." *Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580, *11 (W.D. Wash. Nov. 26,

---

[7] The Complaint asserts a Section 10(b)/Rule 10b-5 claim against "All Defendants," ¶¶147–56, and Count I repeatedly refers to "Defendants" in general, *id.*, despite the fact that the Underwriter Defendants are not included as "Exchange Act Defendants," ¶¶14–18. Counsel for Plaintiffs have subsequently confirmed that this was not intentional and that the Underwriter Defendants are *not* defendants to Count I.

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

2019) (citation omitted). The Complaint fails to plead a false statement or actionable omission, challenges inactionable puffery, and fails to plead the required strong inference of scienter.

### 1. The Complaint Does Not Allege Any False Statement

Plaintiffs claim that the very same statements (Statements 1–3, 5) in the IPO and SPO Materials alleged to have violated the Securities Act also violated the Exchange Act. ¶¶110–11, 113, 120. These statements were not false. *See* Section 1.A.1 *supra*. Plaintiffs allege that Statements 6 and 8—statements in Forms 10-K and 14A filed with the SEC that are almost identical to Statement 2—violated the Exchange Act. ¶¶123, 128. As with Statement 2, they were not false. *See* Section 1.A.1 *supra*. Plaintiffs alleges that Statements 4, 7, and 11—statements in Forms 10-Q and 14A that are very similar to Statement 3—violated the Exchange Act. ¶¶117, 125, 134. As with Statement 3, they were not false. *See* Section I.A.1 *supra*. As to all of these statements, Plaintiffs concede their literal truth by repeatedly alleging that Defendants "failed to disclose" certain information. ¶¶112, 114, 115, 118, 121, 124, 126, 130, 133, 135. That leaves two statements (Statements 9 and 10) unique to the Exchange Act claim. ¶¶129, 132. Neither was false.

Statement 9 lists some of the factors the Board "considers in assessing director nominee qualifications." ¶129. The Complaint does not allege that these factors were not among the actual ones used. ¶¶1–222. Athira did not state the relative weight of each factor, nor did it identify any factor as applying to Dr. Kawas in particular, who commenced her service on the Board long before the IPO. *See UBS*, 752 F.3d at 183 ("general statements about reputation, integrity, and compliance with ethical norms" are "too general" to cause reliance) (citation omitted); *Ulbricht*, 2020 WL 5517313, at *8–9 (similar). Besides, Athira stated that it did not have minimum standards for Board membership. ¶129. Statement 9 was not false.

Statement 10 is that Athira "believe[d]" that "enhancing HGF/MET signaling" had the "potential" to "protect existing neurons from damage, reduce inflammation, promote regeneration, and positively modulate brain activity," and that it "anticipate[d]" that "these characteristics may improve neuronal health and translate into clinical benefits." ¶132. This is clearly an opinion

statement, as Athira used the phrase, "We believe," to describe its belief that HGF-MET had the "potential" to protect neurons, reduce inflammation, promote regeneration, and positively modulate brain activity, and "[w]e anticipate," to describe its hypothesis or theory that those four characteristics might translate into clinical benefits. ¶132. Athira provided the bases for this opinion, and they did not include Dr. Kawas's papers. FP at 4, 10-11, 91-92, 108-09, 115-16, 126-.33 Plaintiffs do not allege that Defendants did not actually believe their theory, or that any of the factual bases supplied were false. *See Align Tech.*, 856 F.3d at 616.

### 2.     The Complaint Does Not Allege Any Actionable Omission

As with the Securities Act claims, the Section 10(b) claim hinges entirely on omissions. ¶¶112, 114, 115, 118, 121, 124, 126, 130, 133, 135. Indeed, the Complaint states in connection with the Section 10(b) claim: "the claims asserted herein against Defendants are predicated upon omissions of material fact." ¶141. But the Section 10(b) omissions claims suffer from the same deficiencies as the Section 11 omissions claims—namely, there is no duty to disclose uncharged and unadjudicated conduct, and the Complaint does not allege that the failure to "confess" to the altered images rendered any actual statement made in 2020 or 2021 misleading.

