THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAN WANG and HANG GAO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATHIRA PHARMA, INC.; and LEEN KAWAS,<br><br>Defendants. | Case No. 2:21-cv-00861-TSZ<br><br>(Consolidated with 21-cv-00862-TSZ and 21-cv-00864-TSZ)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: June 10, 2022<br><br>ORAL ARGUMENT REQUESTED |
| HARSHDEEP JAWANDHA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ATHIRA PHARMA, INC.; DR. LEEN KAWAS; GLENNA MILESON; TADATAKA YAMADA; JAMES A. JOHNSON; JOSEPH EDELMAN; JOHN M. FLUKE, JR.; GOLDMAN SACHS & CO. LLC; JEFFERIES LLC; STIFEL, NICOLAUS & COMPANY, INCORPORATED; and JMP SECURITIES,<br><br>Defendants. | |
| TIMOTHY SLYNE and TAI SLYNE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs, | |

ATHIRA PHARMA, INC.; LEEN KAWAS; Ph.D.; GLENNA MILESON; TADATAKA YAMADA, M.D.; JOHN M. FLUKE, JR.; JAMES A. JOHNSON; JOSEPH EDELMAN; GOLDMAN SACHS & CO. LLC; JEFFERIES LLC; STIFEL, NICOLAUS & COMPANY, INCORPORATED; and JMP SECURITIES LLC,

Defendants.

PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 2

        A.      Athira Is Born From Kawas's Purportedly Groundbreaking Doctoral
                Research ....................................................................................................... 2

        B.      Leading Up To Athira's IPO, Kawas Continues To Publish Her Research,
                Garnering Positive Attention And Funding For Athira .................................. 3

        C.      The Class Period: Athira Completes Its IPO And SPO, Raising Nearly $300
                Million .......................................................................................................... 5

        D.      The Truth About Kawas And Athira's Fraudulent Research Emerges ............ 5

        E.      After The Class Period: Defendants Admit That Kawas Falsified Athira's
                Foundational Research .................................................................................. 6

III.    ARGUMENT ........................................................................................................... 7

        A.      THE COMPLAINT STATES A SECURITIES ACT CLAIM ................................. 7

                1.      Rule 8 Applies To Plaintiffs' Section 11 Claims, Which Carry Strict
                        Liability And Are Based On Negligence ........................................... 7

                2.      Defendants' Failure To Disclose That Kawas Falsified Athira's
                        Foundational Research Violates The Securities Act Under Any Pleading
                        Standard ........................................................................................... 8

                        (a)     Kawas's Falsified Research Was Material ..................................... 8

                        (b)     Defendants Had A Duty To Disclose That The Research
                                Athira Was Built Upon Was Falsified ............................................. 8

                3.      Defendants Had A Legal Duty To Disclose The Truth About Kawas's
                        Research Pursuant To Regulation S-K ............................................. 12

                4.      Defendants' Misleading Statements About Kawas And The WSU License
                        Are Actionable ................................................................................. 14

                5.      Plaintiffs Allege A Section 15 Claim Against The Individual
                        Defendants ....................................................................................... 16

        B.      THE COMPLAINT STATES AN EXCHANGE ACT CLAIM ............................. 16

                1.      Plaintiffs Allege Falsity .................................................................. 17

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

(a) Statements About Athira's Board Qualifications Are Actionable ........................................................................ 18

(b) Statements About Athira's Approach Are Actionable .................... 18

(c) Statements 6, 8 And 9 Are Not Nonactionable Puffery ................. 19

2. Plaintiffs Allege Scienter ............................................................. 19

(a) Plaintiffs Allege Kawas And Athira's Scienter.............................. 19

(b) Plaintiffs Allege The Remaining Individual Defendants' Scienter ........................................................................................ 21

(c) The CAC's Motive Allegations Support Scienter........................... 23

3. Plaintiffs Allege A Section 20(a) Claim....................................... 24

C. CONCLUSION ....................................................................................... 24

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

# **TABLE OF AUTHORITIES**

<u>CASES</u>

*Atlas v. Accredited Home Lenders Holding Co.*,
    556 F. Supp. 2d 1142 (S.D. Cal. 2008) ................................................................................. 21

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
    2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ......................................................................... 9

*Brendon v. Allegiant Travel Co.*,
    412 F. Supp. 3d 1244 (D. Nev. 2019) ................................................................................... 18

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ................................................................................................. 18

*Curry v. Hansen Med., Inc.*,
    2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) ..................................................................... 22

*Flynn v. Sientra, Inc.*,
    2016 WL 3360676 (C.D. Cal. June 9, 2016) ........................................................................ 23

*Fries v. N. Oil & Gas, Inc.*,
    285 F. Supp. 3d 706 (S.D.N.Y. 2018) .................................................................................. 12

*In re Acadia Pharms. Inc. Sec. Litig.*,
    2020 WL 2838686 (S.D. Cal. June 1, 2020) .......................................................................... 9

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ................................................................................................... 24

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ................................................................................. 7, 8, 11

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
    932 F. Supp. 2d 1095 (C.D. Cal. 2013) ............................................................................. 8, 16

*In re Daou Systems, Inc.*,
    411 F.3d 1006 (9th Cir.2005) ................................................................................................. 7

*In re Harmonic, Inc., Sec. Litig.*,
    2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ..................................................................... 16

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
    2020 WL 1479128 (E.D. Pa. Mar. 25, 2020) ....................................................................... 24

Page iii –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
                 2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

*In re Intuitive Surgical Sec. Litig.*,
  65 F. Supp. 3d 821 (N.D. Cal. 2014) ................................................................................ 15, 17

*In re Intuitive Surgical Sec. Litig.*,
  2017 WL 4355072 (N.D. Cal. Sept. 29, 2017)........................................................................ 19

*In re Iso Ray, Inc. Sec. Litig.*,
  189 F. Supp. 3d 1057 (E.D. Wash. 2016) ......................................................................... passim

*In re Jones Soda Co. Sec. Litig.*,
  2009 WL 330163 (W.D. Wash. Feb. 9, 2009) .......................................................................... 21

*In re LendingClub Sec. Litig.*,
  254 F. Supp. 3d 1107 (N.D. Cal. 2017) ..................................................................................... 8

*In re Lyft Inc. Sec. Litig.*,
  484 F. Supp. 3d 758 (N.D. Cal. 2020) .......................................................................... 12, 13, 14

*In re Network Com. Inc. Sec. Litig.*,
  2004 WL 7338551 (W.D. Wash. Nov. 1, 2004) ....................................................................... 12

*In re Portal Software, Inc. Sec. Litig.*,
  2005 WL 1910923 (N.D. Cal. Aug. 10, 2005).......................................................................... 23

*In re Restoration Robotics, Inc. Sec. Litig.*,
  417 F. Supp. 3d 1242 (N.D. Cal. 2019) ................................................................................... 12

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) .................................................................................................... 11

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) .................................................................................................... 23

*In re Violin Memory Sec. Litig.*,
  2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ....................................................................... 8, 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  258 F. Supp. 3d 1037 (N.D. Cal. 2017) ................................................................................... 11

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)........................................................................................ 2, 9, 10, 11

*Kyung Cho v. UCBH Holdings, Inc.*,
  890 F. Supp. 2d 1190 (N.D. Cal. 2012) .............................................................................. 20, 24

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F. Supp. 702 (7th Cir. 2008)............................................................................................... 21

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
    2008 WL 7084629 (C.D. Cal. July 10, 2008) ............................................................... 20

*Mild v. PPG Indus., Inc.*,
    2018 WL 6787351 (C.D. Cal. Dec. 21, 2018) ................................................................. 8

*Miller v. Thane Int'l, Inc.*,
    519 F.3d 879 (9th Cir. 2008) ....................................................................................... 15

*Mingbo Cai v. Switch, Inc.*,
    2019 WL 3065591 (D. Nev. July 12, 2019) ............................................................ 12, 13

*Mulderrig v. Amyris, Inc.*,
    492 F. Supp. 3d 999 (N.D. Cal. 2020) .................................................................... 19, 20

*Mulligan v. Impax Lab'ys, Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) ............................................................... 15, 16, 19

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) ...................................................................................................... 7

