# EXHIBIT 3

Case 2:21-cv-00861-TSZ   Document 82-3   Filed 05/06/22   Page 2 of 6

# Athira cited altered studies in $15 million NIH grant application, creating legal risk



*By* [Olivia Goldhill](#) Aug. 5, 2021

Case 2:21-cv-00861-TSZ   Document 82-3   Filed 05/06/22   Page 3 of 6

Leen Kawas is on leave as CEO of Athira Pharma after she was found to have published papers containing altered images. *PRNewsfoto/Athira Pharma, Inc.*

Biotech company Athira Pharma, which is in turmoil after its chief executive was found to have published research containing altered images, now faces a new concern: It cited the allegedly doctored papers in a federal grant application. This creates the potential for the government or whistleblowers to pursue legal action to force the company to repay not only the $15 million it received to fund its work but also additional penalties.

Three altered papers co-authored by former chief executive Leen Kawas — who has been placed on leave — were referenced in an Athira application for funding from the National Institutes of Health, which STAT obtained through a Freedom of Information Act request. This makes the Seattle-based company potentially liable for False Claims Act damages, according to two legal experts, meaning Athira could be on the hook for three times the grant funds, or $45 million.

"If a company is seeking a grant from, say, the NIH and they're doing so on the basis of false records or statements, that's absolutely potentially actionable," Edward Arens, a whistleblower attorney and partner with Phillips & Cohen LLP in San Francisco, told STAT.

The law in this area is intentionally broad, said Charlotte Tschider, professor at Loyola University Chicago School of Law and the Beazley Institute of Health Law and Policy. "It's a pretty big hammer and certainly is the kind of thing the government could use," she said.

Case 2:21-cv-00861-TSZ Document 82-3 Filed 05/06/22 Page 4 of 6

Based on the grant application, which was submitted in October 2019, the National Institute on Aging within the NIH awarded funding for a Phase 2 clinical trial of Athira's Alzheimer's drug candidate in December 2020. The application included the three suspicious papers under a "biographical sketch" for Kawas.

Papers published by key personnel are relevant to the False Claims Act as they reflect on the integrity of proposed research, said Arens. Athira could be liable for damages if the NIH would have reasonably changed its mind to award the grant had it known about the allegedly false or manipulated data published by its chief executive, said Arens.

"The issue here is whether the company's citations could have affected the way NIH viewed its grant applications, the fact the CEO was involved in the research would have affected how NIH viewed the application, all of that goes into a wholistic inquiry that looks to whether this is something that moves the needle for NIH in deciding whether to pay the company," he said.

The NIH does not comment on specific cases of potential research misconduct, spokesperson David Kosub told STAT, but he said the institution takes such misconduct seriously. "Research misconduct includes falsifying information on a grant application, which in turn may distort NIH funding decisions, the overall integrity of the research we support, and the public's trust in science and resulting outcomes," he added.

Julie Rathbun, a spokesperson for Athira, said the company had no comment.

Athira cited altered studies in $15 million NIH grant application

The papers in question are as much as a decade old, dating back to when Kawas was a graduate student at Washington State University, which is investigating the claims. They include eight separate instances where images seem to show identical bands in different Western blot tests, STAT reported in June, suggesting the original images were altered. (Western blot tests are used to demonstrate the presence of specific proteins in a biological sample.) Several image experts said there was a "slim" likelihood that the same bands would appear so often by accident, though it's impossible to know intent.

Even if the changes to the images were unintentional, several of the issues with the papers were flagged back in October 2014 and June 2016 on PubPeer, where scientists comment on research post-publication. PubPeer automatically emails the authors with each new comment on their research, suggesting that Kawas and her co-authors, including Athira co-founders Joseph Harding and Jay Wright, were notified of the concerns several years ago, before the firm sought the NIH grant. If they did know, they would be legally required to disclose this information to NIH as part of their grant application, said Arens.

Kawas, Harding, and Wright did not respond to requests for comment.

Lawsuits filed under the False Claims Act evaluate whether there's reason to believe the organization had information about falsehoods, said Tschider: "Is there enough information where a reasonable organization would have discovered the mistake and corrected the record and shared information with the NIH?"

False Claims Act cases can be brought by the Department of Justice, but they typically start with whistleblowers in what's known as a qui tam

Case 2:21-cv-00861-TSZ Document 82-3 Filed 05/06/22 Page 6 of 6

lawsuit. The agency then has the opportunity to intervene and take over a case; whistleblowers are incentivized with 15% to 25% of any funds recovered if the government does take it over, and up to 30% if the Justice Department doesn't join.

Whistleblower complaints are filed under seal, meaning any lawsuits filed against Athira wouldn't yet be public. The Department for Justice did not respond to requests about whether it is investigating Athira.

"Ultimately the government is very serious about not being defrauded of taxpayer dollars," said Tschider. "They've written a law that's extremely broad, is applied often, and incentives people who are in a position to recognize fraud to bring these claims. The government is very very serious about getting its money back."

## About the Author



**Olivia Goldhill**

Investigative Reporter

Olivia is an investigative reporter at STAT, working to hold corporations and public bodies to account in their response to Covid-19.

olivia.goldhill@statnews.com
@OliviaGoldhill