THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAN WANG and HANG GAO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATHIRA PHARMA, INC.; and LEEN KAWAS,<br><br>Defendants. | CASE NO.:  2:21-cv-00861-TSZ (Consolidated with 21-cv-00862-TSZ and 21-cv-00864-TSZ)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: June 10, 2022<br><br>ORAL ARGUMENT REQUESTED |
| HARSHDEEP JAWANDHA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ATHIRA PHARMA, INC.; DR. LEEN KAWAS; GLENNA MILESON; TADATAKA YAMADA; JAMES A. JOHNSON; JOSEPH EDELMAN; JOHN M. FLUKE, JR.; GOLDMAN SACHS & CO. LLC; JEFFERIES LLC; STIFEL, NICOLAUS & COMPANY, INCORPORATED; and JMP SECURITIES LLC,<br><br>Defendants. | |

DEFENDANTS' REPLY ISO MOTION TO DISMISS
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

TIMOTHY SLYNE and TAI SLYNE,
Individually and on Behalf of All Others
Similarly Situated,

        Plaintiffs,

      v.

ATHIRA PHARMA, INC.; LEEN KAWAS,
Ph.D.; GLENNA MILESON, TADATAKA
YAMADA, M.D.; JOHN M FLUKE JR.;
JAMES A. JOHNSON; JOSEPH EDELMAN,
GOLDMAN SACHS & CO. LLC;
JEFFERIES LLC; STIFEL, NICOLAUS &
COMPANY, INCORPORATED; and JMP
SECURITIES LLC,

        Defendants.

DEFENDANTS' REPLY ISO MOTION TO DISMISS
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.  THE COMPLAINT FAILS TO STATE A SECURITIES ACT CLAIM ...................... 3

    A.  Plaintiffs Fail to State a Section 11 Claim .................................................... 3

        1.  The Complaint Does Not Allege a False Statement in the IPO and SPO Materials ................................................................................ 3

        2.  The Complaint Does Not Allege an Actionable Omission in the IPO and SPO Materials ....................................................................... 4

            a.  No Duty to Disclose Uncharged and Unadjudicated Misconduct ................................................................................ 4

            b.  Defendants' Statements Did Not Trigger a Duty to Disclose Altered Images ............................................................... 5

                i.  No Duty Triggered by Statements about Dr. Kawas's Educational Background or Board Qualifications ..................................................................5

                ii.  No Duty Triggered by Statements About the WSU License Agreement ..............................................................6

            c.  Athira Had No Duty to Disclose Altered Images in the 2011–2014 Research Papers Under Items 303 or 503 of SEC Regulation S-K ................................................................ 7

        3.  Two Statements Were Inactionable Puffery ............................................ 8

    B.  Plaintiffs Have Abandoned Their Section 12(a)(2) Claim ................................... 8

    C.  Plaintiffs Fail to Allege a Section 15 Claim ............................................................. 8

II.  THE COMPLAINT FAILS TO STATE AN EXCHANGE ACT CLAIM ...................... 8

    A.  Plaintiffs Fail to Allege a Section 10(b)/Rule 10b-5(b) Claim .............................. 8

        1.  The Complaint Does Not Allege Any False Statement ............................. 8

        2.  The Complaint Does Not Allege Any Actionable Omission ...................... 9

DEFENDANTS' REPLY ISO MOTION TO DISMISS      - i -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

|  |  | a. | No Duty to Disclose Uncharged and Unadjudicated Misconduct | 9 |

|  |  | b. | Defendants' Statements Did Not Trigger a Duty to Disclose Altered Images | 9 |

|  |  |  | i. No Duty Triggered by Statements About Factors Considered in Assessing Board Qualifications | 9 |

|  |  |  | ii. No Duty Triggered by Statement about the Potential of ATH-1017 | 10 |

|  | 3. | Four Statements Were Inactionable Puffery | | 10 |

|  | 4. | The Complaint Fails to Allege a Strong Inference of Scienter | | 10 |

|  |  | a. | No Scienter as to Dr. Kawas or Athira | 10 |

|  |  | b. | No Scienter as to Ms. Mileson, Mr. Edelman, Mr. Fluke, or Mr. Johnson | 11 |

| B. | Plaintiffs Fail to Allege a Scheme Liability Claim | | | 12 |

| C. | Plaintiffs Fail to Allege a Section 20(a) Claim | | | 12 |

CONCLUSION ........................................................................................................ 12

DEFENDANTS' REPLY ISO MOTION TO DISMISS      - ii -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Atlas v. Accredited Home Lenders Hldg. Co.*,
    556 F. Supp. 2d 1142 (S.D. Cal. 2008)................................................................12

*Bos. Ret. Sys. v. Uber Techs. Inc.*,
    2020 WL 4569846, (N.D. Cal. Aug. 7, 2020) .......................................................5

*Brendon v. Allegiant Travel Co.*,
    412 F. Supp. 3d 1244 (D. Nev. 2019).................................................................10

*Brennan v. Zafgen, Inc.*,
    853 F.3d 606 (1st Cir. 2017)..........................................................................10, 11

*Callan v. Motricity*,
    2013 WL 195194 (W.D. Wash. Jan. 17, 2013),
    *aff'd*, 649 F. App'x 526 (9th Cir. 2016)................................................................3

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ..................................................................4, 10, 12

*City of Phila. v. Fleming Cos.*,
    264 F.3d 1245 (10th Cir. 2001) ..........................................................................11

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014).................................................................................4

*Ferris v. Wynn Resorts Ltd.*,
    462 F. Supp. 3d 1101 (D. Nev. 2020)................................................................4, 6

