UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANTONIO BACHAALANI NACIF and WIES RAFI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ATHIRA PHARMA, INC.; and LEEN KAWAS, Ph.D.,

Defendants.

C21-0861 TSZ

ORDER

THIS MATTER comes before the Court on plaintiffs' unopposed motion for preliminary approval of a proposed class settlement, docket no. 118. By Minute Order entered May 31, 2023, docket no. 119, the Court directed counsel to meet and confer and to file a Joint Status Report addressing several issues. Having reviewed the Joint Status Report ("JSR"), docket no. 122, and other materials submitted by the parties, the Court enters the following Order.

**Background**

This case involves publicly traded common stock of defendant Athira Pharma, Inc. ("Athira"), some of which was acquired in connection with Athira's initial public offering ("IPO") in September 2020, some of which was purchased when Athira

ORDER - 1

conducted a secondary public offering ("SPO") in January 2021, and some of which cannot be traced to either the IPO or the SPO.  In this litigation, claims have been made pursuant to:

    (i)    Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) & 78t(a), and United States Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 (collectively, the "Exchange Act Claims"); and

    (ii)    Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k, 77l, and 77o (collectively, the "Securities Act Claims").

Among the individuals who sought appointment as lead plaintiff in this action, Antonio Bachaalani Nacif had the largest financial interest[1] and Wies Rafi had the next largest financial interest.[2]  See Order at 5 (docket no. 60).  Because Nacif, however, cannot trace his stock purchases to the IPO or the SPO and therefore has no standing to assert any claim under the Securities Act, the Court also appointed Rafi as a co-lead plaintiff.  See id. at 5–9.  On January 7, 2022, after their appointment as co-lead plaintiffs, Nacif and Rafi filed the operative pleading, captioned as the Consolidated Amended Complaint ("CAC"), docket no. 74.  See Order at 1 n.1 (docket no. 89).

    By Order entered July 29, 2022, docket no. 89 ("Dismissal Order"), the Court granted in part and denied in part a motion to dismiss brought by defendants, namely

---

[1] From February 19, 2021, until June 16, 2021, Nacif engaged in active trading of Athira stock, purchasing or selling shares multiple times each week.  See Exs. A & B to Townsend Decl. (docket nos. 41-1 & 41-2).  As of June 17, 2021, Nacif held 49,007 shares in two accounts.  Id.

[2] Rafi purchased 150 shares on October 20, 2020, and another 6,450 shares on November 16, 2020.  Exs. B & C to Nivison Decl. (docket no. 43-2 & 43-3).  All of these shares were sold on June 18, 2021, at a loss, which Rafi's counsel has quantified differently under the Securities Act ($44,737.92) and the Exchange Act ($94,145.10).  Id. at Ex. C (docket no. 43-3).

ORDER - 2

Athira, Athira's founder and former Chief Executive Officer (Leen Kawas, Ph.D.), Athira's Chief Financial Officer, members of Athira's Board of Directors, and the underwriters for Athira's stock offerings. <u>See</u> Dismissal Order (docket no. 89). Plaintiffs' Exchange Act Claims were dismissed, without prejudice and with leave to amend as to Athira and the individual defendants, but with prejudice as to the underwriters.[3] <u>See</u> <u>id.</u> at 29–32, 38–39, & 43–49. Except as to claims against Athira and Kawas with respect to a registration statement designated as "Statement 3,"[4] plaintiffs' Securities Act Claims were also dismissed, but with leave to amend the claims asserted

---

[3] The underwriters (Goldman Sachs & Co. LLC, Jeffries LLC, JMP Securities LLC, and Stifel Nicolaus & Company, Inc.) filed a motion for entry of judgment pursuant to Federal Rule of Civil Procedure 54(b), which the Court deferred pending further briefing on the proposed form of partial judgment set forth in the Order entered February 17, 2023, docket no. 114. Pursuant to the parties' stipulation, docket no. 117, the underwriters' Rule 54(b) motion was stricken without prejudice to refiling in the event that a settlement of this matter is not perfected. Docket Entry (Mar. 10, 2023).

