THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTONIO BACHAALANI NACIF and WIES RAFI, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ATHIRA PHARMA, INC., et al.,<br><br>　　　　　Defendants. | CASE NO.: 2:21-cv-00861-TSZ<br><br>**PLAINTIFFS' RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**NOTE ON MOTION CALENDAR: SAME DAY MOTION** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

I.  THE SETTLEMENT CLASS HAS BEEN BROKEN INTO TWO DISTINCT CLASSES AND PROVIDES A CLEAR DEMARCATION BETWEEN SECURITIES ACT AND EXCHANGE ACT CLAIMS ...................................................... 5

II. ANY POTENTIAL INTRACLASS CONFLICT HAS BEEN REMEDIED BY THE INCLUSION OF PLAINTIFF GAO AND THE MEDIATION PROCESS ............ 6

    A.  There Is No Conflict Between The Lead Plaintiffs And The Settlement Class ........................................................................................................................ 6

    B.  Any Potential Conflict Between The Lead Plaintiffs And The Settlement Class Was Remedied By The Inclusion Of Hang Gao And The Mediation Process For Determining The Proposed Allocation ................................................ 8

III. THE PARTIES HAVE REVISED THE SETTLEMENT DOCUMENTS IN ACCORDANCE WITH THE COURT'S DIRECTIVES .............................................. 10

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Rules**

Fed. R. Civ. P. 23(a) .................................................................................................................. 1

Fed. R. Civ. P. 23(b)(3) ............................................................................................................. 1

Fed. R. Civ. P. 23(e) .................................................................................................................. 1

**Other Authority**

1 *Newberg and Rubenstein on Class Actions* § 3:58 (6th ed. 2023) ............................................ 7

Section 11 of the 1933 Act- Who Can Sue; Nature of Suit Under Section 11
    2 Law Sec. Reg. § 7:18 ........................................................................................................ 6

# PRELIMINARY STATEMENT

Lead plaintiffs Wies Rafi ("Rafi")[1] and Antonio Bachaalani Nacif ("Nacif," and together with Rafi, "Lead Plaintiffs") initially moved for preliminary approval of a proposed settlement of the above-captioned class action (the "Action") on April 28, 2023, in the amount of $10,000,000 in cash (the "Settlement Amount"), pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e). Dkt. No. 118. Thereafter, on May 31, 2023, the Court entered a Minute Order, directing counsel to meet and confer and to file a Joint Status Report addressing a variety of issues, including, *inter alia*: (i) the definition of the proposed settlement class in light of the Court's prior dismissal of the claims brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act"); (ii) traceability and its effect on the proposed class period; (iii) the allocation of the Settlement Amount between class members with claims under the Securities Act of 1933 ("Securities Act") and those with only Exchange Act claims; (iv) numerosity; (v) *cy pres* recipients; and the (vi) suitability of an "opt in" approach requiring a claims process. Dkt. No. 119. On June 30, 2023, the Parties submitted the 29-page Joint Status Report, which included several declarations and revised documents, as well as under seal filings of documents requested by the Court (*i.e.*, the confidential supplemental agreement concerning requests for exclusion and the confidential documents produced by Athira as part of the settlement process). *See* Dkt. Nos. 120-122.

On September 27, 2023, the Court entered an Order (the "September 27 Order") denying the preliminary approval motion and allowing the Parties to submit a renewed motion. *See* Dkt.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Amended Stipulation and Agreement of Settlement, dated December 15, 2023 ("Amended Stipulation"), which is attached as Exhibit 1 to the concurrently filed Supplemental Declaration of Thomas G. Hoffman, Jr. ("Hoffman Declaration"). Attached as Exhibit 2 to the Hoffman Declaration is a redlined comparison of the Amended Stipulation to the original Stipulation and Agreement of Settlement.

No. 123. The Court noted that "[n]otwithstanding the concerns raised by the Court in its Minute Order entered May 31, 2023, docket no. 119, the parties have made no changes to their Stipulation . . . ." *Id*. at 5. According to the Order, there were two main issues that resulted in the denial of the preliminary approval motion.

*First*, the Court found that there was an intraclass conflict of interest between Lead Plaintiffs and the settlement class because Lead Plaintiffs' Exchange Act claims had been dismissed, without a subsequent amendment or notice of appeal, putting them in a different position relative to other putative class members whose Exchange Act claims had not been dismissed. *See id.* at 5-6.

