1

2

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

4

5

ANTONIO BACHAALANI NACIF; WIES
RAFI; and HANG GAO, individually and
on behalf of all others similarly situated,

6

Plaintiffs,

C21-0861 TSZ

7

v.

ORDER

8

ATHIRA PHARMA, INC.; and LEEN
KAWAS, Ph.D.,

9

Defendants.

10    THIS MATTER comes before the Court on plaintiffs' unopposed renewed motion

11  for preliminary approval of a proposed class settlement, docket no. 125.  By Order

12  entered September 27, 2023, docket no. 123, the Court denied plaintiffs' previous

13  motion, docket no. 118, for preliminary approval of a proposed class settlement because

14  (i) an intraclass conflict of interest existed, and (ii) the proposed settlement could not be

15  certified as "treat[ing] class members equitably relative to each other."  Order at 5–9

16  (docket no. 123) (quoting Fed. R. Civ. P. 23(e)(2)(D)).  The parties have since engaged in

17  further settlement negotiations and have entered into an Amended Stipulation and

18  Agreement of Settlement ("Settlement Agreement"), docket no. 125-2.  Having reviewed

19  the Settlement Agreement, the pending motion, and the other materials submitted by the

20  parties, the Court enters the following Order granting the motion in part, preliminarily

21  approving the proposed settlement, certifying a class and two subclasses, deferring in part

22  as to the proposed notices and claim form, requiring submission of an opt-out (exclusion

23  request) form, and renoting the motion to March 15, 2024.

ORDER - 1

**Discussion**

As indicated in the Court's earlier Order, this case involves publicly traded common stock of defendant Athira Pharma, Inc. ("Athira"), some of which was acquired in connection with Athira's initial public offering ("IPO") in September 2020, some of which was purchased when Athira conducted a secondary public offering ("SPO") in January 2021, and some of which cannot be traced to either the IPO or the SPO. In response to the Court's inquiries, _see_ Order at 11–12 (docket no. 123); Minute Order at ¶ 1(a)(i) (docket no. 119), the parties have clarified that all Athira shares issued before the IPO (and SPO) were subject to lock-up or market-stand-off restrictions that prevented their trading until the market opened on March 17, 2021. _See_ Duncan Decl. at ¶¶ 3–8 (docket no. 125-7). Based on this information, the parties have substantially simplified their traceability analysis for purposes of the claims in this litigation, which are now as follows:

> **Securities Act Claims**:  Claims relating to Athira's publicly traded common stock acquired during the period from September 17, 2020, through March 16, 2021; such claims are brought pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k, 77*l*, and 77*o*; and

> **Exchange Act Claims**:  Claims relating to Athira's publicly traded common stock acquired during the period from March 17, 2021, through June 17, 2021; such claims were asserted under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) & 78t(a), and United States Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.

_See_ Pl.'s Renewed Mot. at 5–6 (docket no. 125); _see also_ Am. Compl. (docket no. 74). In other words, the Securities Act Claims relate to Athira shares traceable to the IPO and SPO, and the Exchange Act Claims concern Athira shares purchased after the lock-up

ORDER - 2

period expired and before "corrective information" was disclosed.  *See* Nye Decl. at ¶ 8 (docket no. 125-5); *see also* Am. Compl. at ¶ 91 (docket no. 74) (quoting a press release issued by Athira after the market closed on June 17, 2021).

**A.    Joinder**

In addition to involving separate timeframes, the two types of claims in this matter differ with regard to their litigation status.  Although some portions of the Securities Act Claims remain viable, the Exchange Act Claims have been dismissed, *see* Order (docket no. 89), and they have not been repleaded by the lead plaintiffs, Antonio Bachaalani Nacif and Wies Rafi.  *See* Order at 2–4 (docket no. 123) (reciting the procedural history of these claims and observing that the "decision not to timely amend [the] operative pleading renders 'final' the earlier dismissal without prejudice" (quoting Order at 5 (docket no. 114))).  As a result, Nacif's and Rafi's positions are not "typical" of those of the absent class members.  *See* Order at 5–7 (docket no. 123) (citing *Epstein v. MCA, Inc.*, 179 F.3d 641, 652–53 (9th Cir. 1999) (Thomas, C.J., dissenting)); *see also* Fed. R. Civ. P. 23(a)(3) & (e)(2)(A).  To cure this inherent conflict of interest, the parties propose to add Hang Gao as a named plaintiff.  *See* Stlm't Agr. at ¶ 1(hh) (docket no. 125-2 at 13).  Gao's attorneys participated in a mediation session conducted on November 16, 2023, and signed the Settlement Agreement on Gao's behalf.  *See* Melnick Decl. at 1 n.1 & ¶ 11 (docket no. 125-4); Stlm't Agr. at 40 (docket no. 125-2 at 42).

Gao was one of two individuals who commenced this action, *see* Compl. (docket no. 1), but Gao did not thereafter seek appointment as a lead plaintiff, *see* Order (docket no. 60).  According to a certification filed with the original complaint, Gao purchased 100 shares of Athira stock on February 24, 2021, at the SPO price of $22.50 per share,

and another 100 shares of Athira stock on March 25, 2021, at the price of $17.00 per share.  *See* Pl.'s Certif. (docket no. 1-1 at 3); *see also* Am. Compl. at ¶ 90 (docket no. 74).  Thus, Gao has both Securities Act Claims and Exchange Act Claims, but unlike Nacif and Rafi, Gao is not bound by the decision not to replead the Exchange Act Claims and does not have interests that are antagonistic toward or in conflict with those of absent putative class members.  The Court treats the pending motion as seeking leave to amend to join Gao as a named plaintiff and hereby GRANTS the request.

