THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTONIO BACHAALANI NACIF; WIES RAFI; and HANG GAO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATHIRA PHARMA, INC., *et al.*,<br><br>Defendants. | CASE NO.: 2:21-cv-00861-TSZ<br><br>**CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES**<br><br>**NOTE ON MOTION CALENDAR**<br><br>**Noted for October 18, 2024 by Court Order** |

CO-LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ............................. 5

III.  CO-LEAD COUNSEL'S FEE REQUEST IS REASONABLE ......................................... 5

      A.    Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees From the Common Fund ...................................................................................................... 5

      B.    The Requested Attorneys' Fee Is Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method ................................................... 6

            1.    The Quality of the Result Supports the Fee Request.................................... 7

            2.    The Substantial Risks of the Litigation Support the Fee Request................. 9

            3.    The Skill Required and the Quality of the Work......................................... 13

            4.    The Contingent Nature of the Fee and the Financial Burden Carried by Counsel Support the Fee Request.................................................................. 14

            5.    A 25% Fee Award Is Consistent with Fee Awards in Similar, Complex, Contingent Litigation ................................................................................. 16

            6.    The Reaction of the Class............................................................................. 18

      C.    A Lodestar Cross-Check Supports the Requested Fee............................................ 19

IV.   ADDITIONAL COUNSEL B&L'S FEE REQUEST IS REASONABLE......................... 21

V.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE ................................... 22

VI.   PLAINTIFFS SHOULD BE GRANTED PSLRA AWARDS ......................................... 23

VII.  CONCLUSION ......................................................................................................... 24

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
 723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................................... 17

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
 572 F.3d 221 (5th Cir. 2009) .................................................................................................. 2

*In re Am. Apparel, Inc. S'holder Litig.*,
 2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................................................... 13, 17, 20

*In re Amgen Inc. Sec. Litig.*,
 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .............................................................. 19, 23

*In re Anthem, Inc. Data Breach Litig.*,
 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)........................................................................ 6

*In re Apollo Grp. Inc. Sec. Litig.*,
 2012 WL 1378677 (D. Ariz. Apr. 20, 2012)........................................................................ 20

*Backman v. Polaroid Corp.*,
 910 F.2d 10 (1st Cir. 1990) ..................................................................................................... 2

*In re Banc of Cal. Sec. Litig.*,
 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ...................................................................... 18

*In re BankAtlantic Bancorp Inc. Sec. Litig.*,
 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds*,
 *Hubbard v. BankAtlantic, Bancorp. Inc*. 688 F.3d 713 (11th Cir. 2012)........................... 15, 16

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009).............................................................................. 13

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
 909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................................... 12

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) .................................................................................................................. 5

*In re Centurylink Sales Practices and Sec. Litig.*,
 2021 WL 3080960 (D. Minn. July 21, 2021)......................................................................... 12

*Chun–Hoon v. McKee Foods Corp.*,
 716 F. Supp. 2d 848 (N.D. Cal. 2010) .................................................................................. 21

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

ii

*Craft v. Cnty. of San Bernardino,*
  624 F. Supp. 2d 1113 (C.D. Cal. 2008)..................................................................... 20, 21

*In re CV Therapeutics, Inc., Sec. Litig.,*
  2007 WL 1033478 (N.D. Cal. Apr. 4, 2007).................................................................. 18

*Davis v. Yelp, Inc.,*
  2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ................................................................ 18

*Destefano v. Zynga Inc.,*
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016)......................................................... 13, 14, 21

*Ellison v. Steven Madden, Ltd.,*
  2013 WL 12124432 (C.D. Cal. May 7, 2013)................................................................... 6

*In re Equity Funding Corp. Sec. Litig.,*
  438 F. Supp. 1303 (C.D. Cal. 1977)............................................................................. 14

*In re Facebook, Inc. Sec. and Derivative Litig.*
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2005) ................................................................. 21

*Fischel v. Equitable Life Assur. Soc'y of U.S.,*
  307 F.3d 997 (9th Cir. 2002)...................................................................................... 20

*In re Genworth Fin. Sec. Litig.,*
  2016 WL 5400360 (E.D. Va. Sept. 26, 2016) ............................................................... 19

*Glass v. UBS Fin. Servs.,*
  331 F. App'x. 452 (9th Cir. 2009)................................................................................ 20

*Glickenhaus & Co. v. Household Int'l, Inc.,*
  787 F.3d 408 (7th Cir. 2015)....................................................................................... 15

*Gonzalez v. City of Maywood,*
  729 F.3d 1196 (9th Cir. 2013)..................................................................................... 19

*Gross v. GFI Grp., Inc.,*
  784 F. App'x. 27 (2d Cir. Sept. 13, 2019)..................................................................... 11

*Gudimetla v. Ambow Educ. Holding,*
  2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ............................................................... 9

*Guevoura Fund Ltd. v. Sillerman,*
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019)................................................................. 23

*Harris v. Marhoefer,*
  24 F.3d 16 (9th Cir. 1994)........................................................................................... 22

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

iii

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................................... 9

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................................................................... 7

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005)............................................................*passim*

*Hildes v. Arthur Andersen LLP*,
    734 F.3d 854 (9th Cir. 2013) ...................................................................................... 11, 12

*Hubbard* v. *BankAtlantic Bancorp. Inc.*
    688 F.3d 713 (11th Cir. 2012)........................................................................................... 16

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................... 16, 20, 23, 24

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012)........................................................................ 9

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).................................................................. 15

*Kendall v. Odonate Therapeutics, Inc.*,
    2022 WL 1997530 (S.D. Cal. June 6, 2022) .................................................................... 18

*In re Korean Ramen Antitrust Litig.*,
    Case No. 3:13-cv-04115, ECF No. 920 (N.D. Cal. Dec. 17, 2018) ................................. 15

*Lea v. TAL Educ. Grp.*,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .................................................................. 20

*Leach v. NBC Universal Media, LLC*,
    2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ................................................................ 21

*In re LJ Int'l, Inc. Sec. Litig.*,
    2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) .................................................................. 9

