THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANTONIO BACHAALANI NACIF; WIES RAFI; and HANG GAO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ATHIRA PHARMA, INC., *et al.*,

Defendants.

CASE NO.: 2:21-cv-00861-TSZ

**JOINT DECLARATION OF THOMAS G. HOFFMAN, JR. AND CASEY E. SADLER IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES**

## **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................2

II.   SUMMARY OF PLAINTIFFS' CLAIMS................................................................4

III.  RELEVANT PROCEDURAL HISTORY ...............................................................5

      A.    Commencement of the Action and Appointment of Lead Plaintiffs and Co-Lead Counsel................................................................................5

      B.    The Complaint and Lead Plaintiffs' Investigation ...................................5

      C.    Defendants' Motion to Dismiss.................................................................6

      D.    The Court's Order Granting in Part, and Denying in Part, the Motion to Dismiss ...............................................................................7

      E.    Discovery Efforts .....................................................................................9

IV.  OVERVIEW OF THE NEGOTIATION OF THE SETTLEMENT .......................9

V.   FURTHER PROCEDURAL HISTORY ...............................................................10

VI.  CO-LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES ..............................................................13

      A.    Consideration of Relevant Factors Justifies an Award of a 25% Fee in this Case ............................................................................................13

             1.    Plaintiffs Support the Fee and Expense Application................................14

             2.    The Favorable Settlement Achieved........................................................14

             3.    The Risks of the Litigation.......................................................................15

             4.    Risks in Proving Material Falsity.............................................................16

             5.    Negative Causation Arguments and Damages .........................................18

             6.    Risks Concerning Class Certification, Summary Judgment, and Trial.....19

             7.    The Risks and Unique Complexities of Contingent Class Action Litigation ................................................................................................20

             8.    The Work of Plaintiffs' Counsel and the Lodestar Cross-Check..............23

             9.    The Skill Required and Quality of the Work............................................24

             10.   Standing and Caliber of Defense Counsel.................................................25

B.   Plaintiffs' Counsel's Request for Expenses ............................................................25

C.   Reimbursement to Plaintiffs Pursuant to PSLRA ..................................................26

VII.   CONCLUSION.................................................................................................................28

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

ii

*Nacif et al., v. Athira Pharma, Inc. et al.,*
**Case No. 2:21-cv-00861-TSZ**

**EXHIBIT LIST**

**Exhibit No.**

| | |
|---|---|
| **1** | Declaration of Thomas G. Hoffman, Jr. on Behalf of Labaton Keller Sucharow LLP, dated April 29, 2024 |
| **2** | Declaration of Casey E. Sadler on Behalf of Glancy Prongay & Murray LLP, dated April 29, 2024 |
| **3** | Declaration of Benjamin T. G. Nivison on Behalf of Rossi Vucinovich, P.C., dated April 29, 2024 |
| **4** | Declaration of Jacob A. Walker on Behalf of Block & Leviton LLP, dated April 29, 2024 |
| **5** | Declaration of Wies Rafi, dated April 28, 2024 |
| **6** | Declaration of Antonio Bachaalani Nacif, dated April 29, 2024 |
| **7** | Declaration of Hang Gao, dated April 29, 2024 |
| **8** | Email between Glancy Prongay & Murray LLP and Labaton Keller Sucharow LLP, dated August 11, 2022 |
| **9** | Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) |
| **10** | Table of Collected Cases |
| **11** | Testimonial in Support of Dr. Leen Kawas By Joseph W. Harding |
| **12** | Summary Table of Lodestars and Expenses |
| **13** | Table of Hourly Rates Compiled by GPM from Filings in Bankruptcy Cases and Other Class Actions |

JOINT DECLARATION IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES - CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

iii

We, THOMAS G. HOFFMAN, JR. and CASEY E. SADLER, declare the following, pursuant to 28 U.S.C. § 1746:

1.    I, Thomas G. Hoffman, Jr., am a partner in the law firm of Labaton Keller Sucharow LLP ("Labaton").

2.    I, Casey E. Sadler, am a partner in the law firm of Glancy Prongay & Murray LLP ("GPM").

3.    Labaton and GPM (together, "Co-Lead Counsel" or "Class Counsel") represent lead plaintiffs Antonio Bachaalani Nacif and Wies Rafi, and additional plaintiff Hang Gao (collectively, "Plaintiffs"), in the above-captioned securities class action (the "Action").[1]    We have personal knowledge of the matters set forth herein based on our active supervision of, and participation in, the prosecution and resolution of the Action.

4.    We respectfully submit this Joint Declaration in support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, on behalf of Plaintiffs' Counsel in the Action, namely Labaton, GPM, Rossi Vucinovich, P.C., Block & Leviton LLP, and The Schall Law Firm.  Additional information about the firms and their work in the Action is provided in the individual firm declarations attached hereto.  *See* Declaration of Thomas G. Hoffman, Jr. on Behalf of Labaton Keller Sucharow LLP ("Labaton Fee Decl."), Ex. 1; Declaration of Casey E. Sadler on Behalf of Glancy Prongay & Murray LLP ("GPM Fee Decl."), Ex. 2; Declaration of Benjamin T. G. Nivison on Behalf of Rossi Vucinovich, P.C. ("Rossi Fee Decl."), Ex. 3; and Declaration of Jacob A. Walker on Behalf of Block & Leviton LLP ("B&L Fee Decl."), Ex. 4.[2]

---

[1]    Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Amended Stipulation and Agreement of Settlement dated December 15, 2023 (the "Amended Stipulation"), previously filed with the Court (ECF No. 125-2), or the Court's Orders in connection with the proposed Settlement of the Action (ECF Nos. 123, 128, 130).

[2]    Citations to "Exhibit" or "Ex.___" herein refer to the exhibits to this Joint Declaration.  For clarity, exhibits that themselves have attached exhibits will be referenced as "Ex. __-__."  The first numerical reference is to the designation of the entire exhibit attached hereto and the second alphabetical reference is to the exhibit designation within the exhibit itself.

5. The motion has the full support of the Plaintiffs. *See* Declaration of Wies Rafi, attached hereto as Ex. 5; Declaration of Antonio Bachaalani Nacif, attached hereto as Ex. 6; and Declaration of Hang Gao, attached hereto as Ex. 7.

6. In support of the request, Co-Lead Counsel are also submitting Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated April 30, 2024 (the "Fee Motion").

## I.    PRELIMINARY STATEMENT

7. Through the proposed Settlement, Plaintiffs have obtained a favorable recovery for the Class in the amount of $10,000,000, in cash. As set forth in the Amended Stipulation, in exchange for this payment, the proposed Settlement resolves all claims asserted by Plaintiffs and the Class in the Action, and related claims that could have been brought, against the Released Defendants' Parties ("Released Plaintiffs' Claims").

