THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTONIO BACHAALANI NACIF; WIES RAFI; and HANG GAO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATHIRA PHARMA, INC., *et al*.,<br><br>Defendants. | CASE NO.: 2:21-cv-00861-TSZ<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**<br><br>**NOTE ON MOTION CALENDAR**<br><br>**Noted for October 18, 2024 by Court Order** |

1

# **TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ...................................................................................................... ii

3  I.      INTRODUCTION ............................................................................................................ 1

4  II.     PROCEDURAL AND FACTUAL HISTORY ................................................................ 4

5  III.    STANDARDS GOVERNING FINAL APPROVAL .................................................... 4

6  IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ......................... 6

7          A.      Rule 23(e)(2)(A): Plaintiffs and Their Counsel Have Adequately
                   Represented the Class ......................................................................................... 6
8
9          B.      Rule 23(e)(2)(B): The Settlement Is the Result of Good Faith, Arm's-
                   Length Negotiations ............................................................................................ 8

10         C.      Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the
                   Costs, Risk, and Delay of Trial and Appeal ...................................................... 10
11
12                 1.      Many Risks to Obtaining a Recovery Remained .................................... 11

13                 2.      The Proposed Settlement Eliminates the Additional Cost and Delay
                           of Continued Litigation ........................................................................... 13

14                 3.      Risks of Maintaining Class Action Status ............................................. 14

15                 4.      The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval .............. 14

16                 5.      The Settlement Treats All Class Members Equitably Relative To
                           Each Other ............................................................................................... 16
17
18         D.      The Remaining *Hanlon* Factors Are Neutral or Weigh in Favor of Final
                   Approval ............................................................................................................. 17

19                 1.      The Amount Offered in Settlement ......................................................... 17

20                 2.      The Extent of Discovery Completed and Stage of the Proceedings ........ 20

21                 3.      The Reaction of the Class to the Settlement ........................................... 21

22  V.      THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ........................ 22

23  VI.     THE COURT SHOULD FINALLY CERTIFY THE CLASS ...................................... 23

24  VII.    THE NOTICE PROGRAM SATISFIED THE REQUIREMENTS OF RULE 23,
            DUE PROCESS, AND THE PSLRA ........................................................................... 23
25
    VIII.   CONCLUSION .............................................................................................................. 24
26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................... 13

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...................................... 12

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ............................................................... 13

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) .................................................................... 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................... 8, 9

*Bowers v. Windstream Ky E., LLC*,
   2013 WL 5934019 (W.D. Ky. Nov. 1, 2013) ......................................... 21

*Brightk Consulting Inc. v. BMW of N. Am., LLC*,
   2023 WL 2347446 (C.D. Cal. Jan. 3, 2023) ............................................. 8

*Buettgen v. Harless*,
   2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ..................................... 12

*Carpenters Health & Welfare Fund v. The Coca-Cola Co.*,
   2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ....................................... 10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).................................................................... 12

*In re China Med. Corp. Sec. Litig.*,
   2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ......................................... 10

*Christine Asia Co. Ltd. v. Yun Ma.*,
   2019 WL 5257534 (S.D.N.Y. Oct. 19, 2019) ......................................... 16

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab.
   Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) ........................................... 17

*Churchill Village L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................... 6

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

ii

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..............................................................................18

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..........................................................................................24

*Fleming v. Impax Labs. Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022).................................................23

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................................................5

*Gross v. GFI Grp., Inc.*,
    784 F. App'x. 27 (2d Cir. Sept. 13, 2019) ......................................................11

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)..............................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................*passim*

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd*, *Hefler v. Pekoc* 802 F.
    App'x. 285 (9th Cir. 2020) .................................................................. 6, 10, 17

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .............................................8, 22

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...................................................19

*Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .................................................16

*Longo v. OSI Sys., Inc.*,
    2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022)..............................9

*Lusk v. Five Guys Enters. LLC*,
    2022 WL 4791923 (E.D. Cal. Sept. 30, 2022)..................................................8

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ....................................................................18, 20

*Mendoza v. Hyundai Motor Co.*,
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017).....................................................6

*Nacif v. Athira Pharma, Inc.*,
    2022 WL 3028579 (W.D. Wash. July 29, 2022) ..........................................2, 3

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

iii

*Nacif v. Athira Pharma, Inc.*,
2023 WL 2138478 (W.D. Wash. Feb. 17, 2023)..........................................................19

*Nacif v. Athira Pharma, Inc.*,
2023 WL 6290582 (W.D. Wash. Sept. 27, 2023)........................................................19

*Nacif v. Athira Pharma, Inc.*,
2024 WL 643513 (W.D. Wash. Feb. 15, 2024)..........................................16, 17, 22, 23

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)..................................................................................9

*In re Netflix Priv. Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)............................................................14

*New York State Tchrs' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016), *aff'd, Marro v. New York State Tchrs'
Ret. Sys.,* 2017 WL 6398014 (6th Cir. Nov. 27, 2017).............................................15

*In re OCA, Inc. Sec. and Derivative Litig.*,
2009 WL 512081 (E.D. La. Mar. 2, 2009)..................................................................20

*Officers for Just. v. Civil Serv. Comm'r of Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)......................................................................................10

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1035 (N.D. Cal. 2008) ....................................................14, 21, 22

*In re Oracle Sec. Litig.*,
1994 WL 502054 (N.D. Cal. June 18, 1994)..............................................................22

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ......................................................................................15

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................................................9, 14

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12303367 (C.D. Cal. July 9, 2013)............................................................11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................................17

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................................17, 18

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ....................................................................................19

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

iv

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ................................................................................. 5

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................. 13

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ....................................................................... 13

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ...................................................... 21

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ....................................................... 13

*Vikram v. First Student Mgmt., LLC*,
    2019 WL 1084169 (N.D. Cal. March 7, 2019) ..................................................... 17

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................ 23

*In re Vivendi Universal, S.A., Sec. Litig.*,
    2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) .......................................................... 13

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ...................................................... 20

*Wang v. Athira Pharma, Inc.*,
    2021 WL 4726458 (W.D. Wash. Oct. 5, 2021) ...................................................... 6

*Wong v. Arlo Tech. Inc.*,
    2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ................................................. 6, 10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020) ...................................................... 13

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................................. 12, 17

**Statutes**

15 U.S.C. §§ 77z-1(a)(4) ......................................................................................... 17

15 U.S.C. §§ 77z-1(a)(7) ......................................................................................... 24

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

v

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. 5, 23

Fed. R. Civ. P. 23(b)(3) ......................................................................................................... 23

