THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTONIO BACHAALANI NACIF; WIES RAFI; and HANG GAO, individually and on behalf of all others similarly situated, | CASE NO.:  2:21-cv-00861-TSZ |
| Plaintiffs, | |
| v. | |
| ATHIRA PHARMA, INC., *et al.*, | |
| Defendants. | |

**DECLARATION OF PAUL MULOLLAND IN RESPONSE TO THE QUESTIONS POSED BY THE COURT'S MINUTE ORDER DATED SEPTEMBER 30, 2024**

I, Paul Mulholland, declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am the President of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm.[1]  I have over thirty (30) years of experience specializing in litigation support services, and twenty-four (24) years of experience focusing in the area of the administration of securities class action settlements.  SCS was established in April 1999 and has administered over five hundred and fifty (550) class action cases since its inception.  I have personal knowledge of the facts set forth herein and, if called on to do so, I could and would testify competently thereto.

2.      Pursuant to the Court's Order, dated February 15, 2024 (ECF No. 128), and the Court's Minute Order, dated March 29, 2024 (ECF No. 130), SCS was appointed as the Administrator in connection with the Settlement of the above-captioned action (the "Action").  I submit this supplemental declaration to address the claims administration questions posed in the Court's Minute Order, dated September 30, 2024 (ECF No. 136).

**Background: Claims Processing Procedures**

3.      Under the terms of the Amended Stipulation and as set forth in the Notice, each Claimant who wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to SCS a properly executed Proof of Claim Form ("Claim Form") detailing their transactions in Athira Pharma, Inc. ("Athira") publicly traded common stock during the period from September 17, 2020, through June 17, 2021, inclusive (the "Class Period"), either postmarked or submitted online no later than September 6, 2024, together with such supporting documents as were designated in the Claim Form.

4.      In preparation for receiving and processing claims, SCS has: (a) created a unique database to store claim details, claim images, and supporting documentation (the "Settlement Database"); (b) trained staff on the terms of the proposed Plan of Allocation so that Claims would

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Amended Stipulation and Agreement of Settlement, dated as of December 15, 2023 (ECF No. 125-2, the "Amended Stipulation"), or the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Final Approval Hearing; and (III) Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses (the "Notice").

be properly processed; (c) formulated and implemented a system to properly respond to telephone and email inquiries; (d) developed computer programs and screens for entering and securely storing Class Members' identifying information and transaction data; and (e) developed a proprietary "calculation module" that calculates each Class Member's Securities Act Claim Amount and Exchange Act Claim Amount pursuant to the proposed Plan of Allocation stated in the Notice. SCS has been in contact with and will continue to confer with and inform Co-Lead Counsel throughout the administration process.

5. Each of the 8,293[2] Claim Forms received by SCS to date has been assigned a unique claim number. Once scanned or retrieved from the Settlement Website, the information from each Claim Form (including the Claimant's name, address, account number and other information from his, her, or its supporting documentation; and the Claimant's purchase/acquisition transactions, sale transactions, and holdings listed on the Claim Form) was entered into the Settlement Database. After entry into the Settlement Database, Claims are reviewed to verify that all required information has been provided. The documentation provided by the Claimant in support of his, her, or its Claim Form is reviewed for authenticity and compared to the information provided in the Claim Form to verify the Claimant's identity and the accuracy of the purchase/acquisition transactions, sale transactions, and holdings reported on the Claim Form.

