**NACIF, RAFI, and GAO**
v.
**ATHIRA PHARMA, INC. and KAWAS**
**C21-861 TSZ**
————

**FINAL APPROVAL HEARING**
**October 25, 2024, 10:00 a.m.**
**AGENDA**


A.      **Notice to the Class**

| Putative Class Members | Number |
|---|---:|
| Identified by Athira (and served by SCS via first-class mail) | 196 |
| Identified by Nominees (and served by SCS via first-class mail) | 13,240 |
| Served by Nominees | 12,195 |
| Served upon Direct Request to SCS (via first-class mail) | 1 |
| **TOTAL[1]** | **25,632** |

Source of Data: Evans Decl. at ¶¶ 4–7 (docket no. 134-1).

Question No. 1: When the motion for preliminary approval was brought, the Class was estimated to include "approximately 30,000" members and "likely more than 45,000." _See_ Order at 11 & n.11 (docket no. 128).  Does the number of notices distributed by SCS (25,632) reflect a more accurate tally of Class members or a failure to account for thousands of Class members?

> Answer No. 1: As explained in prior submissions before preliminary approval of the Settlement, it is not possible to identify all Class Members.  This information is scattered between Athira's transfer agent records and nominees. SCS endeavored to provide a well-founded estimate of approximately 30,000 to 45,000.  The current mailed count of 25,632 is likely a more accurate number of class members, however this is still not a definitive number because it is impossible to track whether brokers/institutions with Class Member information failed to respond.  This is one the reasons why administrators use the DTC LENS system to disseminate notice to nominees, and also why administrators publish using a newswire/IBD, to reach any individual or broker not provided notice directly.

---

[1] Sarah Evans has set forth a slightly different total (25,631), presumably because the notice sent in response to a direct request from a putative Class member was disregarded.

Question No. 2: The number of undeliverable notices appears to be 531, which reflects roughly a two percent (2%) failure rate.[2] How does this rate compare with other similar matters?

> Answer No. 2: The 2% failure rate for Notice Packets mailed for this case is not unusual, based on other securities class action cases that SCS has administered. In most cases SCS administers, a percentage of notices are unable to be delivered, and in several recent securities class action cases, SCS experienced an ultimate failure rate greater than 2% for notices mailed. *See, e.g., In re TerraVia Holdings, Inc. Securities Litigation, et al.*, Case No. 3:16-CV-06633-JD (N.D. Cal) (failure rate for notices mailed of 3.08%); *In re Peabody Energy Corp. Securities Litigation*, Case No. 1:20-cv-08024-PKC (S.D.N.Y.) (failure rate for notices mailed of 3.03%).

B.    **Responses**

| **Requests for Exclusion** | 6 requests (123 shares of Athira stock) |
|---|---|
| **Written Objections** | 0 |
| **Submitted Claim Forms** | 8,293  -  current count is 8,295 |

Sources of Data: Mulholland Decl. at ¶ 5 (docket no. 137); Evan Decl. at ¶¶ 16–18 & Ex. D (docket nos. 134-1 & 135).

Question No. 3: Of the 8,293 claims forms that were submitted, 6,077 have been provisionally deemed ineligible or deficient.  Does the Settlement Administrator agree that the balance of the claim forms (2,216) have been provisionally deemed valid? This figure (2,216) is about eighteen percent (18%) lower than the number previously provided (2,702). *See* Evans Decl. at ¶ 18 (docket no. 134-1).   Why did the amount of provisionally deemed valid claim forms decrease?

| **Status of Claim Forms** | **Number of Claim Forms** | | **Reason[3]** |
|---|---|---|---|
| Provisionally Ineligible | 6,077 | 3,418 | shares were not purchased during the Class Period |
| | | 2,786 | shares were purchased and sold before June 18, 2021 |
| | | 197 | shares were sold short |

---

[2] Of the notices mailed, 1,255 were returned, but 55 were resent to forwarding addresses provided by the United States Postal Service, and 669 were resent to updated addresses obtained by skip-tracing, leaving 531 as undeliverable. *See* Evans Decl. at ¶ 8 (docket no. 134-1).

[3] Of the 6,077 claim forms deemed provisionally ineligible or deficient, 1,057 present more than one reason for considering the claim invalid. *See* Mulholland Decl. at ¶ 9 (docket no. 137). Of these 6,077 claim forms, 2,098 (34.5%) purport to have Securities Act claims, 3,554 (58.5%) purport to have Exchange Act claims, and 425 (7%) purport to have both Securities Act and Exchange Act claims. *Id.* at ¶ 18.

| Status of Claim Forms | Number of Claim Forms | | Reason[3] |
|---|---|---|---|
| | | 98 | shares were acquired by gift, grant, or operation of law |
| | | 8 | shares are not Athira publicly-traded common stock |
| | | 4 | claim form is duplicative |
| Provisionally Deficient | | 74 | lacking sufficient information or supporting documentation |
| Provisionally Valid | 2,216 (?) | | |

Source of Data: Mulholland Decl. at ¶¶ 5 & 8(a)–(g) (docket no. 137).