### a.     The Athira Defendants Had No Duty to Disclose Altered Images in the 2011-2014 Research Papers Because They Had No Duty to Disclose Uncharged and Unadjudicated Misconduct

The Athira Defendants had no duty to disclose uncharged and unadjudicated conduct, *see* Section I.A.2.a *supra*, and that applies with equal force with respect to the Section 10(b) claim.

### b.     The Athira Defendants Had No Duty to Disclose Altered Images in the 2011-2014 Research Papers Because Their Statements Did Not Trigger a Duty to Disclose Additional Information

For the same reasons set forth above, the challenged statements in Athira's IPO and SPO Materials and other SEC filings did not trigger a duty to disclose the altered images. *See* Sections I.A.2.b and II.A *supra*. Again, they did not include any Western blot images and did not reference any of the research papers alleged in the Complaint to have contained altered images; they did not even reference Dr. Kawas's research papers collectively or mention Dihexa. *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### i.   No Duty Triggered by Statements About Factors Considered in Assessing Board Qualifications

Statement 9, made in Athira's Form 14A, listed "some of the factors that [its] nominating and corporate governance committee considers in assessing director nominee qualifications," offering numerous non-exclusive factors, from "business acumen" to "diversity," two of which were "issues of character" and "professional ethics and integrity." ¶129. Statement 9 did not state the relative weight of each factor, nor did it identify how any factor applied to Dr. Kawas in particular, when she commenced her service on the Athira Board nearly a decade before Statement 9 was made. Plaintiffs claim that Statement 9 touted Athira's ethical compliance, but Statement 9 is decidedly neutral and even states that Athira had "not established minimum qualifications." ¶129. Regardless, courts have found that even the touting of an ethical code does not, without more, transform a director's misbehavior into an actionable material omission under the securities laws. *Constr. Laborers Pension Tr. v. CBS Corp.*, 433 F. Supp. 3d 515, 533 (S.D.N.Y. 2020) ("far too general and aspirational to invite reasonable reliance"). Plaintiffs apparently believe that merely touching on the subject of ethics triggers a duty to disclose any and all potential ethical lapses—that is not the law. *See* Section I.A.2 & 2.b *supra*. Nor would a reasonable investor interpret Statement 9 as a guarantee that there were no potential ethical lapses within the Company at any time. *See Hewlett-Packard*, 845 F.3d at 1278 (affirmative statements did not create the "impression of full compliance"). There is no actionable omission in Statement 9.

### ii.   No Duty Triggered by Statement about the Potential of ATH-1017

A duty to disclose the altered images in the 2011-2014 research papers was not triggered by Statement 10, which expressed that Athira believed that enhancing HGF/MET signaling had the "potential" to protect neurons, reduce inflammation, promote generation, and positively modulate brain activity, and "anticipate[d]" that these four characteristics "may" improve neuronal health and provide clinical benefits. ¶132. This opinion statement about the potential benefits of enhancing HGF/MET signaling was merely a summation of Athira's general scientific hypothesis that said nothing about Dr. Kawas's research papers published in 2011-2014. Indeed, Athira

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

identified the bases for its hypothesis, which did not include the research papers. *See supra* at 3–4. To show an actionable omission, Plaintiffs must allege "facts going to *the basis for the issuer's opinion* . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Align Tech.*, 856 F.3d at 616 (quoting *Omnicare*, 575 U.S. at 194) (emphasis added). Instead, Plaintiffs actively *avoid* these bases.

### 3.   The Complaint Challenges Four Statements that Were Inactionable Puffery

Just as Statement 2 is too vague to be actionable under Section 11, so too are Statements 2, 6, 8, and 9 too vague to be actionable under Section 10(b), as the latter statements are almost identical to Statement 2. *See Section* I.A.2.b.i *supra*; *Hewlett-Packard*, 845 F.3d at 1278 ("aspirational" statement was inactionable puffery); *CBS*, 433 F. Supp. 3d at 533 (same).