*Pirani v. Slack Techs., Inc.*,
    445 F. Supp. 3d 367 (N.D. Cal. 2020) ........................................................ 8, 10, 13, 14

*Richard v. Nw. Pipe Co.*,
    2011 WL 3813073 (W.D. Wash. Aug. 26, 2011) ......................................................... 22

*S.E.C. v. Reys*,
    712 F. Supp. 2d 1170 (W.D. Wash. 2010) ..................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    515 U.S. 308 (2007) ..................................................................................................... 19

*Todd v. STAAR Surgical Co.*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016)............................................................... 23

STATUTES

15 U.S.C. §77k ...................................................................................................................... 7

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

RULES

Fed. R. Civ. P. 8 ................................................................................................................ 7, 8

Fed. R. Civ. P. 8(a) ............................................................................................................... 8

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

## I.    **INTRODUCTION**

This action seeks redress for a putative class of Athira investors who collectively lost millions of dollars due to Defendants' material misrepresentations.[1]  Athira claimed it had developed a novel approach to treating neurodegenerative diseases, such as Alzheimer's.  According to Defendants, Athira's lead product, ATH-1017, worked by delivering an active agent, Dihexa, to the brain to stimulate the brain's hepatocyte growth factor ("HGF"), which is responsible for healthy brain function. During the Class Period, Defendants repeatedly touted the educational, scientific, and professional credentials of Athira's founder and CEO, Leen Kawas—whose research led to the development of ATH-1017—as well as the unique value of Athira's supposed novel approach. Defendants thus created the impression that credible, qualified people led Athira, and that its underlying technology and processes were reliable.  Athira had no revenue and had been operating at a loss since its inception—it relied completely upon stock offerings and public grants to continue its operations. By touting Kawas's credentials and the supposed value of its product and intellectual property, Athira raised a total of nearly $300 million from unwitting investors in its September 2020 Initial Public Offering (the "IPO") and January 2021 Secondary Public Offering (the "SPO").

Then, on June 17, 2021, Athira stunned its investors by revealing that Kawas was under investigation regarding her doctoral research.  The same day, *STAT News* reported that Kawas was under investigation by Athira and her alma mater, Washington State University ("WSU"), due to allegations that she had falsified her doctoral research, which focused on the ability of small molecules to target the HGF/Met system and halt or even cure neurodegeneration.  The allegations were extremely significant: Athira was built almost entirely on Kawas's doctoral research.  WSU and Athira had a lucrative agreement whereby Athira had the exclusive license to make and sell the

---

[1] Leen Kawas ("Kawas"), Glenna Mileson ("Mileson"), Joseph Edelman ("Edelman"), and John M. Fluke, Jr. ("Fluke"), collectively, are the "Individual Defendants."  Kawas, Edelman, Fluke and James Johnson ("Johnson") are, collectively, the "Director Defendants."  Goldman Sachs & Co. LLC, Stifel, Nicolaus & Company, Inc., and JMP Securities LLC are, collectively, the "Underwriter Defendants."  Except where otherwise indicated, Athira (or the "Company"), the Individual Defendants, and the Underwriter Defendants are collectively referred to as "Defendants."

The Class Period is September 17, 2020 through June 17, 2021.  ¶7.  All "¶__" citations are to the Consolidated Amended Complaint ("CAC") (Dkt. No. 74); "MTD" refers to Defendants' motion to dismiss (Dkt. No. 76); and citations to "Ex. __" refer to exhibits attached to the Declaration of Casey E. Sadler ("Sadler Decl."). Unless otherwise indicated, all emphasis is added, and all internal citations, quotation marks and alterations have been removed.

Page 1 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

products and processes that used Kawas's doctoral research.  Moreover, Kawas's research had been published in six scientific articles, it had been cited and relied upon in Athira's patents for its core products and processes, and Athira relied on it in its application for a $15 million grant from the National Institutes of Health ("NIH").  This shocking news caused Athira's stock price to drop nearly 40%.  This news, while shocking to investors, could not have been shocking to Kawas—she knew she falsified her work. And in October 2021, Athira announced the results of its investigation: Kawas had indeed falsified her doctoral research.  Kawas apologized and resigned.

The CAC alleges with requisite particularity that Defendants made materially misleading statements and that Athira and the Individual Defendants acted with scienter.  Defendants' arguments, which largely rely on inapposite authority and improper attempts to reframe Plaintiffs' allegations in their favor, are unavailing.  Defendants' motion should be denied in its entirety.[2]

## II.    STATEMENT OF FACTS

### A.    Athira Is Born From Kawas's Purportedly Groundbreaking Doctoral Research

Kawas studied at WSU from 2008 to 2011, pursuing a doctorate in pharmacology and toxicology.  ¶34.  Kawas conducted her research under Professors Joe Harding and Jay Wright, focusing on "small molecule therapeutics" and their impact on the brain's HGF/Met system.  ¶39. HGF is a protein in the brain that stimulates the growth of cells; Met is an HGF receptor.  ¶93.  HGF, which is responsible for healthy brain function, tends to be reduced in those with neurodegenerative disorders.  ¶30.  Kawas's research at WSU appeared to be extremely promising.  It showed that targeting the HGF/Met system with the small molecule Dihexa and/or its analogs could treat or even cure serious diseases including Alzheimer's, Parkinson's, and cancer.  *E.g.*, ¶¶30, 35, 43, 50.

In March 2011, Kawas, Harding, and Wright founded Athira to further develop and

---

[2] Defendants also filed a request for judicial notice and notice of incorporation by reference (Dkt. No. 78) which Plaintiffs do not oppose to the extent the Court takes notice of the fact the documents exist and what they say. To the extent that Defendants attempt to use the exhibits to defeat Plaintiffs' adequately pled claims by arguing the Court should draw inferences from facts contained therein in favor of Defendants, however, that is improper. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998, 1003 (9th Cir. 2018) (recognizing a "concerning pattern in securities cases" where defendants attempt to exploit judicial notice "improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage[,]" and noting that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

eventually commercialize Kawas's doctoral research.[3]  In 2011, Kawas started to publish her doctoral research in scientific journals, which helped bring attention to Athira.  In November 2011, Kawas published an article in *The Journal of Pharmacology and Experimental Therapeutics*, which claimed an analog of Dihexa could be used to treat cancer (the "November 2011 Article").  ¶43.  In December 2011, Kawas published her dissertation, claiming that Dihexa impacted the HGF/Met system such that it could benefit cognition, and slow or even stop neurodegeneration.  ¶35.  In December 2011, WSU and Athira entered an agreement that granted Athira the exclusive license to make, use, and sell the products and processes derived from Kawas's research.  ¶113.

### B.    Leading Up To Athira's IPO, Kawas Continues To Publish Her Research, Garnering Positive Attention And Funding For Athira

From 2011 to 2015, Athira focused its research and development efforts on the impact of Dihexa and its analogous compounds on the HGF/Met system.[4]  During this time, Kawas published five additional articles touting the promise of Athira's research to treat a variety of serious conditions.  Each article built upon and relied on Kawas's doctoral research.  ¶¶54-55, 60-61, 66, 74.  The attention Kawas's research garnered helped Athira raise millions of dollars.  ¶108.

In March and October 2012, Kawas published articles in *The Journal of Pharmacology and Experimental Therapeutics* (the "March 2012 Article" and "October 2012 Article"), touting her doctoral research's potential to treat "a common characteristic of many human cancers[,]" and "therapeutic potential as a treatment of disorders, such as Alzheimer's[,]" respectively.  ¶¶50, 54.  In 2012, Kawas's research was praised in *WSU Insider* and *Science Daily*.  ¶¶84-85.

Kawas was promoted to CEO and president of Athira in 2013.  ¶28.  In April 2013, she published an article in *Nanomedicine: Nanotechnology, Biology and Medicine*, reporting Athira's research on targeting Met to enhance cognition. ¶61 (the "April 2013 Article").  In December 2013, Athira was granted a patent for "HEPATOCYTE GROWTH FACTOR MIMICS AS THERAPEUTIC AGENTS," which repeatedly referenced Kawas's research.  ¶79.  In November

---

[3] *See* Sadler Decl., Ex. 1 at p.10.  Athira was formed as M3 Biotechnology, Inc. ("M3") and renamed Athira in 2019. ¶27.  For simplicity, Plaintiffs refer to Athira rather than M3 when referring to pre-2019 events.