*Flynn v. Sientra, Inc.*,
    2016 WL 3360676 (C.D. Cal. June 9, 2016) ......................................................12

*Fries v. N. Oil & Gas, Inc.*,
    285 F. Supp. 3d 706 (S.D.N.Y. 2018)..................................................................6

*In re Acadia Pharm. Inc.*,
    2020 WL 2838686 (S.D. Cal. June 1, 2020)........................................................5

*In re Acadia Pharm. Inc.*,
    2022 WL 36493 (S.D. Cal. Jan. 3, 2022)............................................................5

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009).........................................................................3

*In re Facebook, Inc. Sec. Litig.*,
    405 F. Supp. 3d 809 (N.D. Cal. 2019), *appeal filed*, No. 22-15077 (9th
    Cir. Jan. 19, 2022)..............................................................................................4

*In re Intuitive Surgical Sec. Litig.*,
    2017 WL 4355072 (N.D. Cal. Sept. 29, 2017) ..................................................10

DEFENDANTS' REPLY ISO MOTION TO DISMISS     - iii -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

*In re IsoRay, Inc. Sec. Litig.*,
　　189 F. Supp. 3d 1057 (E.D. Wash. 2016) ................................................................3, 10

*In re LendingClub Sec. Litig.*,
　　254 F. Supp. 3d 1107 (N.D. Cal. 2017) ..........................................................................6

*In re Lyft Inc. Sec. Litig.*,
　　484 F. Supp. 3d 758 (N.D. Cal. 2020) ........................................................................7, 8

*In re Paypal Holdings, Inc., S'holder Deriv. Litig.*,
　　2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ...................................................................8

*In re Portal Software, Inc. Sec. Litig.*,
　　2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) .............................................................12

*In re Restoration Robotics, Inc. Sec. Litig.*,
　　417 F. Supp. 3d 1242 (N.D. Cal. 2019) ..........................................................................7

*In re Rigel Pharm., Inc. Sec. Litig.*,
　　697 F.3d 869 (9th Cir. 2012) ...........................................................................................3

*In re Sanofi–Aventis Sec. Litig.*,
　　774 F. Supp. 2d 549 (S.D.N.Y. 2011) .............................................................................9

*In re Stac Elecs. Sec. Litig.*,
　　89 F.3d 1399 (9th Cir. 1996) ...........................................................................................2

*In re VeriFone Sec. Litig.*,
　　11 F.3d 865 (9th Cir. 1993) .............................................................................................4

*In re Violin Memory Sec. Litig*,
　　2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) .............................................................6, 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*,
　　258 F. Supp. 3d 1037 (N.D. Cal. 2017) .......................................................................4, 5

*Kauffman v. Nat. Health Trends Corp.*,
　　2019 WL 7165921 (C.D. Cal. Dec. 20, 2019) ................................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
　　899 F.3d 988 (9th Cir. 2018) ...........................................................................................2

*Lipton v. Pathogenesis Corp.*,
　　284 F.3d 1027 (9th Cir. 2002) .......................................................................................12

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
　　2008 WL 7084629 (C.D. Cal. July 10, 2008) ...............................................................11

*Miller v. Thane Int'l, Inc.*,
　　519 F.3d 879 (9th Cir. 2008) ...........................................................................................3

*Mingbo Cai v. Switch, Inc.*,
　　2019 WL 3065591 (D. Nev. July 12, 2019) ...................................................................8

*Mulderrig v. Amyris, Inc.*,
　　492 F. Supp. 3d 999 (N.D. Cal. 2020) ..........................................................................11

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

*Mulligan v. Impax Labs., Inc.*,
　36 F. Supp. 3d 942 (N.D. Cal. 2014) ...............................................................................8

*Nguyen v. Glob. Equip. Servs. & Mfg., Inc.*,
　2018 WL 10758158 (N.D. Cal. Oct. 2, 2018)................................................................11

*Nozak v. N. Dynasty Mins. Ltd.*,
　804 F. App'x 732 (9th Cir. 2020) ....................................................................................12

*Okla. L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
　444 F. Supp. 3d 550 (S.D.N.Y. 2020)...............................................................................7

*Pirani v. Slack Techs., Inc.*,
　445 F. Supp. 3d 367 (N.D. Cal. 2020) ..............................................................................8

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
　845 F.3d 1268 (9th Cir. 2017) .....................................................................................9, 10

*Richard v. Nw. Pipe Co.*,
　2011 WL 3813073 (W.D. Wash. Aug. 26, 2011) ...........................................................12

*SEC v. Reys*,
　712 F. Supp. 2d 1170 (W.D. Wash. 2010)........................................................................6

*Webb v. SolarCity Corp.*,
　884 F.3d 844 (9th Cir. 2018) .....................................................................................11, 12

## STATUTES

Securities Act, Section 11,
　15 U.S.C. § 77k.............................................................................................................3, 4

Securities Act, Section 12(a)(2),
　15 U.S.C. § 77l...................................................................................................................8

Securities Act, Section 15,
　15 U.S.C. § 77o..................................................................................................................8

Securities Exchange Act, Section 10(b),
　15 U.S.C. § 78j(b)...........................................................................................2, 3, 4, 8, 12

Securities Exchange Act, Section 20,
　15 U.S.C. § 78t(a) ............................................................................................................12

## REGULATIONS

17 C.F.R. § 229.303(b)(2)(ii)..............................................................................................7

## RULES

Fed. R. Civ. P. 8(a)................................................................................................................3

Fed. R. Civ. P. 9(b) ...............................................................................................................3