[4] Statement 3, which appeared in each prospectus, indicated that, "[i]n December 2011, we entered into an exclusive license agreement with Washington State University Research Fund, or WSURF, which, after the dissolution of WSURF in 2013, was superseded by an amended and restated exclusive license agreement with Washington State University, or WSU, in September of 2015. Under this agreement, WSU granted us an exclusive license to make, use, sell, and offer for sale licensed products and licensed processes that embody the licensed patents (including WSU's rights to a patent jointly owned with Pacific Northwest Biotechnology, Inc.) and that form the underlying technology of the drug therapies we are developing." CAC at ¶¶ 113, 178, & 181 (docket no. 74). In denying defendants' motion to dismiss the Sections 11 and 15 claims against Athira and Kawas as to Statement 3, the Court concluded that "plaintiffs have pleaded a plausible claim that the failure to disclose Kawas's mistakes as a graduate student, while touting the exclusivity of a license for patents founded on Kawas's doctoral work, might have 'misled a reasonable investor about the nature of his or her investment.'" Dismissal Order at 43 (docket no. 89) (quoting <u>In re Daou Sys., Inc., Sec. Litig.</u>, 411 F.3d 1006, 1027 (9th Cir. 2005)). In subsequently denying defendants' motion for reconsideration of this ruling, the Court reasoned that it could not, "based solely on the operative pleading," draw the conclusion that "the omitted fact (namely, Kawas's alteration of certain images in her dissertation and research papers) is 'so obviously unimportant that no reasonable shareholder could have viewed it as significantly altering the 'total mix' of information made available to stockholders.'" Minute Order at ¶ 1 (docket no. 95) (quoting <u>Hemmer Grp. v. SW. Water Co.</u>, 527 F. App'x 623, 626 (9th Cir. 2013)).

ORDER - 3

1 under Sections 11 and 15 of the Securities Act.[5]  *Id.* at 36–43.  Plaintiffs did not,

2 however, amend their pleading by the deadline of August 19, 2022, and no additional

3 party was joined (or rejoined) by the deadline of December 16, 2022.  *See id.* at 50;

4 Minute Order at 1 (docket no. 100); *see also* Order at 5 (docket no. 114) ("The Court is

5 satisfied that plaintiffs' decision not to timely amend their operative pleading renders

6 'final' the earlier dismissal without prejudice." (citing *Hunt v Bloom Energy Corp.*,

7 No. 19-cv-2935, 2021 WL 6617453, at *2 (N.D. Cal. Dec. 1, 2021))).

8       Plaintiffs now seek certification for settlement purposes of a class that includes

9 members who have Securities Act Claims, members who have both Securities Act and

10 Exchange Act Claims, and members who have only Exchange Act Claims.  The proposed

11 settlement class is defined as follows:

12       all persons and entities who or which purchased or otherwise acquired Athira Pharma, Inc. publicly traded common stock: (a) during the period

13

---

14 [5] As to Nacif and Rafi, the claim brought pursuant to Section 12(a)(2) of the Securities Act was dismissed with prejudice.  Dismissal Order at 29 (docket no. 89).  Defendants sought dismissal

15 of the Section 12(a)(2) claim on the ground that neither Nacif nor Rafi purchased Athira stock in the IPO or SPO.  *See id.*; *see also* *DeMaria v. Andersen*, 318 F.3d 170, 177–78 (2d Cir. 2003)

16 (explaining that Section 12 "establishes liability on the part of a seller 'to the person purchasing such security from him,'" and thereby requires "privity between the purchaser and seller" of the

17 stock at issue); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080–81 (9th Cir. 1999).  In response, plaintiffs withdrew the Section 12(a)(2) claim, and the Court observed that, although

18 Nacif and Rafi had purported in their Consolidated Amended Complaint to represent "a class of individuals and entities that 'purchased or otherwise acquired Athira publicly traded common

19 stock *pursuant* and/or traceable to Athira's September 2020 IPO or January 2021 SPO,' CAC at ¶ 215(b), . . . they appear[ed] to concede that they could not, as to such class, meet the

20 requirements of Federal Rule of Civil Procedure 23."  Dismissal Order at 29 n.5 (docket no. 89) (alteration and emphasis added).  Nevertheless, Nacif and Rafi now seek certification for

21 settlement purposes of this same class, rather than a class that is more consistent with Section 11 of the Securities Act.  *See* *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir.

22 2013) ("those who purchased shares in the aftermarket have standing to sue [under Section 11 of the Securities Act] provided they can *trace* their shares back to the relevant offering" (emphasis added)).