*Second*, the Court found the proposed settlement was not equitable and fair because "class members with Exchange Act Claims could recover, in the aggregate, more than class members with Securities Act (or both Securities Act and Exchange Act) Claims, even though their claims have little value in light of the Court's Dismissal Order." *Id.* at 7-8. Following further analysis, the Court held that "[g]iven the intraclass competition inherent in plaintiffs' Proposed Plan of Allocation, and the lack of evidentiary or analytic support for the proposition that a 25% increase would adequately protect the interests of class members who can trace their shares to the IPO and/or SPO, the Court cannot conclude that the proposed settlement is equitable and fair in light of the procedural postures of the respective claims." *Id*. at 9.

The Court ordered that "if plaintiffs renew their motion for preliminary approval of a class settlement, they should further address the following topics that were raised in the prior Minute Order, docket no. 119": traceability and the expected range (minimum and maximum) of payments among class members. *See id*. at 11-12.

In light of the Court's September 27 Order, the Parties have now entered into the Amended Stipulation. The Amended Stipulation is informed by the Court's September 27 Order, is the

result of additional settlement negotiations between the parties (including an additional plaintiff with claims under the Exchange Act), and proposes a revised Plan of Allocation that is the result of an adversarial arm's-length process between (i) counsel advocating for a larger share of the Settlement Fund for Settlement Class Members with Securities Act claims (the "Securities Act Class"), and (ii) counsel advocating for those Settlement Class Members with Exchange Act claims (the "Exchange Act Class"). This arm's-length process was overseen by Jed Melnick, Esq., of JAMS, the mediator who originally assisted the parties in settling this Action and was thus already familiar with the facts and issues in the case. This time, however, Mr. Melnick's role was not to assist the parties in agreeing on a settlement amount; rather, he was asked to determine the appropriate allocation of the Settlement Fund between shareholders with Securities Act claims, and those with Exchange Act claims, given, *inter alia*, the procedural posture of the case and damages sustained by each group of investors. *See* Declaration of Jed Melnick, Esq. ("Melnick Decl."), at ¶2, attached as Exhibit 3 to Hoffman Declaration.

As part of the supplemental mediation process and to ensure the interests of the Exchange Act Class Members were protected, Lead Plaintiffs invited Hang Gao ("Gao"; and together with Lead Plaintiffs, "Plaintiffs"), who was a named plaintiff in the initial Complaint in this Action (*see* Dkt. No. 1), and his counsel, Block & Leviton LLP, to participate in the process (the "Allocation Mediation").[2] At the Allocation Mediation, Rafi and his counsel represented the Securities Act Class, Nacif and Gao and their respective counsel represented the Exchange Act Class, and counsel for Athira represented Defendants. In advance of the Allocation Mediation, all parties submitted detailed written mediation statements to the mediator and the mediator was provided with a damages analysis of the two sets of claims. Thereafter, all parties participated in

---

[2] The Amended Stipulation adds Mr. Gao as an additional named plaintiff, and Block & Leviton as additional Plaintiffs' Counsel. *See* Amended Stipulation ¶¶1(hh) and 1(ii).

a virtual mediation session. As a result of this process, Mr. Melnick (who sets out his rationale in a declaration filed herewith) allocated *at least* 91.5% of the Net Settlement Fund to the Securities Act Class and *no more than* 8.5% to the Exchange Act Class. *See* Melnick Decl., at ¶3. This allocation was subsequently incorporated into the revised plan of allocation. *See* Notice ¶¶45-69, Ex. A-1 to Amended Stipulation. Plaintiffs believe the revised plan of allocation is fair and reasonable, and respectfully submit that the adversarial process upon which it was based cures any potential intraclass conflicts and concerns about the recovery of those with claims under the Securities Act.

The Parties have also revised the settlement documents to address the Court's other concerns. Principally, the Settlement Class has been broken into two classes (*i.e.*, the Securities Act Class and Exchange Act Class), each with its own class period and a simplified way of distinguishing between Securities Act claims and Exchange Act claims, and Plaintiffs have provided an estimated minimum and maximum potential recovery of a Settlement Class Member. *See* Amended Stipulation at ¶¶1(r), (s), (xx), (tt) and (uu), and Notice at ¶4.