## B.   Allocation

The parties propose to settle both the Securities Act Claims and the Exchange Act Claims on the following terms.  Defendants would deposit the gross settlement amount of $10 million into an interest-bearing escrow account.  Attorney's fees (predicted to be 33⅓% of the gross amount), litigation costs (capped at $205,000), awards to the named plaintiffs (no more than $30,000), settlement administration fees (estimated to be $200,000), taxes (approximately $200,000), and escrow account fees[1] would be deducted before the remaining net settlement proceeds (roughly $6-to-6.5 million, depending on interest rates and the Court's rulings on requests for attorney's fees, etc.) would be distributed to class members.  The method for calculating the amount due to each class member, denominated by the parties as the "Plan of Allocation," is not a provision of the Settlement Agreement, and defendants have expressly disavowed any involvement in the

---

[1] In their Joint Status Report dated June 30, 2023, the parties indicated that escrow account fees would be about $5,200 per year.  *See* JSR at 21 (docket no. 122).  The current motion and related documents, including the proposed notice, do not mention escrow account fees.  The parties have, however, deducted the escrow account fees in calculating the probable value of the net settlement fund, and thus, they must revise the notice accordingly.

ORDER - 4

disbursement process.  *See* Stlm't Agr. at ¶ 21 (docket no. 125-2 at 26) (indicating that defendants may not object to, and will have no "liability, obligation, or responsibility whatsoever" in connection with, the Plan of Allocation).

In response to certain concerns set forth in the Order entered September 27, 2023, docket no. 123 (denying the earlier motion for preliminary approval of a settlement), the parties sought an opinion from Jed D. Melnick, a mediator associated with JAMS, Inc., concerning a "fair and reasonable" allocation of settlement proceeds between Securities Act Claims and Exchange Act Claim.  *See* Melnick Decl. at ¶¶ 1–3 (docket no. 125-4). Melnick recommends allocating at least 91.5% of the net settlement fund to the Securities Act Claims and leaving a maximum of 8.5% of the net sum for the Exchange Act Claims. *See id.* at ¶¶ 3 & 17.  In his declaration, Melnick states that, in forming this view, he relied on the opinion of plaintiffs' expert Zachary Nye, Ph.D., who estimated that almost "60% of Athira's stock is traceable to either the IPO or SPO."  *Id.* at ¶ 17; *see also* Nye Decl. at ¶ 14–15 (docket no. 125-5).  Melnick further advises that, in his experience,[2] "sustained (Securities Act) claims earn a 'premium' of settlement value relative to dismissed (Exchange Act) claims, with the latter typically subject to a 'discounted' allocation of five to fifteen percent."  *Id.* at ¶ 14.

The Court is persuaded that the proposed apportionment between Securities Act Claims and Exchange Act Claims "treats class members equitably relative to each other."

---

[2] Melnick received his Juris Doctorate from Benjamin N. Cardozo School of Law in 1999, and has served as a full-time mediator since 2005.  *See* https://www.jamsadr.com/melnick.  Melnick has conducted mediations in over a thousand disputes, including complex securities class actions and shareholder derivative suits, and he has been recognized by *The National Law Journal* as an "ADR Champion."  Melnick Decl. at ¶ 1 (docket no. 125-4).

1   *See* Fed. R. Civ. P. 23(e)(2)(D).  The 91.5-to-8.5% split reflects that the Securities Act

2   Claims are associated with more than a majority of affected shares (59.6%) and estimated

3   damages (57.8%).  *See* Nye Decl. at ¶ 15 (docket no. 125-5).  The suggested allocation is

4   also consistent with the range of usual values for dismissed claims (5–15%) and the

5   minimal chance of resurrecting the Exchange Act Claims following any appeal in this

6   matter.  Finally, the percentages are the product of an experienced mediator's careful

7   consideration of the positions articulated by separate counsel for each named plaintiff,[3]

8   as well as defendants' attorneys.  *See* Melnick Decl. at ¶¶ 2 nn.1–2 & 11–12 (docket

9   no. 125-4).  The Court therefore ADOPTS the mediator's recommended apportionment

10  as being fair and reasonable in light of the circumstances.

11  **C.   Anticipated Recoveries**

12         Pursuant to plaintiffs' proposed Plan of Allocation, as to which defendants take no

13  position, putative class members that timely submit claim forms will receive distributions

14  from the net settlement funds, but only if their distribution amounts exceed $10.  *See* 2d

15  Revised Notice at ¶¶ 35 & 66 (docket no. 125-8).  Each participating class member's *pro*

16  *rata* distribution amount ("Distrib. Amt.") will be the sum of such class member's *pro*

---

18  [3] During the mediation session that transpired on November 16, 2023, Nacif and Gao advocated
    on behalf of putative class members with Exchange Act Claims, while Rafi participated on

19  behalf of putative class members with Securities Act Claims.  *See* Melnick Decl. at ¶¶ 2 n.1 & 11
    (docket no. 125-4).  At the time of the mediation, based on the parties' original traceability

20  analysis and the Court's related rulings, Nacif was believed to have only Exchange Act Claims.
    *See* Order at 2 & 5–6 (docket no. 123); Order at 5–7 (docket no. 60); *see also* Order at 12 (docket

21  no. 123) (inquiring why the parties had chosen February 10, 2021, rather than when the lock-up
    period expired (*i.e.*, March 16, 2021), as the end date for Securities Act Claims).  Because the

22  parties have since altered the timeframe for Securities Act Claims, Nacif appears to now have
    both Securities Act Claims and Exchange Act Claims.  *See* Order at 2 n.1 (docket no. 123)

23  (reflecting that Nacif engaged in active trading of Athira stock from February 19, 2021, until
    June 16, 2021 (citing Exs. A & B to Townsend Decl. (docket nos. 41-1 & 41-2))).