*In re Lyft Inc. Sec. Litig.*,
    2023 WL 5068504 (N.D. Cal. Aug. 7, 2023)............................................................... 13, 16

*In re Marsh & McLennan Cos. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).................................................................. 24

*Marshall v. Northrop Grumman Corp.*,
    2020 WL 5668935 (C.D. Cal. Sept. 18, 2020).................................................................. 17

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

iv

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ...................................................................... 22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ................................................................................. 17

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .............................................................................................. 20

*Morris v. Lifescan, Inc.*,
54 F. App'x. 663 (9th Cir. 2003) ...................................................................... 17, 18

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010) .............................................................................................. 15

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
2009 WL 9100391 (C.D. Cal. June 24, 2009) ......................................................... 17

*In re Myford Touch Consumer Litig.*,
2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) ......................................................... 21

*Nacif v. Athira Pharma, Inc.*,
2022 WL 3028579 (W.D. Wash. July 29, 2022) ....................................... 2, 8, 10, 11

*Nacif v. Athira Pharma, Inc.*,
2023 WL 2138478 (W.D. Wash. Feb. 17, 2023) ................................................... 8, 9

*Nacif v. Athira Pharma, Inc.*,
2023 WL 6290582 (W.D. Wash. Sept. 27, 2023) ...................................................... 8

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................ 16

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................ 12

*In re Nuvelo, Inc. Sec. Litig.*,
2011 WL 2650592 (N.D. Cal. July 6, 2011) ............................................................ 18

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................*passim*

*In re Pac. Enters. Sec. Litig.*
47 F.3d 373 (9th Cir. 1995) .............................................................................. 16, 17

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) .................................................................................. 6

Co-Lead Counsel's Motion for Award of
Attorneys' Fees and Expenses
Case No. 2:21-cv-00861-TSZ

Labaton Keller Sucharow LLP
140 Broadway, New York, NY 10005
Phone: 212 907-0700
Fax: 212 818-0477

v

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................................................. 4

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................................................................................... 15

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) ............................................................................................. 6

*Ross v. Trex Co.*,
2013 WL 12174133 (N.D. Cal. Dec. 16, 2013) ................................................................ 4

*Saldivar v. Priority One Med. Transp., Inc.*,
2011 WL 13213889 (C.D. Cal. Mar. 22, 2011) .............................................................. 17

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013) ........................................................................ 12

*Schulein v. Petroleum Dev. Corp.*,
2015 WL 12698312 (C.D. Cal. Mar. 16, 2015) ........................................................ 23, 24

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .............................................................. 9, 14

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ........................................................................................... 6

*Tchrs.' Ret. Sys. of La. Ret. Sys. of La. v. A.C.L.N., Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................................................. 9, 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,
and Prods. Liab. Litig.*,
2013 WL 12327929 (C.D. Cal. July 24, 2013) ............................................................... 16

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................... 19, 20

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ............................................................................................. 6

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) .......................................................................................... 5, 6

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) ................... 15

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .................................................................................. *passim*

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

vi

*Waldbuesser v. Northrop Grumman Corp.*,
    2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) .......................................................................... 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .............................................................................................. 14, 16

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) .................................................................... 13, 14

*In re Xcel Energy, Inc., Sec. Derivative & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................................ 10, 15

**Statutes**

15 U.S.C. § 77z-1(a)(4) ...............................................................................................................2, 23

15 U.S.C. § 77z-1(a)(6) ....................................................................................................................6

15 U.S.C. § 78u-4(a)(4) ...............................................................................................................2, 23

15 U.S.C. § 78u-4(a)(6) ....................................................................................................................6

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

vii

Labaton Keller Sucharow LLP (f/k/a Labaton Sucharow LLP, "Labaton")[1] and Glancy Prongay & Murray LLP ("GPM" and, with Labaton, "Co-Lead Counsel"), on behalf of all Plaintiffs' Counsel, respectfully submit this Motion for an Award of Attorneys' Fees and Payment of Expenses.[2]

## I. INTRODUCTION

Plaintiffs' Counsel have succeeded in obtaining a $10,000,000 non-reversionary, all cash, settlement (the "Settlement") for the benefit of the Class in the above-captioned action (the "Action"). This is a very favorable outcome in the face of substantial risks, and it is the result of Plaintiffs' Counsel's vigorous, persistent, and skilled efforts. Co-Lead Counsel respectfully move this Court for an award of attorneys' fees in the amount of 25% of the Settlement Fund (*i.e.*, $2,500,000, plus interest at the same rate as the Settlement Fund), and payment of $161,699.33 in Litigation Expenses.[3] The Litigation Expenses consist of $150,699.33 in costs incurred by

---

[1] Capitalized terms not defined herein have the meanings given to them in the Amended Stipulation and Agreement of Settlement, dated December 15, 2023 ("Amended Stipulation"; ECF No. 125-2), or the Joint Declaration of Thomas G. Hoffman, Jr. and Casey E. Sadler in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Joint Declaration"), filed herewith.

All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration. Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added. Co-Lead Counsel view this motion as seeking relief attendant to class certification. *See* LCR 7(e)(3).

[2] Co-Lead Counsel intend to allocate any attorneys' fees awarded by the Court as follows: (i) 10% of the total fee award to liaison counsel, Rossi Vucinovich, P.C.; (ii) to counsel for plaintiff Hang Gao, Block & Leviton LLP ("B&L"), their lodestar multiplied by the "multiplier" (whether positive or negative) awarded by the Court; (iii) the remaining amount split equally between Labaton and GPM; and (iv) Labaton to pay 13% of its attorneys' fees to The Schall Law Firm. ¶53. Expenses will be paid to each firm as awarded by the Court. A copy of the email memorializing the allocations to Labaton and GPM is submitted as Ex. 8 to the Joint Declaration. The other allocations are based on oral agreements between counsel. ¶53.

Stated differently, if the Court awards a $2,500,000 fee with the requested multiplier of 0.98 (discussed below), Rossi Vucinovich, P.C. will be allocated $250,000, B&L will be allocated 98% of their lodestar ($30,221.73), GPM will be allocated $1,109,889.13, and Labaton will be allocated $1,109,889.14 and pay $144,285.59 to The Schall Law Firm. ¶54.