8. The case has been vigorously litigated from its commencement in June 2021 through the Parties' agreement to settle the case. The Settlement was achieved only after Plaintiffs' Counsel, among other things:

- drafted initial complaints;

- engaged in contested motion practice regarding the appointment of lead plaintiff and lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA");

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (i) reviewing and analyzing: (a) Athira Pharma, Inc.'s ("Athira" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"); (b) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (c) research reports issued by financial analysts concerning Athira; (d) other publicly available information and data concerning Athira, including *STAT News* articles and comments published on scientific research website, *PubPeer*, investigative reports regarding the patents for Dihexa and ATH-1017; (e) documents produced in response to Freedom of Information Act ("FOIA") requests issued to health regulators, including the National Institutes of Health; and (f) the applicable laws governing the claims and potential defenses, (ii) worked with in-house investigators who conducted an investigation that involved, *inter alia*, locating approximately twelve former Athira employees and other persons with relevant knowledge, and interviewing

four of them, and (iii) consulted with an expert on loss causation and damages issues, as well as a patent expert regarding the reliance of Athira's IP on Defendant Kawas's research;

• utilized the comprehensive investigation efforts and additional research to draft and file the 58-page (222-paragraph) Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "Complaint");

• researched, drafted, and filed an opposition to Defendants' motion to dismiss the Complaint, which was granted in part and denied in part (*see Nacif v. Athira Pharma, Inc.*, 2022 WL 3028579, at *19 (W.D. Wash. July 29, 2022));

• researched, drafted, and filed an opposition to Defendant Kawas's motion for partial reconsideration the Court's motion to dismiss Order, which the Court denied (ECF No. 95);

• engaged in discovery, which entailed, *inter alia*: (i) exchanging initial disclosures; (ii) negotiating a joint discovery plan, protective order, and ESI protocol, all of which were subsequently entered by the Court; and (iii) serving, meeting and conferring with respect to, and responding to, document requests and interrogatories, including serving/reviewing verified interrogatory responses, and producing documents to the remaining Defendants; and

• engaged in a mediation process overseen by a highly experienced third-party mediator of complex actions, Jed Melnick, Esq., of JAMS ("Mr. Melnick"), which involved an exchange of written submissions concerning the facts of the case, liability and damages, and a full-day in-person mediation session that ultimately resulted in an agreement in principle to the settle the Action for $10 million.

9. Co-Lead Counsel also carefully reviewed the documents provided by Athira in connection with the agreement to settle, which consisted of documents the Special Committee of Athira's Board of Directors considered and relied on in its investigation into the conduct at issue. Accordingly, at the time the Settlement was reached, Co-Lead Counsel had a thorough understanding of the strengths and weaknesses of the Parties' positions.

10. For their efforts on behalf of the Class, and the favorable common fund recovery obtained, Co-Lead Counsel request, on behalf of Plaintiffs' Counsel, attorneys' fees of 25% of the Settlement Fund. As discussed below and in the Fee Motion, the fee request is the Ninth Circuit's "benchmark" for common fund cases, is comparable to fees frequently awarded in this type of action, and is justified in light of the benefits conferred on the Class, the challenges counsel faced, the nature and extent of the legal services, and the fact that Plaintiffs' Counsel pursued the case at

their financial risk of no payment. The requested fee would provide no multiplier on Plaintiffs' Counsel's time in the case.

11. Co-Lead Counsel also seek litigation expenses totaling $150,699.33 and awards to Plaintiffs, pursuant to the PSLRA, 15 U.S.C. §§ 77z-1 and 78u-4, in the aggregate amount of $11,000. The combined amount of Plaintiffs' Counsel's expenses and PSLRA awards, *i.e.*, $161,699.33, is less than the cap on expenses of $235,000 provided for in the Notice.

## II.   SUMMARY OF PLAINTIFFS' CLAIMS

12. Athira is a late-stage biopharmaceutical company focused on developing therapies that reverse or slow the effects of neurodegenerative diseases like Alzheimer's. Its lead drug candidate, ATH-1017, worked by delivering an active agent, Dihexa, to the brain to stimulate the brain's hepatocyte growth factor ("HGF"), which is responsible for healthy brain function. Plaintiffs allege that in the Company's public offerings, Defendants repeatedly and misleadingly touted the educational, scientific, and professional credentials of Athira's founder and CEO, Leen Kawas—whose research led to the development of ATH-1017—as well as the unique value of Athira's supposed novel approach. Athira raised a total of nearly $300 million in its September 2020 Initial Public Offering (the "IPO") and January 2021 Secondary Public Offering (the "SPO").

13. This case is a class action relating to the purchase and sale of Athira common stock. The Complaint asserted claims against: (a) Athira and the Individual Defendants under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; (b) all Defendants under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act") with respect to the IPO and SPO; and (c) the Individual Defendants under Section 15 of the Securities Act with respect to the IPO and SPO.

14. Among other things, the Complaint alleged that Defendants made materially false and misleading statements and/or failed to disclose that the Company's founder and CEO, Dr. Kawas, had improperly enhanced images in certain research papers she co-authored that were published from 2011 to 2014, which were referenced in certain applications by Washington State

University ("WSU") for patents that were then exclusively licensed to Athira. The Complaint further alleged that, when information regarding the allegedly enhanced images was publicly disclosed, the Company's stock price was negatively impacted.

## III. RELEVANT PROCEDURAL HISTORY

### A. Commencement of the Action and Appointment of Lead Plaintiffs and Co-Lead Counsel

15. The Action was commenced by the filing of a class action complaint by Block & Leviton on behalf of Gao and Fan Wang on June 25, 2021, in the United States District Court for the Western District of Washington (the "Court"), styled *Fan Wang and Hang Gao v. Athira Pharma, Inc*., *et. al*., Case No. 2:21-cv-00861. Two other class action complaints—styled *Jawandha v. Athira Pharma, Inc. et al*., Case No. 2:21-cv-00862 (filed by GPM), and *Slyne v. Athira Pharma, Inc., et al*., Case No. 2:21-cv-00864—were also filed in the Court. The Court subsequently consolidated these three cases.

16. On August 5, 2021, the parties in the three actions filed a joint motion to consolidate the actions, pursuant to the procedure set forth by the PSLRA. ECF No. 14. Also on August 24, 2021, Nacif and Rafi filed motions for appointment as lead plaintiffs and for approval of their selection of lead counsel. ECF Nos. 40-43.

17. On August 9, 2021, the Court entered an Order consolidating the *Wang*, *Jawandha*, and *Slyne* actions. ECF No. 15. On October 5, 2021, the Court entered an Order appointing Nacif and Rafi as Lead Plaintiffs; Labaton and GPM as Co-Lead Counsel; and Breskin Johnson & Townsend, PLLC and Rossi Vucinovich, P.C. as Liaison Counsel. ECF No. 60.

### B. The Complaint and Lead Plaintiffs' Investigation

18. Lead Plaintiffs filed the 58-page (222-paragraph) Complaint on January 7, 2022, alleging violations of Section 10(b) and Section 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, and violations of Sections 11 and 15 of the Securities Act with respect to the Company's September 2020 IPO and January 2021 SPO. ECF No. 74.