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 24

Fed. R. Civ. P. 23(e) ....................................................................................................... *passim*

Fed. R. Civ. P. 23(e)(2) ............................................................................................................ 6

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................................... 6

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................................. 10

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................................................ 15

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................................... 15

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................................... 16

Fed. R. Civ. P. 23(e)(3) ............................................................................................................ 5

Fed. R. Civ. P. 23(e)(5) .......................................................................................................... 21

Fed. R. Civ. P. 23(f) ............................................................................................................... 14

Fed. R. Civ. P. 54(b) .............................................................................................................. 11

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

vi

In accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure, lead plaintiffs Wies Rafi ("Rafi")[1] and Antonio Bachaalani Nacif ("Nacif," and together with Rafi, "Lead Plaintiffs") and additional named plaintiff Hang Gao ("Gao," and together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and all other members of the proposed Class, respectfully submit this memorandum in support of their motion for: (i) final approval of the proposed settlement resolving the Action in exchange for payment of $10 million in cash for the benefit of the Class; and (ii) approval of the proposed Plan of Allocation of the proceeds of the Settlement.[2]

## I.  **INTRODUCTION**

After over two years of hard-fought litigation, Lead Plaintiffs, through their counsel, obtained a $10 million (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the Class.  This is a very favorable result for the Class, and it was secured in a procedurally fair manner.

Substantively, the Settlement represents a recovery of approximately 7.0% to 11.0%, of the $83.10 to $143.86 million in *maximum* damages *potentially* available in this Action.[3]  Such a recovery is significantly higher than the 2.9%-3.8% median recoveries in securities cases with similar damages that settled between January 2014 and December 2023.  *See* Ex. 9 (Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024), at p. 25 (Fig. 21) (median recovery for securities class actions that settled

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Amended Stipulation and Agreement of Settlement, dated December 15, 2023 ("Amended Stipulation"; ECF No. 125-2), the previously filed Joint Declaration of Thomas G. Hoffman, Jr. and Casey E. Sadler in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses ("Joint Declaration"; ECF No. 132), or the long-form Notice (ECF No. 130-1).  All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration.

[2] The terms of the Settlement are set forth in the Amended Stipulation.

[3] The $143.86 million damages figure assumes Plaintiffs prevailed on all aspects of the Securities Act and Exchange Act claims, while the $83.10 million figure assumes Plaintiffs only prevailed on their Securities Act claims.  *See* ¶59.

between January 2014 and December 2023 was 2.9% for cases with estimated damages between $100-$199 million, and 3.8% for those with estimated damages of $50-$99 million).

The recovery is all the more favorable when put in context. By the time the Action settled, the Court had already: (i) dismissed eight of the ten defendants (including all of the Underwriter Defendants); (ii) dismissed all of the Exchange Act claims on scienter and/or materiality grounds; (iii) dismissed all §12(a)(2) Securities Act claims with respect to Plaintiffs Nacif and Rafi; and (iv) found ten of the eleven allegedly false and/or misleading statements non-actionable. *See Nacif v. Athira Pharma, Inc.*, 2022 WL 3028579, at \*19 (W.D. Wash. July 29, 2022). The only remaining claims were: (i) one Securities Act § 11 claim against Dr. Leen Kawas ("Dr. Kawas") and Athira Pharma, Inc. ("Athira" or the "Company") relating solely to "Statement 3";[4] and (ii) one Securities Act § 15 claim (control person) against Dr. Kawas. *See id.* Had the litigation continued, Plaintiffs would have faced numerous hurdles, any one of which could have resulted in a recovery smaller than the Settlement Amount, or no recovery at all. In addition, Athira's ability to pay a judgment or settlement greater than the Settlement Amount has significantly diminished since the Parties entered into the Settlement. As such, and as further discussed herein and in the Joint Declaration, the Settlement is substantively fair.

The process by which the Settlement was obtained evidences a lack of collusion and supports a finding of procedural fairness. By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of the claims and Defendants' defenses. Prior to reaching the Settlement, Plaintiffs' Counsel had, *inter alia*:

- drafted initial complaints;

- engaged in contested motion practice regarding the appointment of lead plaintiffs and lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA");

---

[4] "Statement 3" was contained in Athira's IPO and SPO Prospectuses and discussed Athira's exclusive licensing agreement with Washington State University ("WSU") to use, develop, and commercialize the patented molecule Dihexa, the prodrug of which is ATH-1017 (the "WSU License Agreement."). Two of the patents included in the WSU License Agreement cited two of the articles found to contain altered (*i.e.*, enhanced) images. The Court found that, because these two patents cited to research papers containing altered images, the omission of the fact that they contained altered images may have misled a reasonable investor about the value of Athira's patent portfolio and business prospects. *See Nacif*, 2022 WL 3028579, at \*16.

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things (i) reviewing and analyzing: (a) Athira's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants, (c) research reports issued by financial analysts concerning Athira, (d) other publicly available information and data concerning Athira, including *STAT News* articles and comments published on scientific research website *PubPeer*, investigative reports regarding the patents for Dihexa and ATH-1017, (e) documents produced in response to Freedom of Information Act ("FOIA") requests issued to health regulators, including the National Institutes of Health, and (f) the applicable laws governing the claims and potential defenses; (ii) working with in-house investigators who conducted an investigation that involved locating approximately twelve former Athira employees and other persons with relevant knowledge, and interviewing four of them; and (iii) consulting with an expert on loss causation and damages issues, as well as a patent expert regarding the reliance of Athira's IP on Defendant Kawas's research;

- utilized the comprehensive investigation efforts and additional research to draft and file the 58-page (222-paragraph) Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "Complaint");

- researched, drafted, and filed an opposition to Defendants' motion to dismiss the Complaint, which was granted in part and denied in part (*see Nacif*, 2022 WL 3028579, at *19);

- researched, drafted, and filed an opposition to Defendant Kawas's motion for partial reconsideration the Court's motion to dismiss Order, which the Court denied (ECF No. 95);

- engaged in discovery, which entailed: (i) exchanging initial disclosures; (ii) negotiating a joint discovery plan, protective order, and ESI protocol, all of which were subsequently entered by the Court; and (iii) serving, meeting and conferring with respect to, and responding to, document requests and interrogatories, including serving/reviewing verified interrogatory responses, and producing documents to the remaining Defendants;

- engaged in a mediation process overseen by a highly experienced third-party mediator of complex actions, Jed Melnick, Esq., of JAMS ("Mr. Melnick"), which involved an exchange of written submissions concerning the relevant facts, liability and damages, and a full-day in-person mediation session that ultimately resulted in an agreement in principle to the settle the Action for $10 million; and

- reviewed the documents provided by Athira in connection with the agreement to settle, which consisted of documents the Special Committee of Athira's Board of Directors considered and relied on in its investigation into the conduct at issue. ¶¶8-9.