6. To process the transactions detailed in Claim Forms, SCS utilizes the Settlement Database to classify whether a Claim is deficient, partially accepted, or ineligible. For example, where a claim was submitted by a Claimant who did not have any eligible transactions in Athira publicly traded common stock during the Class Period (*e.g.*, the Claimant purchased Athira publicly traded common stock only during the 90-Day Lookback Period), that Claim would be classified in SCS's system as ineligible on the ground that its purchase transactions were conducted

---

[2] This and other numbers differ from the Declaration of Sarah Evans Concerning: (A) Mailing of the Notice, Claim Form, and Opt-out Form; (B) Publication of the Summary Notice; (C) Requests for Exclusion and Objections Received to Date; and (D) Claims Received to Date, dated September 26, 2024 (ECF No. 134-1, the "Initial Mailing Declaration") due to additional Claims being processed, and they will continue to change as further claims processing and quality assurance checks are undertaken.

outside of the Class Period, also referred to as being "Purchased Out." Other ineligible conditions include, among other things, duplicate Claims; no recognized loss under the plan of allocation; no recognized loss due to other defects; and missing documentation for the entire Claim, for purchase(s), for sale(s), for beginning holdings, and/or for end holdings.

7. For Claims which are assessed as ineligible, as in the foregoing example, SCS will then send an ineligibility notice ("Ineligibility Notice") in writing to the Claimant, in accordance with ¶ 24(d)–(e) of the Amended Stipulation, informing them of the ground(s) for their ineligibility and stating that if the Claimant desires to contest such rejection, he, she, it, or they must respond to SCS within twenty (20) calendar days with the Claimant's ground(s) for contesting the rejection along with any supporting documentation, and requesting a review thereof by Co-Lead Counsel.[3]

**Question (1)(a):  On what ground or grounds have claims been provisionally deemed to be deficient or ineligible and, to the extent that multiple grounds are involved, approximately how many claims are associated with each ground?**

8. Of the 6,077 Claims deemed provisionally to be ineligible or deficient, the ground(s) for which claims have been so provisionally deemed, including the number of claims provisionally associated with each ground, are as follows:

(a) 3,418 (or 56.24% of the 6,077 Claims) are provisionally ineligible for claiming shares of publicly traded Athira common stock Purchased Out of the Class Period;

(b) 2,786 (or 45.84% of the 6,077 Claims) are provisionally ineligible for having no recognized Securities Act Claims or Exchange Act Claims under the proposed Plan of Allocation because all shares of Athira publicly traded common stock were both purchased and sold prior to June 18, 2021;

(c) 197 (or 3.24% of the 6,077 Claims) are provisionally ineligible for claiming shares which were sold short;

(d) 98 (or 1.61% of the 6,077 Claims) are provisionally ineligible for claiming shares which were not purchased, but were instead acquired by gift, grant, or operation of law;

---

[3] As discussed below, a similar process is followed with respect to deficient claims. *See* ¶¶ 19-20.

(e)      74 (or 1.22% of the 6,077 Claims) are provisionally deficient for lacking sufficient information and/or supporting documentation for their Claim Form, as required by Claim Form;

(f)      8 (or 0.13% of the 6,077 Claims) are provisionally ineligible for claiming securities other than Athira publicly traded common stock; and

(g)      4 (or 0.07% of the 6,077 Claims) are provisionally ineligible for being duplicates of other Claim Forms filed for the Settlement.

9.      Of the 6,077 Claims deemed provisionally to be ineligible or deficient, 1,057 Claims (or 17.39% of the 6,077 Claims) have multiple deficiencies.

10.      As indicated above, the vast majority of provisionally deficient or ineligible Claims either: (a) did not purchase Athira common stock within the Class Period; or (b) did not have a recognized loss under the proposed Plan of Allocation.  In my experience, this is not at all uncommon.

11.      One of the main reasons for the large number of provisionally deficient or ineligible claims is that a significant percentage of claims in most securities class actions—including this one—are filed by what are known as "Third Party Filers."  Third Party Filers are businesses that file claims on behalf of institutional investors, individuals or their customers, for which they are paid a fee for the service or receive a percentage of the recovery.  Examples of Third Party Filers include Broadridge Financial Solutions, Inc. (*see* www.Broadridge.com), and the asset management firm State Street Corporation, which files claims on behalf of its clients.  When responding to the Notice, Third Party Filers provide data encompassing their clients' purchases and sales during the Class Period and the PSLRA's statutory 90-Day Lookback Period because this information is required by the Proof of Claim Form.  Unfortunately, this means that the data that is sent to SCS is very much overinclusive.  For instance, it includes shareholders who: (a) are ineligible because they purchased only during the 90-Day Lookback Period (*i.e.*, they purchased after the last (or only) alleged corrective disclosure); and (b) bought and sold during the Class Period, but did not hold over the corrective disclosure date (*i.e.*, "in and out traders").