Answer No. 3: The amount of provisionally deemed valid claims decreased because some claims have now been identified as claiming shares purchased *outside* the class period as eligible shares.  Claims processing is an iterative process involving several layers of review and quality assurance reviews that are ongoing.

Additionally, the figures above have changed, as a result of ongoing claims processing. Updated numbers are below.  SCS has not completed its review, but at this point, the 2,227 claims have been provisionally deemed valid.

| Status of Claim Forms | Number of Claim Forms | | Reason |
|---|---|---|---|
| | | 3,424 | shares were not purchased during the Class Period |
| | | 2,799 | shares were purchased and sold before June 18, 2021 |
| Provisionally Ineligible | 6,068 | 197 | shares were sold short |
| | | 98 | shares were acquired by gift, grant, or operation of law |
| | | 8 | shares are not Athira publicly-traded common stock |
| | | 4 | claim form is duplicative |
| Provisionally Deficient | | 57 | lacking sufficient information or supporting documentation |
| Provisionally Valid | 2,227 | | |

Question No. 4: The ratio of claim forms submitted (8,289, not counting the four (4) duplicative forms) to notices disbursed (25,632) reflects a response rate of about thirty-two percent (32%). How this response rate compare to the response rates in similar matters?

Answer No. 4: The 32% ratio of Claim Forms filed to Notice Packets mailed in this case is in keeping with other securities class action cases that SCS has administered. Indeed,

3

SCS has administered many cases with a ratio less than 32%. *See, e.g., In In re TerraVia Holdings, Inc. Securities Litigation, et al.*, Case No. 3:16-CV-06633-JD (N.D. Cal) (ratio of claims filed to notices mailed of 21.91%); *In re Peabody Energy Corp. Securities Litigation*, Case No. 1:20-cv-08024-PKC (S.D.N.Y.) (ratio of claims filed to notices mailed of 28.70%).

Question No. 5: The initial declaration provided by Strategic Claims Services indicated that the claim forms provisionally deemed valid (2,702) were associated with approximately 19,464,956 damaged shares. Now that the number of claim forms provisionally deemed valid has apparently decreased to 2,216, has the related number of damaged shares also decreased? If so, what is the revised figure?

Answer No. 5: The current balance of valid damaged shares decreased when the out-of-Class Period shares increased as discussed in Question 3. The current balance of valid damaged shares (which includes changes from class members/quality assurance reviews etc.) is 14,430,720 damaged shares.

Question No. 6: Plaintiffs' expert Zachary Nye, Ph.D. opined that Securities Act claims are associated with about 12.72 million shares and Exchange Act claims are linked to roughly 8.64 million shares. *See* Order at 5 & 9 n.8 (docket no. 128). How does the number of damaged shares reflected in the claim forms provisionally deemed valid compare with the number of shares estimated by plaintiffs' expert to be related to the Securities Act claims and/or Exchange Act claims?

Answer No. 6: Currently there are 8,537,064.05 valid damaged shares in connection with the Securities Act Claims, as a result of changes from class members/quality assurance reviews, etc. This is 32.8% less than the damaged shares estimated by Dr. Nye, however, as mentioned, the claims process is ongoing and this figure is subject to change.

Currently there are: 5,893,656 valid damaged shares in connection with the Exchange Act Claims, as a result of changes from class members/quality assurance reviews, etc. This is 31.7% less than the damaged shares estimated by Dr. Nye, however, as mentioned, the claims process is ongoing and this figure is subject to change.

## C.   **Deductions from Gross Settlement Fund**

- Attorneys' Fees
- Litigation Costs
- Service Awards
- Settlement Administration Expenses
- Taxes
- Escrow Fees

| Gross Settlement Fund | $10,000,000.00 | |
|---|---|---|
| Interest | +$185,128.04 | As of 10/29/2024, will increase. |
| Attorneys' Fees | -$2,500,000.00 | Co-Lead Counsel's request. |
| Litigation Costs | -$150,699.33 | Co-Lead Counsel's request. |
| Service Awards | -$11,000.00 | |
| Settlement Administration | -$170,000.00 | |
| Taxes | -$200,000.00 | Estimated total; $77,000 in estimated taxes paid to date. |
| Escrow Fees | -$10,400.00 | Estimated 2 years, anticipating $400/month. |
| Net Settlement Fund | $7,143,028.71 | |

5