### 4.   The Complaint Fails to Allege a Strong Inference of Scienter

The Complaint fails to allege with particularity "facts" showing a strong inference of "scienter," or "'intent to deceive, manipulate, or defraud' or 'deliberate recklessness,'" *Webb v. SolarCity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018) (citation omitted). "Deliberate recklessness" is "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (citation omitted) (requiring "some degree of intentional or conscious misconduct"). In analyzing scienter, "the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002). The Court undertakes this holistic analysis to determine whether the inference of fraudulent conduct is "at least as compelling" as that of "plausible, nonculpable explanations" for the conduct. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007). A complaint will survive dismissal only "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference." *Id.* at 324. The scienter standard imposes a "death knell" for the "customary latitude" given to a complaint under Rule

DEFENDANTS' MOTION TO DISMISS CAC
2:21-cv-00861-TSZ
- 20 -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

12(b)(6). *In re Metawave Commc'ns Corp. Sec. Litig.*, 629 F. Supp. 2d 1207, 1214 (W.D. Wash. 2009). The Complaint does not satisfy this standard.

### a. No Scienter as to Dr. Kawas or Athira

Plaintiffs cannot plead a strong inference of scienter as to Dr. Kawas or Athira. In attempting to plead scienter, Plaintiffs primarily allege the "deliberate" and "intentional" alteration of images by Dr. Kawas in research papers published from 2011 through 2014. ¶¶25, 108. But whether the alteration of images in 2011-2014 was intentional or not is irrelevant to whether Dr. Kawas acted with scienter in relation to the class period statements made in 2020 and 2021. The proper focus of the scienter analysis is whether Plaintiffs adequately allege that Dr. Kawas knew or must have known that the failure to disclose the altered images in 2020 and 2021 presented such an obvious danger of misleading buyers or sellers that she must have been aware of it. *Brennan v. Zafgen, Inc.*, 853 F.3d 606, 614 (1st Cir. 2017) ("The key question in this case is not whether defendants had knowledge of certain undisclosed facts, but rather whether the defendants knew or should have known that their failure to disclose those facts' risked misleading investors.") (citation omitted); *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *41 (S.D. Cal. Mar. 30, 2005) ("a fact [must be] so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors") (quoting *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001)).

Plaintiffs cannot and do not allege that Dr. Kawas or any Athira director or officer had any reason to believe—much less knew—that the altered images contradicted any of Athira's class-period statements. The absence of a "direct contradiction or inconsistency" between the allegedly omitted information and Athira's public statements counsels against a finding that Plaintiffs have pled a strong inference of scienter.  *See In re Jones Soda Co. Sec. Litig.*, 2009 WL 330163, at *5 (W.D. Wash. Feb. 9, 2009); *Peregrine Sys.*, 2005 WL 8158825, at *43 (same). Moreover, without a single conversation, email, letter, memorandum or other document contradicting any statement made by Defendants, Plaintiff faces the "difficult task" of pleading a "cogent inference of scienter through indirect and circumstantial allegations." *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618,

626 (4th Cir. 2008). The same is true for Plaintiffs' patent allegations. *See supra* at 12 n.6. Finally, Statements 1 to 11 did not mention the 2011-2014 papers, nor did any of the IPO and SPO Materials, and no government or academic investigation into Dr. Kawas or Athira and no patent litigation is alleged to have been threatened or commenced at the time. Given all this, and the legal principles regarding the disclosure of uncharged and unadjudicated conduct, *see* Sections I.A.2.a & II.A.2.b *supra*, there was no "clear" duty to disclose here and thus no strong inference of scienter, *Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001).