[4] Sadler Decl., Ex. 2 at p. 2.

Page 3 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
             2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

2014, Kawas published an article in *The Journal of Pharmacology and Experimental Therapeutics*, which touted Dihexa's "procognitive" effects (¶66, the "November 2014 Article"), and in January 2015, Kawas published an article in *Frontiers in Cellular Neuroscience*, which concluded that Dihexa had positive effects for those suffering from hearing loss (¶74, the "January 2015 Article").[5] In 2014 and 2015, Athira was awarded two grant awards from the Washington Life Sciences Discovery Fund.[6] In June 2015, Athira was granted a patent for its method to treat Alzheimer's disease, which repeatedly referenced Kawas's research publications. ¶80.

Eventually, Athira concluded that Dihexa did not demonstrate the appropriate characteristics needed to become a therapeutic product.[7] From 2015 to 2018, Athira researched different compounds to target the HGF/Met system in the way it had hoped Dihexa would.[8] Finally, Athira landed on ATH-1017, a compound that transmits Dihexa and then breaks down into Dihexa in the body. ¶29. In June 2016, Athira applied for a provisional patent for ATH-1017, which again relied extensively on Kawas's research. ¶81. The provisional patent was granted in 2017. *Id.* Kawas's doctoral research continued to garner positive attention and funding for Athira. For example, a 2017 *GeekWire* article featured Kawas, noting that Athira's "technology is based on research Kawas conducted when she was earning her PhD in molecular pharmacology at [WSU]." ¶86. In January 2019, Athira received a research grant from the Alzheimer's Association.[9] A 2019 article in *WSU Innovators* profiled Athira and its founders, noting that "Kawas's [doctoral] research . . . helped set the foundation for the development of [Athira]." ¶88. In June 2020, Athira closed an $85 million financing round. ¶87. In September 2020, Athira was awarded a grant from NIH for its Alzheimer's research for $7.8 million, with the potential of up to $15.2 million.[10] Athira's NIH grant application

---

[5] Collectively, Kawas's published research (the November 2011 Article, December 2011 doctoral dissertation, March 2012 Article, October 2012 Article, April 2013 Article, November 2014 Article, January 2015 Article) is referred to as Kawas's "research publications."

[6] Sadler Decl., Ex. 1 at p. 93.

[7] Sadler Decl., Ex. 2 at p. 2.

[8] *Id.*

[9] Sadler Decl., Ex. 1 at p. 102.

[10] Sadler Decl., Ex. 1 at p. 93.

Page 4 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

cited three of Kawas's research publications.[11]

**C.      The Class Period: Athira Completes Its IPO And SPO, Raising Nearly $300 Million**

Athira filed its IPO Registration Statement on September 9, 2020, which was thereafter amended several times and declared effective on September 17, 2020. ¶174.  On or about September 17, 2020, Athira issued its IPO Prospectus.[12]  *Id.*  In its IPO, Athira issued and sold 12 million shares of common stock at $17.00 per share, receiving gross proceeds of $204 million and net proceeds of about $186.4 million.  *Id.*  In October 2020, Athira sold an additional 1,397,712 shares of stock to the Underwriter Defendants, netting an additional $22.1 million.  ¶89.

Athira conducted a secondary offering in January 2021 (the "SPO").  On January 6, 2021, Athira filed its SPO Registration Statement, which was amended and declared effective by the SEC on January 21, 2021.  ¶90.  On or about January 21, 2021, Athira issued its SPO Prospectus.[13]  *Id.*  In its SPO, Athira sold four million shares of common stock at $22.50 per share for gross proceeds of $90 million and net proceeds of $84.1 million.  *Id.*

**D.      The Truth About Kawas And Athira's Fraudulent Research Emerges**

On June 17, 2021, Athira disclosed that Kawas had been placed "on temporary leave pending a review of actions stemming from doctoral research[,]" and that it had formed an independent special committee to review Kawas's actions.  ¶91.  Athira provided no further detail about the nature of its investigation, but an article published by *STAT News* that same day revealed that Athira's investigation concerned allegations that Kawas had altered images in four separate research papers for which she was the lead author, and that WSU was also investigating the allegations after it learned that several images from Kawas's research had been flagged on the scientific research website, *PubPeer*.  ¶92; ¶44, n.13.  *STAT News* described the severity of the allegations:

> Although the papers are up to a decade old . . . the papers are ***foundational to Athira's efforts to treat Alzheimer's and are cited in a patent licensed by Athira***. Kawas, who co-founded Athira, is described as co-inventor in the patent . . . . Although the company . . . has since moved on to a different molecule than the one Kawas was working on, it still aims to target HGF.  [ ] ***Kawas's doctoral work laid***

---

[11] Sadler Decl., Ex. 3.

[12] The Registration Statement and IPO Prospectus are collectively referred to as the "IPO Materials."

[13] The Registration Statement and SPO Prospectus are collectively referred to as the "SPO Materials".

Page 5 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
            2:21-cv-00861-TSZ

*the biological groundwork that Athira continues to use* in their approach to treating Alzheimer's[.]

¶93.  The article also quoted Elisabeth Bik, a microbiologist and science consultant who focuses on image authenticity, describing Kawas's falsified images as "very misleading" and "potentially reason to retract the paper[.]"  ¶94.  Several Alzheimer's experts told *STAT News* that the "allegedly altered images call into question the validity of the entire studies…. The images are an important method of determining how the compound interacts with HGF."  ¶94.  On this news, Athira's share price fell nearly $7.09 per share—***nearly 40%***—to close at $11.15 per share on June 18, 2021.  ¶96.

E.    **After The Class Period: Defendants Admit That Kawas Falsified Athira's Foundational Research**

On August 5, 2021, *STAT News* reported that three of Kawas's falsified research papers were included in Athira's application for the $15 million grant from NIH, which Athira received and used to fund its Phase 2 clinical trials—noting that Athira could be liable for False Claims Act damages to the tune of $45 million.[14]  In September 2021, the editors of *The Journal of Pharmacology and Experimental Therapeutics* issued a statement expressing concern about "possible image manipulation" in Kawas's November 2011 Article, March 2012 Article, October 2012 Article and November 2014 Article, "after reviewing information received from several sources."  ¶¶49, 53, 59, 73.  Several of the patents granted to WSU and ultimately licensed to Athira relied on Kawas's November 2011 and March 2012 Articles.  ¶¶48, 52.  Kawas's October 2012 Article was cited in the patent for Dihexa and the patent application for ATH-1017.  ¶57.

On October 21, 2021, Athira announced the results of its investigation, confirming that "***Dr. Kawas altered images in her 2011 doctoral dissertation and in at least four research papers*** that she co-authored while a graduate student at WSU, published from 2011 to 2014."  ¶97.  Kawas then announced her resignation from Athira and apologized for falsifying her research, stating, "At the time, I . . . did not fully comprehend the significance of my decision to enhance the images I used in my research."  ¶98.  Athira further admitted that "WSU's dihexa patent incorporates images from

---

[14] Sadler Decl., Ex. 3.

Page 6 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

papers co-authored by Dr. Kawas, certain of which were altered by Dr. Kawas."[15]

## III.  ARGUMENT

### A.  THE COMPLAINT STATES A SECURITIES ACT CLAIM[16]

#### 1.  Rule 8 Applies To Plaintiffs' Section 11 Claims, Which Carry Strict Liability And Are Based On Negligence

"Congress adopted §11 to ensure that issuers tell[ ] the whole truth to investors." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 192 (2015).  Accordingly, §11 imposes strict liability if a registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statement therein not misleading."  15 U.S.C. §77k.  Notably, "[n]o scienter is required under §11; defendants will be liable for innocent or negligent material misstatements or omissions." *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 544 (N.D. Cal. 2009) (quoting *In re Daou Systems, Inc.*, 411 F.3d 1006, 1027 (9th Cir.2005)).