Defendants' Reply ISO Motion to Dismiss    - v -
2:21-cv-00861-TSZ

Wilson Sonsini Goodrich & Rosati, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

## **INTRODUCTION**

Plaintiffs seek to turn old mistakes into new securities law violations, searching for but not finding even the most tenuous link between Athira's public statements in 2020 and 2021 and altered "Western blot" images in Dr. Kawas's 2011 doctoral dissertation and four research papers published from 2011 to 2014 that she co-authored while a graduate student at Washington State University ("WSU"). As Plaintiffs admit, Athira's IPO and SPO Materials and subsequent SEC filings during the class period do not include any Western blot images, altered or otherwise, and do not reference any of Dr. Kawas's research papers, let alone those alleged in the Complaint to have contained altered images. The challenged statements do not even mention Dihexa, the subject of Dr. Kawas's research in those papers. Instead, they thinly reference Dr. Kawas's qualifications (academic degrees and positions), factors considered in assessing nominees for Athira's board of directors, Athira's license of a WSU patent, and Athira's basic scientific hypothesis.[1] None of these statements provide the hook on which Plaintiffs can hang their claims of a material omission.

Unable to credibly allege that Defendants' specific class period statements "put in play" Dr. Kawas's research papers published six-to-ten years earlier, Plaintiffs are left to argue that these altered images were so pivotal to Athira's success that Defendants were required to disclose their existence whenever they spoke about Athira or Dr. Kawas.[2] Plaintiffs argue that Athira "was built almost entirely on Kawas's doctoral research," Opp. 1, ignoring the other research supporting Athira's therapeutic mission identified in the IPO and SPO Materials, research Plaintiffs do not allege is tainted by Dr. Kawas's altered images. This research includes a "strong suite of data" from Athira's Phase 1a/1b trials of ATH-1017 involving qEEG and ERP results, seven third-party studies documenting the regenerative impact of HGF/MET promotion in animal studies, and

---

[1] *See* Chart of Allegedly False & Misleading Statements, Ex. 1. Statements 1, 2, 5, 6, and 8 are general statements about Dr. Kawas's qualifications and her knowledge of the business. Statements 3, 4, 5, 7, and 11 are general statements about a license agreement with WSU. Statement 9 is a general statement about factors considered for board membership. Statement 10 is an opinion statement expressing Athira's basic scientific hypothesis.

[2] While the potential effect of Dihexa on enhancing HGF/MET signaling is a component of Athira's research, Plaintiffs admit that long before its IPO "Athira concluded that Dihexa did not demonstrate the appropriate characteristics needed to become a therapeutic product," had for years "researched different compounds to target the HGF/MET system" and had ultimately "landed on ATH-1017," a Dihexa prodrug, for development. Opp. 4; ¶93.

DEFENDANTS' REPLY ISO MOTION TO DISMISS   - 1 -
2:21-cv-00861-TSZ

multiple preclinical studies. Mot. 3–4 & n.3.[3] Even assuming Dr. Kawas's dissertation and four research papers are important to Athira's therapeutic mission, the presence of altered images does not invalidate the underlying research, done in collaboration with many other scientists, or her broader body of work. While altered images may mean a particular research paper is unworthy of publication without corrections, they do not mean that the underlying research, data or conclusions were falsified or fraudulent.[4] Regardless, Plaintiffs do not (and cannot) allege that the papers were the subject of an academic or government investigation or review, withdrawn, retracted or depublished before the end of the class period on June 17, 2021, and fail to rebut Defendants' argument that there was no duty to disclose such uncharged and unadjudicated misconduct.

Plaintiffs' failure to plead an actual false statement or a statement rendered misleading by nondisclosure of the altered images requires dismissal of the Complaint's Securities Act and Exchange Act claims. Plaintiffs' Section 10(b) Exchange Act claim also should be dismissed because it fails to plead particularized facts showing a strong inference that Dr. Kawas knew that the existence of these old, undisclosed altered images would render misleading generic statements about her qualifications, factors considered in assessing nominees for Athira's board of directors, Athira's license of a WSU patent, and Athira's basic scientific hypothesis. And with respect to the other individual defendants, Plaintiffs fail to plead any facts supporting their knowledge of uncorrected altered images, let alone the significance of those uncorrected images.

[3] Similarly, there is no basis for Plaintiffs' histrionic assertion that Athira's patents are "unenforceable" and "worthless," ¶¶6, 106–07, 115, because the patents and patent applications "reference" Dr. Kawas's research papers. Opp. 4, 6. As Plaintiffs admit, Opp. 14 n.26, Athira's key patent for ATH-1017 only references one paper co-authored by Dr. Kawas, and only does so as prior art. Mot. 12 n.6. To date, no patent has been determined invalid or unenforceable. In their Opposition, Plaintiffs argue that Athira "cited" Dr. Kawas's research papers in connection with an NIH grant application, Opp. 12, but ignore the fact that the reference was only in a "biographical sketch" of Dr. Kawas, not as support for the application. Sadler Ex. 3 at 3.

[4] Indeed, Dr. Kawas maintained in her departure letter to employees, ¶98, that she did not "change [] or manipulat[e]" the "underlying data." *See* Ex. 5-1 to Declaration of John C. Roberts Jr. ISO Defendants' Reply ISO Motion to Dismiss Consolidated Amended Complaint. The Complaint attempts to use the letter to bolster its fraud and scienter allegations, suggesting that Dr. Kawas "admitted" that she falsified the results of the studies. ¶¶4–6, 98. But Plaintiffs selectively quote from the letter, where Dr. Kawas specifically made clear that "the enhancement to images was not a change to or manipulation of the underlying data." Ex. 5-1. The departure letter is incorporated by reference into the Complaint and the Court may consider it in full. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018) (document incorporated by reference when complaint "refers extensively to the document" and it "forms the basis of [a] claim."); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (courts may consider "full text" of incorporated document, "including portions which were not mentioned in the complaint[].").