23

ORDER - 4

> from September 17, 2020[,] through June 17, 2021, inclusive; (b) pursuant and/or traceable to the registration statement and prospectus issued in connection with the Company's September 2020 initial public offering; and/or (c) pursuant and/or traceable to the registration statement and prospectus issued in connection with the Company's January 2021 secondary public offering, and were damaged thereby.

Stipulation and Agreement of Settlement ("Stipulation") at ¶ 1(ss) (docket no. 118-2 at 14). Notwithstanding the concerns raised by the Court in its Minute Order entered May 31, 2023, docket no. 119, the parties have made no changes to their Stipulation, which memorializes the proposed class settlement.

**Discussion**

**A.      Conflict-of-Interest**

Given the procedural posture of this case and the terms of the proposed class settlement, the Court cannot make the requisite finding that the class representatives are able to adequately protect the interests of the proposed settlement class. See Fed. R. Civ. P. 23(e)(2)(A). The parties have acknowledged that the dismissal of (and decision not to replead) the Exchange Act Claims binds only the co-lead plaintiffs, see JSR at 9 (docket no. 122 at 16), meaning that Nacif's and Rafi's positions are not typical of those of the absent class members. See Fed. R. Civ. P. 23(a)(3). Indeed, the only way that Nacif can recover from this lawsuit is through settlement, and thus, his interests are antagonistic toward all class members; although Rafi still has viable Securities Act Claims, his interests nevertheless conflict with those of other class members. See Epstein v. MCA, Inc., 179 F.3d 641, 652–53 (9th Cir. 1999) (Thomas, C.J., dissenting) (observing that the class representatives in a Delaware class action, who had settled the appellants' federal

claims, were themselves precluded by the statute of limitations from asserting such federal claims, and were therefore motivated "to settle the federal claims at any price").

In their Joint Status Report, counsel cite to <u>In re Patriot National, Inc. Securities Litigation</u>, 828 F. App'x 760 (2d Cir. 2020), and <u>In re Flag Telecom Holdings, Ltd. Securities Litigation</u>, 574 F.3d 29 (2d Cir. 2009).  Neither of these cases is on point because they both involved still viable Exchange Act and Securities Act claims.  In <u>Patriot National</u>, "the lead plaintiffs and every shareholder had an Exchange Act claim," but only some class members also had Securities Act and Delaware state law claims.  828 F. App'x at 764.  The estimated worth of the Exchange Act claim ($106 million) far exceeded the anticipated values of the Securities Act claim ($39 million) and Delaware state law claim ($50 million), the defendant had filed for bankruptcy, and the potential insurance-policy funds were "wasting," creating a risk that further litigation would drain the amount available to shareholders.  <u>See</u> <u>id.</u> at 762–64.  In <u>Flag Telecom</u>, the district court certified a class with members who alleged claims under both the Securities Act and the Exchange Act.  574 F.3d at 31.  In an interlocutory appeal, the defendants argued that certification was improper because "success for the '34 [Exchange] Act plaintiffs necessarily precludes recovery by the '33 [Securities] Act plaintiffs and vice-versa." <u>Id.</u> at 35.  Although the Second Circuit concluded that the plaintiffs could "proceed as a single class in establishing that each of the misstatements alleged in the complaint was a proximate cause of some portion" of the plaintiffs' losses, it acknowledged that the interests of class members might "diverge" with respect to proving "the extent of harm" caused by each misstatement, in which event the lower court would need to take action

ORDER - 6

1  "to see that all members of the class are protected." Id. at 36–37.  Thus, Flag Telecom

2  does not support, but rather undermines, the parties' contention that the Court can certify

3  the proposed settlement class despite a fundamental intraclass conflict.

4  **B.    Equitable Treatment**

5      In addition, the Court cannot certify that the proposed settlement "treats class

6  members equitably relative to each other." See Fed. R. Civ. P. 23(e)(2)(D).  Unlike in the

7  case cited by the parties, namely In re InfoSpace, Inc. Securities Litigation, W.D. Wash.