In addition, Plaintiffs are submitting herewith: (i) the Declaration of Zachary Nye Ph.D. ("Nye Declaration"), which provides the Court with information on per-share damages and recoveries, class-wide damages for the Securities Act and Exchange Act Classes, as well as the estimated maximum recovery for Athira's largest publicly-known investor; (ii) the Declaration of Peter Joy, Esq. ("Joy Declaration"), an expert in ethics addressing issues related to the Court's conflict of interest concerns; and (iii) the Declaration of Laura S. Duncan ("Duncan Declaration"), which discusses the IPO lock-up period and expiration thereof.[3]

Based on information provided herewith, and the argument set forth below and in Lead

---

[3] The Nye Declaration, Joy Declaration, and Duncan Declaration are attached to the Hoffman Declaration as Exhibits 4, 5 and 6, respectively.

Plaintiffs' prior submissions concerning the standards of preliminary approval of class action settlements under Rule 23(e), Plaintiffs respectfully request the Court grant preliminary approval of the revised Settlement.[4]

## I. THE SETTLEMENT CLASS HAS BEEN BROKEN INTO TWO DISTINCT CLASSES AND PROVIDES A CLEAR DEMARCATION BETWEEN SECURITIES ACT AND EXCHANGE ACT CLAIMS

Defendants have confirmed that the "lock-up" restrictions applied to all non-IPO Athira shares from the IPO through and including March 16, 2021. *See* Duncan Declaration ¶¶3-8.[5] As such, tracing is not an issue from September 17, 2020 through March 16, 2021. *Id.* As set forth in the Duncan Declaration, the lock-up expired before the market opened on March 17, 2021, and thus certain Athira affiliated shareholders with non-IPO shares were free to trade their shares on the open market, making tracing impossible from that date until the end of the Class Period on June 17, 2021. *Id.* at ¶7. Thus, the Parties were able to cleanly divide the Settlement Class (and the Class Period) into two distinct parts, the Securities Act Class and the Exchange Act Class:

- The Securities Act Class is comprised of all persons and entities who or which purchased or otherwise acquired Athira Pharma, Inc. ("Athira") publicly traded common stock during the period from September 17, 2020 through March 16, 2021, inclusive (the "Securities Act Period"), and were damaged thereby. Amended Stipulation, ¶¶1(tt) and 1(uu); and

---

[4] This memorandum focuses on the issues the Court indicated in the September 27 Order that it wanted Plaintiffs to address. Plaintiffs respectfully refer the Court to their earlier motion for an analysis of the Rule 23 factors and the adequacy of the notice program. *See* Dkt. No. 118. Moreover, since "[t]he parties have addressed the Court's concerns and/or questions about numerosity, the proposed cy pres recipient, the requisite notices to Attorneys General pursuant to 28 U.S.C. § 1715, and the status of the related derivative actions" and the "parties have also provided support for a hybrid opt-in/opt-out settlement structure [,]" this memorandum does not address these issues. September 27 Order at 10-11.

[5] Defendants further confirm that as of the closing of Athira's IPO, there were 19,087,472 shares of common stock subject to lock-up or market stand-off restrictions. *See* Duncan Decl., at ¶4; September 27 Order at 12 n. 12 (explaining that the Joint Status Report "does not indicate how many shares were affected or expressly state that no shares pre-existing the IPO were traded before March 16, 2021").

- The Exchange Act Class is comprised of all persons and entities who or which purchased or otherwise acquired Athira publicly traded common stock during the period from March 17, 2021 through June 17, 2021, inclusive (the "Exchange Act Period"), and were damaged thereby. Amended Stipulation, ¶¶1(r)-(s).[6]

Plaintiffs' damages expert has estimated the amount of potential damages for each Class as follows:[7]

|  | Damaged Shares | Damages | Avg Per-Share |
|---|---|---|---|
| Securities Act Class | 12.72 million | $83.10 million | $6.53 |
| Exchange Act Class | 8.64 million | $60.76 million | $7.03 |
| **Total** | **21.36 million** | **$143.86 million** | **$6.73** |

The Amended Stipulation and its exhibits reflect this new, two-class structure.