*rata* distribution amount for any Securities Act Claims ("Securities Act Distribution Amount" or "Sec. Amt.") and such class member's *pro rata* distribution amount for any Exchange Act Claims ("Exchange Act Distribution Amount" or "Ex. Amt."). *See id.* at ¶ 66.  The proposed calculation is expressed mathematically as follows:

**Distrib. Amt. = Sec. Amt. + Ex. Amt.**

The Securities Act Distribution Amount is the product of multiplying 91.5% of the net settlement funds ("Net Amt.") by the quotient of the class member's Recognized Loss Amount for Securities Act Claims ("Sec. RLA") divided by the sum of all participating class members' Recognized Loss Amounts for Securities Act Claims ("∑ Sec. RLA"). *See id.*  The Exchange Act Distribution Amount is computed as 8.5% of the net proceeds ("Net Amt.") times the ratio of the class member's Recognized Loss Amount for Exchange Act Claims ("Ex. RLA") to the total of all participating class members' Recognized Loss Amounts for Exchange Act Claims ("∑ Ex. RLA"). *See id.*  The following equation summarizes the proposed computation:

$$\text{Distrib. Amt.} = 0.915 \times \text{Net Amt.} \times \left( \frac{\text{Sec. RLA}}{\sum \text{Sec. RLA}} \right) + 0.085 \times \text{Net Amt.} \times \left( \frac{\text{Ex. RLA}}{\sum \text{Ex. RLA}} \right).$$

The Recognized Loss Amount is defined as indicated below:

| Purchase and Sale Timeframes for Athira Stock | Recognized Loss Amount |
| --- | --- |
| Share was purchased and sold prior to the close of U.S. financial markets on June 17, 2021 | $0 |

| Purchase and Sale Timeframes for Athira Stock | | Recognized Loss Amount |
|---|---|---|
| **Securities Act Claims** | Share was purchased between September 17, 2020, and March 16, 2021, and sold between June 18, 2021, and June 25, 2021 | LESSER of:<br>• $7.14 per share<br>• purchase price[4] minus sale price |
| | Share was purchased between September 17, 2020, and March 16, 2021, and still held as of the close of trading on June 25, 2021 | LESSER of:<br>• $7.14 per share<br>• purchase price[4] minus $10.84 per share |
| **Exchange Act Claims** | Share was purchased between March 17, 2021, and June 17, 2021, and sold between June 18, 2021, and September 15, 2021 | LESSER of:<br>• $7.14 per share<br>• purchase price minus sale price<br>• purchase price minus "90-Day Lookback Value"[5] |
| | Share was purchased between March 17, 2021, and June 17, 2021, and still held as of the close of trading on September 15, 2021 | LESSER of:<br>• $7.14 per share<br>• purchase price minus $10.33 per share |
| Share was purchased on or after June 18, 2021 | | $0 |

_See id._ at ¶¶ 56–57.

---

[4] For shares acquired prior to January 21, 2021, the purchase price is the IPO price of $17.00 per share. For shares acquired during the SPO directly from one of the Underwriters, the purchase price is $22.50. For all other shares of Athira stock acquired from January 21, 2021, through March 16, 2021, the purchase price is calculated as $18.41, which is the weighted average of the IPO and SPO offering prices. _See_ 2d Revised Notice at ¶ 49 (docket no. 125-8); _see also_ Nye Decl. at ¶ 10 & n.9 (docket no. 125-5).

[5] The "90-Day Lookback Value" is set forth in Table 2 of the proposed Plan of Allocation, which provides a figure for each possible sale date between June 18, 2021, and September 15, 2021, ranging from a high of $11.15 per share on June 18, 2021, to a low of $10.22 per share in late August 2021. _See_ 2d Revised Notice (docket no. 125-8 at 30–31).

Applying the "80/20 Multi-Trader Model,"[6] and assuming that all putative class members participate in the settlement, the anticipated recoveries from the proposed settlement are as follows:

| | **Gross** | **Net** |
|---|---|---|
| Minimum Distribution Amount | N/A | $10[7] |
| Average Securities Act Distribution Amount | $0.72 per share[8] | $0.47 per share[9] |
| Average Exchange Act Distribution Amount | $0.10 per share[8] | $0.06 per share[9] |
| Maximum[10] Securities Act Distribution Amount | $600,000 | Maximum[10] Distribution Amount $408,000 |
| Maximum[10] Exchange Act Distribution Amount | $25,000 | |

---

[6] The "80/20 Multi-Trader Model" hypothesizes the existence of a large set of "slow" traders (holding 80% of the available shares, but trading only 20% of the volume) and a small group of "fast" traders (holding 20% of the available shares, and trading 80% of the volume).  Nye Decl. at ¶ 14 (docket no. 125-5).

[7] The parties have agreed on a threshold amount of $10 to ensure that the cost of printing and mailing each payment check (typically $3.25) does not exceed its value and that the payment checks will likely be negotiated.  _See_ JSR at 23 (docket no. 122).