[3] "Litigation Expenses," by definition, includes the expenses of counsel and also those of Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

---

CO-LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

1

Plaintiffs' Counsel, and a total of $11,000 for plaintiffs Antonio Bachaalani Nacif and Wies Rafi ($5,000 each) and additional named plaintiff Hang Gao ($1,000) for reimbursement of their reasonable costs (including the cost of time spent) incurred in prosecuting the Action on behalf of the Class pursuant to the PSLRA, 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4).

Achieving the Settlement was not easy. Defendants were represented by highly skilled litigators, and Plaintiffs' Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts needed to litigate a complex securities fraud case, and a substantial risk of non-payment. These are not idle risks. "To be successful, a securities class action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). As a result, a significant number of cases—like this one—are dismissed in whole or in part at the outset. *See Nacif v. Athira Pharma, Inc.*, 2022 WL 3028579, at *19 (W.D. Wash. July 29, 2022) ("MTD Order").[4]

Nor do the risks end at the pleading stage. Even when a plaintiff is successful at trial, payment is far from guaranteed.[5] There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See* NERA Report, pp. 13-14 ("Since 2015, more cases filed have been dismissed than settled.").[6] Despite these risks, Plaintiffs' Counsel vigorously pursued this case for nearly three years—working 3,188 hours, and advancing

---

[4] *See also* Ex. 9 (Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) ("NERA Report") at p. 15-16 (Fig. 14) (finding motion to dismiss filed in 96% of securities class action lawsuits, with a decision reached in 74% of the cases, and stating that "[a]mong the cases where a decision was reached, 60% of motions were granted (with or without prejudice) while 40% were denied either in part or in full.").

[5] *See, e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment n.o.v. was denied, but on appeal, the judgment was reversed and the case was dismissed – after 11 years of litigation).

[6] The term "dismissed" is "shorthand for all [securities] class actions resolved without settlement; it includes cases in which motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification." NERA Report, at n.10.

$150,699.33 in expenses, all on a fully continent basis. As explained in the Joint Declaration, Plaintiffs' Counsel, among other things:

- drafted initial complaints;

- engaged in contested motion practice regarding the appointment of lead plaintiff and lead counsel pursuant to the PSLRA;

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (i) reviewing and analyzing: (a) Athira Pharma, Inc.'s ("Athira" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"); (b) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (c) research reports issued by financial analysts concerning Athira; (d) other publicly available information and data concerning Athira, including *STAT News* articles and comments published on scientific research website, *PubPeer*, investigative reports regarding the patents for Dihexa and ATH-1017; (e) documents produced in response to Freedom of Information Act ("FOIA") requests issued to health regulators, including the National Institutes of Health; and (f) the applicable laws governing the claims and potential defenses; (ii) working with in-house investigators who conducted an investigation that involved, *inter alia*, locating approximately twelve former Athira employees and other persons with relevant knowledge, and interviewing four of them; and (iii) consultation with experts in the fields of patents, loss causation, and damages;

- utilized the comprehensive investigation efforts and additional research to draft and file the the 58-page (222-paragraph) Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "Complaint");

- researched, drafted, and filed an opposition to Defendants' motion to dismiss the Complaint, which was granted in part and denied in part (*see Nacif*, 2022 WL 3028579, at *19;

- researched, drafted, and filed an opposition to Defendant Kawas's motion for partial reconsideration the Court's MTD Order, which the Court denied;

- engaged in discovery, which entailed, *inter alia*: (i) exchanging initial disclosures; (ii) negotiating a joint discovery plan, protective order and ESI protocol, all of which were subsequently entered by the Court; and (iii) serving, meeting and conferring with respect to, and responding to, document requests and interrogatories, including serving/reviewing verified interrogatory responses, and producing documents to the remaining Defendants;

- engaged in a mediation process overseen by a highly experienced third-party mediator of complex actions, Jed Melnick, Esq., of JAMS, which involved an exchange of written submissions concerning the facts of the case, liability and damages, and a full-day in-person mediation session that ultimately resulted in an agreement in principle to the settle the Action for $10 million;

- negotiated the terms of the Stipulation, the Supplemental Agreement, and reviewed documents produced in confirmatory discovery;

- drafted the preliminary approval motion and supporting papers;

- prepared supplemental mediation statements, worked with Plaintiffs' damages expert, and engaged in a second mediation process with Mr. Melnick and additional counsel B&L regarding the allocation of the Net Settlement Fund between the Securities Act and Exchange Act Subclasses;

- prepared the Amended Stipulation and engaged in supplemental briefing regarding preliminary approval; and

- are working with the Settlement Administrator to provide notice to the Class.

As compensation for Plaintiffs' Counsel's significant efforts and achievements on behalf of the Class, Co-Lead Counsel respectfully request a fee award in the amount of 25% of the Settlement Fund. Co-Lead Counsel believe that an award of 25% (*i.e.*, the Ninth Circuit "benchmark"), properly reflects the many significant risks taken by Plaintiffs' Counsel, as well as the result achieved in a hard fought and difficult litigation. When examined under either the percentage-of-the-fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well below the range of attorneys' fees awarded in similar complex, contingency cases. Indeed, the requested fee represents a *negative* multiplier of 0.98 on Plaintiffs' Counsel's lodestar, which itself is an indication of the reasonableness of the requested fee. *See Ross v. Trex Co.,* 2013 WL 12174133, at *1 (N.D. Cal. Dec. 16, 2013) ("Plaintiffs sought no extraordinary award of fees; to the contrary, they sought less than their lodestar, which further supports the reasonableness of the fees requested and awarded."); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").

Co-Lead Counsel also seek payment of $150,699.33 in expenses incurred in prosecuting this Action. *See* ¶¶95-101. This amount is below the $235,000 limit disclosed in the Notice. The expenses are reasonable in amount and were necessarily incurred in the Action.

Finally, Co-Lead Counsel respectfully request PSLRA awards in the aggregate amount of $11,000 to compensate Plaintiffs for the time and effort they have expended on behalf of the Class.