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

5

19.    The Complaint was based upon Co-Lead Counsel's robust factual investigation, which included, among other things, the review and analysis of: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company, including *STAT News* articles and comments published on scientific research website, *PubPeer*, investigative reports regarding the patents for Dihexa and ATH-1017; (v) documents produced in response to FOIA requests issued to health regulators, including the National Institutes of Health; and (vi) the applicable laws governing the claims and potential defenses.

20.    Co-Lead Counsel's investigation also included working with in-house investigators, who conducted an investigation that involved, *inter alia*, locating approximately twelve former Athira employees and other persons with relevant knowledge, and interviewing four of them.  In addition, Co-Lead Counsel consulted with an expert on loss causation and damages issues, as well as a patent expert.

C.    **Defendants' Motion to Dismiss**

21.    On March 8, 2022, Defendants filed a motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 76.  Defendants argued, *inter alia*, that Lead Plaintiffs had failed to sufficiently allege scienter with respect to the Exchange Act claims, and had failed to allege materially false statements with respect to the Exchange Act claims and Securities Act claims.

22.    Lead Plaintiffs opposed the motion on May 6, 2022.  ECF No. 81.

23.    On June 6, 2022, Defendants filed a reply brief in further support of their motion.  ECF No. 87.

**D.    The Court's Order Granting in Part, and Denying in Part, the Motion to Dismiss**

24.    On July 29, 2022, the Court entered an order granting in part, and denying in part, Defendants' motion to dismiss for failure to state a claim.  ECF No. 89 (the "MTD Order").

25.    Specifically, the Court denied Defendants' motion with respect to Lead Plaintiffs' claims under Sections 11 and 15 of the Securities Act against Defendants Kawas and Athira solely as to "Statement 3," which was contained in Athira's IPO and SPO Prospectuses and discussed Athira's exclusive licensing agreement with WSU.  *See Nacif*, 2022 WL 3028579, at *19.  The Court found that the Complaint did plead a claim under Section 11 as to Kawas and Athira, because the "failure to disclose Kawas's mistakes as a graduate student, while touting the exclusivity of a license for patents founded on Kawas's doctoral work, might have 'misled a reasonable investor about the nature of his or her investment.'" *Id*. at 16 (citation omitted).

26.    The MTD Order granted Defendants' motion to dismiss with respect to Lead Plaintiffs' claims under Sections 11 and 15 of the Securities Act against Athira and Dr. Kawas with regard to all other alleged misstatements in the IPO and SPO Registration Statements.  Accordingly, only one of the original eleven misstatements alleged in the Complaint remained.

27.    In addition, the MTD Order dismissed all claims under the Exchange Act, all claims against eight of the ten defendants (including all of the Underwriter Defendants), and all claims under Section 12(a)(2) of the Securities Act.  *See id*.

28.    In so ruling, the Court found the Complaint failed to state a Section 10(b) claim against any of the Defendants because, among other things, it did not allege facts supporting a strong inference of scienter.  With respect to Kawas and Athira, the Complaint did not sufficiently allege that they "intended to 'deceive, manipulate, or defraud' investors by discussing the WSU patents licensed by Athira, but withholding information about the enhancement of images in the underlying publications." *Nacif*, 2022 WL 3028579, at *17. The Court further found that a "plausible inference from the facts is that Kawas believed her work had been amply vetted[.]" *Id*. at 17.

29.    On August 12, 2022, Defendant Kawas filed a motion for partial reconsideration of the Court's MTD Order, arguing that the Court should reconsider its holding with respect to Statement 3.  ECF No. 90.  Lead Plaintiffs filed a response opposing the motion on September 12, 2022 (ECF Nos. 92-93), to which Defendant Kawas replied on September 16, 2022.  ECF No. 94.

30.    Specifically, Kawas argued that by declining to dismiss the Section 11 and Section 15 claims related to Statement 3, the Court committed manifest error because it purports to require disclosure of allegedly omitted information that is not specifically related to anything in the actual statement made.

31.    On October 4, 2022, the Court denied Kawas' motion for reconsideration, ECF No. 95, explaining:

> Having reviewed defendants' motion, plaintiffs' response, and defendants' reply, the Court is persuaded that no "manifest error" in the prior decision has been shown. *See* Local Civil Rule 7(h)(1). In denying defendants' motion to dismiss the Securities Act §11 claim relating to Statement 3, the Court concluded that "plaintiffs have pleaded a plausible claim that the failure to disclose Kawas's mistakes as a graduate student, while touting the exclusivity of a license for patents founded on Kawas's doctoral work, might have 'misled a reasonable investor about the nature of his or her investment.'" Order at 43 (docket no. 89).

> Defendants argue that "nothing about the Prospectus could remotely be construed as 'touting' the license or the patents" at issue, and they contend that Statement 3 did not identify either the patents or the research on which they are based, drew no connection to Kawas, and made no assertion about the value of the license or related patents. Reply at 2 (docket no. 94). Statement 3, however, cannot be viewed in isolation. Rather, Statement 3 must be evaluated within the "total mix" of information made available to investors. *See Hemmer Grp. v. South West Water Co.*, 527 F. App'x 623, 626 (9th Cir. 2013) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011)).

> Statement 3 indicates that WSU granted an exclusive license for patented products and processes "that form the underlying technology of the drug therapies" being developed by Athira Pharma, Inc. ("Athira"). *See supra* note 2. The perceived value of the license and the related patents is implicit from the fact that Athira relies on them for its core business, is contractually obligated to pay WSU to use the patented inventions, and has negotiated for others to be precluded from practicing the claims set forth in the patents is the beneficiary of an exclusive license. The Prospectus separately discloses that "Dr. Leen Kawas, our founder and chief executive officer, has been essential in creating our innovative translational development strategy," and

that Kawas "earned a Ph.D. in molecular pharmacology from Washington State University in 2011." Ex. 2 to Roberts Decl. (docket no. 77-2 at 12 & 155).

No great leap of logic is required to understand that the patents licensed to Athira stem from Kawas's research while at WSU, and that the patents disclose her as one of the inventors, rendering them easily discoverable.

32.    Following the MTD Order and the denial of Dr. Kawas's motion for partial reconsideration of the order, Athira and Dr. Kawas separately filed answers to the Complaint.

33.    The Underwriter Defendants moved for entry of judgment dismissing the claims against them (ECF No. 105), which Lead Plaintiffs opposed, ECF No. 111. Thereafter, the Court invited submissions to broaden the relief to include all of the dismissed Defendants.  ECF No. 114. Based on the proposed Settlement, the Underwriter Defendants entered a stipulation to withdraw their motion without prejudice to refiling it if the Settlement is not completed for any reason.