Moreover, the Settlement is the result of arm's-length negotiations, conducted by

1    informed and experienced counsel, in conjunction with an experienced neutral.  Plaintiffs and

2    their counsel believe that the proposed Settlement meets the standards for final approval and is in

3    the best interests of the Class.

4         Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement

5    Fund.  The Plan of Allocation was developed by Co-Lead Counsel, together with one of Plaintiffs'

6    consulting damages experts, and is designed to distribute the proceeds of the Net Settlement Fund

7    fairly and equitably to Class Members.  It is also the result of an adversarial arm's-length process

8    between: (i) counsel advocating for a larger share of the Settlement Fund for Class Members with

9    Securities Act claims (the "Securities Act Subclass"); and (ii) counsel advocating for those Class

10   Members with Exchange Act claims (the "Exchange Act Subclass").  ¶¶42-49; *see generally* ECF

11   No. 125, Exs. 3 and 4.  No Class Member is favored over another within their respective subclass

12   under the proposed Plan of Allocation; rather, all Class members—including Plaintiffs—are

13   treated in the same manner within their subclass.  *See* Declaration of Sarah Evans Concerning:

14   (A) Mailing of the Notice, Claim Form, and Opt-Out Form; (B) Publication of the Summary

15   Notice; (C) Requests for Exclusion and Objections Received to Date; and (D) Claims Received

16   to Date, dated September 26, 2024 ("Mailing Decl."), filed herewith, Ex. A (Notice) at ¶¶38-64.

17   The proposed Plan of Allocation is, therefore, fair and reasonable and, as such, it too should be

18   approved.

19   **II.    PROCEDURAL AND FACTUAL HISTORY**

20        The previously filed Joint Declaration, (ECF No. 132), is an integral part of this

21   submission.  For the sake of brevity in this memorandum, the Court is referred to it for a detailed

22   description of, *inter alia*, the nature of the claims asserted (¶¶12-14); the factual and procedural

23   history of the Action (¶¶15-36; 42-51); the negotiations leading to the Settlement (¶¶37-41); and

24   the risks and uncertainties of continued litigation (¶¶62-85).

25   **III.   STANDARDS GOVERNING FINAL APPROVAL**

26        Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or

27   settlement of class action claims and states that a class action settlement should be approved if

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

4

1    the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit

2    and throughout the country, "there is a strong judicial policy that favors settlements, particularly

3    where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095,

4    1101 (9th Cir. 2008).[5] Indeed, class actions readily lend themselves to compromise because of

5    the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation. The

6    settlement of such complex cases also greatly contributes to the conservation of scarce judicial

7    resources. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D.

8    Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted expenditure of resources and

9    time would benefit all Parties and the Court.").

10        According to Rule 23(e)(2), which governs final approval, courts must determine if a

11    proposed settlement is fair, reasonable, and adequate after considering whether:

12    (A)    the class representatives and class counsel have adequately represented the
             class;

13    (B)    the proposal was negotiated at arm's length;

14    (C)    the relief provided for the class is adequate, taking into account:

15         (i)    the costs, risks, and delay of trial and appeal;

16         (ii)   the effectiveness of any proposed method of distributing relief to
                  the class, including the method of processing class-member claims;

17         (iii)  the terms of any proposed award of attorneys' fees, including
                  timing of payment; and

18         (iv)   any agreement required to be identified under Rule 23(e)(3); and

19    (D)    the proposal treats class members equitable relative to each other.

20    Fed. R. Civ. P. 23(e)(2).

21        These factors, which went into effect on December 1, 2018, do not "displace" any

22    previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure

23    and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P.

24    23(e) Advisory Committee's notes to 2018 amendment, 324 F.R.D. 904, 918. "Accordingly, the

25    Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance

26

27    _____

5 Unless otherwise indicated, all emphasis is added and all internal citations and quotations are
28    omitted.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

5

from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*4 (N.D. Cal. Dec. 18, 2018), *aff'd, Hefler v. Pekoc* 802 F. App'x. 285 (9th Cir. 2020). Prior to the Rule 23(e)(2) amendment, courts in the Ninth Circuit considered the following "*Hanlon* factors":

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[6]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Application of each of the four factors specified in Rule 23(e)(2) and the relevant, non-duplicative *Hanlon* factors demonstrates that the Settlement warrants final approval.[7]

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Rule 23(e)(2)(A): Plaintiffs and Their Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." At the lead plaintiff stage of this case, the Court appointed Nacif and Rafi to serve as co-lead plaintiffs. In so doing, the Court stated that "Nacif is appointed lead plaintiff, at least with respect to the Exchange Act claims," and found that Rafi was "the 'most adequate plaintiff' in connection with the Securities Act claims." *Wang v. Athira Pharma, Inc.*, 2021 WL 4726458, at \*3-\*4 (W.D. Wash. Oct. 5, 2021).[8] They proceeded to actively participate in the Action by, *inter alia*: (i) compiling and producing their trading

---

[6] "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at \*7 (N.D. Cal. Jan. 23, 2017).

[7] Fed. R. Civ. P. 23(e)(2)(A)-(C)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Wong v. Arlo Tech. Inc.*, 2021 WL 1146042, at \*6 (N.D. Cal. Mar. 25, 2021) (citing *Hanlon*, 150 F.3d at 1026).

[8] Using the LIFO method, Nacif had Exchange Act losses of $449,299.10, and Rafi had Securities Act losses of $44,737.92 and Exchange Act losses of $94,145.10. *Id.* at 2.

records to their attorneys and responding to discovery requests; (ii) communicating with their attorneys regarding the posture and progress of the case; (iii) reviewing the pleadings and briefs filed in the Action, as well as Court Orders; (iv) preparing for the initial mediation with their counsel; (v) evaluating the Settlement Amount, conferring with counsel, and ultimately approving the Settlement. *See* ECF Nos. 132-5, ¶5; 132-6, ¶5. Additionally, the Parties conducted a second mediation overseen by Mr. Melnick to determine the appropriate allocation of the Settlement Fund between shareholders with Securities Act claims, and those with Exchange Act claims, given the procedural posture of the case and damages sustained by each group of investors. *See* ECF No. 125-4 (Declaration of Jed Melnick, Esq. ("Melnick Decl.") at ¶2.

Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have long and successful track records of representing investors in such cases. Plaintiffs' Counsel have successfully prosecuted securities class actions and complex litigation in courts throughout the country. *See* ECF No. 132-1, Ex. 1-C (Labaton résumé); ECF No. 132-2, Ex. 2-C (GPM firm résumé); ECF No. 132-4, Ex. 4-B (Block & Leviton LLP firm résumé).

Plaintiffs' Counsel developed a deep understanding of the relevant facts and the merits of the claims through, *inter alia*: (i) review and analysis of publicly available information regarding the Company, documents produced in response to FOIA requests, and documents and information provided in response to requests for production and interrogatories; (ii) interviews of former employees; (iii) briefing Defendants' motion to dismiss; (iv) opposing Dr. Kawas's motion for partial reconsideration the Court's motion to dismiss Order; (v) review and analysis of the remaining Defendants' mediation statement and exhibits; (vi) consultations with an expert on loss causation and damages and a patent expert regarding the reliance of Athira's IP on Dr. Kawas's allegedly manipulated research; and (vii) participation in two mediations. *See generally* Joint Decl. Prior to entering into the Settlement, Co-Lead Counsel also conducted additional due diligence and reviewed additional documents produced by the remaining Defendants. The Settlement was, therefore, negotiated by well-informed counsel who had vigorously litigated the Action on behalf of Plaintiffs and the Class.

### B.    Rule 23(e)(2)(B): The Settlement Is the Result of Good Faith, Arm's-Length Negotiations

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." Circumstances related to this "procedural" fairness determination of a settlement traditionally include: (i) whether counsel has a thorough understanding of the strength [and weakness] of the plaintiff's case[9] based on factors like "the extent of discovery completed and the stage of the proceedings";[10] (ii) the "experience and views of counsel";[11] and (iii) the absence of any indicia of collusion.[12]  Each of these factors supports approval of the Settlement.

Here, the agreement to settle followed the exchange of substantial mediation material that addressed the relevant facts, liability, and damages, as well as a full-day, in-person mediation overseen by Mr. Melnick—a mediator with significant experience mediating securities class actions and other complex litigation—during which each side vigorously advocated on behalf of their clients.  *See* ¶38; *see also Brightk Consulting Inc. v. BMW of N. Am., LLC*, 2023 WL 2347446, at *6 (C.D. Cal. Jan. 3, 2023) (describing Mr. Melnick as "an experienced complex business litigation mediator who has resolved over 1,000 disputes in his career.").  Following extensive negotiations facilitated by the mediator, Mr. Melnick ultimately made a mediator's proposal to settle the Action for $10 million, which was accepted by the Parties.  *See* ¶38; *see also Lusk v. Five Guys Enters. LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) ("The fact. . . that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion.").

Furthermore, courts accord "significant weight" to the recommendations of counsel, who are "most closely acquainted with the facts of the underlying litigation."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).  Such should be the case here, where Co-Lead Counsel have a thorough understanding of the strengths and weaknesses of the claims

---

[9] *Hanlon*, 150 F.3d at 1026 (first factor).

[10] *See id.* (fifth factor).

[11] *See id.* (sixth factor).

[12] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

after more than two years of litigation, extensive experience litigating securities class action cases, and a strong belief that the $10 million Settlement is in the best interests of the Class given the significant risks of continued litigation.[13]  As evidenced by the record here, and as detailed the Joint Declaration, Co-Lead Counsel spent extensive amounts of time investigating the relevant facts, drafting pleadings, opposing the motion to dismiss and Dr. Kawas's motion for partial reconsideration, engaging in discovery, participating in an adversarial mediation process, and consulting with experts.  ¶¶18-48.  They also had the benefit of the Court's decisions on dismissal and other issues.  Under such circumstances, there can be no question that counsel "had a sound basis for measuring the terms of the settlement." *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022).

It is also important to note that the Court-appointed Lead Plaintiffs, who were involved in all aspects of the litigation, as well as additional plaintiff Gao, support the Settlement.  *See* Ex. 5 (Rafi Decl.), at ¶¶7-8; Ex. 6 (Nacif Decl.), at ¶¶7-8; Ex. 7 (Gao Decl.), at ¶7.  Plaintiffs' support for the Settlement should be afforded "special weight" because a plaintiff "ha[s] a better understanding of the case than most members of the class." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *5 (N.D. Cal. Nov. 26, 2007) (noting Congress's intent to foster involvement of lead plaintiff when passing PSLRA and stating that "the role taken by the lead plaintiff in the settlement process supports settlement because lead plaintiff was intimately involved in the settlement negotiations").

Finally, the Settlement has none of the indicia of collusion identified by the Ninth Circuit in *Bluetooth Headset*, 654 F.3d at 947, reasoning that "subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class

---

[13] In addition, as noted in Section IV.D.1, *infra*, Athira's ability to pay a judgment or a settlement greater than the Settlement Amount has significantly diminished since the Parties entered into the Settlement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

9

funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund."[14]

As such, the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just. v. Civil Serv. Comm'r. of Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive.").

## C.     Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk, and Delay of Trial and Appeal

Pursuant to Rule 23(e)(2)(C), the Court also must consider the substantive adequacy of the proposed Settlement in determining final approval. Rule 23(e)(2)(C)(i) evaluates whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[15] While Plaintiffs believe their claims have merit and that the Class would have prevailed at summary judgment, trial, and on appeal, they nevertheless recognize the numerous risks and uncertainties inherent in continuing to litigate. Indeed, courts have repeatedly acknowledged that securities class actions "are highly complex and securities class litigation is notably difficult and notoriously uncertain." *Hefler*, 2018 WL 6619983, at *13; *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008) ("Stockholder litigation is notably difficult and notoriously uncertain."). As discussed below, the benefits conferred on Class Members by the Settlement outweigh the costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

---

[14] This is not a claims-made settlement. If the Settlement is approved, neither Defendants, nor any other person or entity who or which paid any portion of the Settlement Amount, will have any right to the return of a portion of the Settlement Fund based on the number or value of the claims submitted. *See* Amended Stipulation ¶13.