12.     Because in and out traders do not hold the stock over a corrective disclosure, they are not damaged as a proximate result of the alleged fraud, and they are not eligible for compensation under the proposed Plan of Allocation.  Any Claim filed with respect to such trades would be invalid, even if the shareholder incurred a trading loss.  It should also be noted that people and entities that suffer trading losses often file claims even though they did not hold the security over a corrective disclosure, and this can drive up the invalid claims rate.

13.     In this case approximately 90% of the Claims were submitted by Third Party Filers.

14.     Other factors that can affect the valid/invalid claims rate include: (a) the number of corrective disclosures during the class period; and (b) the length of the class period.  If there are many partial disclosures, there are generally fewer in and out traders because more shareholders are likely to have held over at least one corrective disclosure.  And, when the class period is short, there are usually fewer in and out traders.

15.     In this case: (a) the Class Period is eight (8) months (from September 17, 2020, through June 17, 2021, inclusive); and (b) there was only one corrective disclosure, which occurred on June 17, 2021, after the market closed.  According to Plaintiffs' damages expert, average daily trading volume for Athira common stock during the Class Period was 362,098 shares and, to the extent these shares were purchased **and** sold within this timeframe, they would not be eligible to participate in the Settlement, even if they incurred a trading loss.  As noted above, shareholders who suffer trading losses often file claims even though they did not hold the security over a corrective disclosure, and this can drive up the invalid claims rate.

16.     Another factor that can increase the invalid claims rate is the fact that nominees send notice to, or provide addresses to SCS for, all persons and entities on whose behalf they purchased shares during the Class Period.  Nominees do not try to discern whether or not a shareholder is eligible to receive a payment in the case.  Thus, notice is generally overinclusive, and many in and out traders file claims based solely on receipt of the notice.  The effect is magnified in cases—like this one—with a fairly long class period and an alleged corrective disclosure at the end of the class period.

**Question (1)(d): How does the percentage of claims deemed provisionally to be deficient or ineligible in this matter compare with the rates of rejected claims in other, similar case?**

17.    While 26% is at the lower range of the typical valid claims rate, I do not think it is unusual in this case given the length of the Class Period, the trading volume for Athira common stock, and the date of the first alleged corrective disclosure. Indeed, SCS has administered many securities cases with valid claims rate around or less than 26%, and, to date, a significant portion of the invalid claims in this Action stem from in and out traders who did not hold the stock through a corrective disclosure or shareholders who purchased outside the Class Period. *See, e.g.*, *In re 3D Systems Securities Litigation*, Case No. 1:21-cv-01920-NGG-TAM (E.D.N.Y.) (valid claim rate of 21.6%); *In re TerraVia Holdings, Inc. Securities Litigation, et al.,* Case No. 3:16-CV-06633-JD (N.D. Cal) (valid claim rate of 18.6%).

**Question (1)(e): Of the 6,077 claims provisionally deemed to be deficient or ineligible, how many claims involve putative class members who purport to have (i) only Securities Act Claims, (ii) only Exchange Act Claims, or (iii) both Securities Act Claims and Exchange Act Claims, as defined, respectively, on Page 2 of the Order entered February 15, 2024 (docket no. 128)?**

18.    Of the 6,077 Claims deemed provisionally to be ineligible or deficient, 2,098 purport to have only Securities Act Claims, 3,554 purport to have only Exchange Act Claims, and 425 purport to have both Securities Act Claims and Exchange Act Claims.