The Complaint suggests in conclusory fashion that Kawas and Athira engaged in "a cycle of raising money to perform research and development," ¶108, but such allegations are too "generic" to allege a motive that will support a strong inference of scienter, *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1071 (W.D. Wash. 2003). As the Ninth Circuit held in *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002), if scienter could be based on the motive to enhance a company's prospects, "virtually every company . . . that experiences a downturn in stock price could be forced to defend securities fraud actions." *Id.* (citation omitted). The Complaint is similarly devoid of any allegation of stock sales during the class period, which weighs against scienter. *See Rigel*, 697 F.3d at 884–85 (lack of stock sales belies inference of scienter); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (same). Nor does the Complaint allege any other "concrete" and "personal" benefit obtained by and unique to Dr. Kawas that is "sufficient to create a motive from which scienter can be strongly inferred." *Maeve Inv. Co. Ltd. P'ship v. Teekay Corp.*, 2017 WL 5158059, at *6 (W.D. Wash. Nov. 7, 2017). Here, "[t]he lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021).

Whether viewed individually or collectively, the Complaint does not support an inference of scienter for Dr. Kawas and Athira that is "at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 324. The presence of altered images in a few research papers co-authored by Dr. Kawas when she was a graduate student at WSU, ¶¶4–5, 86, 92, 95, 97, and published six-to-

ten years before the class period began, ¶¶34–77, about a molecule Athira had "moved on" from, ¶93, does not create a strong inference that Dr. Kawas or Athira knew, or was deliberately reckless in not knowing, that *not* disclosing the altered images would be materially misleading to investors.

### b. No Scienter as to Ms. Mileson, Mr. Edelman, Mr. Fluke, or Mr. Johnson

The Complaint alleges almost nothing as to Ms. Mileson, Mr. Edelman, Mr. Fluke, and Mr. Johnson except their positions, ¶¶16–17, 87, and the fact that they signed certain documents, ¶¶20, 24. But scienter cannot be inferred merely from one's position or signature; if it could, the pleading requirements for scienter set forth in the PSLRA would be "eviscerate[ed]." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1159–60 (C.D. Cal. 2007). Here, all of the challenged research papers were published before Ms. Mileson, Mr. Edelman, Mr. Fluke, and Mr. Johnson joined Athira; even after they joined, the Complaint lacks any allegation tying any of them to knowledge of the altered images, let alone any need to disclose them. *See In re Apple Comput., Inc.*, 127 F. App'x 296, 302 (9th Cir. 2005) (no scienter where complaint failed to allege "exactly what [executive] knew, nor when he knew it"); *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 601 (9th Cir. 2014) (requested inference that "due to their positions, the defendants must have known about [problems with] the study," was "entirely speculative").

### B. Plaintiffs Fail to Allege a Scheme Liability Claim under Section 10(b)/Rule 10b-5(a) or Rule 10b-5(c)

Although Plaintiffs never specifically mention the "scheme liability" provisions of SEC Rules 10b-5(a) or (c), they do slip references to "scheme" into Count I. ¶¶140, 148–50. To state a claim for scheme liability, Plaintiffs "must allege a device, scheme or artifice to defraud, or an act, practice or course of business which would operate as a fraud, in addition to alleging the standard elements of a § 10(b) and Rule 10b-5 violation." *N.Y.C. Emps. Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 996 (N.D. Cal. 2009). To the extent Plaintiffs actually assert such a claim, it fails.

*First*, any scheme liability claim would be waived as undeveloped, as the Complaint does not allege the particulars of the purported scheme—*e.g.*, the relevant deceptive conduct, its

purpose, who participated in the scheme, and so on. "Courts rightly insist that a plaintiff who intends to bring a Rule 10b-5 claim based on both misstatement and scheme liability must do so clearly and specifically." *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 336–37 (D. Conn. 2021).