Securities Act claims need only satisfy the notice pleading standards of Fed. R. Civ. P. 8, unless the claims are "grounded in fraud." *See Charles Schwab*, 257 F.R.D. at 545.  Unlike their Exchange Act claims, Plaintiffs' Securities Act claims are "based solely on strict liability and negligence and are not based on any knowing or reckless conduct by or on behalf of any Defendant…. Plaintiffs specifically disclaim any allegations of fraud, scienter, or recklessness in these non-fraud claims."  ¶¶163, 191, 203, 212.  Moreover, the Securities Act claims against the Underwriter and Director Defendants "are premised upon their negligent failure to conduct a reasonable due-diligence investigation into the accuracy and completeness of the representations contained in the IPO and SPO Registration Statements."  ¶166.  Where, as here, "[P]laintiffs have not expressly pled fraud and have pled non-fraud bases for liability[,]" "Rule 8 governs the claim[.]"

---

[15] Sadler Decl., Ex. 2 at p. 3. The Special Committee also tried to distance Athira's business from Kawas's falsified research by assuring investors that the patent Athira obtained for ATH-1017 in June 2021 did not cite any of the papers containing Kawas's altered images. ¶97.  However, even a cursory review of the patent applications reveals that several of them repeatedly reference Kawas's fraudulent research papers.  ¶¶99-106.

[16] Plaintiffs withdraw their §12(a)(2) claim and thus do not address Defendants' arguments at pages 14-16 of their motion regarding this claim.  Plaintiffs allege Securities Act violations as to Athira, the Director Defendants, and the Underwriter Defendants.  For purposes of Plaintiffs' arguments concerning their Securities Act claims (Sec.III.A.1-5) Plaintiffs refer to these defendants collectively as "Defendants."

Page 7 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

*See Charles Schwab,* 257 F.R.D. at 546; *see also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 932 F. Supp. 2d 1095, 1107, n.5 (C.D. Cal. 2013) (allegations that defendants "failed to exercise due diligence and failed to conduct a reasonable investigation[,]" were "terms of strict liability or negligence, not fraud, which proves that the statutory claims need only meet Rule 8(a).").

### 2. Defendants' Failure To Disclose That Kawas Falsified Athira's Foundational Research Violates The Securities Act Under Any Pleading Standard

#### (a) Kawas's Falsified Research Was Material

Kawas's falsification of Athira's foundational research was material because omission of that fact could "mis[lead] a reasonable investor about the nature of his or her investment." *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 386 (N.D. Cal. 2020). Athira's very purpose was to further develop and commercialize Kawas's research. The fact that the research Athira was built upon was falsified was clearly material. *E.g.*, *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1116 (N.D. Cal. 2017) (that CEO engaged in improper transactions five years before IPO "made the adequacy of LendingClub's internal controls material. Reasonable investors would have found it important to know of CEO Laplanche's prior efforts to drive his company's performance[.]").[17]

At bottom, on a motion to dismiss, Defendants cannot show that Kawas's falsified research was "so obviously unimportant to an investor that reasonable minds cannot differ[.]" *Mild v. PPG Indus., Inc.*, 2018 WL 6787351, at *4 (C.D. Cal. Dec. 21, 2018). The nearly 40% drop in Athira's stock price following the June 17, 2021 *STAT News* article and Athira's disclosure that Kawas was under investigation for her doctoral research "indicate the materiality of this information to investors." *Pirani*, 445 F. Supp. 3d at 386-87.

#### (b) Defendants Had A Duty To Disclose That The Research Athira Was Built Upon Was Falsified

"The duty to disclose is triggered either by a specific requirement under the relevant regulations or when necessary to make statements made, in the light of the circumstances under

---

[17] *See also In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *16 (N.D. Cal. Oct. 31, 2014) (omissions about reasons CEO had been terminated by former employer rendered representations about CEO's credentials misleading, and such information was material to a reasonable investor's decision to purchase the defendant company's stock); *S.E.C. v. Reys*, 712 F. Supp. 2d 1170, 1177 (W.D. Wash. 2010) (materiality of defendant's misstatements about his work history and qualifications could not be resolved on motion to dismiss).

Page 8 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
              2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

which they are made, not misleading." *In re Iso Ray, Inc. Sec. Litig.*, 189 F. Supp. 3d 1057, 1067 (E.D. Wash. 2016). While the federal securities laws do not require companies to disclose every aspect of questionable conduct to investors, "once defendants [choose] to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Khoja*, 899 F.3d at 1009.

Defendants had a duty to disclose that the foundational research upon which Athira was built was falsified. Athira's IPO and SPO Materials highlighted Kawas and her research, claiming, for example, that Kawas "has been essential in creating our innovative translational development strategy" (¶175), and touting her "scientific and professional training" and her "instrumental role in building Athira" (¶176). By touting Kawas's educational, scientific and professional credentials and board qualifications, Defendants put the topic of Kawas's research at issue. Moreover, the IPO and SPO Materials promoted the exclusive licensing agreement with WSU that enabled Athira "to make, use, sell, and offer for sale" products and processes ***which were based on Kawas's falsified doctoral research*** (¶178); *see also* ¶181 (statements repeated in SPO Materials).

Defendants cannot escape liability because the CAC does not allege "any government or academic investigation or charges during the class period." MTD at 10. Defendants' disclosure obligations do not rise and fall with the actions of any government or academic body; rather, their own claims about Kawas, her research, and how Athira would commercialize the results of that research gave rise to the duty to disclose that the research was falsified.[18] A duty to disclose was triggered because "the information defendants *did* disclose create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *4, 6-7 (N.D. Cal. Aug. 7, 2020) (emphasis in original) (where defendant was launching new markets in illegal ways, defendant's statement that it "didn't get everything right" in the past but "we've changed" created materially false impression that "the company had turned over a new leaf"); *Khoja*, 899 F.3d at 1009.

---

[18] *See In re Acadia Pharms. Inc. Sec. Litig.*, 2020 WL 2838686, at *7 (S.D. Cal. June 1, 2020) (defendant had no general duty to accuse itself of wrongdoing, but where defendant spoke about its commercialization strategy, which included giving kickbacks to physicians, defendant had a duty to disclose the kickbacks).

Page 9 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

Defendants' argument that "no reasonable investor would infer from such generic statements any guarantee that Dr. Kawas had made no mistakes in the past[,]" (MTD at 11) is not only a gross mischaracterization of Kawas's actions, it is a red herring: the CAC does not allege investors were misled by a failure to disclose Kawas's past "mistakes," it alleges investors were misled about Kawas's credentials and the research and intellectual property upon which Athira was purportedly built.  Moreover, the question is not whether a reasonable investor would have drawn this specific inference from Defendants' statements—that is, that Kawas had never made "mistakes" in the past—the question is whether Defendants' omissions "could plausibly mis[lead] a reasonable investor about the nature of his or her investment."  *Pirani*, 445 F. Supp. 3d at 386.

Nor can Defendants escape liability because they did not directly cite Kawas's research in the IPO and SPO Materials.  MTD at 11.  The duty to disclose is not that narrow.  *See Iso Ray*, 189 F. Supp. 3d at 1069 (statement that "first major peer reviewed study showed improved results using IsoRay's Cesium-131" created materially false and misleading impression that IsoRay's treatment was superior to other treatments even though the defendant did not directly mention other treatments).  Significantly, in both the IPO and SPO Materials, Defendants highlighted Athira's licensing agreement with WSU, which they explained gave Athira the exclusive right "to make, use, sell, and offer for sale licensed products and licensed processes that embody the licensed patents…and that form the underlying technology of the drug therapies we are developing."  ¶113. In other words, Defendants claimed that the WSU license gave Athira the right to use the processes, patents, and technology *that were born of Kawas's doctoral research*.[19]  Thus, while they did not cite the research directly, the subject and results of her research were *clearly* at issue.  Indeed, Athira's entire existence and its lead product, ATH-1017, were premised on Kawas's research.[20]

---

[19] Defendants blatantly misconstrue the CAC, claiming it alleges that Athira was required to disclose every "potential deficiency in WSU's patents or patent applications."  MTD at 12.  But Plaintiffs do not allege that Athira had a limitless disclosure obligation.  Plaintiffs allege only that Defendants were obligated to disclose that Kawas falsified the research that comprised Athira's "underlying technology" and "processes" in order to correct the materially misleading impression their statements gave investors.