DEFENDANTS' REPLY ISO MOTION TO DISMISS    - 2 -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

**ARGUMENT**

**I.    THE COMPLAINT FAILS TO STATE A SECURITIES ACT CLAIM**

    **A.    Plaintiffs Fail to State a Section 11 Claim**

The Complaint fails to state a claim under Section 11, whether under Rule 8(a) or the particularity requirements of Rule 9(b), which apply where, as here, a claim "sounds in fraud."[5]

    **1.    The Complaint Does Not Allege a False Statement in the IPO and SPO Materials**

Plaintiffs' Complaint does not allege any *actual* false statement. Mot. 6–8; Opp. 8, 14–15.[6] Statement 1 is not false because the Complaint fails to allege that Dr. Kawas was not "essential" in developing Athira's "translational development strategy," Mot. 6, which focuses on using EEG/ERP to guide clinical development. Mot. 3 n.3; Ex. 2-11. The Complaint does not even mention EEG/ERP or define "translational development," and certainly does not connect them to Dr. Kawas's research papers or any altered images. Statement 2 merely provides background information on Dr. Kawas and states Athira's belief that her "scientific and professional training, her instrumental role in building Athira[], and her extensive understanding of our business" qualified her to serve on the board of directors. ¶¶111, 176. This statement on her board qualifications is an opinion, Mot. 7 (citing cases), and the Opposition does not discuss key Ninth

---

[5] *See* Mot. 6 n.5. Plaintiffs suggest that the Complaint's disclaimer of fraud immunizes the Section 11 claim from Rule 9(b). Opp. 7–8. But the Opposition ignores *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012), and *Callan v. Motricity*, 2013 WL 195194, at *5 (W.D. Wash. Jan. 17, 2013), *aff'd*, 649 F. App'x 526 (9th Cir. 2016), both of which held that such disclaimers are not sufficient. Mot. 6 n.5. Unlike here, *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 544 (N.D. Cal. 2009), cited in the Opposition, did not involve overlapping claims under Section 10(b) and Section 11. *Id*. at 546. Regardless, the question is likely academic since Plaintiffs fail to plead, whether under Rule 8(a) or Rule 9(b), any actual false statement or a statement rendered materially misleading by an omission.

[6] Plaintiffs' citations in support of their assertion that literally true statements may still be misleading by virtue of their context or manner of presentation are inapposite. In *Miller v. Thane Int'l, Inc*., 519 F.3d 879, 886 (9th Cir. 2008), the company's prospectus stated that it had obtained approval to list its shares on NASDAQ and that post-merger shareholders could expect greater liquidity for their shares, leading investors to believe that the company would actually list its shares on NASDAQ. In *In re IsoRay, Inc. Sec. Litig*., 189 F. Supp. 3d 1057, 1069 (E.D. Wash. 2016), the company touted a third-party study comparing various cancer treatment modalities as showing "improved results" for modalities that included the company's product, creating the impression that this improvement was relative to the non-product modalities when in fact there was no statistical difference. Here, Athira's IPO and SPO Materials did not even mention Dr. Kawas's research papers, let alone the papers alleged to have contained altered images, and therefore could not have created any impression one way or the other.

---

DEFENDANTS' REPLY ISO MOTION TO DISMISS    - 3 -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Circuit precedent in *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017). The Complaint (a) does not allege that this opinion was not sincerely held at the time, and (b) does not supply any facts indicating that Dr. Kawas did not possess the training, role or understanding identified. Statement 3 (and thus also Statement 5) describes Athira's license agreement with WSU in neutral terms. Mot. 7; Ex. 2-94. The Opposition concedes that the description was accurate. Opp. 14–15.

### 2. The Complaint Does Not Allege an Actionable Omission in the IPO and SPO Materials

With no false statement, Plaintiffs are forced to pursue an omission theory, but the Complaint does not allege a duty to disclose altered images in the 2011–2014 research papers.

#### a. No Duty to Disclose Uncharged and Unadjudicated Misconduct

The federal securities laws do not require Defendants to disclose uncharged and unadjudicated allegations of misconduct. Mot. 9–10 (citing authority, including *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014)). Indeed, "the existence, and even knowledge" of misconduct at a company "is not a sufficient basis to state a securities claim without allegations that there was a realistic risk that those activities would cause losses to the company." *Kauffman v. Nat'l Health Trends Corp.*, 2019 WL 7165921, *5 (C.D. Cal. Dec. 20, 2019) (finding knowledge of even illegal conduct insufficient). Plaintiffs concede as much, Opp. 9 n.18 (admitting that a company "ha[s] no general duty to accuse itself of wrongdoing"), and address only one of Defendants' authorities on this point.[7]

---

[7] Plaintiffs do not distinguish *UBS AG*, 752 F.3d at 184, confronting it only on another point of law, Opp. 17 n.28. Plaintiffs ignore *Kauffman*, 2019 WL 7165921, *5, where a company was not required to disclose that its business model allegedly violated Chinese law, *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1123, 1126 (D. Nev. 2020), where a company was not required to disclose sexual misconduct by the CEO, and *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019), *appeal filed*, No. 22-15077 (9th Cir. Jan. 19, 2022), where a company was not required to disclose an investigation into the company's possible breach of a consent decree.