8  Case No. C01-913 TSZ, in which the net settlement fund was allocated 40% to Securities

9  Act claimants and 60% to Exchange Act claimants, see Prop. Notice at § VIII, Ex. A-1 to

10  Order (C01-913 TSZ, docket no. 104 at 24), in this matter, the parties have set no limit on

11  the portion of the settlement proceeds from which class members who have no viable

12  Securities Act Claims may recover.  Rather, under plaintiffs' proposed *pro rata*

13  distribution plan,[6] class members with Exchange Act Claims could recover, in the

---

[6] The proposed settlement requires the Claims Administrator to determine "each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants." See Stipulation at ¶ 20 (docket no. 118-2 at 24).  The proposed settlement does not define "Recognized Claim," but rather refers to the Proposed Plan of Allocation, which is imbedded within a proposed form of notice to class members, and which is "not a necessary term of the Settlement." Id. at ¶¶ 20–21; see id. at ¶ 21 ("[I]t is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.").  According to plaintiffs' Proposed Plan of Allocation, a "Recognized Claim" is the sum of Recognized Loss Amounts for all shares of Athira common stock.  See Revised Notice, Proposed Plan of Allocation at ¶ 59 (docket no. 122-1 at 17).  With respect to "Authorized Claimant," the proposed settlement does provide a definition, specifying that such entity is a member of the settlement class who "submits a Proof of Claim Form to the Claims Administrator that is approved for payment from the Net Settlement Fund."  Stipulation at ¶ 1(d) (docket no. 118-2 at 8).  Under the proposed settlement, any member of the settlement class "who does not submit a valid Claim Form will not be entitled to receive any distribution form the Net Settlement Fund, but . . . will be permanently barred and enjoined from bringing any action, claim, or other

ORDER - 7

aggregate, more than class members with Securities Act (or both Securities Act and Exchange Act) Claims, even though their claims have little value in light of the Court's Dismissal Order.

Plaintiffs' unilateral and non-binding Proposed Plan of Allocation, see supra note 6, outlines the following method for calculating a "Recognized Loss Amount," which would be used to determine the related *pro rata* share of the net settlement fund:

| Purchase/Sale Status of Athira Share | Recognized Loss Amount |
|---|---|
| Share was purchased and sold prior to the close of U.S. financial markets on June 17, 2021 | $0 |
| Share was purchased between September 17, 2020, and June 17, 2021, and sold between June 18, 2021, and September 15, 2021 | LESSER of:<br>• $7.14 per share<br>• purchase price minus sale price<br>• purchase price minus "90-Day Lookback Value"[7] |
| Share was purchased between September 17, 2020, and June 17, 2021, and still held as of the close of trading on September 15, 2021 | LESSER of:<br>• $7.14 per share<br>• purchase price minus $10.33 per share |
| Share was purchased on or after June 18, 2021 | $0 |

See Revised Notice, Proposed Plan of Allocation at ¶ 56 (docket no. 122-1 at 16). To "reflect the Court's rulings . . . , which dismissed the Exchange Act [C]laims," plaintiffs'

---

proceeding of any kind against the Released Defendants' Parties with respect to the Released Plaintiffs' Claims." Id. at ¶ 22 (docket no. 118-2 at 24). In this manner, the proposed settlement includes an opt-in component, while also incorporating the opt-out formalities required by Federal Rule of Civil Procedure 23.

[7] The "90-Day Lookback Value" is set forth in Table 2 of the Proposed Plan of Allocation, which provides a figure for each possible sale date between June 18, 2021, and September 15, 2021, ranging from a high of $11.15 per share on June 18, 2021, to a low of $10.22 per share in late August 2021. See Revised Notice, Proposed Plan of Allocation at Table 2 (docket no. 122-1 at 16–17).

ORDER - 8

Proposed Plan of Allocation indicates that the Recognized Loss Amounts for class members with Securities Act Claims will be increased by 25%. *Id.* at ¶ 53 (docket no. 122-1 at 15). The Recognized Loss Amounts relating to Exchange Act Claims will, however, generally be higher than those associated with Securities Act Claims because the per share price increased after the IPO and SPO and remained higher than the IPO price until June 18, 2021, when it fell from $18.24 per share to $11.15 per share. *See* CAC at ¶¶ 89–90 & 96 (docket no. 74) (during the IPO, Athira sold 13,397,712 shares of common stock at a price of $17.00 per share; in connection with the SPO, Athira sold another 4,600,000 shares of common stock at a price of $22.50 per share); *see also* King Decl. at ¶¶ 3 & 6 (docket no. 122-5). As of the fiscal quarter ending June 30, 3021, Athira had 37,251,711 outstanding shares, *see* Ex. B to Mulholland Decl. (docket no. 122-4), which suggests that less than 48.5% of Athira's stock is traceable to either the IPO or the SPO.[8] Given the intraclass competition inherent in plaintiffs' Proposed Plan of Allocation, and the lack of evidentiary or analytic support for the proposition that a 25% increase would adequately protect the interests of class members who can trace their shares to the IPO and/or SPO, the Court cannot conclude that the proposed settlement is equitable and fair in light of the procedural postures of the respective claims.