## II. ANY POTENTIAL INTRACLASS CONFLICT HAS BEEN REMEDIED BY THE INCLUSION OF PLAINTIFF GAO AND THE MEDIATION PROCESS

### A. There Is No Conflict Between The Lead Plaintiffs And The Settlement Class

The Court reasoned that "the dismissal of (and decision not to replead) the Exchange Act Claims binds only the co-lead plaintiffs" and, as a result, "that Nacif's and Rafi's positions are not typical of those of the absent class members." September 27 Order, at 5. According to the Court, this is because "the only way that Nacif can recover from this lawsuit is through settlement, and thus, his interests are antagonistic toward all class members; although Rafi still has viable Securities Act Claims, his interests nevertheless conflict with those of other class members." *Id.*

---

[6] In its September 27 Order, the Court reasoned that the prior class definition was inconsistent with Section 11 to the extent it included purchasers who acquired Athira stock "*pursuant*" to the registration statements for the relevant offerings rather than stock "traceable" to them. September 27 Order at 4 n.5 (emphasis in original). However, Section 11 provides a cause of action to persons who acquire securities pursuant or traceable to a defective registration statement. *See* "Section 11 of the 1933 Act—Who Can Sue; Nature of Suit Under Section 11," 2 Law Sec. Reg. § 7:18 ("There are two distinct ways to establish section 11 standing: either (1) by showing plaintiff acquired the securities directly from the registered offering or (2) by tracing the shares if they were acquired in the aftermarket."). As such, purchasers in the IPO and SPO have Section 11 claims that are independent of the dismissed Section 12(a)(2) claims.

[7] *See* Nye Decl., at ¶15; *see also id.* at ¶18 (calculating the estimated maximum recovery of any shareholder for purposes of the Notice).

Plaintiffs respectfully submit there is no conflict.

*First*, Co-Lead Counsel conducted an exhaustive investigation into the facts underlying the claims in this case. While they disagree with the Court's decision dismissing the Exchange Act claims as a matter of law, absent changed factual circumstances or new evidence coming to light, the ability of any plaintiff to amend the Exchange Act claim and prevail at the District Court level appear to be nonexistent. Yet, the Lead Plaintiffs still have appellate rights as to the Exchange Act claims and there is a value to those rights, as evidenced by the fact that Defendants are willing to pay to extinguish these rights, thus ensuring they do not have to expend the costs and expenses of an appeal and eliminating the risk that the Exchange Act claims could be revived.

*Second*, Lead Plaintiffs and their counsel do not believe there is a conflict of interest, and respectfully submit the declaration of Peter A. Joy, Esq., a leading expert on legal ethics, in support thereof. *See* Joy Declaration ¶¶2-10 (outlining his significant qualifications as an expert on legal ethics and professional responsibility issues). As Professor Joy explains, because the "Defendants wish to settle Nacif's claims as well as the claims of other class members with Exchange Act Claims" "Nacif is similarly situated to class members with Exchange Act Claims because neither Nacif nor such other putative plaintiffs can trace some of their stock purchases to the IPO or SPO." Joy Decl. ¶19. As such, even though the Court has found that "the only way Nacif can recover from this lawsuit is through settlement, and thus, his interests are antagonistic toward all class members," this is not a conflict because "as the authors of a leading treatise explain: 'All that is required—as the phrase 'absence of conflict' suggests—is such sufficient similarity of interest that there is no affirmative antagonism between the representative and the class.' 1 *Newberg and Rubenstein on Class Actions* § 3:58 (6th ed. 2023)." *Id*.

*Third*, because "the Defendants seek to settle all claims, including all Exchange Act

Claims and Securities Act Claims," the Lead Plaintiffs do not have a conflict of interest. *See* Joy Decl. at 7. As Professor Joy further explains, courts find a putative class member inadequate under two situations: (i) where a plaintiff has antagonistic or conflicting interests with the class and (ii) where the economic interests and objectives of the named representatives differ significantly from the economic interests and objectives of unnamed class members. Neither situation applies to the circumstances before the Court. *See* Joy Decl. ¶¶16-17.