[8] _See_ Nye Decl. at ¶ 17 (docket no. 125-5).  According to Nye, Securities Act Claims are associated with approximately 12.72 million shares, and Exchange Act Claims are linked to roughly 8.64 million shares.  _Id._ at ¶ 15.  The average gross recoveries reflect the proportion of the gross settlement fund allocated to each type of claim divided by the number of shares related to each such claim.  In other words, the Average Securities Act Distribution Amount equals 91.5% of $10 million (_i.e._, $9,150,000) divided by 12.72 million shares, or $0.719 per share, and the Average Exchange Act Distribution Amount is 8.5% of $10 million (_i.e._, $850,000) divided by 8.64 million shares, or $0.098 per share.  Nye has rounded up each figure.

[9] _See_ 2d Revised Notice at ¶ 4 (docket no. 125-8).  These estimates appear to presume a net settlement fund of $6,526,467.  _See_ Nye Decl. at ¶ 18 (docket no. 125-5).

[10] _See_ Nye Decl. at ¶ 18 & n.20 (docket no. 125-5).  The maximum recovery amounts were computed for Athira's largest, publicly-known, institutional investor during the relevant period, namely BlackRock Institutional Trust Company, N.A.  _Id._

The proposed Plan of Allocation envisions that, nine months after the initial distribution of payment checks, a portion of the net settlement funds might remain in the escrow account because some checks could not be delivered or were not negotiated (and interest continued to accrue).  *See* 2d Revised Notice at ¶ 68 (docket no. 125-8).  In such event, the proposed Plan of Allocation contemplates that the firms designated as "Class Counsel" and the entity appointed as the "Settlement (or Claims) Administrator" will determine whether another round of distribution would be cost effective and, if not, the balance of the escrow account would be remitted to the proposed *cy pres* recipient, the Public Justice Foundation.  *Id.*

**D.     "Class Counsel" and Attorney's Fees**

According to the Settlement Agreement, Block & Leviton LLP (Gao's attorneys), as well as Rossi Vucinovich, P.C. and the Schall Law Firm (which has never appeared in this action), have served as "plaintiffs' counsel."  *See* Stlm't Agr. at ¶ 1(ii) (docket no. 125-2).  The pending motion does not, however, seek appointment of any of these three firms as "Class Counsel."  The two firms proposing to serve as "Class Counsel," namely Labaton Sucharow LLP, which recently became Labaton Keller Sucharow LLP, *see* Notice (docket no. 127), and Glancy Prongay & Murray LLP,  have proposed to share fees with Longman Law, PC, which appeared in one of the matters consolidated into this case, *see* 2d Revised Notice at ¶ 70 n.12 (docket no. 125-8), and perhaps with the other three firms listed in the Settlement Agreement as "plaintiffs' counsel."  Any motion for attorneys' fees and litigation costs shall indicate which firms will be paid and in what amounts, and it shall be accompanied by a copy of any agreement among or between firms concerning how the fees and/or costs will be apportioned.

1    **E.**    **Definition of the "Class"**

2          The Settlement Agreement purports to define three separate classes, with a "Class

3    Period" of September 17, 2020, through June 17, 2021; the "Settlement Class" is

4    described as including all members of a "Securities Act Class" and all members of an

5    "Exchange Act Class."  *See* Stlm't Agr. at ¶¶ 1(i), (r), (tt), & (xx) (docket no. 125-2).

6    The Court interprets the Settlement Agreement as defining, and the pending motion as

7    seeking certification of, a "Class," as well as a "Securities Act Subclass" and an

8    "Exchange Act Subclass."  The "Class" is estimated to include 30,000 or more members,

9    each of which acquired, during the "Class Period," a portion of Athira's roughly 37

10    million shares.[11]  *See* Mulholland Decl. at ¶¶ 12 & 29–31 (docket no. 122-4) (indicating

11    that most putative class members purchased, held, and/or sold their stock through a

12    nominee, that transfer records show only 43 record holders during the "Class Period,"

13    and that the number of putative class members is "approximately 30,000" and "likely

14    more than 45,000").

15    **F.**    **Exclusion Requests**

16          The proposed form of notice instructs putative class members wishing to be

17    excluded from the class to mail or deliver to the Settlement Administrator a written

18    request for exclusion containing identifying information (name, address, telephone

19    number, contact person), as well as the number of shares of Athira stock that were

20    acquired and/or sold and the dates and prices associated with each transaction.  *See* 2d

21    ──────────────────

22    [11] Athira sold 13,397,712 shares during the IPO, and 4,600,000 shares during the SPO.  *See* Nye
Decl. at 2 n.1 (docket no 125-5).  At the conclusion of the IPO, 19,087,472 shares of Athira stock

23    were subject to lock-up or market-stand-off restrictions.  Duncan Decl. at ¶ 4 (docket no. 125-7).

1  Revised Notice at ¶¶ 71–72 (docket no. 125-8).  The proposed notice further indicates

2  that, unless an exclusion request includes all of these details and is "received" by the

3  Settlement Administrator before the deadline, it will not be "valid and effective."  *Id.* at

4  ¶ 72.  The parties are ADVISED that, although they may ask for the numbers of shares,

5  dates, and prices involved, the Court will <u>not</u> reject a request for exclusion if such

6  particulars are not provided.[12]  The parties are DIRECTED to craft a suitable opt-out

7  (or exclusion request) form, which shall be included with the notice to putative class

8  members and available for download from the Settlement Administrator's website.  The

9  notice shall indicate that putative class members may exclude themselves by sending to

10  the Settlement Administrator (via mail or electronic means) either a completed and

11  signed opt-out form or a letter along the lines described above.  The opt-out form shall

12  indicate that disclosure of share quantities, dates of acquisition and/or sale, and prices is

13  optional.  Finally, because putative class members will have little or no control over when

14  a mailing might be delivered to the Settlement Administrator, the notice should describe

15  the deadline for submitting exclusion requests in terms of a postmark or other proof of

16  when the document was sent or submitted (as opposed to received).