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

4

Each Plaintiff familiarized himself with the facts of the case, reviewed relevant pleadings, conferred with their counsel about the litigation, collected and produced relevant documents to their counsel, and was involved in the settlement of the case and/or the allocation process. *See* Ex. 5 ("Rafi Decl.") at ¶5; Ex. 6 ("Nacif Decl.") at ¶5; Ex. 7 ("Gao Decl.") at ¶5. But for Plaintiffs' commitment to pursuing the claims, the recovery for the Class would not have been possible.

For all the reasons set forth herein, and in the Joint Declaration, Co-Lead Counsel respectfully request that the Court award attorneys' fees equal to 25% of the Settlement Fund, approve payment of $150,699.33 in litigation expenses, and grant PSLRA awards to Plaintiffs Nacif, Rafi and Gao in the aggregate amount of $11,000.

## II. FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the Action's history; the nature of the claims; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; a summary of the services provided by Plaintiffs' Counsel; and additional information on the factors that support the fee and expense application, including the lodestar cross-check. ¶¶12-41, 52-105; *see also* Decl. of Labaton Keller Sucharow LLP, Ex. 1; Decl. of Glancy Prongay & Murray LLP, Ex. 2; Decl. of Rossi Vucinovich, P.C., Ex. 3; and Decl. of Block & Leviton LLP, Ex. 4.

## III. CO-LEAD COUNSEL'S FEE REQUEST IS REASONABLE

### A. Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees From the Common Fund

It is well settled that attorneys who represent a class and create a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

5

preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" when awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method. *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"). Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."). For these reasons, among others, Co-Lead Counsel respectfully request that the Court award attorneys' fees in this case on a percentage-of-the-fund basis.

**B.      The Requested Attorneys' Fee Is Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method**

The Ninth Circuit has "established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The benchmark is "presumptively reasonable," *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018), and it should only be adjusted upward or downward for "unusual circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). In making this determination, "[t]he guiding principle is that attorneys' fees be reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). Factors that courts have used to determine whether the requested percentage is fair and reasonable include: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

6

and the quality of work; (iv) the contingent nature of the fee and the financial burden carried by the plaintiffs; (v) the reaction of the class; and (vi) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-51. The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Id.* As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

### 1. The Quality of the Result Supports the Fee Request

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *8 (C.D. Cal. June 10, 2005); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained").

Here, Co-Lead Counsel have achieved a significant and certain cash payment of $10 million, plus interest, for the benefit of the Class without the risk, delay, expense, and uncertainty of continued litigation, trial and the inevitable appeals. Plaintiffs' damages expert has estimated that *if* Plaintiffs were to prevail in *all* respects on both the Securities and Exchange Act claims—which, among other things, would have required the Ninth Circuit to reverse this Court's dismissal of the Exchange Act claims—(*i.e.*, Plaintiffs' best-case scenario), estimated total *maximum* class wide damages would be approximately $143.86 million using an 80/20 Multi-Trader Model. ¶59. Under this scenario, the recovery is approximately 7.0% of class-wide damages. This is *more than twice* the typical recovery for cases of a similar magnitude. *See* Ex. 9 (NERA Report, at p. 25 (Fig. 21) (from January 2014-December 2023 median settlement value as a percentage of "NERA-Defined Investor Losses" was 2.9% for securities class actions with estimated losses of $100-$199 million)).

This case was not risk free and there were meaningful barriers to any recovery. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks present in this case. Indeed, by the time this case settled, the Court had already: (i) dismissed eight of the ten defendants (including all of the Underwriter Defendants), all of the Exchange Act claims on scienter and/or materiality grounds, and all §12(a)(2) Securities Act claims with respect

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

7

to Plaintiffs Nacif and Rafi; and (ii) found ten of the eleven allegedly false and/or misleading statements non-actionable. *See Nacif*, 2022 WL 3028579, at *19. The only remaining claims were: (i) one Securities Act § 11 claim against Dr. Kawas and Athira relating solely to "Statement 3";[7] and (ii) one Securities Act § 15 claim (control person) against Dr. Kawas. *See id*.

If the litigation had continued and Plaintiffs were only successful on the Securities Act claims, maximum recoverable damages would be approximately $83.10 million, and the Settlement—after the 8.5-91.5% allocation—would equate to 11.0% ($9,150,000/$83,100,000) of the estimated maximum Securities Act damages. ¶59. This is **more than two and three-quarters times** the median recovery in cases with similarly sized damages. *See* Ex. 9 (NERA Report, at p. 25 (Fig. 21) (between January 2014-December 2023 the median settlement value as a percentage of "NERA-Defined Investor Losses" was 3.8% for securities class actions with estimated losses between $50-$99 million)).[8]

Of course, the 7-11% recoveries are based on maximum recovery scenarios, neither of which were guaranteed. The Court has already expressed skepticism with respect to Plaintiffs' ability to successfully appeal the dismissal of the Exchange Act claims. *See Nacif v. Athira Pharma, Inc.*, 2023 WL 6290582, at *3 (W.D. Wash. Sept. 27, 2023) (stating that the Exchange Act "claims have little value in light of the Court's Dismissal Order."). The Court also indicated that it would most likely deny amendment as to the dismissed claims in the event discovery were to yield incriminating evidence. *See Nacif v. Athira Pharma, Inc.*, 2023 WL 2138478, at *2, n.1 (W.D. Wash. Feb. 17, 2023) ("The Court has also considered the possibility that plaintiffs might later ask for relief from

---

[7] "Statement 3" was contained in Athira's IPO and SPO Prospectuses and discussed Athira's exclusive licensing agreement with WSU to use, develop, and commercialize the patented molecule Dihexa, the prodrug of which is ATH-1017 (the "WSU License Agreement."). Two of the patents included in the WSU License Agreement cited two of the articles found to contain altered (*i.e.*, enhanced) images. The Court found that, because these two patents cited to research papers containing altered images, the omission of the fact that they contained altered images may have misled a reasonable investor about the value of Athira's patent portfolio and business prospects. *See Nacif*, 2022 WL 3028579, at *16.