**E.    Discovery Efforts**

34.    After the MTD Order, the PSLRA discovery stay was lifted and the remaining Parties began discovery. They filed a joint discovery plan, a protective order, and ESI Protocol governing the production of electronic discovery. Lead Plaintiffs and the remaining Defendants propounded requests for production of documents and interrogatories.

35.    After serving their respective objections, Lead Plaintiffs and Athira met and conferred regarding their discovery requests and responses and provided opposing counsel with substantive discovery responses, including verified interrogatory responses and documents.  In addition, Defendant Kawas provided verified interrogatory responses, and Athira served deposition notices on Lead Plaintiffs.

36.    At the time the Settlement was reached, Lead Plaintiffs were preparing for class certification and fact depositions.

**IV.    OVERVIEW OF THE NEGOTIATION OF THE SETTLEMENT**

37.    Beginning in November 2022, Lead Plaintiffs and the remaining Defendants, through their counsel, conferred about the possibility of reaching a negotiated resolution of the Action and

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

9

agreed to participate in a mediation under the auspices of Mr. Melnick, a well-respected mediator of complex cases.

38.    In advance of the mediation, those parties exchanged, and submitted to Mr. Melnick, detailed mediation statements and exhibits, which addressed the facts of the case, liability, and damages.  On February 16, 2023, Lead Plaintiffs and the remaining Defendants met for a full-day, in-person mediation session with Mr. Melnick.  Ultimately, they agreed in principle to a settlement of $10 million following the acceptance by all Parties of a mediator's proposal, subject to the negotiation of a mutually acceptable term sheet and long form stipulation of settlement and completion of additional due diligence to confirm the reasonableness of the Settlement.

39.    Over the course of the next several weeks, the Parties negotiated a term sheet containing the essential terms of the Settlement, which was fully executed on February 28, 2023 (the "Term Sheet"). (Filed under seal on June 30, 2023, ECF No. 120.)

40.    In connection with the agreement in principle to settle the Action set forth in the Term Sheet, Athira also provided Co-Lead Counsel with document discovery, which consisted of documents that the Special Committee of Athira's Board of Directors considered and relied on in its investigation into the conduct at issue.

41.    Lead Plaintiffs and Defendants thereafter memorialized the terms of the Settlement in the Stipulation and Agreement of Settlement, which was executed by the Parties as of April 27, 2023, and thereafter filed with the Court, along with Lead Plaintiffs' motion and supporting memorandum of law seeking preliminary approval of the Settlement. ECF No. 118.

## V.    FURTHER PROCEDURAL HISTORY

42.    On May 31, 2023, the Court entered a Minute Order, directing counsel to meet and confer and to file a Joint Status Report addressing a variety of issues with respect to the Settlement, including, *inter alia*: (i) the definition of the proposed settlement class in light of the Court's prior dismissal of the claims brought pursuant to the Exchange Act; (ii) traceability and its effect on the proposed class period; (iii) the allocation of the Settlement Amount between class members with

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

10

claims under the Securities Act and those with only Exchange Act claims; (iv) numerosity; (v) *cy pres* recipients; and the (vi) suitability of an "opt in" approach requiring a claims process.  ECF No. 119.

43.    On June 30, 2023, the Parties submitted the 29-page Joint Status Report, which included several declarations and revised documents, as well as under seal filings of documents requested by the Court (*i.e.*, the confidential supplemental agreement concerning requests for exclusion and the confidential documents produced by Athira as part of the settlement process).  *See* ECF Nos. 120-122.

44.    On September 27, 2023, the Court entered an Order denying the preliminary approval motion and allowing the Parties to submit a renewed motion.  *See* ECF No. 123.  According to the Order, there were two main issues that resulted in the denial of the preliminary approval motion.

45.    First, the Court found that there was an intraclass conflict of interest between Lead Plaintiffs and the proposed settlement class because Lead Plaintiffs' Exchange Act claims had been dismissed, without a subsequent amendment or notice of appeal, putting them in a different position relative to other putative class members whose Exchange Act claims had not been dismissed.  *See id.* at 5-6.  Second, the Court found the proposed Settlement was not equitable and fair because "class members with Exchange Act Claims could recover, in the aggregate, more than class members with Securities Act (or both Securities Act and Exchange Act) Claims, even though their claims have little value in light of the Court's Dismissal Order."  *Id.* at 7-8.

46.    In light of the Court's September 27 Order, the parties entered into the Amended Stipulation on December 15, 2023. The Amended Stipulation was informed by the Court's September 27 Order, was the result of additional settlement negotiations between the parties (including Plaintiff Gao who has claims under the Exchange Act), and proposed a revised Plan of Allocation that was the result of an adversarial arm's-length mediation process between: (i) counsel advocating for a larger share of the Settlement Fund for Settlement Class Members with Securities Act claims; and (ii) counsel advocating for those Settlement Class Members with Exchange Act

claims. This arm's-length process was again overseen by Mr. Melnick. This time, however, Mr. Melnick's role was not to assist the parties in agreeing on a settlement amount; rather, he was asked to determine the appropriate allocation of the Settlement Fund between shareholders with Securities Act claims, and those with Exchange Act claims, given, *inter alia*, the procedural posture of the case and damages sustained by each group of investors.

47. As part of the supplemental mediation process and to ensure the interests of the Exchange Act Class Members were protected, Lead Plaintiffs invited Plaintiff Gao, who was a named plaintiff in the initial complaint in the Action (ECF No. 1), and his counsel, Block & Leviton LLP, to participate in the process (the "Allocation Mediation"). At the Allocation Mediation, Plaintiff Rafi, through his counsel GPM, represented the Securities Act Class; Plaintiffs Nacif and Gao, through their respective counsel Labaton and B&L, represented the Exchange Act Class; and counsel for Athira represented Defendants.

48. In advance of the Allocation Mediation, the parties submitted detailed written mediation statements to the Mediator and the Mediator was provided with a damages analysis of the two sets of claims. Thereafter, the parties participated in a virtual mediation session. As a result of this process, Mr. Melnick allocated at least 91.5% of the Net Settlement Fund to the Securities Act Class and no more than 8.5% to the Exchange Act Class. *See* Declaration of Jed Melnick, Esq., at ¶3, ECF No. 125-4. This allocation was subsequently incorporated into the revised plan of allocation. The parties also revised the settlement documents to address the Court's other concerns. They filed a renewed motion for preliminary approval on December 15, 2023. ECF No. 125.

49. On February 15, 2024, the Court entered an Order granting the motion for preliminary approval in part, which preliminarily approved the proposed Settlement, certified the Class and created two subclasses, deferred approval of the notices and claim form, required the submission of an opt-out (exclusion request) form, and required revised documents by March 15, 2024. ECF No. 128.

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

12

50.     On March 15, 2024, the parties filed a Joint Status Report with further revised notice documents. ECF No. 129.

51.     On March 29, 2024, the Court entered an Order granting the deferred portion of Plaintiffs' renewed motion for preliminary approval and providing the parties with further revised notice documents and a schedule of settlement-related events.  ECF No. 130.