[15] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor); and the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

1          **1.      Many Risks to Obtaining a Recovery Remained**

2          Although Plaintiffs and Co-Lead Counsel believe that the claims asserted against

3   Defendants have merit, they recognize the significant expense and length of continued litigation

4   through trial and appeals, as well as the risks they would face in establishing the required

5   elements—*e.g.*, falsity and materiality—to sustain their claims and, potentially, obtain a larger

6   recovery.  *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9,

7   2013) ("Courts experienced with securities fraud litigation 'routinely recognize that securities

8   class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'").

9          For example, the Court's decision on the motion to dismiss left only a Section 11 claim

10  based on one alleged false and misleading statement that was repeated in Athira's IPO and SPO

11  prospectuses.  The remaining Defendants would no doubt have continued to argue that the

12  statement, which relates to Athira's exclusive licensing agreement with WSU, was true and not

13  materially false and misleading.  *See* ¶64 (discussing Defendants' potential arguments).  While

14  Lead Plaintiffs believed they had the better argument on this issue, success was not a forgone

15  conclusion.  *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming

16  grant of summary judgment on the alternative ground that defendants' "statement did not, as a

17  matter of law, amount to a material misrepresentation or omission actionable under section

18  10(b)," despite the trial court twice finding the statement actionable).

19         Prior to settlement, the Underwriter Defendants had also moved for entry of judgment

20  dismissing the claims against them (ECF No. 105), and the Court invited submissions to broaden

21  the relief to include all of the dismissed Defendants (ECF No. 114).  Lead Plaintiffs opposed the

22  motion (ECF No. 111), but without the proposed Settlement, Lead Plaintiffs faced the risk of

23  either entry of final judgment as to all of the Defendants except Athira and Dr. Kawas, or being

24  required to pursue an appeal as to the dismissed claims, even while continuing to prosecute the

25  claims against the remaining Defendants in this Court.[16]

26  _____

27  [16] Pursuant to the Parties' stipulation (ECF No. 117), the Underwriter Defendants' Rule 54(b)
    motion was stricken without prejudice to refiling in the event that a settlement of this matter is
28  not perfected. ECF Entry (Mar. 10, 2023).

Plaintiffs' Motion for Final Approval of Class
Action Settlement and Plan of Allocation -
Case No. 2:21-cv-00861-TSZ

Labaton Keller Sucharow LLP
140 Broadway, New York, NY 10005
Phone: 212-907-0700
Fax: 212-818-0477

11

Even if Plaintiffs overcame the hurdles to establishing liability, the amount of damages that could be attributed to the allegedly false statement would be hotly contested. *See* ¶¶67-70; *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("[I]t [is] difficult for [plaintiff] to prove loss causation and damages at trial."). For instance, the remaining Defendants would likely argue that Athira's stock price dropped not as a result of the revelation of the allegedly concealed information—*i.e.*, Dr. Kawas' enhancement of Western blot images in her academic research—but rather as a result of unwarranted market panic regarding the validity of the science underlying Athira's lead development product, ATH-1017. In support of this argument, the remaining Defendants would have likely argued that Athira's stock price significantly rebounded following Athira's October 21, 2021 press release announcing the Special Committee's finding that the ATH-1017 Phase 1 trial P300 data were unaffected by the alleged fraud. Thus, the remaining Defendants would argue that any statistically significant declines in Athira's stock price resulted from forces unrelated to the alleged fraud (*i.e.*, negative causation).

Moreover, each side would have presented expert testimony on these issues, requiring a jury to decide a so-called "battle of the experts"—an intrinsically expensive and unpredictable process. *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016). Indeed, "[o]ne cannot predict which expert's testimony or methodology a jury would find reliable. If the jury agreed with Defendants, Plaintiffs would have had their damages significantly reduced or their claims fail as a matter of law." *Buettgen v. Harless*, 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). Moreover, as mentioned below, Athira's financial ability to fund a larger judgment after trial is now not assured.

For these reasons, as well as many others (*see*, *e.g.*, ¶¶71-76), success in this Action was far from a forgone conclusion.

## 2. The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation

Courts have consistently recognized that "the cost, complexity and time of fully litigating the case" are key factors in evaluating the reasonableness of a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) ("[F]urther litigation would have delayed any potential recovery . . . and would have been costly and risky. By contrast, the Settlement provides . . . timely and certain recovery."); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) ("Unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Here, continuing litigation through the conclusion of fact and expert discovery, class certification, summary judgment, trial, and appeals would have been very expensive, involved complex questions of law and fact, consumed significant judicial resources, and would have delayed Class Members' recovery, if any, for many years. *See, e.g.*, *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.").[17] By contrast, the Settlement, which results in an immediate and substantial $10 million recovery, without the considerable risk, expense and delay of further litigation, is a far better option for the Class. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 176 (S.D.N.Y. 2014) ("The present value of a certain recovery at this time, compared to the slim chance for a greater one down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the significant risk that

---

[17] *See also In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment n.o.v. was denied; on appeal, the judgment was reversed and the case was dismissed – after 11 years of litigation).

the Class could receive no recovery."); *Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.").

### 3. Risks of Maintaining Class Action Status

Another near-term risk faced by Plaintiffs was contested class certification. *See* ¶71. There was no guarantee that the surviving Securities Act Subclass would be certified or that certification could have been retained through summary judgment and trial. Indeed, the remaining Defendants would likely argue that there were standing and traceability issues with Athira's SPO that would defeat class certification. More specifically, the remaining Defendants would likely argue that, because Plaintiffs lacked standing to assert claims related to the SPO, the Class could not pursue any damages based on SPO purchases, significantly reducing recoverable damages. Even if the proposed class had been certified, defendants certainly would have challenged the certification in a Rule 23(f) petition, and there is always a risk that the class could be decertified at a later stage in the proceedings. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (reasoning that, even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendant might have sought decertification or modification of the class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) ("Although the 'risk of maintaining a class through trial is present in [every] class action' . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated."); *In re Netflix Priv. Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.").

### 4. The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval

Under Rule 23(e)(2)(C)(ii)-(iv), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed

1   award of attorneys' fees, including timing of payment," and "any agreement required to be
2   identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support
3   the Settlement's approval or is neutral and thus does not suggest any basis for concluding the
4   Settlement is inadequate.