**Question (1)(b): What steps, if any, has the Settlement Administrator taken to communicate with putative class members about alleged deficiencies or ineligibility, and what opportunities have putative class members been given to cure any deficiencies or to seek review by Class Counsel of the Settlement Administrator's provisional determination, *see* Amended Stipulation and Agreement of Settlement at ¶ 24(d)–(e) (docket no. 125-2)?**

19.    For the 74 Claims provisionally determined upon review not to meet the submission requirements and which are provisionally deemed as deficient, a deficiency notice ("Deficiency Notice") will be sent in writing to those Claimants, in accordance with ¶ 24(d)–(e) of the Amended Stipulation, describing the defect(s) in their Claims and what will be necessary to cure the defect(s)

in these Claims.  SCS generally does not send Deficiency Notices for cases it administers until after any judgment has become final.

20.    Examples of Claims that would receive a Deficiency Notice are Claims with partial documentation, no proof of end holdings, and claims that do not balance (*i.e.*, there is a discrepancy between the shares purchased, sold and that are still held).  The Deficiency Notice will advise Claimants that submission of appropriate information and/or documentary evidence to complete the Claim must be submitted to SCS within twenty (20) calendar days from the date of the Deficiency Notice, or the Claim will be recommended for rejection to the extent that the deficiency is not cured.

21.    Claimants' responses to Deficiency Notices will be scanned and associated with the corresponding Claim Forms, and the responses will then be carefully reviewed and evaluated by SCS's team of processors.  If a Claimant's response corrects the defect(s), SCS will update the Settlement Database through the calculation program to reflect the changes in the Claim's status. SCS will send an Ineligibility Notice to those Claimants who do not respond to the Deficiency Notice, or who respond with documentation that does not cure the defect(s).

> **Question (1)(c):  How many or what percentage of claims deemed provisionally to be deficient or ineligible does the Settlement Administrator anticipate concluding are valid before the Final Approval Hearing scheduled for October 25, 2024, or within thirty (30) days thereafter?**

22.    As noted above, SCS generally does not send Deficiency Notices for cases it administers until after any judgment has become final.  Based on response rates from comparable cases that SCS has administered, of the 6,077 Claims currently deemed to be deficient or ineligible, SCS anticipates a cure rate of approximately 50% for deficient Claims and approximately 1% for ineligible Claims.

> **Question (1)(f):  Given the claims provisionally deemed to be valid and any claims that have been or will likely be deemed valid as a result of the cure and/or review process, what are the expected average and maximum gross and net distributions relating to Securities Act Claims and Exchange Act Claims?**

23.    For the Claims provisionally deemed to be valid and any claims that may be deemed valid as a result of the cure process or further review, the anticipated average and maximum gross

8

and net distributions[4] Securities Act Claim Amounts are $7,867.58 (gross)/$5,048.94 (net); and $744,188.41 (gross)/$459,123.50 (net), respectively.  The anticipated average and maximum Exchange Act Claim Amounts are $1,644.10 (gross)/$1,135.01 (net); and $153,390.65 (gross)/$94,707.66 (net), respectively.

**NOTE: THESE NUMBERS ARE SUBJECT TO CHANGE**

24.    SCS is continuing to process the claims received to date and will conduct quality assurance reviews and audits of claims in addition to undertaking the deficiency and ineligibility procedures detailed herein.  With these steps currently outstanding, the figures provided herein are subject to change based upon additional information being provided in the curing process.

I declare under penalty of perjury of the United States of America that the foregoing is true and correct.

Signed this 8th day of October 2024, in Media, Pennsylvania.

_____
Paul Mulholland

---

[4] The calculations in this paragraph assume the Net Settlement Fund based on the estimated deductions detailed in ¶4 of the Notice, except that the earned interest used in the calculations in this paragraph uses the actual interest received of $147,820.21 as of September 30, 2024, and assumes escrow fees for two years at $10,400 total.

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On October 8, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Western District of Washington, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 8, 2024.


*/s/ Casey E. Sadler*
Casey E. Sadler