*Second*, the Complaint fails to plead the elements of a claim. Since Plaintiffs allege no deceptive acts during the class period except the alleged publication of false statements, Plaintiffs' allegations of deceptive conduct and scienter under Rule 10b-5(a) or (c) fail for the same reasons as stated above. *See* Section II.A *supra*. Moreover, because Dr. Kawas published her research papers six-to-ten years before Athira went public, Plaintiffs cannot possibly allege that images were altered "in connection with the purchase or sale of any security." *Menaldi v. Och-Ziff Cap. Mgmt. Grp.*, 164 F. Supp. 3d 568, 586 (S.D.N.Y. 2016) (citation omitted) (plausible FCPA violations not made "in connection" with sale or purchase because they "would have occurred years before the putative class period"). The Complaint also fails to allege reliance, as when "deceptive conduct is not disclosed to the investing public," it will generally be "'too remote to satisfy [that] requirement.'" *Berry*, 616 F. Supp. 2d at 996 (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 768–70 (2008)). Finally, Plaintiffs allege no deceptive conduct by Ms. Mileson, Mr. Edelman, Mr. Fluke, or Mr. Johnson, ¶24, as allegations of ignoring wrongdoing "operating right under [their] noses" do not qualify as "'deceptive acts' for the purposes of 10b-5(a) or (c) liability," *Abbate v. Wells Fargo Bank, N.A.*, 2011 WL 9698215, at *3 (C.D. Cal. Nov. 17, 2011).

**C.    Plaintiffs Fail to Allege a Section 20(a) Claim**

Plaintiffs' Section 20(a) claim, ¶¶23–26, 158–62, fails for the same reasons as the Section 15 control liability claim: it lacks a predicate violation, and it makes woefully inadequate control allegations as to Ms. Mileson, Mr. Edelman, Mr. Fluke, and Mr. Johnson, *see* Section I.C *supra*.

**<u>CONCLUSION</u>**

The Complaint should be dismissed with prejudice for failure to state a claim.

DEFENDANTS' MOTION TO DISMISS CAC
2:21-cv-00861-TSZ

- 24 -

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

1    Dated:  March 8, 2022                          Respectfully submitted,

2
                                                    s/ Gregory L. Watts
3                                                   Gregory L. Watts, WSBA #43995
                                                    John C. Roberts Jr., WSBA #44945
4                                                   **WILSON SONSINI GOODRICH & ROSATI, P.C.**
                                                    701 Fifth Avenue, Suite 5100
5                                                   Seattle, WA  98104-7036
                                                    Telephone: (206) 883-2500
6                                                   Email:  gwatts@wsgr.com
                                                    Email:  jroberts@wsgr.com
7
                                                    *Attorneys for Defendants Athira Pharma, Inc.,*
8                                                   *Glenna Mileson, John M. Fluke Jr., James A.*
                                                    *Johnson, and Joseph Edelman*
9

10
                                                    s/ Sean C. Knowles
11                                                  Sean C. Knowles, WSBA #39893
                                                    **PERKINS COIE LLP**
12                                                  1201 Third Avenue, Suite 4900
                                                    Seattle, WA  98101-3099
13                                                  Telephone: (206) 359-6224
                                                    Email: sknowles@perkinscoie.com
14
                                                    *Attorneys for Defendant Dr. Leen Kawas*
15

16
                                                    s/ Anthony Todaro
17                                                  Anthony Todaro, WSBA #30391
                                                    Lianna Bash, WSBA #52598
18                                                  **DLA PIPER LLP**
                                                    701 Fifth Avenue Suite 6900
19                                                  Seattle, WA  98104-7029
                                                    Telephone: (206) 839-4800
20                                                  Email: anthony.todaro@us.dlapiper.com
                                                    Email: liana.bash@us.dlapiper.com
21
                                                    John J. Clarke, Jr (*Pro Hac Vice*)
22                                                  **DLA PIPER LLP**
                                                    1251 Avenue of the Americas, 27th Floor
23                                                  New York, NY 10020
                                                    Telephone: (212) 335-4920
24                                                  Email: john.clarke@dlapiper.com

25                                                  *Attorneys for Defendants Goldman Sachs &*
                                                    *Co., LLC, Jefferies LLC, Stifel, Nicolaus &*
26                                                  *Company, Inc., and JMP Securities LLC*

27

DEFENDANTS' MOTION TO DISMISS CAC              - 25 -              **WILSON SONSINI GOODRICH & ROSATI, P.C.**
2:21-cv-00861-TSZ                                                 701 Fifth Avenue, Suite 5100
                                                                  Seattle, WA  98104-7036
                                                                  Tel: (206) 883-2500