[20] Defendants quibble that they did not "tout" the agreement (MTD at 12), but is irrelevant whether they "touted" it or just disclosed it—the disclosure duty is triggered because Defendants chose to talk about it.  *Khoja*, 899 F.3d at 1009. Moreover, the Registration Statements were used to solicit investors; convincing investors of Athira's ability to monetize Kawas's research was essential to selling shares.  *Charles Schwab,* 257 F.R.D. at 549 ("As many courts have found, the registration statement is itself a solicitation document.").

Page 10 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

Defendants' reliance on *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037 (N.D. Cal. 2017) (MTD at 9-10) is similarly misplaced. First, the plaintiffs in *Volkswagen* did not allege §11 claims—they alleged §10(b) claims, which require both heightened pleading standards and a strong inference of scienter which are not at issue on Plaintiffs' Securities Act claims. Second, it is factually inapposite. There, plaintiffs alleged that the company should have recorded loss provisions or contingent liabilities to cover estimated losses that might arise from the fact that, as the plaintiffs alleged, senior executives knew the company was lying to regulators about emissions testing. *Volkswagen*, 258 F. Supp. 3d at 1041-44. Under the relevant accounting rules, however, defendants were only required to recognize provisions or contingent liabilities due to losses they believed would occur with more than a 50% likelihood, and plaintiffs failed to allege facts showing defendants "knew or should have known that such losses would be probable." *Id.* at 1042. In other words, the plaintiffs in *Volkswagen* failed to allege that defendants' accounting judgment was fraudulent. The instant case does not concern subjective disputes about accounting judgment, nor does Plaintiffs' § 11 claim require allegations that Defendants acted fraudulently in omitting Kawas's research problems in the Registration Statements. Moreover, here there is no close judgment call: Athira's entire business was built on Kawas's research. Under § 11's strict liability standards, Defendants are liable for misleading investors about Kawas and her research.[21] "Drawing all inferences in favor of plaintiffs . . . a jury reasonably could determine that defendants' statements and omissions would have misled a reasonable investor about the nature of his or her investment. Plaintiffs have, therefore, stated a claim upon which relief can be granted under § 11." *See In re Network Com. Inc. Sec. Litig.*, 2004 WL 7338551, at *2 (W.D. Wash. Nov. 1, 2004).[22]

---

[21] This case is distinct from *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) (MTD at 10). There, the court held that there is no limitless disclosure obligation for a drug company to disclose every safety issue it encounters during product development unless those issues are material. *Id.* This case does not concern disclosure of safety-related incidents during Athira's product development. Here, in contrast to *Rigel*, the fact that Kawas's research—which led to Athira being created, and which Athira based its product development on—was falsified, is undoubtedly material.

[22] Unlike *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 718-19 (S.D.N.Y. 2018) (MTD at 11), the omitted information here contradicts Defendants' representations about whether "[Kawas] did [ ] have the pedigree [it]

Page 11 –  PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

**3.    Defendants Had A Legal Duty To Disclose The Truth About Kawas's Research Pursuant To Regulation S-K**

Defendants also had a regulatory duty to disclose that Kawas's research was falsified. *Iso Ray*, 189 F. Supp. 3d at 1067. Specifically, "Item 303 [of Regulation S-K] requires a company to provide disclosures about any known trends or uncertainties that have had or that the registra[nt] reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 769 (N.D. Cal. 2020). "Failure to comply with item 303 constitutes a violation of section 11." *Mingbo Cai v. Switch, Inc.*, 2019 WL 3065591, at *5 (D. Nev. July 12, 2019).

Kawas's falsified research constituted a trend or uncertainty for Athira. Unlike in *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263-64 (N.D. Cal. 2019) (MTD at 13), Kawas's falsified research did not occur in "*only one* instance" (emphasis in original). Kawas published her falsified research in her dissertation and *six* scientific articles, some of which were cited in connection with Athira's patent applications, including the patent the Company was granted in June 2021 for the "composition of matter for ATH-1017." ¶¶82, 100-05. As *STAT News* reported, Athira's "biological groundwork, *that it continues to use*," was based on Kawas's falsified research. Athira also cited three of Kawas's falsified research publications in its application for a $15 million NIH grant. Unlike the single instance of warehousing that failed to give rise to a trend in *Restoration Robotics*, Athira's continued and central reliance on falsified research that could render the patent on its core product unenforceable certainly constitutes a trend, event, or uncertainty that required disclosure under Item 303. *See Restoration Robotics*, 417 F. Supp. 3d at 1263.

For the same reasons, Defendants also had a duty to disclose the risks of Kawas's falsified research under Item 105 of Regulation S-K, which requires a company to include "a discussion of the most significant factors that make the offering speculative or risky." *Lyft*, 484 F. Supp. 3d at 769. Item 105 requires an issuer to "include an explanation of how the risk affects the issuer or the

represented[.]" For instance, if Kawas had revealed that she falsified the research in her doctoral dissertation, it is highly questionable whether she would have received her doctorate and it is unlikely Athira would have even come into existence.

Page 12 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

securities being offered." *See Mingbo*, 2019 WL 3065591, at *6.[23]

Defendants broadly assert that the Final Prospectus included "dozens of pages of risk[ ] factors . . . that were sufficient to satisfy Item 105." MTD at 14. But Defendants point to no language that "indicates the specific risks arising from" Kawas's falsified research. *Mingbo*, 2019 WL 3065591, at *6 (even where prospectus included "over thirty pages of risk disclosures[,]" defendants violated Item 105 where they failed to identify the specific risks arising from their sales strategy). Further, Plaintiffs allege that when Athira disclosed its investigation of Kawas and the *STAT News* article was published, Athira's stock price dropped nearly 40%. "This is precisely the type of risk that item [105] requires issuers of securities to disclose." *See id.* (22.3% stock drop following disclosure of defendant's sales strategy supported finding that defendant violated Item 105). "At minimum, the adequacy of [Athira]'s disclosures is not so obvious that reasonable minds could not differ." *Pirani,* 445 F. Supp. 3d at 386.

Finally, Defendants' argument that the CAC fails to allege that any Defendant—*incredibly, "including Dr. Kawas" herself*—could have known that the falsified research, because it was done in "old research papers," constituted a trend, event, or uncertainty reasonably likely to impact Athira is preposterous. MTD at 13. Defendants can try to downplay Kawas's actions as much as they like, but the Court certainly should not be tempted to buy it. No. Even Defendants concede, as they must, that Kawas "altered" her research images. *Id*. Moreover, she was Athira's CEO, raising hundreds of millions of dollars from investors during the Class Period based on Athira's product and patent applications that were born out of and relied upon that research—which all Defendants have conceded Kawas "altered." Certainly Kawas knew the *significant* risks posed to Athira were she ever "found out." At the *very least*, whether Kawas's falsified research "constitute[d] a trend is a factual inquiry for a later stage of these proceedings[.]" *Pirani*, 445 F. Supp. 3d at 386. Dismissal would be inappropriate "at this early stage" as "reasonable minds could [ ] disagree that there was no trend as defined in Item 303[.]" *Violin,* 2014 WL 5525946, at *15.

---

[23] The requirements of Item 503(c) of Regulation S-K are now consolidated under Item 105. As such, references to Item 503 and Item 105 are used interchangeably.

Page 13 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

Regarding the other Defendants' knowledge and Regulation S-K disclosure duties, Athira's knowledge of the falsified research is imputed from Kawas under the doctrine of *respondeat superior*. Furthermore, the CAC alleges that between October 2014 and June 2021, *PubPeer* contributors posted thirteen comments regarding falsified images in Kawas's research.[24] Every time a comment is posted, the authors receive a notification from *PubPeer*[25], and WSU was clearly aware of *PubPeer* comments about Kawas's research, which is why it began its own investigation into Kawas (¶92). "These allegations are sufficient at this stage" to allege knowledge for purposes of Items 303 and 105. *See Lyft*, 484 F. Supp. 3d at 769 at n.4 (allegations that "Lyft saw an increase in the number of sexual assaults its drivers committed" and "knew that it faced a severe risk of brand damage that could arise from sexual assault allegations" were sufficient to state violations of Items 303 and 105).

### 4. Defendants' Misleading Statements About Kawas And The WSU License Are Actionable

Defendants alternatively argue that their statements about Kawas, her research, and the WSU license were literally true (MTD at 6-7) or were mere puffery (MTD at 14). Both arguments fail.