Plaintiffs attempt to distinguish *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037 (N.D. Cal. 2017), as a Section 10(b) claim, but the duty to disclose applies equally under Section 10(b) and Section 11. Mot. 8 (citing *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868–69 (9th Cir. 1993)). Plaintiffs also curiously attempt to distinguish *Volkswagen* from this case on the bases of the relative importance of the misconduct and the

DEFENDANTS' REPLY ISO MOTION TO DISMISS    - 4 -
2:21-cv-00861-TSZ

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Here, the Complaint does not allege that Dr. Kawas's research papers were under investigation or review by WSU, the scientific journals in which they were published, or any government agency during the class period, let alone that any such investigation had resulted in a formal charge or adjudication.[8] All Plaintiffs allege is a handful of mostly anonymous comments on *PubPeer*, an unofficial online public forum that is not affiliated with scientific journals, first in 2014 and 2016 concerning two papers, and then in May/June 2021, a few weeks before the end of the purported class period.

### b. Defendants' Statements Did Not Trigger a Duty to Disclose Altered Images

The problem with Plaintiffs' omission theory is that they cannot identify a statement in the IPO or SPO Materials that was rendered materially misleading because of an omission that certain images in Dr. Kawas's research papers published six-to-ten years earlier had been altered.

### i. No Duty Triggered by Statements about Dr. Kawas's Educational Background or Board Qualifications

Statements 1 and 2 mentioned Dr. Kawas's position as "founder and chief executive officer," where and when she received her degrees, her "scientific and professional training," and her "instrumental role in building" Athira, ¶¶110–11, 175–76, but, again, such routine statements did not trigger a duty to disclose potential issues with old research papers mentioned nowhere in the IPO or SPO Materials, Mot. 10–11. Plaintiffs argue that disclosure was required because Defendants "tout[ed]" Dr. Kawas's "educational, scientific, and professional credentials," Opp. 1,

---

risk of financial loss to the two companies, a distinction not recognized in this line of cases. Even so, the conduct at issue in *Volkswagen* was significantly more serious than that alleged here—Volkswagen engaged in a criminal conspiracy to cheat on U.S. government emissions tests that resulted in a $2.8 billion criminal fine.

[8] Plaintiffs argue that Defendants' "disclosure obligations do not rise and fall with the actions of any government or academic body," citing *In re Acadia Pharm. Inc.*, 2020 WL 2838686, at *2 (S.D. Cal. June 1, 2020), Opp. 9 & n.18, but that case proves Defendants' point. *Acadia* dealt with a drug company that allegedly "accomplished its commercial success" by giving "wads of cash to doctors" to "incentivize prescription writing[.]" 2020 WL 2838686, at *2. In *Acadia*, the DOJ had already opened an investigation into the company at the time of the alleged misstatements, *id*. at *2, a fact the court found of "[c]ritical[]" importance in determining the scheme should have been disclosed. 2022 WL 36493, at *9 (S.D. Cal. Jan. 3, 2022). *Bos. Ret. Sys. v. Uber Techs. Inc.*, Opp. 9, involved allegations that Uber entered markets it "knew" were "undoubtedly illegal" and had already planned "massive restructuring and layoffs" for just weeks after the IPO. 2020 WL 4569846, at *5-8 (N.D. Cal. Aug. 7, 2020).

DEFENDANTS' REPLY ISO MOTION TO DISMISS    - 5 -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

9, but the run-of-the-mill language used in the IPO and SPO Materials belies this argument. ¶¶110–11, 175–76. No reasonable investor would infer from such generic statements any guarantee that Dr. Kawas had and would maintain an unblemished academic or professional record. Plaintiffs ignore *Wynn Resorts*, 462 F. Supp. 3d at 1123, where the court determined that "no reasonable investor would infer from the challenged compliance statements that [the executive had] not engaged in . . . misconduct."[9] Plaintiffs attempt to distinguish *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 718–19 (S.D.N.Y. 2018) on the ground that Dr. Kawas did not actually have "the pedigree [] represented." Opp. 11 n.22. But it is undisputed that Dr. Kawas received a Ph.D. from WSU, ¶35, and nowhere does the Complaint allege that but for the altered images she would not have received her degree or provide any support for Plaintiffs' claim that Athira's existence would have been "unlikely," Opp. 11 n.22. Plaintiffs' speculation and hyperbole does not render these accurate and general statements about her credentials misleading.

### ii. No Duty Triggered by Statements About the WSU License Agreement

Plaintiffs claim that reference to a license agreement with WSU in the IPO and SPO Materials triggered a duty to disclose the altered images because it created the impression that "Athira's intellectual property . . . was credible, legally ready for commercialization, and, at minimum, was not fabricated." Opp. 14. But Athira's accurate description of the license said nothing about the legality of the WSU patent or the value of Athira's license, specifically, or about the Company's broader patent portfolio, generally. It also said nothing about the commercial value of Athira's underlying technology or drug therapies under development. Even if Plaintiffs' exaggerated and unsupported claim that the altered images somehow render all of Athira's patents

---

[9] Plaintiffs' authority does not support an argument that such generic statements were rendered misleading by a failure to disclose the altered images. In contrast to this case, in *SEC v. Reys*, 712 F. Supp. 2d 1170, 1177 (W.D. Wash. 2010), the CEO said he had been part of the executive team that took a company public when he had only been a sales manager and left years before the IPO. In *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *16 (N.D. Cal. Oct. 31, 2014), the company failed to disclose its CEO was previously fired for cause from a company within the same industry, a disclosure required by Item 401(e)(1) of Regulation S-K ("Business experience"). In *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1116–17 (N.D. Cal. 2017), the CEO took out 32 "improper" loans for himself and family members to boost loan volume but the company failed to disclose a material weakness in internal controls.