---

[8] According to plaintiffs' counsel, an unnamed consulting financial expert has opined that 21,362,253 Athira shares were allegedly damaged. JSR at 22 (docket no. 122 at 29). No report or declaration of such expert was submitted, and no estimate has been given concerning what percentage of the allegedly damaged shares are traceable to the IPO and/or SPO.

ORDER - 9

C. **Other Issues**

In response to the Court's inquiries, see Minute Order (docket no. 119), the parties provided additional information and/or explanation in their Joint Status Report, docket no. 122. The parties have addressed the Court's concerns and/or questions about numerosity, the proposed *cy pres* recipient, the requisite notices to Attorneys General pursuant to 28 U.S.C. § 1715, and the status of the related derivative actions. In addition, the parties have agreed that any disputes about the amounts of class member distributions may be resolved by plaintiffs' counsel and/or the Claims Administrator, as opposed to the Court, but they have not amended their Stipulation accordingly. See Minute Order at ¶ 1(g) (docket no. 119); JSR at 24 (docket no. 122 at 31). The parties have also provided support for a hybrid opt-in/opt-out settlement structure,[9] indicating that, historically, between 66% and 71% of the shares of Athira have been owned by institutions that must file a Form 13F with the SEC on a quarterly basis.[10] See Mulholland Decl. at ¶ 30, n.5, &

---

[9] The Court has refused to approve similar proposals requiring an opt-in to obtain a share of the proceeds, as well as an opt-out to avoid being bound by the settlement. See O&R Constr., LLC v. Dun & Bradstreet Credibility Corp., No. C12-2184, 2017 WL 6526568, at *1 (W.D. Wash. Dec. 21, 2017) (declining to approve "the proposed 'opt-in' system devised by the parties, pursuant to which class members would be required to submit a nine-page claim form to obtain their shares of the settlement proceeds"); see also Boyd v. Bank of Am., N.A., No. C18-1207, 2020 WL 3839630, at *3 (W.D. Wash. July 8, 2020) (declining to approve "any provision of the Settlement Agreement that requires class members to 'opt in' to the settlement by mailing an Adjustment Form to the Settlement or Claims Administrator"); Pine v. A Place for Mom, Inc., No. C17-1826, 2019 WL 6683511, at *1–3 (W.D. Wash. Dec. 5, 2019) (rejecting a proposal to segregate the class into two groups, one of which would be required to "opt in" by filing a claim form).

[10] Institutional investment managers who exercise discretion with respect to accounts that hold securities as defined by Section 13 of the Exchange Act, 15 U.S.C. § 78m, and have an aggregate fair market value on the last day of trading in any month of at least $100 million must file a Form 13F with the SEC on a quarterly basis. See 17 C.F.R. § 240.13f-1(a)(1).

Ex. B (docket no. 122-4).  The Court, however, defers ruling on the appropriateness of a claim-form (opt-in) requirement until after the parties resolve, if they can, the issues described in Paragraphs A and B, above.  If plaintiffs renew their motion for preliminary approval of a class settlement, they should further address the following topics that were raised in the prior Minute Order, docket no. 119.

### 1. Traceability

In their Joint Status Report, the parties explained that, for purposes of plaintiffs' Securities Act Claims, they wish to use the purchase date of Athira stock (i) as the sole measure for whether shares are traceable to the IPO, and (ii) in combination with the purchase price for assessing whether shares are traceable to the SPO.  *See* JSR at 5–8 (docket no. 122).  "Tracing may be established either through proof of a direct chain of title from the original offering to the [plaintiff] . . . or through proof that the [plaintiff] bought her shares in a market containing only shares issued pursuant to the allegedly defective registration statement."  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 31 n.1 (2d Cir. 2006) (alterations in original, quoting *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 117–18 (S.D.N.Y. 2004), *vacated*, 471 F.3d 24 (2d Cir. 2006)).[11]  With regard to traceability, additional information is needed.  First, to establish that shares bought between the date of the IPO (September 17, 2020) and the day before the SPO (*i.e.*, January 20, 2021) are traceable to the IPO, the parties must confirm that the

---

[11] In their Joint Status Report, the parties cited the district court decision in *In re Initial Public Offering Securities Litigation*, without disclosing that it had been vacated by the Second Circuit.  *See* JSR at 6 (docket no. 122 at 13).