**B. Any Potential Conflict Between The Lead Plaintiffs And The Settlement Class Was Remedied By The Inclusion Of Hang Gao And The Mediation Process For Determining The Proposed Allocation**

In the September 27 Order, the Court questioned whether the proposed Plan of Allocation potentially allotted too much money to those that have Exchange Act claims relative to those that have Securities Act claims:

> [U]nder plaintiffs' proposed *pro rata* distribution plan, class members with Exchange Act Claims could recover, in the aggregate, more than class members with Securities Act (or both Securities Act and Exchange Act) Claims, ***even though their claims have little value in light of the Court's Dismissal Order***. . . .
>
> Given the intraclass competition inherent in plaintiffs' Proposed Plan of Allocation, and the lack of evidentiary or analytic support for the proposition that a 25% increase would adequately protect the interests of class members who can trace their shares to the IPO and/or SPO, the Court cannot conclude that the proposed settlement is equitable and fair in light of the procedural postures of the respective claims.[8]

September 27 Order at 7-9.

Following the Court's determination that the allocation was too generous to those with Exchange Act claims, the parties decided that the best way forward and to avoid any potential conflicts of interest and reach the most appropriate allocation between claims under the Securities Act and claims under the Exchange Act was to engage in an arm's-length mediation process

---

[8] All emphasis is added unless otherwise stated.

before Mr. Melnick, who had mediated the original settlement. In this process, the proposed Securities Act Class was represented by Lead Plaintiff Wies Rafi (and his counsel, Glancy Prongay & Murray LLP), the proposed Exchange Act Class was represented by Lead Plaintiff Antonio Nacif and Hang Gao (and their counsel, Labaton Sucharow LLP and Block & Leviton LLP, respectively), and Defendants were represented by Defendant Athira (and Athira's counsel Wilson Sonsini Goodrich & Rosati, P.C).

In advance of the mediation session, counsel for each of the Parties submitted letter briefs supporting their views and Plaintiffs provided Mr. Melnick a summary of their damages expert's report. Moreover, counsel for Plaintiffs explained that the amended settlement would propose two distinct settlement classes and provided Mr. Melnick with damages estimates for each settlement class.

On November 16, 2023, counsel for the Parties participated in a half-day session, via Zoom videoconference, with Mr. Melnick. During the session, counsel shared competing perspectives on the strengths and weaknesses of the Securities Act and Exchange Act claims, the relative value of the claims, the amount of damages available under each, the potential number of Securities Act and/or Exchange Act shares, the likelihood of a successful appeal of the Court's dismissal of the Exchange Act claims, and Defendants' reasons and motivations for settling the Action and agreeing to the Settlement Amount.

Following this process, Mr. Melnick determined that a fair and reasonable distribution of the Settlement Fund is to assign no less than ninety-one and a half percent (91.5%) of the net settlement proceeds to the Securities Act Class and up to eight and a half percent (8.5%) of the net settlement proceeds to the Exchange Act Class.[9]

---

[9] A summary of the process and Mr. Melnick's rationale for the allocation between the two types of claims can be found in his declaration. Melnick Decl. at ¶¶3-4, 10-19.

The Parties believe this allocation, which provides almost all the Settlement Amount to the Securities Act Class and some recovery for the Exchange Act Class in light of its appellate rights and Defendants' desire for litigation peace, is fair and equitable. Moreover, to ensure the Exchange Act Class will not receive a windfall recovery in the event that a very small portion of the Exchange Act Class submits claims, the revised Plan of Allocation includes a provision that limits the Exchange Act Class to its actual percentage of recovery in the event that the value of its claims does not constitute 8.5% of the Net Settlement Fund. *See* Notice at ¶67 ("If the total cumulative payments of all Exchange Act Claims of Authorized Claimants is less than 8.5% of the Net Settlement Fund, then the Exchange Act Claims will be limited to their actual lesser proportion of the Net Settlement Fund. Any excess will be transferred to the Securities Act Allocation.").[10] Additionally, any order approving the revised Plan of Allocation will be binding on the Parties and will be implemented by Co-Lead Counsel.