17  **G.    <u>Method of Serving Notice</u>**

18        The Settlement Agreement itself contains minimal information concerning how

19  notice will be distributed to putative class members.  *See* Stlm't Agr. at ¶ 19 (docket

20  no. 125-2).  Instead, the Settlement Agreement mentions a "Preliminary Approval Order

21  _____

22  [12] With reference to the parties' confidential Supplement Agreement, docket no. 120-1, after the
    deadline for requesting exclusion has expired, counsel may, if necessary, seek leave of the Court

23  to obtain further information from persons or entities that have opted out of the settlement.

1    to be entered by the Court."  *Id.*  This language is construed as incorporating by reference

2    into the Settlement Agreement the relevant terms of the proposed order attached thereto

3    as Exhibit A.  *See* Stlm't Agr. at Ex. A (docket no. 125-2 at 47–59).  As so interpreted,

4    the Settlement Agreement requires that Athira provide in electronic form to the selected

5    Settlement (or Claims) Administrator a list of purchasers of record of Athira publicly

6    traded common stock during the "Class Period," and that the Settlement Administrator

7    send to putative class members via first-class mail (i) the long-form notice, and (ii) a

8    claim form.  *Id.* at ¶¶ 7(a) & (b).  The Settlement Agreement further directs that the

9    Settlement Administrator post the long-form notice and the claim form on its website,[13]

10   and that the Settlement Administrator arrange for a short-form (3-page) notice to be

11   published once in *Investor's Business Daily* and transmitted once via *PR Newswire*.  *Id.*

12   at ¶¶ 7(c) & (d).  The Settlement Agreement then obligates brokers and other nominees

13   that purchased Athira stock during the "Class Period" for the benefit of another person or

14   entity and that receive notice of the proposed settlement to either (a) obtain from the

15   Settlement Administrator sufficient copies of the long-form notice and claim form and

16   forward such documents to the various beneficial owners, or (b) send a list of beneficial

17   owners and their addresses to the Settlement Administrator, which would "promptly

18   mail" the requisite items to such persons and/or entities.[14]  *Id.* at ¶ 9.

19   _____

20   [13] As indicated in Section F, the Settlement Administrator shall also include an opt-out form with
     the notice and on its website.

21
     [14] The parties propose to require nominees, regardless of whether they choose option (a) or (b),
22   to also provide to the Settlement Administrator available email addresses for beneficial owners.
     *See* Stlm't Agr. at Ex. A, ¶ 9 (docket no. 125-2).  The parties have not, however, made any
23   provision for notice to be delivered to putative class members via email, and they offer no

1   **H.**     **Forms of Notice**

2        **1.**     **Long-Form Notice**

3        With regard to the proposed (currently 24-page) long-form notice to be distributed

4   to putative class members, the Court has serious concerns about its length and structure,

5   which might inhibit recipients from devoting the necessary time to understand, and/or

6   impair their comprehension of, the information provided.  The long-form notice also

7   contains erroneous information, as well as vestiges of previously disapproved language,

8   *see* Minute Order at 5 n.3 (docket no. 119).  The Court therefore DIRECTS that the

9   following amendments be made:

10           (a)     **Nominees**.  The instructions for nominees should be moved to the
        beginning of the notice (as opposed to in Paragraphs 85 and 86, which appear on
11       the next to last page), and they should be preceded by an attention-grabbing
        header.  For example:

12

13   | **ATTENTION NOMINEES:  If you purchased or otherwise acquired Athira common stock between September 17, 2020, and June 17, 2021, for the beneficial interest of persons or entities other than yourself, you must take the following actions with the next seven (7) days.** |
     | --- |

14

15           (b)     **Summary**.  A two-to-three page summary should be added to the
        start of the notice, after the nominee instructions.  The summary should provide
16       enough information that putative class members need not study the rest of the
        notice to understand (i) the basic nature of the case, (ii) the amount and structure
17       of the proposed settlement, (iii) the average and range of recoveries, and
        (iv) generally how the *pro rata* shares of the net settlement fund would be
18       calculated.[15]  As currently organized, the proposed notice requires an individual to
        wade through several (over 18) pages of single-spaced text before reaching the key

19   _____

20   rationale for requiring nominees that elect procedure (a), perhaps based on privacy concerns
     and/or contractual requirements, to disclose any email addresses.  The Court DECLINES to
21   require brokers or other nominees to provide any list of email addresses for beneficial owners.

22   [15] The summary may cross-reference the later provisions of the notice that offer specific details,
     for example, the formulas for calculating the applicable Recognized Loss Amount and/or the
23   table of 90-Day Lookback Values.

paragraph that explains how the distribution amount will be determined. *See* 2d Revised Notice at ¶ 66 (docket no. 125-8). And, this paragraph contains no cross-reference to the much earlier provision (*i.e.*, *id.* at ¶ 4) in which the average and range of recoveries are recited. As a result, putative class members might not be able to link together the details necessary to evaluate the proposed settlement and decide whether to participate, object, or request exclusion. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) ("Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably . . . ."); *see also* Fed. R. Civ. P. 23(c)(2)(B) (requiring that a notice to putative class members contain "clearly and concisely state[d] . . . plain, easily understood language").