[8] Under the Plan of Allocation, the Exchange Act Subclass will receive 1.4% of estimated maximum damages ($850,000/$60,760,000 = 1.4%).

the now-expired deadlines and propose to replead one or more of the dismissed claims. Any such motion is unlikely to succeed in light of the general principle that plaintiffs should plead viable claims before the parties commence discovery."). And, finally, Defendants had cogent arguments regarding falsity, materiality, and damages—many of which had yet to be tested.

Given the range of possible results in this litigation (including no recovery at all), and the procedural posture of the case, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee. *See, e.g.*, *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4-5,*7-8 (C.D. Cal. Oct. 19, 2009) (awarding 25% of gross settlement fund in securities fraud class action settlement where $2 million recovery was 4.5% of $44 million maximum possible recovery and significantly below the median recovery in similar sized cases); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (awarding 25% of $12.5 million gross settlement fund in securities fraud class action settlement where recovery was 3.5% of maximum damages); *Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *5, *8 (C.D. Cal. Mar. 16, 2015) (awarding 25% of gross settlement fund in securities fraud class action where recovery of $1.5 million was 5.6% of $26.7 million in estimated damages).

## 2.   The Substantial Risks of the Litigation Support the Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "the risk of litigation." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008); *see also Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees). While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *see also Schwartz v. TXU Corp.*, 2005 WL 3148350, at *32 (N.D. Tex. Nov. 8, 2005) ("[T]he risk of no recovery in complex [securities] cases of this type is very real."); *Tchrs.' Ret. Sys.*

*of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at \*3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").[9]

This Action was no exception. While Co-Lead Counsel believe that the claims of Plaintiffs and the Class are meritorious, Co-Lead Counsel recognized from the outset that Plaintiffs' ability to succeed at trial and obtain a large judgment were far from certain.  As discussed in the Joint Declaration, there were considerable challenges here with respect to establishing the elements of falsity, materiality, and damages.  ¶¶62-85.  For evidence of this risk, the Court needs to look no further than its own MTD Order dismissing the majority of Defendants and significant portions of the case pursuant to Defendants' motions to dismiss.  *See Nacif*, 2022 WL 3028579, at \*19; *see also In re Xcel Energy, Inc., Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved.").  Furthermore, the fact that Plaintiffs prevailed in part at the pleading stage did not ensure a recovery at trial.  Co-Lead Counsel faced continuing significant hurdles in **_proving_** liability and damages.

For example, Defendants forcefully argued, and would continue to maintain at summary judgment and trial, that the one remaining statement was neither actionable nor material.  Among other things, Defendants would have likely continued to argue that: (i) Athira accurately described the WSU License Agreement in Statement 3 and, as such, it is a nonactionable statement of fact; (ii) the allegedly omitted information bears no connection to the substance of Statement 3, which does not discuss the details of the patents, the value of the patents to Athira, or Dr. Kawas's research or dissertation; (iii) while two of the patents included in the WSU License Agreement cited two of Dr. Kawas's research papers that included altered images, the image alterations did not impact the quantitative data or the substantive conclusions of the research papers; (iv) while Dr. Kawas admitted to enhancing some of the images while she was a student, she fervently maintained that she did not alter the underlying data; (v) Dr. Joseph Harding, Dr. Kawas's dissertation advisor and

---

[9] *See also* NERA Report at pp. 13-16 (Figs. 12 and 14).

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

10

a Professor emeritus at WSU, has publicly stated that there is "no indication" the underlying data were altered and that the altered images were "completely immaterial to the conclusions of any of the papers";[10] and (vi) Athira's scientific findings with respect to its lead drug candidate, ATH-1017 (a prodrug of the molecule Dihexa), have been repeated and validated by numerous past and ongoing preclinical and clinical studies performed by Athira, independent labs, current and former Athira scientists, and in peer reviewed publications. *See* ECF Nos. 76, 90 & 94.

Although Plaintiffs partially prevailed on the motion to dismiss because the "failure to disclose Kawas's mistakes as a graduate student, while touting the exclusivity of a license for patents founded on Kawas's doctoral work, ***might*** have 'misled a reasonable investor about the nature of his or her investment,'" (*Nacif*, 2022 WL 3028579), at \*16; and on the motion for reconsideration because the Court could not conclude "as a matter of law" that "the omitted fact (namely, Kawas's alteration of certain images in her dissertation and research papers) is so obviously unimportant that no reasonable shareholder could have viewed it as significantly altering the 'total mix' of information made available to stockholders" (ECF No. 95, at pp. 2-3); the Court also made clear that "[w]hether plaintiffs can succeed on the merits of these claims is a question for another day." *Id*. at 3. Falsity and materiality were, therefore, open questions, and the trier of fact could have determined that the evidence supported Defendants' version of the events. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable).

Even assuming that Plaintiffs overcame the above risks and successfully established Defendants' liability, both Dr. Kawas and Athira have asserted the affirmative defense of negative causation. *See* ECF Nos. 101 at p. 39-41; 102 at p. 47-49; *see also Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013) ("The affirmative defense of negative causation prevents recovery

---

[10] *See* Ex. 11 (Testimonial in Support of Dr. Leen Kawas By Joseph W. Harding).

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

11

for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement."). Dr. Kawas and Athira would likely contend, among other things, that: (i) Athira's stock price dropped not as a result of the revelation of the allegedly concealed information—*i.e.*, Dr. Kawas' enhancement of Western blot images in her academic research—but rather as a result of unwarranted market panic regarding the validity of the science underlying Athira's lead development product (ATH-1017); and (ii) that such a conclusion was supported by the fact that Athira's stock price significantly rebounded following Athira's October 21, 2021 press release announcing the Special Committee's finding that the ATH-1017 Phase 1 trial P300 data were unaffected by the alleged fraud. Although Plaintiffs believed that they had meritorious arguments in response to the Defendants' negative causation assertions, it simply cannot be disputed that the Parties held extremely disparate views on loss causation, and damages, and had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery. *See, e.g., Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) ("Proving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky"); *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Finally, it is important that "[t]his case lacked several strong facts that often support liability (and large settlement valuations) and provide a roadmap for proving fraud, such as suspected insider trading, a corporate restatement, or a companion SEC or DOJ investigation." *In re Centurylink Sales Practices and Sec. Litig.*, 2021 WL 3080960, at *9 (D. Minn. July 21, 2021). Rather, it involved conduct that was several steps removed from a direct violation of the securities laws. *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement).