## VI.     CO-LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES

### A.     Consideration of Relevant Factors Justifies an Award of a 25% Fee in this Case

52.     For its efforts on behalf of the Class, Co-Lead Counsel are applying, on behalf of Plaintiffs' Counsel, for compensation from the Settlement Fund on a percentage basis.  Co-Lead Counsel seek a fee award of 25% of the Settlement Fund—the benchmark within the Ninth Circuit—which is less than the maximum reported in the Notice.  Co-Lead Counsel also request payment of expenses incurred in connection with the prosecution of the Action from the Settlement Fund in the amount of $150,699.33.

53.     As requested in the Court's February 15, 2024 Order, if the 25% fee is awarded ($2,500,000), Co-Lead Counsel report they anticipate making the following allocations to Plaintiffs' Counsel: (i) 10% of the total fee award to liaison counsel, Rossi Vucinovich, P.C.; (ii) to counsel for plaintiff Gao, B&L, their lodestar multiplied by the "multiplier" (whether positive or negative) awarded by the Court; (iii) the remaining amount split equally between Co-Lead Counsel; and (iv) Labaton to pay 13% of its attorneys' fees to The Schall Law Firm.  Expenses will be paid to each firm as awarded by the Court.  A copy of the email memorializing the allocations to Labaton and GPM is attached hereto as Ex. 8.  The other allocations are based on oral agreements between counsel.

54.     Stated differently, if the Court awards a $2,500,000 fee with the requested multiplier of 0.98 (discussed below), Rossi Vucinovich, P.C. will be allocated $250,000, B&L will be allocated

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

13

98% of their lodestar ($30,221.73), GPM will be allocated $1,109,889.13, and Labaton will be allocated $1,109,889.14 and pay $144,285.59 to The Schall Law Firm.

55.    A 25% fee compares very favorably to fees awarded within the Ninth Circuit, and nationwide, in connection with Settlements of $10 million. *See* Fee Motion, §III.B.5.  Moreover, a recent analysis by NERA Economic Consulting, which conducts reviews of securities class action settlements, found that from 2014-2023, the median attorneys' fee award for settlements between $5 million and $10 million was 30.0% and was 27.5% for settlements between $10 million and $25 million.   *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024), Ex. 9 at 29 ("NERA Report").  It is also consistent with other Ninth Circuit awards in complex cases such as this.  *See* Ex. 10 (Table of Collected Cases).

56.    Co-Lead Counsel submit that, for the reasons discussed below and in the accompanying Fee Motion, the requested awards would be reasonable and appropriate under the circumstances before the Court.

### 1.    Plaintiffs Support the Fee and Expense Application

57.    Plaintiffs Rafi, Nacif, and Gao have evaluated and fully support the fee and expense application.  *See* Exs. 5 at ¶¶9-11; 6 at ¶¶9-12; and 7 at ¶¶8-10.  In coming to this conclusion, each considered, *inter alia*, the recovery obtained, as well as Plaintiffs' Counsel's effort in obtaining the recovery.

### 2.    The Favorable Settlement Achieved

58.    Courts have consistently recognized that the result achieved is a major consideration in awarding fees.  *See* Fee Motion, §III.B.1.  Here, the $10 million Settlement is a favorable and reasonable result, especially given the substantial risks and obstacles to recovery if the Action were to continue through contested class certification proceedings, summary judgment, trial, and through inevitable post-trial motions and appeals, as were magnified through the Motion to Dismiss briefing and as discussed below.

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

14

59.    With respect to aggregate class-wide damages, if Plaintiffs were to prevail *in all respects* on both the Securities and Exchange Act claims—which, among other things, would have required the Ninth Circuit to reverse the Court's dismissal of the Exchange Act claims—(*i.e.*, Plaintiffs' best-case scenario), their damages expert Zachary Nye, Ph.D. has estimated class-wide damages arising from claims under the Securities Act of approximately $83.10 million and class-wide damages arising from claims under the Exchange Act of approximately $60.76 million, for a total of approximately $143.86 million in aggregate damages, using an 80/20 Multi-Trader Model. The Settlement recovers approximately 7.0% of these damages.  If the litigation had continued and Plaintiffs were only successful on the Securities Act claims, maximum recoverable damages would be approximately $83.10 million, and the Settlement—after the 8.5-91.5% allocation—would equate to 11.0% ($9,150,000/$83,100,000) of the estimated maximum Securities Act damages. However, if Defendants were successful in challenging loss causation and were to establish a negative causation defense, damages could have been substantially less or eliminated altogether.

60.    According to NERA, from 2014 to 2023, for securities class actions with total estimated damages (based on NERA's method of analysis) ranging from $100 million to $199 million, the median recovery was 2.9% of total estimated damages.  For securities class actions with estimated damages between $50-$99 million, the median recovery was 3.8% of total estimated damages. *See* Ex. 9, at 25 (Fig. 21).  Thus, the recovery in this case compares very favorably with the findings of the NERA Report.

61.    As a result of the Settlement, hundreds, if not thousands, of Class Members will benefit and receive compensation for their losses and avoid the very substantial risk of no recovery in the absence of a settlement.

### 3.    The Risks of the Litigation

62.    Based on publicly available information and information obtained through its investigation, Co-Lead Counsel and Plaintiffs believe that the remaining claims in the Action, though narrow and significantly reduced, were strong.  However, Plaintiffs also recognize that there

were considerable risks in continuing with the Action. Lead Plaintiffs and Co-Lead Counsel carefully considered these risks during the months leading up to the Settlement and throughout the settlement discussions with Defendants and the Mediator.

63.     In agreeing to settle, Lead Plaintiffs and Co-Lead Counsel weighed, among other things, the substantial cash benefit to Class Members against: (i) the uncertainties associated with trying complex securities cases, particularly one enmeshed in the nuanced worlds of novel drug development, medical research, and patents; (ii) the difficulties and challenges involved in proving materiality, falsity, causation, and damages in this particular case; (iii) the difficulties and challenges involved in certifying a class; (iv) the fact that, even if Plaintiffs prevailed at summary judgment and trial, any monetary recovery could have been less than the Settlement Amount; and (v) the delays that would follow even a favorable final judgment, including appeals.  The principal risks are discussed below.

### 4.     Risks in Proving Material Falsity

64.     The Court's decision on the motion to dismiss left only a Section 11 claim based on Statement 3, the sole remaining false and misleading statement, which was repeated in Athira's IPO and SPO prospectuses.  The remaining Defendants would no doubt have continued to argue at summary judgment and trial that Statement 3 was true and not materially false and/or misleading, because, *inter alia*:

- It appears in a section of the IPO prospectus titled "Our Collaboration and Grant Agreements," and it accurately describes the history and terms of an exclusive license agreement entered into in 2011, and amended and restated in 2015, between Athira and Washington State University Research Fund, and its successor, Washington State University (together, "WSU").  *See* ECF No. 90 (Defendant Kawas' motion for reconsideration) at 2.