5       **Rule 23(e)(2)(C)(ii):** Here, the method for processing Class Members' claims and
6   distributing the Net Settlement Fund to eligible claimants is well-established and effective.
7   Strategic Claims Services ("SCS"), the Court-approved Settlement Administrator, will process
8   claims under the guidance of Co-Lead Counsel, provide claimants with an opportunity to cure
9   any deficiency in their claim or request review by Co-Lead Counsel of any denial of their claim,
10  and, ultimately, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement
11  Fund as calculated under the Court-approved Plan of Allocation. This type of claim processing
12  is standard in securities class action settlements and it is effective, as well as necessary, insofar
13  as neither Plaintiffs nor Defendants possess the individual investor trading data required for a
14  claims-free process to distribute the Net Settlement Fund. *See New York State Tchrs' Ret. Sys. v.*
15  *Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 242 (E.D. Mich. 2016) (approving settlement with a
16  nearly identical distribution process), *aff'd*, *Marro v. New York State Tchrs' Ret. Sys.*, 2017 WL
17  6398014 (6th Cir. Nov. 27, 2017).

18      **Rule 23(e)(2)(C)(iii):** The relief provided for the Class is also adequate when the terms of
19  the proposed award of attorneys' fees are considered. As detailed in Co-Lead Counsel's
20  previously filed fee and expense motion and supporting papers, a proposed attorneys' fee of 25%
21  of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount)
22  is reasonable in light of the work performed and the results obtained. *See* ECF Nos. 131-132.
23  The proposed attorneys' fee is also equal to the Ninth Circuit benchmark award, as well as below
24  the range of percentages courts in this Circuit and elsewhere have often awarded in similar
25  complex cases. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five
26  percent is the 'benchmark' that district courts should award in common fund cases."); *see also*
27  ECF No. 131, at Sec. III.B.5 (collecting cases and citing empirical research). Importantly,

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

15

approval of the Settlement is not contingent on approval of the requested attorneys' fees, and the Settlement may not be terminated based on any ruling with respect to fees.  *See* Amended Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** Finally, in accordance with Rules 23(e)(2)(C)(iv) and 23(e)(3), and as Plaintiffs noted in their preliminary approval papers, the Parties entered into a confidential Supplemental Agreement concerning the circumstances under which Athira may terminate the Settlement given the level of requests for exclusion, *i.e.,* "opt-outs." *See* Amended Stipulation ¶35.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. Ltd. v. Yun Ma.*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 19, 2019); *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (substantially similar).[18]

### 5.    The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, in response to certain concerns set forth in the Court's September 27, 2023 Order, "the parties sought an opinion from [Mr.] Melnick . . . concerning a 'fair and reasonable' allocation of settlement proceeds between Securities Act Claims and [the] Exchange Act Claim." *Nacif v. Athira Pharma, Inc.*, 2024 WL 643513, at *2 (W.D. Wash. Feb. 15, 2024).  Mr. Melnick issued his opinion following the Allocation Mediation. *See* ¶¶47-48 (discussing the Allocation Mediation).  Thereafter, Plaintiffs filed their renewed Motion for Preliminary Approval, which included (i) Mr. Melnick's opinion; (ii) additional briefing; (iii) an expert report by Plaintiffs' damages expert (Zachary Nye, Ph.D. (ECF No. 125-5)); and (iv) a declaration clarifying "that all Athira shares issued before the IPO (and SPO) were subject to lock-up or market-stand-off restrictions that prevented their trading until the market opened on March 17, 2021." *Nacif*, 2024 WL 643513, at *2 (citing Duncan Decl. at ¶¶3-8 (ECF No. 125-7)).  In response to this rigorous process, the Court stated that it: (i) "is persuaded that the proposed

---

[18] The Court requested and was provided the Supplemental Agreement for its *in camera* review. *See* ECF No. 120.

apportionment between Securities Act Claims and Exchange Act Claims 'treats class members equitably relative to each other[]'"; and (ii) "therefore ADOPTS the mediator's recommended apportionment as being fair and reasonable in light of the circumstances." *Id.* at 3 (emphasis in the original). The Court's conclusion at the preliminary approval stage is equally true now, as nothing has changed between February 15, 2024, and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg.*, *Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now."); *see also Zynga,* 2015 WL 6471171, at *12 ("Courts in this District and elsewhere endorse distribution of settlement proceeds according to the relative strengths and weaknesses of the various claims.").[19]

### D.    The Remaining *Hanlon* Factors Are Neutral or Weigh in Favor of Final Approval

*Hanlon* also outlined several factors that, viewed in tandem with the Rule 23(e)(2) factors identified above, either support final approval or are neutral.[20]

#### 1.    The Amount Offered in Settlement

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler*, 2018 WL 6619983, at *9. "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL

---

[19] Pursuant to the PSLRA, Plaintiffs separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Class. *See* 15 U.S.C. §§ 77z-1(a)(4), 78u-4(a)(4). Such reimbursement does not equate to preferential treatment to Plaintiffs. *See In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020) ("[t]he service award Lead Plaintiff seeks is reasonable and does not constitute inequitable treatment of class members.").

[20] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

---

1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Here, Plaintiffs' damages expert estimated that *if* Plaintiffs were to prevail in *all* respects on both the Securities and Exchange Act claims—which would have required the Ninth Circuit to reverse this Court's dismissal of the Exchange Act claims (*i.e.*, Plaintiffs' best-case scenario)— total *maximum* class wide damages would be approximately $143.86 million using an 80/20 Multi-Trader Model. ¶59. Under this scenario, the recovery is approximately 7.0% of class-wide damages. This is *more than twice* the typical recovery for cases of a similar magnitude. *See* ECF No. 132-9, Ex. 9 (NERA Report, at p. 25 (Fig. 21) (from January 2014-December 2023 median settlement value as a percentage of "NERA-Defined Investor Losses" was 2.9% for securities class actions with estimated losses of $100-$199 million)).