This is not a case where Defendants' insistence that they told the "literal truth" can insulate them from liability. It may have been true that Athira had a license agreement with WSU (MTD at 7), but Defendants' representations about their exclusive agreement with WSU to license Athira's "processes . . . that embody the licensed patents . . . and that form the underlying technology of the drug therapies we are developing[,]" (¶178) created a materially misleading impression that Athira's intellectual property—which was based on Kawas's falsified research—was credible, legally ready for commercialization, and, at minimum, was not fabricated.[26] *See Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008); *Iso Ray*, 189 F. Supp. 3d at 1067 ("a statement, though literally

---

[24] ¶¶44-47, 51, 58, 62-64, 68-72, 77.

[25] Sadler Decl., Ex. 4.

[26] Defendants' arguments regarding the sufficiency of allegations about Athira's patents miss the mark. First, these allegations are not "wildly speculative and wholly conclusory." MTD at 12, n. 6. As Defendants admit, the patent Athira received for ATH-1017 references one of Kawas's falsified research papers. *Id.* Second, to the extent Defendants argue that Athira's patents are enforceable and their value undiminished due to Kawas's falsified research, these are factual disputes inappropriate for resolution on a motion to dismiss.

Page 14 – PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

accurate, may possess by virtue of the context or manner of its presentation, the ability to mislead investors.").

The statements about Kawas (MTD at 7) were similarly misleading in context. At the root of Kawas's "scientific and professional training" (¶176) was falsified data in her Ph.D. dissertation. She earned her credentials, including her Ph.D. in molecular pharmacology (*id.*), *based on* her falsified doctoral research. She was "instrumental" in building Athira (*id.*) and "essential in" creating Athira's novel technology (¶175) *based on* her falsified research. While literally true, these statements in context misled investors to believe that Kawas, Athira's CEO, was a credible and competent leader when she was anything but. *See Violin*, 2014 WL 5525946, at *16.

Nor are Defendants' statements boasting Kawas and her credentials unactionable puffery. MTD at 14. To be mere puffery, a statement must be "so exaggerated or vague that no reasonable investor would rely upon it when considering the total mix of information available . . . Such statements are incapable of objective verification[.]" *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 834 (N.D. Cal. 2014) (rejecting puffery argument). "In deeming a statement puffery at the motion to dismiss stage, courts must exercise great caution[,]" because this is a "fact-intensive assessment[ ] that [is] more properly left to the jury." *Mulligan v. Impax Lab'ys, Inc*., 36 F. Supp. 3d 942, 966-67 (N.D. Cal. 2014). Defendants argue that the statements describing Kawas's qualifications and credentials (MTD at 14, citing ¶¶175-76) constitute puffery because some portions of each are "vaguely complimentary[.]" MTD at 14. However, in determining whether statements amount to puffery, "the Court may not assess the statements listed in the [C]AC in a vacuum, plucking the statements out of their context to determine whether the words, taken *per se,* are sufficiently vague so as to constitute puffery, but rather will examine the entire statement and its circumstances to determine if it is actionable." *See Mulligan*, 36 F. Supp. 3d at 966-68 (statements about "extensive training and safety" were not puffery in context).

Looking at these statements in their entirety and in context, it is apparent that both statements "contain factual representations at their core[,]" which are capable of "objective verification." *Mulligan*, 36 F. Supp. 3d at 966-67. Defendants sold investors on Kawas, claiming that "Kawas,

Page 15 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
            2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

our founder and chief executive officer, has been *essential in creating our innovative translational development strategy*" (¶175) and that Kawas "earned a Ph.D. in molecular pharmacology from [WSU] in 2011 . . . . Dr. Kawas's scientific and professional training . . . qualify her to serve on our board" (¶176). These statements "are not so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance." *See id*. at 967.

### 5. Plaintiffs Allege A Section 15 Claim Against The Individual Defendants

Section 15 imposes joint and several liability on those who "control" anyone liable under §11. *In re Harmonic, Inc., Sec. Litig*., 2006 WL 3591148, at *5 (N.D. Cal. Dec. 11, 2006). As described above, Plaintiffs have stated a primary §11 violation. They have also alleged control.

Control is broadly construed by the SEC to mean "the possession, direct or indirect, or the power to direct or cause the direction of [.]" *Harmonic,* 2006 WL 3591148, at *5. "[T]he determination of who is a controlling person . . . is an intensely factual question." *Id.* A primary violator can also be a controlling person under §15. *See id.*, at *6. Thus, contrary to Defendants' arguments, Plaintiffs need not establish that any of the other Individual Defendants exercised control over Kawas, let alone her falsified research. MTD at 16. The CAC's allegations are sufficient to establish that the Individual Defendants were all controlling persons of Athira, and Plaintiffs have alleged Athira's primary liability under §11. *Countrywide*, 932 F. Supp. 2d at 1121 ("allegations that go no farther than listing the defendant's name, title, and listing which registration statements that defendant signed" are sufficient to state a §15 claim); ¶¶15-17, 20, 24.

### B. THE COMPLAINT STATES AN EXCHANGE ACT CLAIM[27]

To state a claim under §10(b) of the Securities and Exchange Act (the "Exchange Act") and Rule 10(b)(5) promulgated thereunder, Plaintiffs must allege facts sufficient to establish: (1) a material representation or omission (*i.e.*, "falsity"), (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Intuitive Surgical*, 65 F. Supp. 3d at 832. Defendants challenge only falsity

---

[27] Defendants argue that Plaintiffs fail to allege a scheme liability claim (MTD at 23-24). However, the CAC does not allege such a claim. Accordingly, Plaintiffs do not address Defendants' arguments on this issue. Plaintiffs allege Exchange Act claims as to all of the Defendants except for the Underwriter Defendants. For purposes of Plaintiffs' Exchange Act arguments (Sec.III.B.1-3 *infra*), "Defendants" refers to all Defendants except the Underwriters.

Page 16 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
            2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

and scienter, which, for the reasons described herein, Plaintiffs have adequately alleged.

### 1.    Plaintiffs Allege Falsity

Under §10 and Rule 10b-5, an omission is misleading if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists…. A duty to disclose exists only to…make statements in light of the circumstances under which they were made not misleading[.]" *Intuitive Surgical*, 65 F. Supp. 3d at 832.  Statements 4 (¶117), 6 (¶123), 7 (¶125), 8 (¶128), 9 (¶129), 10 (¶132), and 11 (¶134) are misleading.

Statement 4, which touts Athira's exclusive license agreement with WSU, is actionable for the same reasons that Statements 3 and 5 (¶¶113, 120) are actionable (*see* Sec.III.A.2-4 *supra*). Statements 7 and 11, like Statements 3 and 5, also tout Athira's license agreement with WSU, but go even further, adding, "To keep in good standing, the agreement requires the Company to meet certain development milestones . . . . All contractual requirements have been met . . . . During the year ended December 31, 2020, the Phase 2 clinical trial milestone had been reached and a payment of $50,000 to WSU was recorded."  Thus, while Statements 7 and 11 are actionable for the same reasons that Statements 3 and 5 are actionable, these additional details created an even more misleading impression about the value of Athira's intellectual property, its profitability and credibility.  Moreover, Athira was able to reach its Phase 2 clinical milestone at least in part by citing three of Kawas's falsified research papers in its NIH grant application, which the Company received and used to fund its Phase 2 trials.  Knowing that Kawas falsified the research which enabled Athira to stay in good standing pursuant to its licensing agreement with WSU would have made these statements not misleading, and certainly would have altered the total mix of information available to a reasonable investor.  *See Iso Ray*, 189 F. Supp. 3d at 1075.[28]  Statements 6 and 8 tout Kawas's educational, professional and scientific background and board qualifications like Statement 2 (¶111) but go further by also touting Kawas's service on multiple scientific boards, her roles as CEO and former vice president of Athira, and her board membership since January 2014.  Thus,

---

[28] Defendants' reliance on *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) is misplaced.  MTD at 17.  There, statements that were "explicitly aspirational" were considered too immaterial to be actionable.  *Id.*  Here, in sharp contrast, Defendants' statements were representations of then-existing facts.