DEFENDANTS' REPLY ISO MOTION TO DISMISS       - 6 -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

"unenforceable" and its IP portfolio "worthless," ¶¶6, 106–07, 115, which they do not, the statements made in the IPO and SPO Materials would still be accurate. The mere mention of the license did not require Athira to speculate as to potential weaknesses in its IP portfolio. Mot at 11–12. Once again, Plaintiffs cannot proceed by simply relying on the inference that Athira should have accused itself of wrongdoing or speculated about potential negative outcomes in public. *See supra* Section I.A.2.a.

    **c.**  **Athira Had No Duty to Disclose Altered Images in the 2011–2014 Research Papers Under Items 303 or 503 of SEC Regulation S-K**

Defendants explained in the Motion that Athira was not required to disclose altered images in the 2011–2014 research papers as a "trend" or "uncertainty" under Item 303, or a risk under Item 503, of Regulation S-K in 2020–2021. Mot. 12–14. Without citation to authority, the Opposition claims that "Kawas's falsified research constituted a trend or uncertainty for Athira." Opp. 12. But Item 303 is not a stand-in for any uncertainty faced by a company: it requires disclosure of "known trends or uncertainties that . . . are reasonably likely to have a material . . . unfavorable impact on . . . revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii). Plaintiffs' authority acknowledges this. Opp. 12 (quoting *Lyft*). As a pre-commercial pharmaceutical company, Athira had no revenue and could not predict when it would, if ever. Altered images in research papers authored by Dr. Kawas when she was a graduate student, and published six-to-ten years before the IPO, do not constitute a trend or uncertainty regarding Athira's business in the present, particularly when the Company relied upon a mountain of other research, including third-party research. Mot. 3–4, 13. The altered images may have resulted in Dr. Kawas's resignation, but the business impact from the altered images "rests on a tenuous chain of causality" that "falls short of a known risk." *Okla. L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 444 F. Supp. 3d 550, 564 (S.D.N.Y. 2020). Plaintiffs attempt to distinguish *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263–64 (N.D. Cal. 2019) because it involved a

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

single event, but ignore its point that temporally removed events, like altered images in old research papers, do not create a trend.[10]

### 3.    Two Statements Were Inactionable Puffery

Statements 1 and 2 also fail because they are "too general" to "give rise to any particular impression about [] business practices and their legality, and therefore are not actionable as a matter of law." Mot. 14 (citing *In re Paypal Holdings, Inc., S'holder Deriv. Litig.*, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018)). Plaintiffs ignore the authorities cited in the Motion, but cannot prevent their application.[11]

### B.    Plaintiffs Have Abandoned Their Section 12(a)(2) Claim

Plaintiffs have withdrawn their Section 12(a)(2) claim. Opp. 7 n.16.

### C.    Plaintiffs Fail to Allege a Section 15 Claim

Plaintiffs' Section 15 claim fails for a lack of a predicate violation. Mot. 16.

## II.    THE COMPLAINT FAILS TO STATE AN EXCHANGE ACT CLAIM

### A.    Plaintiffs Fail to Allege a Section 10(b)/Rule 10b-5(b) Claim

#### 1.    The Complaint Does Not Allege Any False Statement

None of the statements challenged in the Complaint were *actually* false. Mot. 17–18. The Complaint challenges only two statements outside the IPO and SPO Materials that differ from those made therein—Statements 9 and 10. Statement 9 lists some factors considered in assessing director nominee qualifications. The list conveyed the type of factors considered but did not purport to make any particular factor a requirement or to be an assessment of any individual director. Mot. 17. Plaintiffs concede that Statement 9 "did not explicitly state that Kawas possessed

---

[10] *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 769 (N.D. Cal. 2020) does not support a duty to disclose under Item 303 here because there the trend was increasing before the IPO. In *Violin Memory*, 2014 WL 5525946, at *15, the trend was already "materially impacting revenues," and in *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 386 (N.D. Cal. 2020), it had already resulted in "'exceptional[]' consequences" to the business. Likewise, in *Mingbo Cai v. Switch, Inc.*, 2019 WL 3065591, at *5 (D. Nev. July 12, 2019), defendants omitted a fundamental shift in their business strategy that "presented serious risk of diminishing revenue." No such allegations exist here

[11] *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 966–67 (N.D. Cal. 2014), includes a discussion of how statements about "extensive training and safety" could be material, Opp. 15, but that was in reference to the Deepwater Horizon case in which the defendant company stated that it had conducted critical safety and training programs, which was cast into doubt by a subsequent disaster. This case is a far cry from the largest oil spill in U.S. history.

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

such qualities." Opp. 18. Statement 10 stated Athira's "belie[f]" that enhancing HGF/MET signaling had the "potential" to protect neurons, reduce inflammation, promote generation, and positively modulate brain activity, and that Athira "anticipated" that these four characteristics "may" improve neuronal health and provide clinical benefits. Mot. 19 (citing ¶132). As shown above, Dr. Kawas's altered images do not discredit other Athira and third-party research supporting this hypothesis. Defendants did then and continue to honestly believe in the therapeutic potential of enhancing HGF/MET signaling.[12] Mot. 17–18; Opp. 18–19.

### 2. The Complaint Does Not Allege Any Actionable Omission

#### a. No Duty to Disclose Uncharged and Unadjudicated Misconduct

As shown in Section I.A.2.a *supra*, Defendants were not required to disclose uncharged and unadjudicated misconduct. Mot. 9–10.