ORDER - 11

17,689,683 pre-existing shares[12] were subject to the lockup agreement, which prohibited the sale of unregistered shares for 180 days following the IPO – or until March 16, 2021. See JSR at 7 (docket no. 122 at 14).  Second, the parties must explain (i) why class members should be asked to trace to either the IPO or SPO when Statement 3, the only remaining basis for Securities Act Claims, was in each prospectus; and (ii) why the parties have chosen February 10, 2021, rather than the day before the lockup period expired (i.e., March 15, 2021), as the end date for Securities Act Claims.

### 2. Net Settlement Proceeds

The parties have provided information suggesting that the amount of the net settlement fund may be calculated as follows:

| | |
|---|---:|
| Gross Settlement Amount | $10,000,000.00 |
| Interest (5% in one year) | + $     500,000.00 |
| Attorney's Fees | - $  3,333,333.33 |
| Litigation Costs | - $     125,000.00 |
| Settlement Administration Fees | - $     200,000.00 |
| Taxes (assuming 5% interest) | - $     200,000.00 |
| Escrow Account Fees | - $         5,200.00 |
| Net Settlement Fund[13] | = $  6,636,467.00 |

Based on plaintiffs' expert's estimate of 21,362,253 damaged shares, see supra note 8, the parties have calculated an average recovery of $0.31 per share, but they have not

---

[12] As of the fiscal quarter ending September 30, 2020, Athira had 31,087,395 outstanding shares. See Ex. B to Mulholland Decl. (docket no. 122-4).  Of those shares, only 13,397,712 were sold during the IPO.  The Joint Status Report describes the types of entities that were subject to the lockup agreement, but it does not indicate how many shares were affected or expressly state that no shares pre-existing the IPO were traded before March 16, 2021.

[13] The proposed settlement does not appear to include any incentive or service awards to the co-lead plaintiffs.  See Stipulation at ¶ 1(aa) (docket no. 118-2 at 11).

ORDER - 12

provided the expected range (minimum and maximum) of payments among class members.  The parties have not explained why they cannot provide such values.  They have proposed a "nominal amount" of $10.00, which the ratio of a Recognized Claim to all Recognized Claims multiplied by the net settlement amount must meet or exceed to be eligible for payment.  See Minute Order at ¶ 1(f) (docket no. 119); JSR at 22–24 (docket no. 122 at 29–31).  Thus, any notice to class members should set forth the "nominal amount" as the minimum recovery.  The parties have not offered any reason why they cannot compute the maximum anticipated award.  The proposed Claims Administrator (Strategic Claims Services) presumably knows the average and/or median rates of claim-form submissions in matters of this nature (i.e., the percentage of class members who supply stock-purchase/sale data to a Claims Administrator), and the parties appear to have information concerning the entities with the largest numbers of shares in Athira, see Ex. B to Mulholland Decl. (docket no. 122-4).  Although the Court agrees with the parties that class members need not be told what their individual payments from the net settlement fund might be, the Court believes that class members are entitled to know the range of anticipated awards so that they can decide whether to object or seek exclusion from the settlement.  Moreover, the Court requires such information to assess whether the settlement is "fair, reasonable, and adequate."  See Fed. R. Civ. P. 23(e)(2).

/ / /

/ / /

/ / /

/ / /

ORDER - 13

**Conclusion**

For the foregoing reasons, the Court ORDERS as follows:

(1) Plaintiffs' unopposed motion for preliminary approval of a proposed class settlement, docket no. 118, is DENIED, without prejudice to renewing the motion, if appropriate, after further settlement negotiations.

(2) The Court will enter a partial judgment pursuant to Rule 54(b) in form set forth in the Order entered February 17, 2023, docket no. 114, and will set the remaining claims in this matter for trial unless a renewed motion for preliminary approval of a proposed class settlement is filed within sixty (60) days of the date of this Order.

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 27th day of September, 2023.

Thomas S. Zilly
United States District Judge