### III. THE PARTIES HAVE REVISED THE SETTLEMENT DOCUMENTS IN ACCORDANCE WITH THE COURT'S DIRECTIVES

Following the mediation and the decision on the appropriate allocation between the two classes, the Parties have entered into the Amended Stipulation, including its exhibits that, among other things, provide notice to the classes to reflect these revisions, and a completely revised Plan of Allocation drafted with the assistance of Plaintiffs' expert Zachary Nye.[11] *See generally* Exhibit 2 (Redlined Amended Stipulation and Notice at ¶¶45-69, Ex. A-1 to Amended Stipulation). Moreover, the Parties have revised the Settlement documents to reflect that any

---

[10] For example, in the very unlikely event that the total value of claims attributed to the Exchange Act Class total only 5% of the Net Settlement Fund, then the Exchange Act Class would only be allocated 5% of the Net Settlement Fund and the Securities Act Class would be allocated the remaining 95%.

[11] Moreover, the revised Notice (at ¶¶7 and 70) advises class members that, as part of the Fee and Expense Application, the Plaintiffs will be seeking an award pursuant to the PSLRA to compensate them for their effort in the Action, which will be no more than $30,000 in the aggregate.

disputes about the amounts of class member claims will be resolved by Co-Lead Counsel with the assistance of the Claims Administrator, rather than the Court.  *See* Exhibit 2, redlined Amended Stipulation at ¶24.[12] Additionally, the revised Notice now provides for an estimated range (minimum and maximum) of payments from the Net Settlement Fund, as the Court directed. *See* Exhibit 2, redlined Notice at ¶4.[13]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed revised Preliminary Approval Order:  (i) preliminarily approving the Settlement; (ii) approving the manner and forms of notice to the Settlement Class; (iii) setting a date for the Settlement Hearing; (iv) appointing SCS as Claims Administrator; (v) preliminarily certifying the Settlement Class; and (vi) granting such other and further relief as may be required.

Dated: December 15, 2023         LABATON SUCHAROW LLP

By: *s/ Thomas G. Hoffman, Jr.*
Michael P. Canty
Thomas G. Hoffman, Jr.
140 Broadway
New York, New York 10005
Phone: (212) 907-0700
Fax: (212) 818-0477
Email: mcanty@labaton.com
thoffman@labaton.com

*Co-Lead Counsel and Counsel for Lead Plaintiff Antonio Bachaalani Nacif*

---

[12] *Compare with* September 27 Order, at 10 ("In addition, the parties have agreed that any disputes about the amounts of class member distributions may be resolved by plaintiffs' counsel and/or the Claims Administrator, as opposed to the Court, but they have not amended their Stipulation accordingly.").

[13] *Compare with* September 27 Order, at 13 ("Thus, any notice to class members should set forth the 'nominal amount' as the minimum recovery. The parties have not offered any reason why they cannot compute the maximum anticipated award.").

|   |   |
|---|---|
| 1 |   |
| 2 | GLANCY PRONGAY & MURRAY LLP |
|   | Kara M. Wolke |
| 3 | Casey E. Sadler |
|   | Natalie S. Pang |
| 4 | 1925 Century Park East, Suite 2100 |
|   | Los Angeles, California 90067 |
| 5 | Phone: (310) 201-9150 |
|   | Fax: (310) 201-9160 |
| 6 | Email: kwolke@glancylaw.com |
|   | csadler@glancylaw.com |
| 7 | npang@glancylaw.com |
| 8 | *Co-Lead Counsel and Counsel for Lead Plaintiff Wies Rafi* |
| 9 | ROSSI VUCINOVICH, P.C. |
| 10 | By: *s/ Benjamin T. G. Nivison* |
|   | Benjamin T. G. Nivison, WSBA No. 39797 |
| 11 | 1000 Second Avenue, Suite 1420 |
|   | Seattle, Washington 98104 |
| 12 | Phone: (425) 646-8003 |
|   | Fax: (425) 646-8004 |
| 13 | Email: bnivison@rvflegal.com |
| 14 | *Liaison Counsel for the Class* |
| 15 | BLOCK & LEVITON LLP |
|   | Jacob A. Walker |
| 16 | Michael Gaines |
|   | 260 Franklin Street, Suite 1860 |
| 17 | Boston, Massachusetts 02110 |
|   | (617) 398-5600 phone |
| 18 | (617) 507-6020 fax |
|   | Email: jake@blockleviton.com |
| 19 | michael@blockleviton.com |
| 20 | *Counsel for Hang Gao* |

# CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 15, 2023

/s/ *Thomas G. Hoffman, Jr.*
Thomas G. Hoffman, Jr.