(c)   **Errors**.[16] The proposed notice contains different estimates than those provided by Nye regarding the "number of damaged shares." *Compare* 2d Revised Notice at 3 n.3 (docket no. 125-8) (indicating that 12.79 million shares are associated with Securities Act Claims and 8.57 million shares are related to Exchange Act Claims) *with* Nye Decl. at ¶ 15 (docket no. 125-5) (opining that 12.72 million and 8.64 million shares, respectively, were affected). The Court has relied on Nye's figures to double-check the calculations of average recoveries. *See supra* note 8. The proposed notice further estimates that the anticipated attorney's fees, litigation costs, and awards to named plaintiffs will be "$0.16 per eligible share." 2d Revised Notice at ¶ 7 (docket no. 125-8). This statement is misleading. The amount that will be sought is $3,333,333.33 in attorney's fees plus $235,000 in litigation costs and service awards, resulting in a pre-distribution deduction of $3,568,333.33, which must be apportioned 91.5% ($3,265,025) to the Securities Act Claims and 8.5% ($303,308.33) to the Exchange Act Claims. Thus, the per-share computation is more accurately reflected as follows:

| Type of Claim | Estimated Shares | Fees, Costs, & Awards |
|---|---|---|
| Securities Act Claims | 12.72 million | $0.26 per share |
| Exchange Act Claims | 8.64 million | $0.04 per share |

The notice must be revised to address these discrepancies.

(d)   **Objections**. The proposed notice tells putative class members that they "may write to the Court" to express an objection to the proposed settlement, *id.* at ¶ 9, which improperly suggests that objections should be sent to the Court. The proposed notice later directs putative class members to mail any objection to

---

[16] As indicated earlier, *see supra* note 1, the notice fails to disclose that escrow account fees of roughly $5,200 per year would be deducted from the gross settlement proceeds before the net recoveries are calculated and distributed.

ORDER - 15

five different law firms, including three that represent defendants, *id.* at ¶ 78, which would require objectors to incur five times the necessary postage. The notice must be amended to indicate that putative class members may object by sending a letter to the Settlement Administrator **or** by appearing in person or virtually at the final approval hearing. *See* Minute Order at 5–6 n.3 (docket no. 119) (indicating that the submission of written materials shall not be a prerequisite to addressing the Court at any hearing concerning the proposed settlement). The Settlement Administrator shall circulate to the attorneys copies of any written objections and, in connection with any motion for final approval of the proposed settlement, the Settlement Administrator shall submit a declaration, attached to which shall be copies of all written objections and opt-out forms; because such materials will contain identifying information, they shall be filed under seal. As with requests for exclusion from the class, the deadline for written objections shall be expressed with respect to a postmark or other proof of when the document was sent or submitted,[17] and the Court will consider written objections even if data and/or "documents sufficient to prove membership in the . . . Class," 2d Revised Notice at ¶ 79 (docket no. 125-8), are not provided.

(e)    **Attorney's Fees and Litigation Costs**. The Court will require that any motion for attorney's fees and litigation costs be filed and uploaded to the website relating to the settlement on or before the date that notices are distributed to putative class members. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). The notice should reflect that the motion for attorney's fees and litigation costs is posted on the website, and that any written objection to the requested attorney's fees and litigation costs will be due on the same date as any written objection to the proposed settlement.

(f)    **Final Approval Hearing**. Contrary to the suggestion in the proposed notice, *see* 2d Revised Notice at ¶ 83 (docket no. 125-8), in the absence of an emergency, the Court does not anticipate altering the final approval hearing schedule without ample notice to putative class members. The notice should advise recipients to consult the Settlement Administrator's website to confirm the date and time of the final approval hearing, and the Settlement Administrator shall prominently display such information on its website, along with the means (*e.g.*, Zoom link or conference call number and access code) of accessing the hearing remotely, which will be provided to counsel via email. To avoid any confusion, the provisions concerning the final approval hearing should appear separately in

---

[17] This alteration will make the deadline for objections, as well as for opt-out forms, the same as the deadline currently articulated for claim forms. *See* 2d Revised Notice at ¶¶ 9, 35, & 41 (docket no. 125-8); *see also* Prop. Claim Form at ¶ 3 (docket no. 125-8) (indicating that putative class members "must mail by first [**sic**] first-class mail or submit online [a] completed and signed claim form . . . no later than" a date to be determined).

the notice, and in such section, the address of the Settlement Administrator's website should be repeated in a clear and conspicuous manner.

(g)    **Dispute Resolution**.  The proposed notice states that the Court "has reserved jurisdiction to allow, disallow, or adjust on equitable grounds any Claim."  *Id.* at ¶ 43.  This provision is not consistent with the Settlement Agreement or the procedural history of this matter.  Stlm't Agr. at ¶¶ 24(c)–(e) (docket no. 125-2) (indicating that the firms serving as Class Counsel will "make a final determination" as to any claim dispute); JSR at 24 (docket no. 122); Minute Order at ¶ 1(g) (docket no. 119).  Moreover, the proposed notice does not outline the dispute resolution procedures set forth in the Settlement Agreement.  This omission should be corrected.

(h)    **Imprimatur**.  The three lines at the end of the proposed notice, which could be construed as a signature block, ("By Order of the Court" | "United States District Court" | "Western District of Washington"), shall be deleted.  The phrase "Court-appointed" shall also be avoided.

## 2.    Short-Form Notice

The proposed short-form notice should be revised to be consistent with the long-form notice, particularly with regard to how deadlines are described, to whom objections should be submitted, and deletion of the phrase "By Order of the Court."  *See* Prop. Summary Notice (docket no. 125-8 at 52–54).