Co-Lead Counsel's Motion for Award of
Attorneys' Fees and Expenses
Case No. 2:21-cv-00861-TSZ

Labaton Keller Sucharow LLP
140 Broadway, New York, NY 10005
Phone: 212 907-0700
Fax: 212 818-0477

12

In sum, the risks posed by continued litigation were substantial, and they were present every step of the way. *See In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *12 (N.D. Cal. Aug. 7, 2023) (awarding 25% of $25 million settlement where "there is substantial risk that Defendants could reduce or eliminate recoverable damages by establishing that the IPO registration statement did not contain material misrepresentations or omissions, or via a successful negative causation defense."); *Destefano v. Zynga Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (awarding 25% of $23 million settlement and noting that, "[a]s to the second factor, . . . the risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation.").

### 3.    The Skill Required and the Quality of the Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed. To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047; *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("The difficulty of securities litigation generally—particularly the challenges presented by the PSLRA's pleading requirements—requires skilled counsel familiar with the relevant statutes and case law.").

As demonstrated by their firm resumes, Co-Lead Counsel's attorneys have many years of experience litigating complex federal civil cases, and, in particular, shareholder and securities class actions. *See* Exs. 1-C; 2-C; *see also In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 2009 WL 50132, at *10 (S.D.N.Y. Jan. 5, 2009) (Labaton has "substantial experience in the prosecution of shareholder and securities class actions"); *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 13, 2018) ("[GPM] has had extensive experience serving as lead or co-lead counsel

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

13

in class action securities litigation."). Co-Lead Counsel's experience allowed them to obtain significant investigative materials in spite of the PSLRA's barriers to obtaining formal discovery, identify the complex issues involved in this case, and prevail in part against Defendants' motion to dismiss and fully against the motion for reconsideration, formulate strategies to effectively prosecute the Action, and settle the Action on favorable terms. *See Omnivision*, 559 F. Supp. 2d at 1046 (finding that plaintiffs' ability to withstand two motions to dismiss in securities context was "some testament to Lead Counsel's skill.").

In evaluating the quality of Co-Lead Counsel's work, it is also important to consider the quality and vigor of opposing counsel. *See, e.g.*, *Heritage Bond*, 2005 WL 1594403, at *20; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Defendants in this Action were represented by Wilson Sonsini Goodrich & Rosati, P.C., Perkins Coie LLP, and DLA Piper LLP (US), all of which are experienced, aggressive, and highly skilled law firms. "The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Jan. 13, 2006).

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Counsel Support the Fee Request

The fourth factor is the contingent nature of the fee. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*"); *see also Zynga*, 2016 WL 537946, at *18 ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."). Here, Plaintiffs' Counsel have received no compensation to date, invested 3,188 hours of work equating to a total lodestar of $2,541,943.25, and advanced expenses of $150,699.33 in prosecuting and resolving this Action. Additional work in implementing the Settlement and claims administration will also be required, and no additional compensation will be sought. Since the inception of this case, Plaintiffs' Counsel have borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

14

The risk of no recovery in complex cases like this one is very real. Co-Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *See, e.g.*, *In re Korean Ramen Antitrust Litig.*, Case No. 3:13-cv-04115, ECF No. 920 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (Labaton served as lead counsel where defense verdict was rendered after five years of litigation, four weeks of trial and millions of dollars of costs and attorney time expended).

And Co-Lead Counsel are not alone. There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares, based on Supreme Court's reversal of over 40 years of unbroken circuit court precedent in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)); *see also* Joint Decl. ¶¶77-85. Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel*, 364 F. Supp. 2d at 994. Even plaintiffs who succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).[11]

---

[11] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla.

Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainties were that there would be no fee or expense reimbursement without a successful result, and that such a result would only be realized after substantial amounts of time, effort, and money had been expended. Nevertheless, Plaintiffs' Counsel committed significant amounts of both time and money to vigorously and successfully prosecute this Action for the benefit of the Class.  ¶¶86-94.  Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee."  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("In complex cases, such as this, the risk of no recovery is substantial and must be balanced against an expectation of a sizeable award."); *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at \*12 ("The risk that Lead Counsel took in litigating this complex securities case on a contingency basis for the last few years weighs in favor of a substantial attorneys' fee award.").

**5.    A 25% Fee Award Is Consistent with Fee Awards in Similar, Complex, Contingent Litigation**

An attorneys' fee of 25% of the Settlement Fund would be reasonable under the circumstances before the Court given that it is the benchmark and, indeed, lower than comparable fee awards under similar circumstances.

"As noted above, the Ninth Circuit has established 25 percent of the common fund as the benchmark for attorney fee awards."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2013 WL 12327929, at \*32 (C.D. Cal. July 24, 2013); *see also In re Pac. Enters. Sec. Litig.* 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases.").  However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances."  *WPPSS*, 19 F.3d at 1294 n. 2.

As applied, this means that "in most common fund cases, the award exceeds that

Apr. 25, 2011), *aff'd on other grounds*, *Hubbard* v. *BankAtlantic, Bancorp. Inc*. 688 F.3d 713 (11th Cir. 2012) (in case tried by Labaton, court granted defendants' motion for judgment as a matter of law following plaintiffs' verdict).

benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases, and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third."); *Saldivar v. Priority One Med. Transp., Inc.*, 2011 WL 13213889, at *13 (C.D. Cal. Mar. 22, 2011) ("Awards in the range of 33.33% of a settlement fund are not atypical in common fund cases."). "This is particularly true in securities class actions such as this." *In re Am. Apparel*, 2014 WL 10212865, at *23; *see also Pac. Enters.*, 47 F.3d at 379 (affirming 33% award from $12 million common fund "because of the complexity of the issues and the risks"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373 1377 (N.D. Cal. 1989) (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%").