- It accurately states that the license agreement grants Athira an exclusive license to make, use, sell, and offer for sale licensed products and licensed processes that

embody the licensed patents and that form the underlying technology of the drug therapies Athira is developing. *See id.*

- Plaintiffs allege that Statement 3 is misleading because it fails to mention that Dr. Kawas's doctoral dissertation was obtained with "falsified research," and that "Kawas' research publications regarding the compound underlying [Athira's] lead product contained altered images," yet neither of these allegedly omitted facts is in any way connected to the actual content of Statement 3. *See id.* at 3.

- Although Plaintiffs allege that Athira "touted" the WSU license agreement to create "a false impression of . . . the value of [Athira's] intellectual property," neither Statement 3 nor any other statement in the Complaint—much less in the IPO and SPO Materials—"touts" the license agreement by describing factually the value it purportedly creates for Athira. *See id.* at 4 (citing CAC ¶ 3).

- Any disclosure in the IPO prospectus about allegedly altered images would not have made Statement 3's statements about Athira's acquisition of the patents and the licensing agreement, or its broad description of the rights granted to Athira under the licensing agreement, more accurate or changed in any other manner. *See id at* 5.

- While two of the patents included in the WSU license agreement cited two of Dr. Kawas's research papers that included altered images, the image alterations did not impact the quantitative data or the substantive conclusions of the research papers.

- While Dr. Kawas admitted to enhancing some of the images while she was a student, she fervently maintained that she did not alter the underlying data.

- Dr. Joseph Harding, Dr. Kawas's dissertation advisor and professor emeritus at WSU, has publicly stated that there is "no indication" the underlying data were altered and that the altered images were "completely immaterial to the conclusions of any of the papers." *See* Ex. 11 (Testimonial in Support of Dr. Leen Kawas By Joseph W. Harding).

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-CV-00861-TSZ

- Athira's scientific findings with respect to its lead drug candidate, ATH-1017 (a prodrug of the molecule Dihexa) have been repeated and validated by numerous past and ongoing preclinical and clinical studies performed by Athira, independent labs, current and former Athira scientists, and in peer reviewed publications.

65. While plaintiffs believe they had the better arguments on these issues, and the Court agreed at the pleading stage, success was far from guaranteed.

66. Plaintiffs faced the risk that the Court, at summary judgment, or the jury during trial would credit Defendants' arguments and find the alleged misstatement inactionable.

### 5. Negative Causation Arguments and Damages

67. If the case were to proceed, Plaintiffs would also face Defendants' negative causation arguments, and the amount of damages attributable to the single allegedly false and misleading statement would have been vigorously contested.

68. For instance, the remaining Defendants likely would argue that Athira's stock price dropped not as a result of the revelation of the allegedly concealed information—*i.e.*, Defendant Kawas' enhancement of Western blot images in her academic research—but rather as a result of unwarranted market panic regarding the validity of the science underlying Athira's lead development product, ATH-1017. They likely would have argued that such a conclusion was supported by the fact that Athira's stock price significantly rebounded following Athira's October 21, 2021 press release announcing the Special Committee's finding that the ATH-1017 Phase 1 trial P300 data were unaffected by the alleged fraud.

69. Thus, the remaining Defendants likely would have argued that any statistically significant declines in Athira's stock price resulted from forces unrelated to the alleged fraud (*i.e.,* negative causation).

70. Although Plaintiffs believed that they had meritorious arguments in response to the Defendants' negative causation assertions, the Parties held extremely disparate views on loss

causation and damages, and had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery.

### 6. Risks Concerning Class Certification, Summary Judgment, and Trial

71. Another near-term risk faced by Plaintiffs was contested class certification. There was no guarantee that the surviving Securities Act Subclass would be certified by the Court or that certification could have been retained through summary judgment and trial. Indeed, the remaining Defendants would likely argue that there were standing and traceability issues with Athira's SPO that would defeat class certification for that offering. Thus, the remaining Defendants would argue that, because Plaintiffs lacked standing to assert claims related to the SPO, the Class could not pursue any damages based on SPO purchases, significantly reducing recoverable damages. Even if the proposed class had been certified, defendants would certainly have challenged the certification in a Rule 23(f) petition.

72. The Underwriter Defendants have also moved for entry of judgment dismissing the claims against them (ECF No. 105), and the Court invited submissions to broaden the relief to include all of the dismissed Defendants (ECF No. 114). Lead Plaintiffs opposed the motion (ECF No. 111), but without the proposed Settlement, Plaintiffs faced the risk of entry of final judgment as to all of the Defendants except Athira and Kawas, and being required to pursue an appeal as to the dismissed claims, even while continuing to prosecute the claims against the remaining Defendants.

73. Overall, the Action would have continued to be highly contested by the Parties at each significant stage, from ongoing fact and expert discovery to summary judgment and then trial. Even if Plaintiffs prevailed at trial, the remaining Defendants could have appealed any such verdict, injecting additional challenges and delay into the process.

74. For example, given the complex and unique nature of the claims, Plaintiffs would be required to rely heavily on expert opinions concerning issues such as falsity, materiality, loss causation and damages. This reliance on expert testimony carried the concomitant risk that: (i) the

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

19

experts could be subject to successful *Daubert* motions prior to trial, permitting little or no expert testimony on key issues; or (ii) if allowed to testify, the jury would be faced with a "battle of the experts" and decide to credit Defendants' experts over Plaintiffs' experts.

75.     The Class also faced additional trial-related risks, including, among other things, presenting a factually complex case to a jury through adverse witnesses controlled by, or loyal to, Defendants.

76.     Even if the claims survived summary judgment challenges and Plaintiffs were able to prove both liability and damages at trial, the Class would have faced a host of inevitable post-trial motions and appeals which, even if unsuccessful, would have proved difficult and time consuming.  On appeal, the remaining Defendants would have renewed their host of arguments as to why Plaintiffs had failed to establish liability, loss causation, and damages, thereby exposing the Class to the risk of having any favorable judgment reversed or reduced below the Settlement Amount after years of litigation.

### 7.     The Risks and Unique Complexities of Contingent Class Action Litigation

77.     As explained above, this Action presented substantial challenges from the outset of the case, some of which could not be overcome.  These case-specific risks are in addition to the more typical risks accompanying securities class action litigation, such as: (i) the stringent PSLRA requirements; (ii) challenging case law interpreting Rule 23 and the federal securities laws; and (iii) the fact that this case was undertaken on a contingent basis. Indeed, according to NERA Consulting's analysis, "[s]ince 2015, more cases filed have been dismissed than settled." *See* NERA Report at 13, Ex. 9.