As discussed above, this Action was not, however, risk free. There were meaningful barriers to any recovery, especially for the Exchange Act Subclass. Had the litigation continued and Plaintiffs were only successful on the Securities Act claims, maximum recoverable damages would be approximately $83.10 million, and the Settlement—after the 8.5%-91.5% allocation— would equate to 11.0% ($9,150,000/$83,100,000) of the estimated maximum Securities Act damages. ¶59. This is *more than two and three-quarters times* the median recovery in cases with similarly sized damages. *See* Ex. 9 (NERA Report, at p. 25 (Fig. 21) (between January 2014-December 2023 the median settlement value as a percentage of "NERA-Defined Investor Losses"

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

18

1   was 3.8% for securities class actions with estimated losses between $50-$99 million)).[21]

2   Of course, the 7-11% recoveries are based on maximum **potential** recovery scenarios. The

3   Court has already expressed skepticism with respect to Plaintiffs' ability to successfully appeal

4   the dismissal of the Exchange Act claims. *See Nacif v. Athira Pharma, Inc.*, 2023 WL 6290582,

5   at *3 (W.D. Wash. Sept. 27, 2023) (stating that the Exchange Act "claims have little value in light

6   of the Court's Dismissal Order"). The Court also indicated that it would most likely deny

7   amendment as to the dismissed claims if discovery were to yield incriminating evidence. *See*

8   *Nacif v. Athira Pharma, Inc.*, 2023 WL 2138478, at *2, n.1 (W.D. Wash. Feb. 17, 2023) ("The

9   Court has also considered the possibility that plaintiffs might later ask for relief from the now-

10  expired deadlines and propose to replead one or more of the dismissed claims. Any such motion

11  is unlikely to succeed in light of the general principle that plaintiffs should plead viable claims

12  before the parties commence discovery."). And, finally, Defendants would have continued to

13  challenge all aspects of Plaintiffs' case, and the prospect that Plaintiff would have obtained **any**

14  recovery was far from guaranteed. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th

15  Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

16  Given the range of possible results (including no recovery at all), and the procedural

17  posture of the Action, this factor weighs heavily in favor of final approval. *See Int'l Bhd. of Elec.*

18  *Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *2-3 (D. Nev.

19  Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum

20  damages the lead plaintiff believed could be recovered at trial and noting that the amount is within

21  the median recovery in securities class actions settled in the last few years).

22  In addition, Athira's ability to pay a judgment or a settlement greater than that here has

23  significantly diminished since the Parties entered into the Settlement. On September 17, 2024,

24  after receiving disappointing topline data from the Company's clinical trials of a potential

25  treatment for Alzheimer's disease, the Company announced it will be focusing on a different drug

26

27  ---
    [21] Under the Plan of Allocation, the Exchange Act Subclass will receive 1.4% of estimated

28  maximum damages ($850,000/$60,760,000 = 1.4%).

candidate and will undergo corporate restructuring involving cost containment measures and a reduction in workforce of approximately 70%. *See* Athira Pharma, Inc. Form 8-K, Sept. 17, 2024.

### 2.    The Extent of Discovery Completed and Stage of the Proceedings

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459. "Instead, courts look for indications the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016). Although discovery was in its infancy at the time of the Settlement as a result of the PSLRA's automatic stay of discovery,[22] Co-Lead Counsel conducted an extensive investigation into the claims asserted in this Action, which included a far-reaching review of publicly available information, significant work with in-house investigators, and consultation with experts in the fields of loss causation and damages, as well as a patent expert regarding the reliance of Athira's IP on Defendant Kawas's research. ¶¶8, 19-20. Moreover, Co-Lead Counsel, *inter alia*: (i) conducted an extensive investigation, including working with in-house investigators and contacting former Athira employees and other persons with relevant knowledge; (ii) drafted the Complaint; (iii) opposed defendants' motion to dismiss and Dr. Kawas's motion for partial reconsideration; (iv) reviewed Dr. Kawas's verified interrogatory responses; (v) reviewed documents produced in response to FOIA requests issued to health regulators, including the National Institutes of Health; (vi) participated in an adversarial mediation process; (vii) reviewed and analyzed the Court's decisions; (viii) reviewed documents produced by Athira during confirmatory discovery; and (ix) submitted briefing and participated in the Allocation Mediation. ¶¶15-48. As such, Plaintiffs and Co-Lead Counsel had a thorough understanding of the claims and defenses asserted in the Action, and the significant risks to establishing liability and damages.

---

[22] *See In re OCA, Inc. Sec. and Derivative Litig.*, 2009 WL 512081, at *12 (E.D. La. Mar. 2, 2009) ("Because the PSLRA prohibits formal discovery during the pendency of any motion to dismiss, the parties were prohibited from engaging in formal discovery until the Court ruled on defendants' motion to dismiss . . . .") (citing 15 U.S.C.A. § 78u–4(b)(3)(B).

*See Bowers v. Windstream Ky E., LLC*, 2013 WL 5934019, at *3 (W.D. Ky. Nov. 1, 2013) ("[T]he formal and informal discovery exchanged by the parties was thorough and appropriately tailored to allow the parties to determine not only an overall settlement amount, but to fairly and adequately determine an allocation of that amount for the Settlement Class Members."); *see also Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

### 3.    The Reaction of the Class to the Settlement

The eighth *Hanlon* factor—the reaction of the Class—overlaps with Rules 23(c)(2)(B)(vi), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to class members." *Omnivision*, 559 F. Supp. 2d at 1043; *see also Hanlon*, 150 F.3d at 1027 (that the "overwhelming majority" stayed in the class is "objective positive commentary as to its fairness").

Here, as required by Rules 23(c)(2)(B)(vi) and 23(e)(5), the Settlement affords Class Members the opportunity to request exclusion from, or object to, the Settlement. In total, as of September 26, 2024, more than 25,000 potential Class Members and their nominees were mailed the Notice, Claim Form, and Opt-Out Form. *See* Mailing Declaration, ¶¶3-8. To date, only six requests for exclusion have been received, representing approximately 124 shares, and no objections have been received or filed with the Court. *Id.* at ¶¶15-17.[23] The Class's extremely positive reaction to date strongly supports final approval of the Settlement. *Omnivision*, 559 F. Supp. 2d at 1043 ("By any standard, the lack of objection of the Class Members favors approval

---

[23] The exclusion deadline was September 6, 2024. The written objection deadline was September 6, 2024, for Class Members not represented by counsel, and October 11, 2024, if represented by counsel. If any objections or additional late opt-outs are received after the date of this filing, they will be addressed on reply.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

21

1  of the Settlement."); *Heritage Bond*, 2005 WL 1594403, at *10 ("The Court finds the lack of class

2  members that have manifested any disapproval of the Settlement further demonstrates the

3  fairness, adequacy and reasonableness of the Settlement.").

4      For all the forgoing reasons, the Court should finally approve the Settlement.

5  **V.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

6      In its February 15, 2024 Order, the Court preliminarily approved the Plan of Allocation.

7  *Nacif*, 2024 WL 643513, at *9.  Final approval of the proposed Plan is likewise appropriate.