Page 17 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

while Statements 6 and 8 are actionable for the same reasons that Statement 2 is actionable (*see* Sec.III.A.2-4 *supra*), discussing these additional details about Kawas's background and experience created an even more misleading impression about her qualifications and credibility.

### (a)    Statements About Athira's Board Qualifications Are Actionable

Statement 9 describes some of the factors Athira considers in appointing board members, including "issues of character," professional ethics and integrity," "judgment," and "proven achievement and competence in one's field." Defendants made this statement in the context of a proxy vote recommending that shareholders elect Kawas to Athira's board. Thus, even if Defendants did not explicitly state that Kawas possessed such qualities, that is the clear meaning of their statements when viewed in context. *See Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1258 (D. Nev. 2019) (statements that company's "technicians . . . have appropriate experience" were false and misleading where the technicians were inexperienced and insufficiently trained). At minimum, Defendants misleadingly implied that Kawas's credentials were not based on falsified research in her purported field of expertise. "[T]he fact is Defendants went ahead and, if not explicitly, at least impliedly [represented that Kawas possessed these qualities]. Defendants could have chosen to say nothing, but because they went ahead and said something . . . they were obligated to make fully accurate disclosures[.]" *See Iso Ray*, 189 F. Supp. 3d at 1074-75.

### (b)    Statements About Athira's Approach Are Actionable

Statement 10 touts Athira's "approach" of targeting the HGF/Met system—which was born from Kawas's falsified research—and its "potential to protect existing neurons from damage, reduce inflammation, promote regeneration, and positively modulate brain activity[,]" and "improve neuronal health and translate into clinical benefits." That Defendants used qualifiers like "[w]e believe" and "potential" does not render their statement a nonactionable opinion. *See Mulligan,* 36 F. Supp. 3d at 967 ("that certain statements are predicated with indications that the speaker thought or believed a given statement" did not render statements nonactionable). Even if Statement 10 is considered an opinion, "[a] statement of opinion is actionably misleading if it omits material facts that conflict with what a reasonable investor would take from the statement itself[.]" *Mulderrig v.*

Page 18 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

*Amyris, Inc*., 492 F. Supp. 3d 999, 1023 (N.D. Cal. 2020).  A reasonable investor "expects not just that the issuer believes the opinion . . . but that it fairly aligns with the material facts about the issuer's inquiry into or knowledge concerning a statement of opinion."  *See In re Intuitive Surgical Sec. Litig*., 2017 WL 4355072, at *2 (N.D. Cal. Sept. 29, 2017).  It is more than plausible that a reasonable investor would find that Defendants' statement about its novel "approach" did not "fairly align" with the fact that it was based on falsified research.  *See id.,* at *3; *Iso Ray*, 189 F. Supp. 3d at 1071 ("We are extremely excited to have our [product] used in the treatment of non-small cell lung cancers with such outstanding patient outcomes[,]" was not a nonactionable opinion where defendant's product was inferior to other treatment options, because "[a] reasonable inference means superior in relation to the other treatment options.").

### (c)    Statements 6, 8 And 9 Are Not Nonactionable Puffery

Statements 6, 8 and 9 are not puffery for the same reasons that Statements 1 and 2 are not (*see* Sec.III.A.4 *supra*).  These statements were "anchored in misrepresentations of existing facts" and, accordingly, are actionable.  *See Mulligan,* 36 F. Supp. 3d at 966.

### 2.    Plaintiffs Allege Scienter

"Scienter may be established . . . by showing that the defendants knew their statements were false, or by showing that defendants were reckless as to the truth or falsity of their statements." *Mulderrig*, 492 F. Supp. 3d at 1024.  "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 515 U.S. 308, 324 (2007).  The inference of scienter need only be "at least as strong as any opposing inference[.]"  *Mulderrig*, 492 F. Supp. 3d at 1024. Plaintiffs plead a strong inference that Kawas and, by extension Athira, knowingly misled investors and that the other Defendants were *at least* extremely reckless with the truth.

### (a)    Plaintiffs Allege Kawas And Athira's Scienter

Allegations that defendants have "access to information contradicting their statements" support scienter.  *See Mulderrig*, 492 F. Supp. 3d at 1026.  It is undisputed that Kawas had access to the subject information—Kawas **admitted** that she falsified Athira's foundational research.  That

Page 19 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
        2:21-cv-00861-TSZ

the research was published years before the Class Period and concerned a different molecule does not negate scienter.  MTD at 21.  As *STAT News* reported, Kawas's research formed the "biological groundwork that Athira continue[d] to use" in its approach to finding a treatment for neurodegenerative disorders during the Class Period, and after it "moved on" from Dihexa.  Athira cited Kawas's falsified research in numerous patents and its application for a grant from NIH.  Kawas's intentional falsification of her research supports a strong inference that she knew Athira's statements risked misleading investors.  *See Middlesex Ret. Sys. v. Quest Software, Inc.*, 2008 WL 7084629, at *5 (C.D. Cal. July 10, 2008) ("Defendants' knowledge of intentional backdating of stock options supports a strong inference that Defendants knew their SEC filings were misleading.").  Moreover, Athira's scienter is alleged because Kawas's scienter is imputed to the Company under the doctrine of *respondeat superior*.  *See Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1204-05 (N.D. Cal. 2012).

Defendants' argument that Plaintiffs fail to identify "a single conversation, email, letter . . . or other document" to establish Kawas's scienter (MTD at 21) is confounding.  Kawas's falsified research materials ***are*** the "documents" that show her actual knowledge that the research Athira was built upon was fraudulent.  To the extent more is needed, members of *PubPeer*—a post-publication peer review website for scientific research publications—posted comments expressing concerns about the falsified nature of Kawas's research in all six of her published articles *13 times* between October 2014 and June 2021**,** each of which was reported directly to Kawas.[29]  *PubPeer* even confirmed to a reporter that Kawas and the co-authors of her March 2012 Article were sent email alerts of comments posted in June 2016 about altered images therein[30] and *PubPeer* contributors directly emailed Kawas and her co-authors in May 2021 about falsified images in Kawas's November 2011 and November 2014 Articles, "in hopes that one of them will address these concerns."  ¶¶44, 71.  One *PubPeer* contributor commented that Kawas's falsified "research has been parlayed into a Biotechnology company called [Athira] . . . . In the post-Holmes/Theranos

---

[29] ¶¶44-47, 51, 58, 62-64, 68-72, 77; Sadler Decl., Ex. 4.

[30] Sadler Decl., Ex. 5.

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

environment, these and other concerns have added urgency." ¶¶69-70. Kawas was repeatedly reminded over the course of almost seven years that she had falsified her research, as well as the risks associated with her actions. It is *entirely implausible* that Kawas did not know, or have "any reason to believe" that the fact that Athira's foundational research had been falsified risked misleading the Company's investors.

Defendants offer no non-culpable inference that can be drawn from Plaintiffs' allegations, let alone an inference that is *more compelling* than what Plaintiffs allege. At *best*, Kawas and Athira took a deliberately reckless gamble by concealing the falsified nature of Athira's foundational research in hopes that the truth would never come to light or would be overtaken by good news.[31] *See Makor Issues & Rights, Ltd. v. Tellabs Inc.,* 513 F. Supp. 702, 710 (7th Cir. 2008) ("The fact that a gamble—concealing bad news in the hope that it will be overtaken by good news—fails is not inconsistent with its having been a considered, though because of the risk a reckless, gamble.").

**(b)      Plaintiffs Allege The Remaining Individual Defendants' Scienter**

Given Kawas's centrality to Athira and that the Company's business was based on her research, at minimum, the other Individual Defendants recklessly disregarded the truth. They were high-ranking officers and executives at Athira, with direct knowledge of and involvement in Athira's day-to-day operations, experienced and savvy in the biotech and biopharmaceutical industries. *See Atlas v. Accredited Home Lenders Holding Co.,* 556 F. Supp. 2d 1142, 1157 (S.D. Cal. 2008) (allegations that "[d]efendants were financially sophisticated as well as experienced in the mortgage industry" supported strong inference of scienter).[32]  Mileson, who has served as Athira's Chief Financial Officer since 2015, has previous experience at a biotech company developing gene editing and cell signaling technologies; Fluke, who has served on Athira's board since December 2014, has prior experience serving on the boards of, *inter alia,* CellCyte Genetics

---

[31] Defendants' reliance on *In re Jones Soda Co. Sec. Litig.*, 2009 WL 330163, at *5 (W.D. Wash. Feb. 9, 2009) is misplaced. MTD at 21. There, the only allegations supporting falsity and scienter were from the declaration of plaintiffs' consultant. *See id.* Here, Kawas admitted culpability and numerous *PubPeer* contributors had previously flagged and made her and her co-authors aware of the research problems.