#### b. Defendants' Statements Did Not Trigger a Duty to Disclose Altered Images

##### i. No Duty Triggered by Statements About Factors Considered in Assessing Board Qualifications

In Statement 9, Athira listed the general factors applied in assessing board qualifications. Plaintiffs acknowledge that "Defendants did not explicitly state that Kawas possessed such qualities," but claim that they "impliedly" did, arguing the "clear meaning" of the statement was that "Kawas's credentials were not based on falsified research in her purported field of expertise." Opp. 18. But here Plaintiffs strain to create a disclosure obligation, and indeed a similar argument was rejected in *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277–79 (9th Cir. 2017), where the Ninth Circuit held that a company's publication of its standards of business conduct and its CEO's statements about ethical standards did not

---

[12] *See In re Sanofi–Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 567 & n. 20 (S.D.N.Y. 2011) ("[I]nterpretations of the results of various clinical studies . . . are essentially no different than opinions," because "[r]easonable persons may disagree over how to analyze data and interpret results, and neither lends itself to objective conclusions.").

require the company to disclose ethical violations by the CEO. *Hewlett-Packard*, which the Opposition ignores, should control here.[13]

### ii.   No Duty Triggered by Statement About the Potential of ATH-1017

The Complaint alleges that the opinion statement about ATH-1017's "potential" was false by omission. To plead an opinion statement false by omission, Plaintiffs must allege facts that "'call into question the [company]'s basis for offering the opinion.'" *Align Tech.*, 856 F.3d at 615 (citation omitted). Defendants had and have ample support for this belief independent of Dr. Kawas's research papers, Mot. 3–4; accordingly, this opinion "fairly align[ed] with the material facts." Opp. 19.[14] And with the exception of Dr. Kawas, the Complaint does not plead facts sufficient to show that any other defendant was aware of uncorrected altered images.

### 3.   Four Statements Were Inactionable Puffery

Statements 6, 8, and 9 are too vague to be actionable, just like Statement 2. Mot. 20.

### 4.   The Complaint Fails to Allege a Strong Inference of Scienter

### a.   No Scienter as to Dr. Kawas or Athira

The Complaint fails to plead scienter as to Dr. Kawas or the Company because it fails to allege facts supporting a strong inference that they knew that the failure to disclose the existence of altered images in the 2011–2014 papers would be materially false or misleading in 2020–2021. The fundamental problem with Plaintiffs' scienter arguments is that they misapprehend the nature of the scienter inquiry, which asks not whether Defendants were aware of the omitted fact, but whether they were aware that omitting to disclose that fact presented a danger of misleading investors in 2020 and 2021. Mot. 21 (citing *Brennan v. Zafgen, Inc*. 853 F.3d 606, 614 (1st Cir.

---

[13] Plaintiffs cite *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1258 (D. Nev. 2019), but in that case, unlike here, the alleged misstatements were not only that the "technicians . . . have appropriate experience," but that the company was actively "provid[ing] them with comprehensive training." *IsoRay*, 189 F. Supp. 3d at 1074–75, did not concern the qualifications or educational background of a company executive.

[14] *In re Intuitive Surgical Sec. Litig.*, 2017 WL 4355072, at *2 (N.D. Cal. Sept. 29, 2017), dealt with a medical device company that allegedly misclassified adverse events and "categorically suppressed thousands of medical device reports" while making statements the product was safe. Plaintiffs here do not (and cannot) point to any inaccuracies in the underlying data or conclusions in Dr. Kawas's research. *IsoRay*, 189 F. Supp. 3d at 1074–75, is similarly flawed.

DEFENDANTS' REPLY ISO MOTION TO DISMISS   - 10 -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

2017), and *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001)). The Opposition ignores *Zafgen* and *Fleming* and wrongly suggests that scienter is alleged because Dr. Kawas's alteration of the images was "intentional." Opp. 20–21. This misses the point. The question here is whether the statements in the 2020–2021 IPO and SPO Materials were made with intent to deceive or deliberate recklessness. Here, Plaintiffs admit that the research was published "years before the Class Period," Opp. 20, that Athira's current lead drug candidate was "not the subject of [her] doctoral research," ¶97, and that the IPO and SPO Materials did not include any altered images or even mention Dr. Kawas's research papers. Indeed, the IPO and SPO Materials focused on the results of the Phase I trials and other research amassed in support of Athira's scientific hypothesis, Mot. 2–3, none of which is alleged to have been inaccurately stated. In addition, Plaintiffs do not allege how the altered images undermined the conclusions of the individual papers, let alone Athira's entire scientific edifice. Mot. 22.

### b.     No Scienter as to Ms. Mileson, Mr. Edelman, Mr. Fluke, or Mr. Johnson

The Complaint fails to plead a strong inference of scienter as to Ms. Mileson, Mr. Edelman, Mr. Fluke, or Mr. Johnson for additional reasons. The Opposition suggests that they had "access to information contradicting their statements," presumably because some criticism had been posted on *PubPeer*, Opp. 19, but there is nothing in the Complaint to suggest that these four Defendants actually accessed the website or were otherwise made aware of uncorrected altered images.[15] Plaintiffs must allege more than theoretical access.[16] *See Webb v. SolarCity Corp.*, 884 F.3d 844,