## I.    Claim Form

With respect to the proposed (currently 11-page) claim form, the Court has similar concerns about its length, content, and structure.  In particular, instructions for institutional filers (*see* Prop. Claim Form at ¶ 14 (docket no. 125-8)) belong at the beginning of the form.  The claim form requires "affirmative documentation" of direct purchases from the Underwriters, *see id.* at ¶ 10, but the Underwriters, which are parties to the Settlement Agreement, presumably have such records, and the date of purchase alone would seem sufficient to establish a Securities Act Claim, as now defined.  The claim form asks for the last four digits of the putative class member's Taxpayer

1    Identification or Social Security Number, but it offers more fill-in boxes than such

2    numbers conceivably contain.  *Id.* at 6 (docket no. 125-8 at 45).  To prevent confusion

3    (and/or the provision of all digits, which might raise privacy and security issues), the

4    claim form should include only four (4) fill-in boxes.  The claim form also seeks account

5    numbers, but the parties have not made clear why such information is required.  Finally,

6    the claim form includes release language that is unnecessary, given the legal effect of an

7    approved and enforceable settlement agreement, and that would treat putative class

8    members seeking renumeration differently from (and potentially less favorably than)

9    those who do not submit claim forms.  The overall tenor of the claim form, which also

10   requires agreement to submit to the Court's jurisdiction and various warranties and

11   certifications, seems designed to discourage putative class members from participating in

12   the settlement.  A more user-friendly, streamlined claim form might do more to alleviate

13   the Court's previously-expressed concerns about the "opt-in" approach.  *See* Minute

14   Order at ¶ 1(c) (docket no. 119); *see also* Order at 10–11 (docket no. 123) (deferring

15   ruling "on the appropriateness of a claim-form (opt-in) requirement").

16   **Conclusion**

17          For the foregoing reasons, the Court hereby ORDERS:

18          (1)     Plaintiffs' unopposed renewed motion for preliminary approval of a

19   proposed class settlement, docket no. 125, is GRANTED in part and DEFERRED in part,

20   as indicated in this Order.  The deferred portion of plaintiffs' motion is RENOTED to

21   March 15, 2024.

22

23

ORDER - 18

(2)    Plaintiffs' request for leave to amend to join Hang Gao as a named plaintiff is GRANTED.  The Clerk shall update the docket accordingly and all future pleadings shall be captioned in the same manner as this Order.

(3)    The trial date of September 9, 2024, the pretrial conference scheduled for August 30, 2024, and all related deadlines are STRICKEN.

(4)    The following class and subclasses are hereby CERTIFIED for settlement purposes:

- a class of all persons and entities who or which purchased or otherwise acquired Athira Pharma, Inc. publicly traded common stock during the period from September 17, 2020, through June 17, 2021, inclusive (the "Class Period"), and were damaged thereby (the "Class");

- a subclass of all persons and entities who or which purchased or otherwise acquired Athira Pharma, Inc. publicly traded common stock during the period from September 17, 2020, through March 16, 2021, inclusive, and were damaged thereby (the "Securities Act Subclass"); and

- a subclass of all persons and entities who or which purchased or otherwise acquired Athira Pharma, Inc. publicly traded common stock during the period from March 17, 2021, through June 17, 2021, inclusive, and were damaged thereby (the "Exchange Act Subclass").

(5)    Antonio Bachaalani Nacif, Wies Rafi, and Hang Gao are APPOINTED as Class Representatives.  The law firms of Glancy Prongay & Murray, LLP, and Labaton Keller Sucharow LLP (f/k/a Labton Sucharow LLP) are APPOINTED as Class Counsel.

(6)    The Amended Stipulation and Agreement of Settlement executed by the parties as of December 15, 2023, Ex. 1 to Hoffman Decl. (docket no. 125-2), is preliminarily APPROVED.  To the extent that the Settlement Agreement uses the terms "Securities Act Class" and "Exchange Act Class," it shall be interpreted as meaning

ORDER - 19

1   "Securities Act Subclass" and "Exchange Act Subclass," respectively, as certified in this

2   Order.  The notice to Class members and related materials, including the claim form,

3   shall be revised accordingly.

4           (7)     The proposed settlement is not obviously deficient and no evidence exists

5   at this stage of the proceedings of any fraud, collusion, overreaching, or disregard of the

6   rights of absent Class members on the part of any party.  Sufficient discovery and motion

7   practice was conducted in this case, and Class Counsel has enough experience in similar

8   proceedings to propose this settlement.  The Court makes a preliminary finding that the

9   proposed settlement, including the proposed Plan of Allocation, is fair, reasonable, and

10  adequate.  *See* Fed. R. Civ. P. 23(e)(2).  The Court's preliminary approval is subject to

11  change pending the outcome of a hearing on final approval of the proposed settlement.

12          (8)     The Class satisfies the following prerequisites:  (i) the Class is so numerous

13  that joinder of all members is impracticable; (ii) questions of law and fact common to all

14  members of the Class exist; (iii) the claims of the Class Representatives are typical of the

15  claims of the Class members; (iv) the Class Representatives and Class Counsel meet the

16  criteria for fair and adequate representation; (v) the questions of law and fact that are

17  common to Class members predominate over questions affecting only individual

18  members; (vi) resolution by a class action settlement is superior to other available

19  methods of adjudicating the dispute; and (vii) the interests of absent Class members who

20  wish to litigate their claims for damages individually are adequately protected by the

21  notice and opt-out provisions described in the Settlement Agreement.  *See* Fed. R. Civ.