Indeed, for securities class action settlements settled between 2014 and 2023 with a gross settlement value of between $5 million and $10 million, the median fee as a percentage of settlement value was 30%, and the median fee award for settlements between $10 million and $25 million was 27.5%. *See* NERA Report at p.29 (Fig. 25).[12]

Accordingly, the requested fee percentage is not only the Ninth Circuit benchmark, it is also well below the range of percentages courts in this Circuit and elsewhere have awarded in similar complex cases. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement); *Morris v. Lifescan, Inc.*, 54 F. App'x. 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash class action

---

[12] Notably, for securities class actions settled from 1996 to 2013, the median of plaintiffs' attorneys' fees as a percentage of gross settlements of $5 million to $10 million was 30%. *See* Ex. 9, NERA Report at p. 29 (Fig. 25). Thus, for a $10 million settlement—like this one—fee awards have remained remarkably consistent since the passage of the PSLRA in 1995.

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

17

settlement); *Vizcaino*, 290 F.3d at 1051 (affirming award of 28% of $97 million settlement fund); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class actions"); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third of a $19.75 million settlement fund); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (awarding 33.3% of $22,250,000 in securities class action); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (30% of $8.9 million); *In re CV Therapeutics, Inc., Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (30% of $13.35 million); *Omnivision*, 559 F. Supp. 2d at 1049 (28% of $13.75 million); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (awarding 33⅓% of $12.75 million settlement fund in securities class action).[13]

### 6.   The Reaction of the Class

"The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21; *see also Omnivision*, 559 F. Supp. 2d at 1048 ("The reaction of the class may also be a determining factor in … determining the fee award."). Indeed, the absence or a small number of objections from class members to a fee and expense application supports a finding that the request is fair and reasonable. *See Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818, at *5 (C.D. Cal. Oct. 24, 2017) (finding receipt of only two objections to fee request, after mailing 210,000 notices, was "remarkably small given the wide dissemination of notice," and "conclud[ing] that the lack of significant objections to the requested fees justifies an award of one-third of the [$16.5 million] settlement fund."); *Banc of Cal.,* 2020 WL 1283486, at *1 (awarding 33% of $19.75 million settlement fund where "over 35,000 copies of the Notice were disseminated to potential Class Members … and no objections to the fees or expenses were filed by Class Members.").

Here, the objection deadlines are: (i) September 6, 2024, for objectors who are not

---

[13] *See also* Ex. 10 (Table of Collected Cases).

CO-LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

18

represented by counsel; and (ii) October 11, 2024, for objectors who are represented by counsel. ECF No. 130, ¶1(h).  To the extent there are any objections, they will be addressed by Co-Lead Counsel in their reply papers.  *See id*.

### C.    A Lodestar Cross-Check Supports the Requested Fee

Although Co-Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *Vizcaino,* 290 F.3d at 1050 ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Genworth Fin. Sec. Litig.*, 2016 WL 5400360, at *7 (E.D. Va. Sept. 26, 2016).  In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases.  *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013); *Vizcaino*, 290 F.3d at 1051-52 ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *Heritage Bond*, 2005 WL 1594403, at *22 ("In securities class actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.").

When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."  *In re Tyco Int'l,*

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

19

*Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *Glass v. UBS Fin. Servs.*, 331 F. App'x. 452, 456 (9th Cir. 2009).[14]  In this case, the lodestar method—whether used directly or as a "cross-check"— demonstrates the reasonableness of the requested fee.

Here, Plaintiffs' Counsel (including attorneys, paralegals, and professional support staff) collectively devoted 3,188 hours to the Action.  *See* Ex. 12 (Summary Table of Lodestars and Expenses).  As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Plaintiffs' Counsel are each submitting a declaration that includes a schedule breaking down the firm's lodestar by individual, position, hourly rate, and hours worked.[15]  ¶¶88-89; Exs. 1- A; 2- A; 3- A; 4- A.  Based on current hourly rates,[16] Co-Lead Counsel's lodestar is $2,541,943.25. ¶91.[17]  Thus, the 25% fee request (equal to $2,500,000), yields a negative multiplier of 0.98.  *Id*.

A multiplier of 0.98 is below the range of multipliers commonly awarded in securities class actions and other complex litigation.  *See Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Craft v. Cnty. of San Bernardino*,

---

[14] *See also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at *23  ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.").

[15] *See In re Immune Response*, 497 F. Supp. 2d at 1176 ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended.").

[16] Courts use current rates, rather than historic rates, to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002); *see also Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

[17] Plaintiffs' Counsel's rates range from $725 to $1,325 for Partners, $795 to $925 for Of Counsel and Senior Counsel, $395 to $600 for other attorneys, and $125 to $625 for non-attorneys (Exs. 1 – A; 2-A; 3-A; 4-A), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (approving GPM's 2021 rates); *see also* Ex. 13 (Table of Hourly Rates Compiled by GPM from Filings in Bankruptcy Cases and Other Class Actions).

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

20

624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving percentage fee award equal to multiplier of approximately 5.2, collecting cases and stating that "[w]hile this is a high end multiplier, there is ample authority for such awards resulting in multipliers in this range or higher."); *Zynga*, 2016 WL 537946, at *21 ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4."). Indeed, a "multiplier of less than one … suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010); *see also In re Myford Touch Consumer Litig.*, 2019 WL 6877477, at *1 (N.D. Cal. Dec. 17, 2019) ("[T]he negative multiplier … suggests the request is reasonable.").

"The fact that [Plaintiffs'] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878, at ¶49 (S.D.N.Y. Aug. 24, 2017); *see also In re Facebook, Inc. Sec. and Derivative Litig.* 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2005). Indeed, among other things, Co-Lead Counsel will oversee the claims administration process and respond to shareholder inquiries. The multiplier will, therefore, diminish as the case moves forward because Co-Lead Counsel will not seek any additional compensation for this work.

In sum, Co-Lead Counsel's requested fee award is well within the range of reasonableness in complex class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.