78.     From the outset, Plaintiffs' Counsel understood they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, Co-Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable costs that a

case like this requires.  With an average lag time of several years for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.  Indeed, Plaintiffs' Counsel have received no compensation during the nearly three-year course of the Action, but have invested 3,188 hours of time with a total lodestar value of $2,541,943.25, and have incurred $150,699.33 in expenses in prosecuting the Action for the benefit of the Class.

79.   Plaintiffs' Counsel also bore the risk that no recovery would be achieved (or that a judgment could not be collected, in whole or in part).  Even with the most vigorous and competent of efforts, success in contingent-fee litigation, such as this, is never assured.  Plaintiffs' Counsel know from experience that the commencement of a class action does not guarantee a settlement.  To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to convince sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

80.   Plaintiffs' Counsel are aware of many hard-fought lawsuits where—because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits—excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.

81.   Federal circuit court cases include numerous opinions affirming dismissals with prejudice in securities cases.  The many appellate decisions affirming summary judgment dismissals show that even surviving a motion to dismiss is not a guarantee of recovery.  *See, e.g.*, *McCabe v. Ernst & Young, LLP*, 494 F.3d 418 (3d Cir. 2007); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *Phillips v. Scientific-Atlanta, Inc.*, 489 F. App'x. 339 (11th Cir. 2012); *In re Smith & Wesson Holding Corp. Sec. Litig*, 669 F.3d 68 (1st Cir. 2012); *In re Digi Int'l Inc. Sec. Litig.*, 14 F. App'x. 714 (8th Cir. 2001); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001).

82.     Successfully opposing a motion for summary judgment is also not a guarantee that plaintiffs will prevail at trial.  While only a few securities class actions have been tried before a jury, several have been lost in their entirety, such as *In re JDS Uniphase Securities Litigation*, Case No. C-02-1486 CW (EDL), slip op. (N.D. Cal. Nov. 27, 2007) (case tried by Labaton), or substantially lost as to the main case, such as *In re Clarent Corp. Securities Litigation*, Case No. C-01-3361 CRB, slip op. (N.D. Cal. Feb. 16, 2005).

83.     Even plaintiffs who succeed at trial may find their verdict overturned by a post-trial motion for a directed verdict or on appeal.  *See, e.g.*, *In re BankAtlantic Bancorp, Inc.*, No. 07-cv-61542-UU, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2010) (in case tried by Labaton, after plaintiffs' jury verdict, court granted defendants' motion for judgment as a matter of law on loss causation grounds), *aff'd,* 688 F. 3d 713 (11th Cir. 2012) (trial court erred, but defendants entitled to judgment as matter of law on lack of loss causation); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1998) (reversing plaintiffs' jury verdict for securities fraud); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Glickenhaus & Co., et al. v. Household Int'l, Inc., et al.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice).

84.     Moreover, the path to maintaining a favorable jury verdict can be arduous and time consuming.  *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) (trial court rejecting unanimous verdict for plaintiffs, which was later reinstated by the Ninth Circuit Court of Appeals) and judgment re-entered (*id*.) after denial by the Supreme Court of the United States of defendants' Petition for Writ of Certiorari (*Apollo Grp. Inc. v. Police Annuity and Benefit Fund*, 562 U.S. 1270 (2011)).

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

22

85.     As discussed above, Plaintiffs' success was by no means assured.  Defendants strongly disputed whether Plaintiffs could ultimately establish falsity, materiality, and loss causation.  In addition, Defendants would no doubt have contended, as the case proceeded to summary judgment, that even if liability existed, the amount of damages was substantially lower than Plaintiffs alleged.  Were this Settlement not achieved, Plaintiffs and Plaintiffs' Counsel faced potentially years of costly and risky trial and appellate litigation against Defendants, with ultimate success far from certain.

### 8.     The Work of Plaintiffs' Counsel and the Lodestar Cross-Check

86.     The work undertaken by Plaintiffs' Counsel in investigating and prosecuting this case and arriving at the present Settlement in the face of serious hurdles has been time-consuming and challenging.  As more fully set forth above, counsel conducted a comprehensive investigation into the class's claims; researched and prepared an amended complaint; briefed a thorough opposition to Defendants' motion to dismiss; conducted discovery; and engaged in a hard-fought multi-pronged settlement process with experienced defense counsel and an experienced Mediator.

87.     At all times throughout the pendency of the Action, Co-Lead Counsel's efforts were driven and focused on advancing the litigation to bring about the most successful outcome for the Class, whether through settlement or trial, by the most efficient means necessary.

88.     Attached hereto are declarations from Plaintiffs' Counsel, which are submitted in support of the request for an award of attorneys' fees and payment of expenses.  *See* Exs. 1 to 4.

89.     Included with these declarations are schedules that summarize the time of each firm, as well as the expenses incurred by category (the "Fee and Expense Schedules").[3]  The attached declarations and the Fee and Expense Schedules report the amount of time spent by each attorney and professional support staff of Plaintiffs' Counsel and the "lodestar" calculations, *i.e.*, their hours multiplied by their current rates.  *See* Exs. 1-A; 2-A; 3-A; and 4-A.  As explained in each declaration,

---

[3]   Attached hereto as Exhibit 12 is a summary table of the lodestars and expenses of Plaintiffs' Counsel.

they were prepared from daily time records regularly prepared and maintained by the respective firms.

90.    The hourly rates of Plaintiffs' Counsel range from $725 to $1,325 for Partners, $795 to $925 for Of Counsel and Senior Counsel, $395 to $600 for other attorneys, and $125 to $625 for non-attorneys. *See* Exs. 1-A; 2-A; 3-A; and 4-A. It is respectfully submitted that the hourly rates for attorneys and professional support staff included in these schedules are reasonable and customary in the litigation of complex actions. Exhibit 13, hereto, is a table of hourly rates compiled by GPM from filings in bankruptcy cases and other class actions. The analysis shows that across all types of attorneys, Plaintiffs' Counsel's rates here are consistent with, or lower than, the firms surveyed.

91.    Plaintiffs' counsel have expended 3,188 hours in the litigation and resolution of the Action. *See* Exs. 1-A; 2-A; 3-A; 4-A; and 12. The resulting lodestar is $2,541,943.25. *Id*. Pursuant to a lodestar "cross-check," the requested fee of 25% of the Settlement Amount ($2,500,000) results in a reasonable negative "multiplier" of 0.98 (or 98%) of counsel's lodestar. This lodestar does not include any time that will necessarily be spent from this date forward administering the Settlement, preparing for and attending the Final Approval Hearing, and assisting class members—for which no additional remuneration will be sought.

### 9.    The Skill Required and Quality of the Work

92.    The expertise and experience of Plaintiffs' Counsel are described in each firm's resume, attached hereto as Exs. 1-C; 2-C; 3-C; and 4-B.