8      A plan of allocation in a class action "is governed by the same standards of review

9  applicable to approval of the settlement as a whole: the plan must be fair, reasonable and

10 adequate." *Omnivision*, 559 F. Supp. 2d at 1045 (citing *Class Pls. v. City of Seattle*, 955 F.2d

11 1268, 1284-85 (9th Cir. 1992)).  In applying this standard, Courts have held that "[i]t is reasonable

12 to allocate the settlement funds to class members based on the extent of their injuries or the

13 strength of their claims on the merits." *Id.*; *see also In re Oracle Sec. Litig.*, 1994 WL 502054, at

14 *1 (N.D. Cal. June 18, 1994) ("It is . . . reasonable to allocate more of the settlement to class

15 members with stronger claims on the merits.").

16     The Plan of Allocation is set out in paragraphs 38-64 of the Notice (*see* Mailing Decl., Ex.

17 A), and analyzed in detail in the Court's February 15, 2024 Order.  It was developed by Plaintiffs'

18 damages expert in consultation with Co-Lead Counsel, and addresses the concerns raised by the

19 Court with respect to the allocation between the Securities Act and Exchange Act Subclasses

20 based on the litigation status of their respective claims. *Id*. at 3.  The proposed Plan, which

21 incorporates Mr. Melnick's determinations following the Allocation Mediation, assigns no less

22 than 91.5% of the net settlement proceeds to the Securities Act Subclass, and up to 8.5% of the

23 net settlement proceeds to the Exchange Act Subclass. *See id*.

24     Moreover, to ensure the Exchange Act Subclass will not receive a windfall recovery in

25 the unlikely event that a very small portion of the Exchange Act Subclass submits claims, the

26 proposed Plan includes a provision that limits the Exchange Act Subclass to its actual percentage

27 of recovery if the value of its claims does not constitute at least 8.5% of the Net Settlement Fund.

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

22

1    *See* Notice at ¶61 ("If the total cumulative payments of all Exchange Act Claims of Authorized

2    Claimants is less than 8.5% of the Net Settlement Fund, then the Exchange Act Claims will be

3    limited to their actual lesser proportion of the Net Settlement Fund.  Any excess will be transferred

4    to the Securities Act Allocation.").[24]

5            Plaintiffs believe this allocation, which provides almost all the Settlement Amount to the

6    Securities Act Subclass and some recovery for the Exchange Act Subclass in light of its appellate

7    rights and Defendants' desire for litigation peace, is fair and equitable.  *See Vinh Nguyen v.*

8    *Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a

9    securities class action case can be reasonable if it 'fairly treats class members by awarding a *pro*

10   *rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based

11   upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and

12   the timing of purchases of the securities at issue.'"); *see also Nacif,* 2024 WL 643513, at *3 ("The

13   Court is persuaded that the proposed apportionment between Securities Act Claims and Exchange

14   Act Claims 'treats class members equitably relative to each other.'" (quoting Fed. R. Civ. P.

15   23(e)(2)(D))).

16   **VI.    THE COURT SHOULD FINALLY CERTIFY THE CLASS**

17           In granting preliminary approval, the Court found the Action appropriate for class

18   certification for settlement purposes, and appointed Plaintiffs as class representatives and Labaton

19   and GPM as class counsel.  *See Nacif,* 2024 WL 643513, at *9.  Nothing has changed that would

20   undermine the Court's conclusion, and class certification for settlement purposes remains

21   appropriate.  *See Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022).

22   **VII.   THE NOTICE PROGRAM SATISFIED THE REQUIREMENTS**
         **OF RULE 23, DUE PROCESS, AND THE PSLRA**
23

24           For any class certified under Rule 23(b)(3), due process and Rule 23 require that class

25

---

26   [24] For example, in the unlikely event that the total value of claims attributed to the Exchange
     Act Subclass total only 5% of the Net Settlement Fund, then the Exchange Act Subclass would
27   only be allocated 5% of the Net Settlement Fund and the Securities Act Subclass would be
     allocated the remaining 95%.
28

---

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-cv-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

23

members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). The Notice provides all the information required by Rule 23(c)(2)(B) and satisfies the requirements of the PSLRA, 15 U.S.C. §§ 77z-1(a)(7); 78u-4(a)(7). The Court has already found the notice program adequate and sufficient. *See* ECF No. 130. Co-Lead Counsel and SCS carried out the notice program as ordered by the Court. *See* Mailing Decl., ¶¶2-17. Accordingly, Class Members have been apprised of their rights through the best notice practicable under the circumstances.

## VIII.   <u>CONCLUSION</u>

For the reasons stated in this motion, and in the previously filed Joint Declaration, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and approve the proposed Plan of Allocation.

Dated: September 26, 2024

**LABATON KELLER SUCHAROW LLP**

By: <u>*s/ Thomas G. Hoffman, Jr.*</u>
Michael P. Canty
Thomas G. Hoffman, Jr.
Nicole M. Zeiss
140 Broadway
New York, New York 10005
Phone: (212) 907-0700
Fax: (212) 818-0477
Email: mcanty@labaton.com
thoffman@labaton.com
nzeiss@labaton.com

**GLANCY PRONGAY & MURRAY LLP**
Joseph D. Cohen
Kara M. Wolke
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Phone: (310) 201-9150
Fax: (310) 201-9160
Email: jcohen@glancylaw.com
kwolke@glancylaw.com
csadler@glancylaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Co-Lead Counsel for the Class*

**ROSSI VUCINOVICH, P.C.**

By: *s/ Benjamin T. G. Nivison*
Benjamin T. G. Nivison, WSBA No. 39797
1000 Second Avenue, Suite 1420
Seattle, Washington 98104
Phone: (425) 646-8003
Fax: (425) 646-8004
Email: bnivison@rvflegal.com

*Liaison Counsel for the Class*

**BLOCK & LEVITON LLP**
Jacob Walker
Michael Gaines
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Email: jake@blockleviton.com
michael@blockleviton.com

*Additional Plaintiffs' Counsel*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION -
CASE NO. 2:21-CV-00861-TSZ

LABATON KELLER SUCHAROW LLP
140 BROADWAY, New York, NY 10005
PHONE: 212-907-0700
FAX: 212-818-0477

25

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 26, 2024.


/s/ *Thomas G. Hoffman, Jr.*
Thomas G. Hoffman, Jr.