[32] *See also Richard v. Nw. Pipe Co.,* 2011 WL 3813073, at *4 (W.D. Wash. Aug. 26, 2011) ("defendants, who were both CPAs and had extensive accounting experience, should have known of the falsity of their statements.").

Page 21 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
            2:21-cv-00861-TSZ

Corporation and Cell Therapeutics; Edelman, who has served on Athira's board of directors since May 2020, has extensive "experience as a board member and investor in many successful biotechnology companies" and had also been a senior analyst at two biotechnology hedge funds; and Johnson, who has served on Athira's board since August 2020, has worked for various biopharmaceutical companies since about 2003.[33]

That Kawas's research was published before some of the Individual Defendants joined Athira does not negate scienter. MTD at 23. Her research was the core of Athira's business and the falsified nature of it was glaringly obvious to numerous internet commentators who lacked the insider access the Individual Defendants had. For example, in June 2016, one *PubPeer* commenter noted that several images were clearly copied from something else because they were upside-down (¶68), and other commenters posted in June 2016 and May 2021 about dissimilar colors in images in Kawas's April 2013 Article which resulted from Kawas cutting and pasting images of research results from her doctoral dissertation (which Athira admitted contained altered images) into the article (¶¶60-65). Moreover, and contrary to Defendants' arguments (MTD at 23), Plaintiffs need not allege that the other Individual Defendants actually knew that Kawas falsified Athira's foundational research—"[r]ecklessly turning a blind eye to impropriety is equally culpable conduct under Rule 10b–5." *In re VeriFone Holdings, Inc. Sec. Litig*., 704 F.3d 694, 708 (9th Cir. 2012).

That Athira was a very small company—as of December 31, 2020, Athira had just 22 employees[34]—also supports an inference of scienter. *See Curry v. Hansen Med., Inc.*, 2012 WL 3242447, at *11 (N.D. Cal. Aug. 10, 2012) (allegations that company of under 200 employees was focused on selling one type of product supported strong inference of individuals' scienter).[35] Moreover, "Plaintiffs have alleged sufficient facts to trigger the application of the core operations doctrine. Under that theory, scienter may be imputed based on the inference that key officers have knowledge of the core operations of the company." *See Flynn v. Sientra, Inc.*, 2016 WL 3360676,

---

[33] Sadler Decl., Ex. 1 at p. 152, 154.

[34] Sadler Decl., Ex. 6 at p. 47.

[35] *See also Todd v. STAAR Surgical Co.,* 2016 WL 6699284, at *13 (C.D. Cal. Apr. 12, 2016) (noting "relatively small company with only 335 employees" supported inference of individual defendant's actual knowledge of fraud).

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

at \*15 (C.D. Cal. June 9, 2016) ("Given the importance of manufacturing and quality control to the success of" defendant, a medical aesthetics company, "it is a logical, and strong inference" that individual defendants were aware of problems at its manufacturing facility).  Like *Flynn,* given that Athira's entire business was based on Kawas's "approach" of targeting the HGF/Met system, "it is a logical, and strong inference" that the Individual Defendants at least were deliberately reckless in their disregard for the truth.  *See id.*

### (c)    The CAC's Motive Allegations Support Scienter

While motive is not required to allege scienter, Plaintiffs' motive allegations further support a strong inference of scienter.  Athira desperately needed funding to continue operations: it had no revenue, it needed substantial additional investment before any of its products could provide it with any revenue, and it had incurred net losses with an accumulated deficit of $24.9 million as of June 30, 2020.[36]  Athira also had liabilities in connection with grant awards it received from the Washington Life Sciences Discovery Fund in 2014 and 2015, which required Athira to pay the fund up to $1.5 million upon completion of its IPO.[37]  Thus, Defendants' motive to conceal the truth was not just based on a generic desire every company has to raise capital—Athira would likely have ceased to exist if it had disclosed the truth.  *See In re Portal Software, Inc. Sec. Litig.,* 2005 WL 1910923, at \*12 (N.D. Cal. Aug. 10, 2005) (holding that "plaintiffs' contention that defendants were motivated to inflate artificially Portal's stock price in the short term in order to conduct a successful secondary public offering and obtain much-needed capital does allege facts of a palpable motive for fraud"); *Flynn*, 2016 WL 3360676, at \*15 (allegation that defendants "were motivated to conceal the contamination at the Silimed plant from investors so that they could raise enough money in the SPO keep Sientra afloat" supported inference of scienter).

Defendants' arguments that Kawas did not make any suspicious stock sales or have any "personal" benefit motivation do not negate scienter (MTD at 22).  First, suspicious stock sales are not required to support scienter, especially "where, as here, other allegations in the complaint raise

---

[36] Sadler Decl., Ex. 1 at p. 17.

[37] Sadler Decl., Ex. 1 at p. 93.

Page 23 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
        2:21-cv-00861-TSZ

a strong inference of scienter." *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 707 (9th Cir. 2021), *cert. denied sub nom.*, *Alphabet Inc. v. Rhode Island,* 142 S. Ct. 1227 (2022) ("Although such allegations [of suspicious stock sales] may support an inference of scienter, they are not sine qua non for raising such an inference."). Second, Kawas personally benefited because her falsified research was the bedrock of her professional success—but for her falsified research she would not have become the founder and CEO of Athira, a successful, publicly-traded company that raised almost $300 million in its IPO and SPO. "[A]n executive's realistic fears that his or her career is at stake can support a particularized motive supporting scienter." *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2020 WL 1479128, at *10 (E.D. Pa. Mar. 25, 2020).

### 3. Plaintiffs Allege A Section 20(a) Claim

"Section 20(a) imposes derivative liability for those who control others found to be primarily liable under the [Exchange] Act." *Kyung Cho*, 890 F. Supp. 2d at 1205. As stated above, Plaintiffs have alleged a predicate violation of the Exchange Act. Plaintiffs' control allegations are sufficient. Courts have found "general allegations concerning an individual's title and responsibilities" sufficient to establish control at the motion to dismiss stage. *See id*. "Plaintiffs "need not show the controlling person's scienter or that they culpably participated in the alleged wrongdoing." *Id.* Further, the determination of who is a controlling person "is an intensely factual question[,]" improperly decided on a motion to dismiss. *Id.*

### C. CONCLUSION

For the foregoing reasons, the Court should Defendants' motion in its entirety. If the Court grants Defendants' motion in any respect, Plaintiffs respectfully request leave to amend.

Page 24 –   PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

Dated:  May 6, 2022

Respectfully submitted,
**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Casey E. Sadler*
Kara M. Wolke
Casey E. Sadler
Natalie S. Pang (*pro hac vice forthcoming*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Phone: (310) 201-9150
Fax: (310) 201-9160
Email: kwolke@glancylaw.com
          csadler@glancylaw.com
          npang@glancylaw.com

**LABATON SUCHAROW LLP**
Michael P. Canty
Thomas G. Hoffman, Jr.
140 Broadway
New York, New York 10005
Phone: (212) 907-0700
Fax: (212) 818-0477
Email: mcanty@labaton.com
          thoffman@labaton.com

*Co-Lead Counsel for the Class*

**ROSSI VUCINOVICH, P.C.**

By:  *s/ Benjamin T.G. Nivinson*
Benjamin T. G. Nivinson, WSBA No. 39797
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
Phone: (425) 646-8003
Fax: (425) 646-8004
Email: bnivison@rvflegal.com

*Liaison Counsel for the Class*

Page 25 –    PLAINTIFFS' OPP. TO DEFENDANTS' MTD CAC
                    2:21-cv-00861-TSZ

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 Fax: (310) 201-9160

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On May 6, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Western District of Washington, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 6, 2022, at Los Angeles, California.


_s/ Casey E. Sadler_
Casey E. Sadler