---

[15] *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999 (N.D. Cal. 2020), does not help Plaintiffs. There, the plaintiffs supported their scienter allegations with revenue numbers that directly and objectively contradicted information previously disclosed by defendants, and two confidential witnesses confirmed that the CEO and CFO "themselves review[ed] [] numbers monthly or weekly[]" and "met frequently with top accounting personnel," and that the CFO was "personally involved" with revenue recognition. *Id*. at 1026–27. *Middlesex Ret. Sys. v. Quest Software, Inc.*, 2008 WL 7084629 (C.D. Cal. July 10, 2008), does not help Plaintiffs either. There, during the class period, the defendants engaged in stock option backdating over a multi-year period and as a result repeatedly filed financial statements that contained false statements about revenue and GAAP compliance. *Id*. at *1, *6, *9, *15. This fraud was "so obvious" that the defendants "either intended to commit the fraud or [were] deliberately reckless." *Nguyen v. Glob. Equip. Servs. & Mfg., Inc.*, 2018 WL 10758158, at *3 (N.D. Cal. Oct. 2, 2018) (distinguishing *Middlesex*).

[16] Plaintiffs attempt to establish knowledge by suggesting that the alterations were "glaringly obvious" to anyone, Opp. 22, but if this were true, Plaintiffs would be unable to allege materiality or loss causation.

---

DEFENDANTS' REPLY ISO MOTION TO DISMISS     - 11 -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

857 (9th Cir. 2018) (affirming dismissal where plaintiff did not show "actual access" to accounting formula); *Align Tech.*, 856 F.3d at 620 (must have "personally accessed" documents).

Plaintiffs then pull out every scienter argument of last resort. They reference the core operations doctrine, suggesting scienter based on the alleged fact that the four Defendants were "high-ranking officers and executives" with "knowledge of and involvement in [its] day-to-day operations." Opp. 21–22. But these were outside directors and a CFO with no scientific training, and in any case such vague allegations do not support a strong inference of scienter. *See Nozak v. N. Dynasty Mins. Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020) (holding "management's general awareness of the day-to-day workings of the company's business" insufficient to plead scienter). The Opposition suggests that the four Defendants should have known because they were "savvy" and "experienced," Opp. 21, but that too fails to support a strong inference of scienter.[17] Plaintiffs claim that the Athira Defendants had a motive to conceal the truth because they wanted to "raise capital," Opp. 23, but "routine business objectives, without more, cannot normally be alleged to be motivations for fraud." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).[18]

**B.      Plaintiffs Fail to Allege a Scheme Liability Claim**

Plaintiffs disavow any scheme liability claim in their Opposition. Opp. 16 n.27.

**C.      Plaintiffs Fail to Allege a Section 20(a) Claim**

The Section 20(a) control liability claim falls with the Section 10(b) claim. Mot. 24.

## CONCLUSION

Plaintiffs fail to plead a false statement or a statement rendered misleading by a material omission in the IPO and SPO Materials or elsewhere. Plaintiffs fail to plead a strong inference of scienter. The Complaint should be dismissed with prejudice for failure to state a claim.

---

[17] In *Atlas v. Accredited Home Lenders Hldg. Co.*, 556 F. Supp. 2d 1142, 1156–57 (S.D. Cal. 2008), the complaint went far beyond allegations of title and experience: defendants had access to detailed internal reports "regarding widespread deviations from company policy and the adverse effect [they] were beginning to have," and plaintiffs put forth confidential witnesses showing defendants "actually directed these deviations." Nothing like that is alleged here. *Richard v. Nw. Pipe Co.*, 2011 WL 3813073, at *4–5 (W.D. Wash. Aug. 26, 2011), can be similarly distinguished.

[18] *In re Portal Software, Inc., Sec. Litig.*, 2005 WL 1910923, at *12 (N.D. Cal. Aug. 10, 2005), held that a motive to raise money is insufficient; instead, it "must be combined" with "other 'red flags'" to be probative. *Id*. at *12. In *Flynn v. Sientra, Inc.*, 2016 WL 3360676 (C.D. Cal. June 9, 2016), such red flags were present. Here, they were not.

DEFENDANTS' REPLY ISO MOTION TO DISMISS      - 12 -
2:21-cv-00861-TSZ

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

Dated:  June 6, 2022

Respectfully submitted,

s/ Gregory L. Watts
Gregory L. Watts, WSBA #43995
John C. Roberts Jr., WSBA #44945
Tyre L. Tindall, WSBA #56357
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Telephone: (206) 883-2500
Email:  gwatts@wsgr.com
Email:  jroberts@wsgr.com
Email:  ttindall@wsgr.com

*Attorneys for Defendants Athira Pharma, Inc.,
Glenna Mileson, John M. Fluke Jr., James A.
Johnson, and Joseph Edelman*

s/ Sean C. Knowles
Sean C. Knowles, WSBA #39893
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: (206) 359-6224
Email: sknowles@perkinscoie.com

*Attorneys for Defendant Dr. Leen Kawas*

s/ Anthony Todaro
Anthony Todaro, WSBA #30391
Lianna Bash, WSBA #52598
**DLA PIPER LLP**
701 Fifth Avenue Suite 6900
Seattle, WA  98104-7029
Telephone: (206) 839-4800
Email: anthony.todaro@us.dlapiper.com
Email: liana.bash@us.dlapiper.com

John J. Clarke, Jr (*Pro Hac Vice*)
**DLA PIPER LLP**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Telephone: (212) 335-4920
Email: john.clarke@dlapiper.com

*Attorneys for Defendants Goldman Sachs &
Co., LLC, Jefferies LLC, Stifel, Nicolaus &
Company, Inc., and JMP Securities LLC*

DEFENDANTS' REPLY ISO MOTION TO DISMISS
2:21-cv-00861-TSZ

- 13 -

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500