22  P. 23(a) & (b)(3).

23

ORDER - 20

1     (9)     Strategic Claims Services ("SCS") is APPOINTED as Settlement (or

2  Claims) Administrator.  SCS shall not incur, charge, or receive from the settlement

3  proceeds more than $200,000 in settlement administration fees absent prior approval of

4  the Court.  Before notice is distributed to Class members, SCS shall establish a website

5  for this matter, and the website's address, along with text indicating that the Settlement

6  Agreement and other case materials are available for review, shall be prominently

7  displayed in the notice, rather than buried in a footnote.  *Compare* 2d Revised Notice at

8  1 n.1 (docket no. 125-8).  SCS shall maintain this website until further order of the Court.

9  Such website shall allow anyone visiting it to view and download copies of (i) the

10  operative pleadings and relevant motions, including any motion for attorney's fees and

11  costs and any motion for final approval of the proposed settlement, (ii) the Settlement

12  Agreement, (iii) the Orders and substantive Minute Orders of the Court, including this

13  Order, the Orders entered July 29, 2022, February 17, 2023, and September 27, 2023, and

14  the Minute Orders entered October 4, 2022, and May 31, 2023 (docket nos. 89, 95, 114,

15  119, 123), and (iv) the long-form and short-form notices, the claim form, and the opt-out

16  form.  SCS shall capture screen shots of the website on the date that notices are

17  distributed and on a monthly basis thereafter until the date of the final settlement

18  approval hearing, and shall submit such screen shots along with any declaration filed in

19  support of any motion for final approval of the proposed class settlement.

20     (10)    The Public Justice Foundation is APPROVED as the *cy pres* recipient,

21  subject to change after considering any objections raised prior to or during a hearing on

22  final approval of the proposed settlement.  *See* *Nachsin v. AOL, LLC*, 663 F.3d 1034,

23  1036 (9th Cir. 2011) ("*Cy pres* distributions must account for the nature of the . . .

ORDER - 21

1  lawsuit, the objectives of the underlying statutes, and the interests of the silent class

2  members, including their geographic diversity."); *see also Dennis v. Kellogg Co.*, 697

3  F.3d 858 (9th Cir. 2012).  The proposed notice to Class members shall be amended to

4  (i) use the term "*cy pres* recipient" (both as a header for, and within the text of, the

5  relevant paragraph, *see* 2d Revised Notice at ¶ 68 (docket no. 125-8)), and (ii) advise

6  Class members that they may object to the proposed *cy pres* recipient and how they may

7  do so.

8  　　　　(11)   For purposes of this Order, (a) former defendants Goldman Sachs & Co.

9  LLC, Jefferies LLC, JMP Securities LLC, and Stifel, Nicolaus & Company, Incorporated

10  are referred to, collectively, as the "Underwriters," (b) former defendants Joseph

11  Edelman, John M. Fluke, Jr., James A. Johnson, and Tadataka Yamada, M.D. (deceased)

12  are referred to, collectively, as the "Directors," and (c) the Directors, former defendant

13  Glenna Mileson (Athira's Chief Financial Officer), defendant Leen Kawas, Ph.D., and

14  their immediate family members are referred to, collectively, as "Excluded Persons."

15  The following persons and entities are EXCLUDED from the Class:  (a) Athira and

16  Kawas; (b) the Underwriters; (c) all persons who served, during the Class Period,

17  as partners, control persons, executive officers, or directors of Athira or the Underwriters

18  and members of their immediate families; (d) all present and former parents, subsidiaries,

19  assigns, successors, affiliates, and predecessors of Athira or the Underwriters; (e) any

20  entity in which Athira, the Underwriters, or one or more Excluded Persons have or had a

21  controlling interest; (f) any trust of which one or more Excluded Persons is the settlor or

22  beneficiary; (g) all liability insurance carriers for Athira or Excluded Persons; and (h) the

23  legal representatives, heirs, successors, or assigns of any person or entity excluded

pursuant to (a) through (g).  Notwithstanding any provision to the contrary, (i) any Investment Vehicle, as defined in the Settlement Agreement, *see* Stlm't Agr. at ¶ 1(x) (docket no. 125-2), shall not be excluded from the Class, and (ii) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by, or are under common control with Athira or the Underwriters, including Athira's employee retirement and/or benefit plan(s).

(12)    The following persons and entities are also EXCLUDED from the Class: persons or entities that timely submit a written request for exclusion from the Class.

(13)    The Court CONCLUDES that the proposed plan for serving notice via U.S. first-class mail, either directly or via brokers or other nominees, to the extent that contact information is available, as well as through publication and the Settlement Administrator's website, provides the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B).

(14)    The proposed notices and claim form shall be revised as indicated earlier, and amended versions, along with a proposed opt-out form, shall be submitted for the Court's review by March 15, 2024.  In addition to filing these materials via the Case Management and Electronic Case Filing (CM/ECF) system, the parties shall provide Microsoft-Word-compatible versions as attachments to an email addressed to ZillyOrders@wawd.uscourts.gov.

(15)    Counsel shall meet and confer and also file, by March 15, 2024, a Joint Status Report proposing a date after which the Court may schedule the final approval hearing, indicating any known scheduling conflicts, and outlining the applicable

deadlines (*i.e.*, to disclose purchasers of record, to distribute long-form notices, to publish short-form notices, to opt in, object, or opt out, and to file the requisite motions).

(16)   The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 15th day of February, 2024.

Thomas S. Zilly
United States District Judge