## IV.    ADDITIONAL COUNSEL B&L'S FEE REQUEST IS REASONABLE

B&L's unique role as counsel to additional named plaintiff Gao is discussed in its individual firm declaration, Ex. 4. As the Court is aware, after filing the first complaint in the Action on behalf of Mr. Gao, B&L did not seek appointment as lead counsel. *See* ECF No. 128 at 3 (noting that Gao did not seek appointment as lead plaintiff). It rejoined efforts in connection with Mr. Gao's representation of the Exchange Act Subclass during the preliminary approval supplemental mediation process, to cure a conflict raised by the Court. *See id.*

Specifically, B&L participated in the supplemental mediation session addressing the allocation of the Settlement Fund between the Securities Act Subclass and Exchange Act Subclass conducted on November 16, 2023, and signed the Amended Stipulation on Gao's behalf. *See id.* In its February 15, 2024 Order, the Court granted Plaintiffs' motion for preliminary approval of the Settlement, in part, based on its reasoning that "Gao has both Securities Act Claims and Exchange Act Claims, but unlike Nacif and Rafi, Gao is not bound by the decision not to replead the Exchange Act Claims and does not have interests that are antagonistic toward or in conflict with those of absent putative class members." *Id.* at 4. Accordingly, Co-Lead Counsel respectfully request that the Court approve B&L's fee request based on its unique contribution to the case.

## V.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE

In addition to an award of fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *Omnivision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically paid by clients in the marketplace. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the beginning of the case, Plaintiffs' Counsel were aware that they might not ever recover their expenses and would not recover anything unless and until the Action was successfully resolved. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action. Thus, Plaintiffs' Counsel were motivated to take steps to minimize expenses when practicable without jeopardizing the vigorous prosecution of the Action. ¶¶77-79.

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

22

In the aggregate, Plaintiffs' Counsel have incurred expenses in the amount of $150,699.33. These expenses are set forth in the firms' individual declaration (Exs. 1-B; 2-B; and 3-B), and summarized for the Court's convenience in the Joint Declaration (¶¶95-101).  The vast majority of expenses were for the retention of experts ($85,872.00) and the Mediator ($32,691.44), which total $118,563.44 or approximately 79% of the total litigation expenses. ¶¶97-98. These expenses were critical to Plaintiffs' Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek payment, are the types of expenses routinely paid by clients in the non-contingent marketplace.  They should, therefore, be paid out of the common fund.  *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online factual and legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.").

## VI.    PLAINTIFFS SHOULD BE GRANTED PSLRA AWARDS

In connection with the Co-Lead Counsel's request for payment of Litigation Expenses, Plaintiffs respectfully request PSLRA awards in the aggregate amount of $11,000 ($5,000 to each of Messrs. Nacif and Wies Rafi, and $1,000 to Mr. Gao) for time spent representing the Class. 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4). The PSLRA, permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." *Id.* at 1173.

"Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019); *see also In re Amgen Inc. Sec. Litig.,* 2016 WL 10571773, at *10 (reasoning that "courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class" and awarding lead plaintiff $30,983.99 related to the time it dedicated to the case); *Schulein v. Petroleum Dev. Corp.*, 2015 WL 12698312, at *6 (C.D. Cal. Mar. 16, 2015)  (approving awards ranging from $7,500 to $10,000 to compensate named

plaintiffs for "the time they spent litigating the case"); *In re Omnivision Techs.*, Inc., 559 F. Supp. 2d at 1049 (awarding lead plaintiffs collectively $29,913.80 for the time they dedicated to the litigation); *Immune Response*, 497 F. Supp. 2d at 1173-74 (awarding $40,000 to lead plaintiff pursuant to PSLRA),

As set forth in their declarations, Plaintiffs have effectively fulfilled their obligations as representatives of the Class by, among other things and as applicable: (i) filing the first complaint (Mr. Gao) or moving to serve as a lead plaintiff in the Action (Messrs. Nacif and Rafi); (ii) compiling and producing their trading records to their attorneys and responding to discovery requests; (iii) communicating with their attorneys regarding the posture and progress of the case; (iv) reviewing the pleadings and briefs filed in the Action, as well as Court Orders; (v) preparing for the two mediations with their counsel (one related to reaching the Settlement and the other the allocation of the settlement proceeds between Securities Act and Exchange Act claims);[18] (vi) evaluating the Settlement Amount and/or the division between the Securities Act Subclass and Exchange Act Subclass, conferring with counsel, and ultimately approving the Settlement and/or allocation; and (vii) communicating with counsel regarding the process of finalizing the Settlement. *See* Nacif Decl. at ¶5; Rafi Decl. at ¶5; Gao Decl. at ¶5. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009).

## VII. CONCLUSION

For the foregoing reasons, Co-Lead Counsel respectfully request that the Court grant the fee and expense application. A proposed order will be filed with the Court after the deadline for objecting to the Motion has passed.

Dated: April 30, 2024

**LABATON KELLER SUCHAROW LLP**

By: */s/ Thomas G. Hoffman, Jr.*
Michael P. Canty

---

[18] Mr. Gao was only involved in the second mediation, where he represented, and his counsel advocated on behalf of, the Exchange Act Subclass.

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

24

Thomas G. Hoffman, Jr.
140 Broadway
New York, New York 10005
Phone: (212) 907-0700
Fax: (212) 818-0477
Email:mcanty@labaton.com
thoffman@labaton.com

**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke
Casey E. Sadler
Natalie S. Pang
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Phone: (310) 201-9150
Fax: (310) 201-9160
Email: kwolke@glancylaw.com
csadler@glancylaw.com
npang@glancylaw.com

*Co-Lead Counsel for the Class*

**ROSSI VUCINOVICH, P.C.**

By: /s/ *Benjamin T. G. Nivison*
Benjamin T. G. Nivison, WSBA No. 39797
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
Phone: (425) 646-8003
Fax: (425) 646-8004
Email: bnivison@rvflegal.com

*Liaison Counsel for the Class*

**BLOCK & LEVITON LLP**
Jacob A. Walker
Michael Gaines
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax
Email: jake@blockleviton.com
michael@blockleviton.com

*Counsel for Hang Gao*

CO-LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

25

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 30, 2024

/s/ *Thomas G. Hoffman, Jr.*
Thomas G. Hoffman, Jr.