93.    Lead Plaintiffs retained Co-Lead Counsel who are highly experienced in securities litigation, and who have long and successful track records of representing investors in such cases. Co-Lead Counsel have successfully prosecuted numerous securities class actions and complex litigation in courts throughout the country, and have brought their years of collective experience to bear in this complex case. *See* Exs. 1-C and 2-C; *see, e.g.*, Labaton Keller Sucharow: *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) ($1 billion recovery); *In re HealthSouth Corp.*

*Sec. Litig.*, No. 03-cv-1500 (N.D. Ala.) ($600 million recovery); and *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($600 million recovery); and Glancy Prongay & Murray: *In re Mercury Interactive Corp. Sec. Litig.*, No. 05-3395-JF (N.D. Cal.) ($117 million recovery); *In Re Yahoo! Inc. Sec. Litig.*, No. 5:17-cv-00373-LHK (N.D. Cal.) ($80 million recovery); and *The City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, No. 10-cv-04372-DWF/JJG (D. Minn.) ($62.5 million recovery).

### 10.    Standing and Caliber of Defense Counsel

94.    Defendants' Counsel—Wilson Sonsini Goodrich & Rosati, P.C., Perkins Coie LLP, and DLA Piper LLP (US)—are distinguished and skilled firms, with well-noted expertise in corporate and securities litigation. The highly capable attorneys at these firms intensely fought Plaintiffs' claims. Despite this formidable opposition, Co-Lead Counsel were able to develop and resolve this case on terms favorable to the Class.

### B.    Plaintiffs' Counsel's Request for Expenses

95.    Plaintiffs' Counsel seek payment from the Settlement Fund of $150,699.33 in expenses reasonably and necessarily incurred in connection with pursuing the claims against Defendants. The Notice will inform the Class that Co-Lead Counsel have applied for payment of Litigation Expenses, which by definition includes PSLRA award requests to Plaintiffs, of no more than $235,000. The amounts requested herein are well below this cap.

96.    As set forth in the Fee and Expense Schedules, Plaintiffs' Counsel have incurred a total of $150,699.33 in expenses in connection with the prosecution of the Action. *See* Exs. 1-B; 2-B; 3-B; and 12. As attested to, these expenses are reflected on the books and records maintained by each firm. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred. These expenses are set forth in detail in Plaintiffs' Counsel's declarations, which identify the specific category of expense—*e.g.*,

online/computer research, experts' fees, travel costs, costs related to mediation, duplicating, telephone, fax, and postage expenses.

97.     A significant component of Plaintiffs' Counsel's expenses was the cost of experts, which totals $85,872.00 or approximately 57% of total expenses.   The services of Co-Lead Plaintiffs' damages expert were necessary for preparing estimates of damages, analyzing loss causation issues, and preparation of the Plan of Allocation.  Co-Lead Counsel also consulted with an intellectual property expert with respect to Athira's patents, and an ethics expert to review potential conflict of interest issues.

98.     Co-Lead Counsel also paid $32,691.44 (or approximately 22% of total costs) in mediation fees assessed by the Mediator in this matter.

99.     Computerized research totals $14,384.17 (or approximately 9.5% of total expenses). These are the costs of computerized factual and legal research services, including, among others, LexisNexis, Westlaw, Thomson, and PACER.  These services allowed counsel to perform media searches on Defendants, obtain analysts' reports and financial data for Athira, and conduct legal research.

100.    The other expenses for which Plaintiffs' Counsel seek payment are the types of expenses that are necessarily incurred in litigation and paid by clients in the non-contingent marketplace.   These expenses include, among others, duplicating costs, document management costs, filing fees, travel costs, and service of process expenses.

101.    All of the litigation expenses incurred, which total $150,699.33, were necessary to the prosecution and resolution of the claims against Defendants.

**C.     Reimbursement to Plaintiffs Pursuant to PSLRA**

102.    The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §§ 77z-1 and 78u-4.  Accordingly,

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

Plaintiffs Wies Rafi, Antonio Bachaalani Nacif, and Hang Gao seek reimbursement of their reasonable costs incurred for their work representing the Class.

103.    Specifically, Lead Plaintiff Rafi seeks reimbursement of $5,000 for the time he dedicated to the Action. *See* Rafi Decl., Ex. 5 at ¶¶12-13. Lead Plaintiff Nacif seeks reimbursement of $5,000 for the time he dedicated to the Action. *See* Nacif Decl., Ex. 6 at ¶¶13-14. Plaintiff Gao seeks reimbursement of $1,000 for the time he dedicated to the Settlement. *See* Gao Decl., Ex. 7 at ¶¶11-12.

104.    As discussed in Plaintiffs' supporting declarations, they have effectively fulfilled their obligations as representatives of the Class by, among other things and as applicable: (i) filing the first complaint (Mr. Gao) or moving to serve as a lead plaintiff in the Action (Messrs. Nacif and Rafi); (ii) compiling and producing their trading records to their attorneys and responding to discovery requests; (iii) communicating with their attorneys regarding the posture and progress of the case; (iv) reviewing the pleadings and briefs filed in the Action, as well as Court Orders; (v) preparing for the two mediations with their counsel (one related to reaching the Settlement and the other the allocation of the settlement proceeds between Securities Act and Exchange Act claims);[4] (vi) evaluating the Settlement Amount and/or the division between the Securities Act Subclass and Exchange Act Subclass, conferring with counsel, and ultimately approving the Settlement and allocation; and (vii) communicating with counsel regarding the process of finalizing the Settlement. *See* Nacif Decl. at ¶5; Rafi Decl. at ¶5; Gao Decl. at ¶5.

105.    These efforts required Plaintiffs to dedicate time and resources to the Action that they would have otherwise devoted to their professional endeavors, and are precisely the types of activities courts have found support reimbursement to class representatives.

---

[4] Mr. Gao was only involved in the second mediation, where he represented, and his counsel advocated on behalf of, the Exchange Act Subclass.

## VII.    CONCLUSION

106.    In view of the favorable recovery in the face of substantial risks, the quality of work performed, the contingent nature of the fee, and the standing and experience of Plaintiffs' Counsel, as described above and in the accompanying motion, Co-Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Fund, litigation expenses in the amount of $150,699.33, and PSLRA awards in the total amount of $11,000.

We each declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 30th day of April 2024, in New York, New York.

_____

THOMAS G. HOFFMAN, JR.

Executed this 30th day of April 2024, in Los Angeles, California.

_____

CASEY E. SADLER

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

28

## VII.    CONCLUSION

106.    In view of the favorable recovery in the face of substantial risks, the quality of work performed, the contingent nature of the fee, and the standing and experience of Plaintiffs' Counsel, as described above and in the accompanying motion, Co-Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Fund, litigation expenses in the amount of $150,699.33, and PSLRA awards in the total amount of $11,000.

We each declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 30th day of April 2024, in New York, New York.

_____
THOMAS G. HOFFMAN, JR.

Executed this 30th day of April 2024, in Los Angeles, California.

_____
CASEY E. SADLER

JOINT DECLARATION IN SUPPORT OF CO-LEAD
COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
EXPENSES - CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212 907-0700
FAX: 212 818-0477

28